# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY COCROFT, | : | Case No. 2:24-cv-04208 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Caroline H. Gentry |
| v. | : | |
| FRANKLIN COUNTY OHIO, *et al.,* | : | |
| Defendants. | : | |

## MEMORANDUM IN OPPOSITION OF PLAINTIFF *PRO SE* TO MOTION TO DISMISS OF DEFENDANTS FRANKLIN COUNTY, OHIO, JEANINE HUMMER, AND THERESA DEAN (DOC. NO. 20)

Now comes Plaintiff, *pro se*, and hereby submits her memorandum in opposition to the motion to dismiss of Defendants Franklin County, Ohio ("Franklin County"), Jeanine Hummer ("Hummer"), and Theresa Dean ("Dean") (collectively, "Franklin County Defendants"). A memorandum in support follows.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff p*ro se*
345 S. High Street, #4E
Columbus, OH  43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

**TABLE OF CONTENTS**

I.     **INTRODUCTION**.................................................................................................1

II.    **STATEMENT OF FACTS**..............................................................................2

      A.     **Overview**……………………………………………………………...…..2

Plaintiff, Judge Kimberly Cocroft, suffered discrimination based on race and gender, hostile work environment, and retaliation by several Franklin County Court of Common Pleas, General Division Judges and Administrators, Franklin County, Ohio, Jeanine Hummer, and Theresa Dean for several years before, during, and after serving as Administrative Judge for the court. Plaintiff was the first woman and first Black woman to serve as Administrative Judge and was retaliated against by all Defendants for bringing the prolific discrimination and toxic and humiliating work environment at the court to light.

      B.     **Hummer, Dean, and Franklin County Facts**…………………………………7

            1.     **Allegations Related to Defendant Goodman's Bad Faith Complaint and Hummer's and Dean's Mismanagement of Related Public Record Request**…..…………………………………………………7

Plaintiff's Amended Complaint details that Hummer and Dean had knowledge of Defendant Goodman's bad faith complaint, as they provided advice and counsel to Defendant Frye regarding its management. Hummer conceded that she failed to notify Plaintiff of her right to legal representation. Moreover, Hummer and Dean represented to Plaintiff that they would facilitate an investigation and/or encourage and advise FCCP-Gen that it would be best to investigate, rather than having Plaintiff file an EEOC Charge. Additionally, Hummer and Dean mismanaged a public record request submitted in November 2022 that was based on Defendant Goodman's bad faith complaint.

            2.     **Allegations Related to Interactions with Hummer, Dean, and Franklin County**...……………………………………………………10

There are at least 166 paragraph allegations in Plaintiff's Amended Complaint that relate directly to Hummer, Dean, and Franklin County and the allegations involving all Defendants have a nexus to one another.

**III.** **LAW AND ARGUMENT**…………………........................................................................12

**A.** **To Be Plausible, a Complaint Need Not Allege the Evidentiary Framework for Proving Discrimination or Retaliation**...................................12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) is the seminal case regarding the sufficiency of employment discrimination (and retaliation) complaints.

An employment-discrimination plaintiff satisfies her pleading burden by drafting "'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Id.* at 508 (citing Fed. Rule Civ. Proc. 8(a)(2)). The "plausibility" standard from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), must still be satisfied, but the Supreme Court was explicit in *Twombly*, 550 U.S. at 569-70, in rejecting the argument that its plausibility analysis "runs counter to *Swierkiewicz*."

**1.** **The Truth of Plaintiff's Factual Allegations Must Be Presumed When Analyzing a Motion to Dismiss**………………………………………17

In ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quotation omitted). *Accord Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted).

**2.** **Based On the Presumption of Truth Associated with Plaintiff's Allegations, There Is No Confusion Regarding Franklin County Defendants' Involvement in the Litigation**…………………………18

Plaintiff's Amended Complaint provides both clarity and certainty regarding why Franklin County Defendants are in the litigation. Franklin County Defendants play an integral role advising on policy decisions made by FCCP-Gen, as well as providing legal counsel to FCCP-Gen judges and administrators.

**B.** **Plaintiff's Allegations Are Permissible Under Title VII**…………………...20

**1.** **As a FCCP-Gen and Franklin County, Ohio Employee, Plaintiff Is Entitled to Title VII Relief for Her Claims of Race and Gender Discrimination, Hostile Work Environment, and Retaliation**……..20

42 U.S.C. § 2000e(f) creates an exemption from the constraints of the statute for persons who are subject to the civil service laws of a state. Ohio Revised Code § 124.01 defines "Civil service" as all offices and positions of trust in the service of counties. The Ohio Code of Judicial Conduct categorizes the work of a judge as a public trust. Further, *City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024) expounds on the carve out exceptions that states are permitted.

2.      **Because Plaintiff's Allegations Assert Continuing Violations under Title VII, Her Claims Are Not Time Barred**………………………24

Plaintiff's allegations constitute an ongoing and pervasive course of discriminatory conduct.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Moreover, Plaintiff asserted "continuing violations" as a part of her preliminary statement in the Amended Complaint.

C.      **As a FCCP-Gen and Franklin County Employee, Plaintiff Has the Benefit of a Contractual Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well Founded**………………………………………………………...28

The attorney-client relationship that exists between Plaintiff, Hummer and Dean as well as the employer-employee relationship that exists between Plaintiff and Franklin County support her § 1981 claims. *See Suero v. Motorworld Auto Grp., Inc.,* CIVIL ACTION NO. 3:16-cv-00686 (M.D. Pa. Jan. 31, 2017).

D.      **Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983 Against Franklin County, Hummer and Dean**……………………………..31

1.      **None of Plaintiff's Claims are Time-Barred**………………………..31

In *Cornwell v. Robinson*, 23 F.3d 694, 703-4 (2d Cir. 1994), the Court noted, "When a plaintiff experiences a "'continuous practice and policy of discrimination,'" however, "'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'"

2.      **Plaintiff Has Satisfied the *Monell* Factors Regarding Franklin County**…………………………………………………………………32

Franklin County is a "person" subject to suit under § 1983 and, in the present case, its policy and custom which represent official policy inflicted injury upon Plaintiff for which Franklin County is responsible. *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978). Here, Franklin County's Resolution Declaring Racism as a Public Health Crisis is a policy that is applicable to FCCP-Gen. Under *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013), Franklin County has demonstrated a custom of tolerance or acquiescence of federal rights violations.

3.      **Hummer and Dean Are Not Entitled to Qualified Immunity For Plaintiff's § 1983 Claims**……………………………………………..34

Plaintiff is a part of a protected class who is qualified for her job as judge and was subject to an adverse employment action. Having satisfied her burden, Defendants have not presented any legitimate nondiscriminatory reason for their behavior. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Moreover, *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 114 S. Ct. 367 (1993),

established the framework by which a hostile work environment claim can be proven.

**E.** **Plaintiff Has Alleged Facts That Support Her Assertion of the Racketeering Claim in Count Four of Her Amended Complaint**............................40

    **1.** **Plaintiff's Amended Complaint Satisfies the Procedural Framework of *Sedima, S.P.R.L., v. Imrex Co.,* 473 U.S. 479  105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985)**…………………………………………………….40

The racketeering activity contemplated under 18 U.S.C. § 1961 includes bribery, extortion, mail fraud, wire fraud, and fraud and related activity in connection with access devices. Further, *Sedima, supra,* requires Plaintiff to show 1.) conduct; 2.) of an enterprise; 3.) through a pattern; 4.) of racketeering activity. Plaintiff's Amended Complaint satisfies these elements.

    **2.** **Franklin County Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings** …………………………………………………………………….43

Plaintiff must show that: 1.) there were two or more predicate offenses; 2) an "enterprise" existed 3.) there was a nexus between the pattern of racketeering activity and the enterprise; and 4.) an injury to business or property occurred as a result of the three factors. *See VandenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), citing *Frank v. D'Ambrosi*, F.3d 1378, 1385 (6th Cir. 1993).

**F.** **Franklin County Defendants Are Not Entitled to Dismissal of Plaintiff's State Law Discrimination and Retaliation Claims**............................49

    **1.** **Plaintiff's Notice of Right to Sue Letter from the Equal Employment Opportunity Commission Is Sufficient for Asserting State Law Claims**………………………………………………………………49

It is not a legal necessity for Plaintiff to file a claim with OCRC in order to assert state law claims of discrimination and retaliation. *See Simrell v. Dave White Chevrolet, LLC,* Case No. 3:23-cv-1382, 2024 U.S. Dist. LEXIS 94824, 5-6 (N.D. Ohio May 29, 2024).

    **2.** **Plaintiff's Arguments Regarding Her Federal Claims of Discrimination and Retaliation Are Also Applicable to Her State Law Claims**………………………………………………………………51

Under *Monell, supra,* Franklin County is a person subject to suit under § 1983. Moreover, when execution of government's policy inflicts injury and that act may fairly be said to represent official policy then the government is responsible under § 1983. The responsibility of Franklin County cannot, as Franklin County

Defendants incorrectly suggest, be assigned to the Franklin County Board of Commissioners. Franklin County pays a portion of Plaintiff's salary and that payment structure was provided as a potential basis for an investigation by Franklin County.

**3.     Plaintiff Has Asserted a Plausible Claim of Discrimination Against Hummer and Dean**……………………………………………………...52

Plaintiff's claims of discrimination against Hummer and Dean are supported by Ohio Revised Code § 4112.02(J).

**G.     Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B)**………………………………53

Plaintiff's claims regarding the destruction and alteration of public records arise out of the same nucleus of operative facts for which this Court has original jurisdiction. *See Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020).

**IV.   CONCLUSION**………………………………………………………………..57

**CERTIFICATE OF SERVICE**……………...……………….…………………58

## TABLE OF AUTHORITIES

Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013)………13, 14

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)………………………………………………………………………………………..49

*Alexander c. Gardner-Denver Co*., 415 U.S. 36 (1974)………………………………………………20

*Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983)…………………………....……..20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………… 13, 14, 18

*Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir. 1981), *cert. denied*………………………………………………………………………………32

*Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir. 1977)………………………………..21

*Barrett v. Whirlpool Corp.,* 556 F.3d 502 (6th Cir. 2009)………………………………………27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…...………………………………………13, 16, 17

*Brown v. J. Kaz, Inc*., 581 F.3d 175 (3rd Cir. 2009)………………………………………………29

*Brown v. Philip Morris, Inc*., 250 F.3d 789 (3rd Cir. 2001)………………………………………29

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013)…………………………………………………32

*Cardenas v. Massey*, 269 F.3d 251 (3rd Cir. 2001)...................................................................29, 30

*Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991)…………………………………………………17

*City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024)…..22, 23, 24

*Comm'rs v. Andrews*, 18 Ohio St. 49 (1868)………………………………………………………...51

*Conley v. Gibson*, 355 U.S. 41 (1957) …………………………………………………...17

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994)...…………………………………………...32

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)…..………………………………………18

*Dicarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)………………………………………………....35

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)……………………………………..17

*Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019)…………………………....31

*Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000)…………………………………………27

*Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993)..........................................................44

*Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020)…………………55, 56

*Gomes v. Avco Corp.,* 964 F.2d 1330 (2d Cir. 1992)......................................................32

*Grubbs v. Sheakley Grp., Inc.,* 807 F.3d 785 (6th Cir. 2015)........................................49

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012)…………………………..17, 18, 49

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)………………………………………35, 36, 37, 38

*In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d  599 (E.D. Ky 2011)………………..47, 48

*Jean-Louis v. Am. Airlines*, No. 08-CV-3898 (E.D.N.Y. July 30, 2010)…………………………29

*Kenty v. Bank One Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996)………………………………47

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)……………………………………….....14

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993)……………………………………………...17

*McClements v. Ford Motor Co.,* 473 Mich. 373 (Mich. 2005)…………………………………...22

*McClements v. Ford Motor Co.,* 474 Mich. 1201 (Mich. 2005)……………………………......22

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………………..…13, 35

*Miller v. International Telephone Telegraph Corp.*, 755 F.2d 20 (2d Cir. 1985), *cert. denied*……32

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017)………………………………………………..18

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)………………..………...32, 50, 51, 52

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)………………………25, 26, 27

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011)………………………16

*Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980)……………………..21

*Reves v. Ernst Young*, 507 U.S. 170, 183 (1993)…………………………………………………...44

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994)……………………………………………...29

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)…...…………………………….40, 41, 42, 43

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)…………………………………………14

*Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir 1973)…...…………………………21

*Simrell v. Dave White Chevrolet, LLC*, Case No. 3:23-cv-1382, (N.D. Ohio May 29, 2024)
………………………………………………………………………………………...49, 50

*Slough v. Telb*, 644 F. Supp. 2d 978 (N.D. Ohio 2009)……………………………………………51

*Smith v. Goodwill Industries of West Mich., Inc.*, 243 Mich 438 (Mich. Ct. App. 2000)……….22

*Suero v. Motorworld Auto Grp., Inc.*, CIVIL ACTION NO. 3:16-cv-00686 (M.D. Pa. Jan. 31,
2017)…………………………………………………………………………………29, 30

*Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002)…………………………………….…13, 14

*Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)……………………………...…35

*Tipler v. duPont de Nemours and Co.*, 443 F.3d 125 (6th Cir. 1971)…………………….....20, 21

*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)………………………………………28

*United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996)……………………………………...49

*United State v. Griffith*, 17 F.3d 865 (6th Cir. 1994)……………………………...…48, 49

*United States v, Local 560 of the Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers
of Am.*, 780 F.2d 267 (3d Cir. 1985)……………………………………………………48

*United States v. Puckett*, 692 F.2d 663 (10th Cir. 1981)…………………………………...48

*United States v. Turkette*, 452 U.S. 576 (1981)……………………………………………44

*VandenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000)……………...44, 45

*Zipes v. Trans World Airlines, Inc.*, 455 U.S.. 385 (1982)……………………………………...21

## Statutes

18 U.S.C. §1001……………………………………………………………………………46

18 U.S.C. § 1018………………………………………………………………………..46, 47

18 U.S.C. §1030…………………………………………………………………………..46, 47

18 U.S.C. § 1961…………………………………………………………………...6, 40, 43

18U.S.C. § 1962…………………………………………………………..6, 35, 40 , 41, 44

18 U.S.C. § 1962(a)………………………………………………………………………44

18 U.S.C. § 1962(b)………………………………………………………………………44

18 U.S.C. § 1962(c)……………………………………………………………41, 44, 45

18 U.S.C. § 1963……………………………………………………………………6, 40

18 U.S.C. § 1964…………………………………………………………………...6, 40, 42

18 U.S.C. § 1964(c)……………………………………………………………………41

18 U.S.C. § 1965……………………………………………………………………6, 40

18 U.S.C. § 1966……………………………………………………………………6, 40

18 U.S.C. § 1967……………………………………………………………………6, 40

18 U.S.C § 1968……………………………………………………………………6, 40

28 U.S.C. § 1367……………………………………………………...…53, 54, 55

42 U.S.C. § 1981………………………………………………………...6, 28, 29, 30, 55

42 U.S.C. § 1981a……………………………………………………………………6

42 U.S.C. § 1983…………………………………………………6, 31, 34, 35, 40, 51, 55

42 U.S.C. § 2000(e)……………………………………………………………………6

42 U.S.C. § 2000e(f)……………………………………………………………………20

42 U.S.C. § 2000e-5(e)(1)……………………………………………………24, 25

Ohio Revised Code § 124.01………………………………………………………21, 23

Ohio Revised Code § 149.351…………………………………………………..6, 46, 55

ix

Ohio Revised Code § 149.351(B)…………………………………………….…….......  53, 54

Ohio Revised Code § 305.12…………………………………………………………….51

Ohio Revised Code § 309.09……………………………………….......8, 9, 15, 29, 30, 39, 45

Ohio Revised Code § 2913.42…………………………………………………………46

Ohio Revise Code § 2921.12……………………………………………….……….46

Ohio Revised Code § 4112.01……………………………………………………..6

Ohio Revised Code § 4112.02…………………………………………………....6

Ohio Revised Code § 4112.02(J)……………………………………………...52, 53

Ohio Revised Code § 4112.052…………………………………………………...49

Ohio Revised Code § 4112.99………………………………………………..6

## Rules

Fed. R. Civ. P. 8(a)(2)………………………………………………………………13

Fed. R. Civ. P. 12(b)(6)…………………………………………………………1, 7

Ohio Code of Judicial Conduct – Preamble………………………………………………21

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      INTRODUCTION**

One intractable and inescapable hallmark of the justice system is to remain faithful to the obligation of applying the facts of any case to the law. Indeed, it is both impossible and irresponsible to attempt to clothe a controversy with law that is most convenient, when doing so is not only inappropriate, but is also interrupted by inconvenient facts and truths. Yet that is exactly what Franklin County Defendants have done in their motion to dismiss - they have attempted to advance arguments for which facts don't matter to reach the flawed legal conclusion that Plaintiff has no case and, as such, her claims against them should be dismissed. But that's not how this process works. Franklin County Defendants do not have the legal latitude to summarily categorize claims of race and gender discrimination, retaliation, and hostile work environment, as situations in which judges "just do not like each other" or a "laundry list of disagreements". (Motion to Dismiss, Doc. No. 20, PageID # 1117.) Neither do Franklin County Defendants have the liberty within the required prerequisites of Fed. R. Civ. P. 12(b)(6) to make a sweeping statement that "most of the allegations have nothing to do with" Franklin County Defendants (Motion to Dismiss, Doc. No. 20, PageID # 1118) when, in fact, the allegations delineate how they have played an integral role in either facilitating, ignoring, justifying, actively participating in, agreeing with or remaining silent about the facts giving rise to Plaintiff's claims. It is easy to understand why Franklin County, Hummer, and Dean would like to pretend as if the allegations are only figments of Plaintiff's overactive and hypersensitive imagination. But the underlying facts, which Franklin County Defendants never dispute as both accurate and true, do not support their legal leap of logic and ultimate conclusion.

## II.     STATEMENT OF FACTS

Since it appears that Franklin County Defendants believe the responsibility of providing the factual framework for its own motion is a task too cumbersome for thoughtful consideration and, asserts that "[there] are lots of allegations in the Amended Complaint" (Motion to Dismiss, Doc. No. 20, PageID # 1136), Plaintiff will provide the necessary context.

### A.  Overview

Plaintiff has served as a FCCP-Gen Judge since April 6, 2009 (Amend Compl., Doc No. 12, ¶ 2, PageID # 716) and, for the first twelve years of her service, enjoyed a relatively respectful and discrimination-free relationship with the judges and administrators employed by the court, though there were anomalous circumstances that Plaintiff hoped were outlier situations. That hope and perception changed, however, in July 2021 when Plaintiff was elected as Administrative Judge and became the first woman and first Black woman to serve in that capacity. (Amended Compl., Doc. No. 12, ¶ 17, Page ID # 718.) Almost immediately, Plaintiff was subjected to disparate treatment by Defendants. This treatment included but is not limited to:

- Failing to meet with Plaintiff to discuss her responsibilities as Administrative Judge until just over a month before she began the role (Amended Compl., ¶¶ 23-29, Doc. No. 12, PageID # 718-19);

- Having two White male FCCP-Gen judges give her a list of Black women whom she should be more like while questioning a personnel decision that Plaintiff was entitled to make (Amended Compl., ¶¶ 43-52, Doc. No. 12, PageID # 721-22);

- Being told by a White male FCCP-Gen judge that if he ever decided to "fu$%" her over, he would let her know before he did it (Amended Compl., ¶¶ 77-81, Doc. No. 12, PageID # 725-26);

2

- Questioning and undermining the authority granted to Plaintiff by Sup. R. 4.01 as enacted by the Supreme Court of Ohio (Amended Compl., ¶ 177-195, Doc. No. 12, PageID # 736-38; Amended Compl., ¶¶ 196-206, Doc. No. 12, PageID # 739-40);

- Failing to advise Plaintiff that she was accused of compromising security of FCCP-Gen records during a public meeting (Amended Compl.,¶¶ 84-94, Doc. No. 12, PageID # 726-27);

- Interfering with Plaintiff's ability to complete the duties for which she was elected by withholding staffing resources (Amended Compl., ¶¶ 452-461, Doc. No. 12, PageID # 770-71), questioning the decisions of her personal staff, requiring information that was not required from other Defendant judges (Amended Compl., ¶¶ 462-474, Doc. No. 12, PageID # 771-73), accessing her computer without her knowledge or permission (Amended Compl., ¶¶ 380-381, Doc. No. 12, PageID # 762), and deleting continuance entries for criminal matters thereby impacting constitutional rights to speedy trial (Amended Compl., ¶¶ 1032-1039, Doc. No. 12, PageID # 847-48);

- Preparing and filing a bad faith complaint under the FCCP-Gen Anti-Harassment Policy against Plaintiff for the purposes of unjustifiably removing her from the position of Administrative Judge and defaming her professionally and professionally (Amended Compl., ¶¶ 311-322, Doc. No. 12, PageID # 754-55);

- Proposing a blackmail offer to force Plaintiff to resign from the position of Administrative Judge with the threat of either litigation or a sham investigation (Amended Compl., ¶¶ 323-353, Doc. No. 12, PageID # 755-58);

- Advising Plaintiff that FCCP-Gen Judge Defendants were prepared to remove her from the position of Administrative Judge if she chose to request an investigation of the bad faith

complaint (Amended Compl., ¶¶ 372-373, Doc. No. 12, PageID # 761);

- Failing to advise Plaintiff that she was entitled to legal representation under the FCCP-Gen liability policy regarding the bad faith complaint (Amended Compl.,¶ 370, Doc. No. 12, PageID # 670);

- Failing to participate in a Special Judges' Meeting during which Plaintiff was forced to resign from the position of Administrative Judge (Amended Compl., ¶ 778, Doc. No. 12, PageID # 814);

- Failing to advise Plaintiff that she was the subject of a public records request regarding the bad faith complaint (Amended Compl., ¶¶ 382-387, Doc. No. 12, PageID # 762);

- Failing to search the computer and database records of FCCP-Gen judges to ensure full compliance with the public records request and allowing FCCP-Gen judge Defendants the ability to "self-select" what public records would be submitted (Amended Compl., ¶ 388, Doc. No. 12, PageID # 763);

- Contemplating and coordinating an effort to disallow Plaintiff's participation in FCCP-Gen committee meetings if she was not assigned to a committee, despite a historical practice that allowed any judge to participate in all committee meetings (Amended Compl., ¶¶ 410-420, Doc. No. 12, PageID # 765-67);

- Permanently deleting public records between Plaintiff and various Defendants when similar records among and between various Defendants still exist (Amended Compl., ¶ 398, Doc. No. 12, PageID # 764);

- Ignoring Plaintiff's repeated communications regarding the deletion and destruction of public records (Amended Compl., ¶¶ 874-881, Doc. No. 12, PageID # 828-829);

- Failing to address FCCP-Gen judge and administrator Defendants regarding the legal

implications of altering public records (Amended Compl., ¶ 905, Doc. No. 12, PageID # 832);

- Withholding and/or disallowing employee support for Plaintiff in the management of special jury pools for high profile cases (Amended Compl., ¶¶ 425-451, Doc. No. 12, PageID # 767-70);

- Providing Plaintiff's private cell phone number to law enforcement personnel without Plaintiff's knowledge or permission (Amended Compl., ¶¶ 828-840, Doc. No. 12, PageID # 821-22);

- Failing to undertake an internal investigation of Plaintiff's claims of race and gender discrimination, hostile work environment, and retaliation; (Amended Compl., ¶¶ 800-811, Doc. No. 12, PageID # 816-17; Amended Compl., ¶¶ 843-850, Doc. No. 12, PageID # 823-24);

- Refusing to meet with Plaintiff regarding her claims because an in-person meeting would not be "beneficial" (Amended Compl., ¶ 856, Doc. No. 12, PageID # 825);

- Stating in a Special Judges' Meeting that Plaintiff had a "snowflake mentality" and needed to grow up and act like an adult (Amended Compl., ¶ 869, Doc. No. 12, PageID # 826-27);

- Requiring Plaintiff to explain her scheduled absences from the office while simultaneously not requiring a similar explanation from FCCP-Gen judge Defendants (Amended Compl., ¶¶ 984-988, Doc. No. 12, PageID # 842-43);

- Questioning Plaintiff's Black staff about their available leave time while simultaneously approving leave time for White staff of FCCP-Gen judge Defendants who did not have leave time available (Amended Compl., ¶¶ 167-176, Doc. No. 12, PageID # 735-36);

- Admitting that Plaintiff is intentionally excluded from conversations and meetings that

discuss FCCP-Gen business and that she is both obligated and permitted to attend (Amended Compl., ¶ 636, Doc. No. 12, PageID # 792);

- Hummer representing to Plaintiff during a meeting with the Franklin County Administrator that her claims would be ameliorated through the anticipated and/or confirmed resignation of two FCCP-Gen administrator Defendants;

- Failing to provide Plaintiff with required legal representation as contemplated by Ohio Revised Code § 309.09 (Amended Compl., ¶¶ 1056-1090, Doc. No. 12, PageID # 850-56);

- Advising Plaintiff of the possibility that affidavits of disqualification could be filed against her regarding her elected responsibility to manage her criminal docket (Amended Compl., ¶ 1078, Doc. No. 12, PageID # 854).

Based on this and more, Plaintiff filed her 151-page Amended Complaint asserting counts for: 1.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 2.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 3.) Violation of Civil Rights, 42 U.S.C. § 1983; 4.) Racketeer Influenced and Corrupt Practices Act (RICO), 18 U.S.C. §§ 1961-1968; 5.) Unlawful Discrimination and Retaliation: Ohio Revised Code §§ 4112.02 and 4112.99; 6.) Defamation against Defendant's Jennifer Goodman and Cameo Davis only; and 7.) Destruction of Public Records, O.R.C. § 149.351. Additionally, Plaintiff seeks compensatory and exemplary damages; injunctive and equitable relief; interest; costs; and fees under Title VII, 42 U.S.C. §2000e, the Civil Rights Act of 1991, 42 U.S.C. §1981a, the Ohio Civil Rights act, O.R.C. §4112.01, *et seq.*, 42 U.S.C. §1981, 42 U.S.C. §1983, federal common law and the common law of Ohio. A portion of her core allegations is that all Defendants condoned, ignored, ratified, and/or engaged in discriminatory, retaliatory, and hostile conduct and a pattern of corrupt activity in their capacity as managers of FCCP-Gen

protocols, policies, and procedures, including procedures to address bad faith complaints filed by employees, and were engaged in a fraudulent scheme and enterprise designed to violate law and deprive Plaintiff of her legal and constitutional rights.

### B. Hummer, Dean, and Franklin County Facts

#### 1. Allegations Related to Defendant's Goodman's Bad Faith Complaint and Hummer's and Dean's Mismanagement of Related Public Record Request.

Franklin County Defendants begin their motion by making the curious statement that "most of the allegations have nothing to do" with them. (Motion to Dismiss, Doc. No. 20, PageID # 1118.) Not only is this sweeping generalization not contemplated by the mandates of Fed. R. Civ. P. 12(b)(6) but, more importantly, it's simply untrue. As will be discussed later, Rule 12 doesn't require that "most" of the allegations have something to do with them in order for the allegations to have merit. But even assuming that standard was accurate, which it is not, part of the reason that Plaintiff was compelled to file the litigation is because the facts demonstrate that Franklin County Defendants failed to uphold their statutory obligations and to comply with their own internal policies regarding how racism would and should be addressed.

To begin, Plaintiff's complaint avers that both Hummer and Dean had knowledge of the filing of Defendant Goodman's bad faith complaint and failed to advise Plaintiff that she was entitled to legal representation regarding the same. (Amended Compl. ¶ 370, Doc. No. 12, PageID # 760.) In fact, in conversation with Plaintiff, Hummer admitted that she did not contact Plaintiff because the "court sometimes wants to control and govern their own issues and processes, so we're often in the position of are we in or are we out" and that "judges feel that they are Teflon" and that "this is our world and nobody can touch us." (Amend Compl., Doc No. 12, Exhibit 77, Recording 116, PageID #814; Amended Compl., ¶¶ 774, 778, 779, Doc. No. 12, PageID # 814; Amended Compl., ¶ 793, Doc. No. 12, PageID # 815.) Hummer further stated that she and Dean conveyed to Defendant Frye

that they "had created a process so that things would not become a public record." However, Ohio

Revise Code § 309.09 provides:

> The prosecuting attorney shall be the legal adviser of the board of county commissioners, board of elections, all other county officers and boards, (* * *), and any of them may require written opinions or instructions from the prosecuting attorney in matters connected with their official duties. The prosecuting attorney shall prosecute and defend all suits and actions that any such officer(* * *) directs or to which it is a party (* * *).

Here, it is an undisputed fact that both Hummer and Dean are counsel for FCCP-Gen, which is comprised of seventeen judges of which Plaintiff is one. It is also an undisputed that Hummer and Dean had actual knowledge of Defendant Goodman's bad faith complaint against her and provided counsel to Defendant Frye regarding the same. Yet, it is further undisputed that neither Hummer nor Dean provided "instructions" to Plaintiff regarding a matter connected with her official duties – in this instance, Defendant Goodman's bad-faith claims against Plaintiff in her service as Administrative Judge and in her capacity as Defendant Goodman's supervisor. In fact, Hummer and Dean recognized that there may be an inherent conflict in their involvement regarding Plaintiff's claims. Specifically, Hummer noted that there were issues that she needed to check and said, "Because we have advised on this as it relates to employment of a particular employee (* * *), there may be a conflict on [Plaintiff's claims] because I care about fairness and fairness in the treatment of a judge, a woman of color who serves in an authoritative role, and I want to make sure that you are protected – protected from us, as well. And I take that very seriously. I have no hesitation with appointing special counsel. I do it all the time  - one, if we don't know what we're doing [because] we don't know everything or we're not the experts sometimes or when I feel like we can't do two things having done the one before. And there's [Supreme Court of Ohio] advisory opinions I need to look at [because] we may be prohibited under those advisory opinions." (Amend Compl., Doc No. 12, Exhibit 77, Recording 116, PageID #814; Amended Compl., ¶ 781, Doc. No. 12, PageID #

814.)

Thereafter, Hummer met with Plaintiff a second time, along with Dean, and Hummer expressed concern that their legal advice pursuant to Ohio Revised Code § 309.09 may not have been shared with the FCCP-Gen judges. Hummer once again raised the prospect of her, Dean, and Franklin County retaining a person on contract with Franklin County to investigate Plaintiff's claims of discrimination, retaliation, and hostile work environment. (Amended Compl., ¶ 791, Doc. No. 12, PageID # 815) and Dean said, "You understand that even if we hire [an individual] to do it, the investigation will still not be privileged or protected in any way. It's a public record." Hummer then stated, "I know the concern about slowly becoming invisible. That is a big concern for us as an office, as two women who care about women, in general." So, even Hummer and Dean agreed and recognized that Plaintiff's legitimate claims were more than a "laundry list of disagreements" or judges "not liking each other" as they now attempt to argue in their Motion.

Next, Plaintiff alleges in her Amended Complaint that Hummer and Dean had actual knowledge of a public record request that was submitted on November 20, 2022 and related to Defendant Goodman's bad-faith complaint against Plaintiff. (Amended Compl., ¶ 386, Doc. No. 12, PageID # 762.) Despite this, neither Hummer nor Dean advised Plaintiff of the request directly; rather, Hummer and Dean sent an email to all FCCP-Gen Judges regarding the public record request after providing notice to all FCCP-Gen administrators. (Amended Compl., ¶¶ 385-386, Doc. No. 12, PageID # 762.) This decision was in direct contravention of the historical practice of Hummer, Dean, and FCCP-Gen that the judge who is the subject of a public record request be notified first. (Amended Compl., ¶ 384, Doc. No. 12, PageID # 762.) Moreover, instead of Hummer and Dean requiring, as the Court's counsel, that the FCCP-Gen Information Technology department verify all responsive documents were obtained, they allowed FCCP-Gen Judges and administrators to conduct

their own computer searches and then to submit documents they independently determined, with no verification from Hummer or Dean, were applicable. In fact, when discussing the November 20, 2022 public record request, Hummer admitted that they asked for records "a half dozen times" but "we're not sure we got everything." (Amended Compl., ¶ 774, Doc. No. 12, Page ID # 814.)

Thereafter, Hummer and Dean did not instruct Plaintiff, in their capacity as Court counsel, that she had the option of including a statement with the records that would be produced until approximately 90 minutes before the statement submission deadline. Once Plaintiff rushed through the process of submitting a timely statement, she was then advised by a lawyer working at the direction of Hummer and/or Dean that the public records information would not be released because Hummer and/or Dean gave Defendant Goodman more time to submit additional records that, as of the filing of this memorandum in opposition, Plaintiff has never received from Hummer or Dean. (Amended Compl., ¶¶ 390-397, Doc No. 12, PageID # 763-64.)

### 2. Allegations Related to Interactions with Hummer, Dean and Franklin County.

Plaintiff's factual allegations regarding Franklin County Defendants are outlined in:

- (Amended Compl, ¶¶ 774-811, Doc. No. 12, Page ID# 814-19) – Detail Plaintiff's conversations with Hummer and Dean during which they made representations regarding their intention and that of Franklin County to engage the services of an individual on contract with Franklin County to investigate Plaintiff's claims; affirmed their desire to see a woman of color treated fairly; cautioned that a mediation through the Supreme Court of Ohio would be too political and probably not constructive since that court is run by White men who tend conservative; stated that they would need to recuse themselves because they had given advice to Defendant Frye regarding Defendant Goodman's bad faith complaint; indicated that they would advise FCCP-Gen to undertake an investigation of Plaintiff's claims to avoid having a claim filed with the Ohio Civil Rights Commission or the Equal Employment Opportunity Commission; and, inexplicably changed that position by suggesting that Plaintiff must submit the specifics of her complaint to Defendant K. Brown so that she and the judges could review them to determine if *potentially* an investigation would take place;

- (Amended Compl., ¶¶ 857-868, Doc. No. 12, PageID # 825-26) – Detail Hummer's and Dean's involvement in a March 13, 2024 Special Judges' Meeting for which they had advised Plaintiff that there would be a vote to implement a policies and procedures review as a mechanism to *potentially* address and investigate Plaintiff's claims. Instead, Plaintiff was

10

subjected to verbal taunts and name-calling by FCCP-Gen Judge Defendants while Hummer and Dean said or did nothing to stop the barrage of insults. Hummer later called the meeting "horrific".

- (Amended Compl. Doc. No. 12, ¶¶ 871-874, PageID # 828) – Detail email communications between Plaintiff, Hummer, and Dean regarding the March 13, 2024 meeting wherein Hummer admits that the meeting did not go as she had "hoped for".

- (Amended Compl., ¶¶ 876-886, Doc. No. 12, PageID # 829-30) – Detail email communications between Plaintiff, Hummer and Dean regarding Plaintiff's March 2024 preservation letter and a potential violation of the same that both Hummer and Dean ignored by stating they were unaware of violations, despite receiving evidence of violations from Plaintiff; detail communications between Plaintiff, Hummer, and Dean regarding advisory opinions from the Board of Professional Conduct and Ohio Ethics Commission regarding their duty to appoint standalone counsel for Plaintiff, based on Hummer's and Dean's prior advice to Defendant Frye regarding the bad-faith complaint against Plaintiff. Dean stated that she and Hummer reviewed the decisions but did not believe they had a duty to appoint standalone counsel.

- (Amended Complaint, ¶¶ 888-914, Doc. No. 12, PageID # 830-34) – Detail email communications between Plaintiff, Hummer, and Dean regarding their position that they would contact ethics counsel to determine whether they had an obligation to recuse from providing continuing legal advice to Defendant K. Brown and others about Plaintiff's claims and whether they had an obligation to appoint standalone counsel. As of the date of this filing, Plaintiff has not been advised that such call or inquiry was ever made. Further detail communications from Dean and Hummer regarding discrimination claims filed by Plaintiff's Black staff and detailing K. Brown's decision to engage the services of the person on contract with Franklin County to undertake an investigation while simultaneously prohibiting the same regarding Plaintiff's claims.

- (Amended Complaint, ¶¶ 926-934, Doc. No. 12, PageID# 835-36) – Detail email communications between Plaintiff, Dean and Hummer regarding a series of public record requests for which Defendant Davis did not provide notice to Hummer or Dean and made a unilateral decision to access Plaintiff's computer system without first conferring with counsel to ensure that privilege was not waived unintentionally.

- (Amended Compl., ¶¶ 943-946, Doc. No. 12, PageID # 837) – Detail email communications between Hummer and Dean regarding public record requests and Hummer's and Dean's position that they did not provide representation to individual employees or elected officials in claims against FCCP-Gen, though Hummer's and Dean's position on that issue had changed on myriad occasions.

- (Amended Compl., ¶¶ 952-957, Doc. No. 12, PageID # 838-39) – Detail email communications between Plaintiff, Hummer, and Dean regarding the efforts of FCCP-Gen judge and administrator Defendants to modify the Anti-Harassment Policy and eliminate every provision upon which Plaintiff and her Black staff asserted their claims of

discrimination. While Ohio Revised Code §309.09 requires Hummer and Dean to review all FCCP-Gen policies before they are approved and adopted, neither Hummer nor Dean had reviewed the policy or were aware that modifications were being considered.

- (Amended Compl., ¶¶ 964-966, Doc. No. 12, PageID# 840) – Detail email communications between Plaintiff, Dean, and Hummer regarding modified disclaimer language included with documents provided in response to Plaintiff's public record requests.

- (Amended Compl., ¶¶ 990-995, Doc. No. 12, PageID # 843-44) – Detail August 9, 2024 and August 12, 2024 meetings between Plaintiff, Hummer, and the Franklin County Administrator to discuss a proposal to mediate Plaintiff's claims of discrimination, hostile work, environment and retaliation;

- (Amended Compl., ¶¶ 1012-1031, Doc. No. 12, PageID # 845-47) – Detail another meeting between Plaintiff, Hummer, and the Franklin County Administrator on September 19, 2024 wherein the parties discussed Hummer's and the Franklin County Administrator's attempt to resolve Plaintiff's claims; detail Plaintiff's response to the proposed resolution and Hummer's failure to respond to Plaintiff's pre-conditions and conditions for a proposed resolution; detail Plaintiff's notification to Hummer and the Franklin County Administrator regarding receipt of Notice of Right to Sue Letter; detail Plaintiff's restatement to Hummer that she and Dean have a continuing conflict in representing the Court regarding Plaintiff's claims; detail Hummer advising Plaintiff that, despite her representations of an independent mediation panel to be selected by the parties, FCCP-Gen was only willing to mediate Plaintiff's claims through the Supreme Court of Ohio, though Hummer had advised Plaintiff that such a mediation would be "too political."

- (Amended Compl., ¶¶ 1053-1090, Doc. No. 12, PageID # 850-56) - Detail Hummer's initial refusal to provide Plaintiff with legal representation regarding a mandamus action filed against her and a sudden reversal of policy regarding the right of a judge to be represented under the State of Ohio's liability policy for judges; detail Plaintiff's independent efforts to ensure that she had representation in the mandamus action; detail communications with a lawyer working at Hummer's direction who implied that there had been conversations regarding filing affidavits of disqualification against Plaintiff to prohibit her from fulfilling her electoral responsibilities of managing the criminal docket assigned to her.

## III.    LAW AND ARGUMENT

### A.    To Be Plausible, a Complaint Need not Allege the Evidentiary Framework for Proving Discrimination or Retaliation.

In their motion to dismiss, Franklin County Defendants fail to even articulate the standard by which it must be assessed. In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is considered plausible where the facts that are pled allow the Court to infer that the defendant is potentially liable for the misconduct alleged. *Id.* Furthermore, in *Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002), the Court held unanimously that the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not a pleading requirement. As such, a plaintiff need not, therefore, plead facts establishing a *prima facie* case in order to state a claim for relief. *Id.*

Instead, an employment discrimination plaintiff satisfies her pleading burden by drafting " "'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Swierkiewicz* at 508 (citing Fed. Rule Civ. P. 8(a)(2)). The "plausibility" standard from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), must still be satisfied, but the Supreme Court made it clear in *Twombly, supra* at 569-570, in rejecting the argument that its plausibility analysis "runs counter to *Swierkiewicz*."

A major concern in both *Twombly* and *Iqbal* was that "factual content" had to be alleged, rather than mere conclusions stated and legal standards parroted. *Twombly*, 550 U.S. at 570 (plausibility "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). For example, in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013), dismissal of an Equal Credit Opportunity Act discrimination claim was affirmed where the plaintiffs alleged a 'belief' that a bank had refinanced the loans of 'delinquent white borrowers' but offered nothing to identify them.

Rather, a court measures the "factual content" alleged in the Complaint, informed by its "judicial experience and common sense," to determine whether a factfinder could "draw the

reasonable inference" that Defendants discriminated (or retaliated)." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citations omitted).  In contrast to *16630 Southfield Ltd. P'ship*, Plaintiff has provided hundreds of pages of exhibits that clearly outline how she was subjected to a different work and investigative standard from her White counterparts and how she was blackmailed and forced to resign as Administrative Judge as distinguished from other FCCP-Gen Judges who have been accused of violating court policies. Indeed, the notion that all Plaintiff did was allege "disagreement" and "dislike" is absurd and disingenuous, at best.

*Swierkiewicz,* 534 U.S. at 512 further states, "Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).

*Iqbal*, 556 U.S. at 678, explained that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A critical distinction was drawn: "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

In assessing the positional gravitas of Plaintiff's Amended Complaint from what Franklin County Defendants seemingly argue – misapprehended and misunderstood possibility – to plausibility and, ultimately, probability, it is a requirement that Plaintiff's factual allegations are accepted as true. Those factual allegations show that Plaintiff is a thrice elected judge who is now one of the most senior members of FCCP-Gen and was elected to serve as Administrative Judge in 2021. (Amended Compl., ¶¶ 1-2, Doc. No. 12, PageID # 716; Amended Compl., ¶ 17,

Doc. No. 12, PageID # 718.) The factual allegations also demonstrate that, after her election, Plaintiff was subjected to overt discrimination based on her race and gender by White FCCP-Gen judge and administrator Defendants and was the subject of a coordinated and concerted effort by the same group of Defendants to remove her from the position. Moreover, the factual allegations outline that Hummer, Dean, and Franklin County participated in the process whereby Plaintiff was unjustifiably forced to resign from the Administrative Judge position and failed to fulfill their statutory obligations: 1.) to provide representation and counsel to Plaintiff in her official capacity in various circumstances; 2.) to ensure that all documents subject to a public record request were obtained from FCCP-Gen judge and administrator Defendants; and 3.) to confer with ethics counsel regarding Hummer's and Dean's ability to continue to provide representation, as well as their obligation to provide standalone counsel to Plaintiff. (Amended Compl., ¶ 810, Doc. No. 12, PageID # 818; Amended Compl., ¶¶ 1053-1061, Doc. No. 12, PageID # 850-51.) Additionally, the factual allegations demonstrate that Hummer and Dean failed to preserve records as requested by Plaintiff and actually ignored Plaintiff's notice of potential breaches of the preservation request, and refused to provide Plaintiff with representation as required under Ohio Revised Code § 309.09 (Amended Compl., ¶¶ 874-881, Doc. No. 12, PageID # 828-29); failed to formally review attempted modifications to FCCP-Gen policy after receiving actual notice of Plaintiff's EEOC Charge (Amended Compl. ¶¶ 947-960, Doc. No. 12, PageID # 838-39); acknowledged that they had likely not received all public records responsive to the November 20, 2022 request; and, for all intents and purposes, promised Plaintiff and led her to believe that Franklin County would engage a person on contract with the County to undertake an investigation into her claims of race and gender discrimination, hostile work environment, and retaliation. (Amended Compl., ¶¶ 785-787, Doc. No. 12, PageID

# 815.) Further, Plaintiff's factual allegations confirm that Hummer and Dean had actual or constructive knowledge of circumstances wherein White FCCP-Gen Judges were accused of violating FCCP-Gen policies but were never subject to Special Judges' Meetings to discuss a corrective course of action in the same manner that Plaintiff was subjected to a humiliating course of action based on advice and counsel provided by Hummer and Dean. Consequently, it appears that the allegations of Plaintiff's Amended Complaint are closer to or at probability rather than misunderstood or misapprehended possibility, as Franklin County Defendants attempt to suggest.

As *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555), explained, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."   Here, the background evidence Plaintiff has alleged is not speculative. The hundreds of pages of exhibits that contain Hummer's and Dean's unaltered words and ever-evolving positions are not speculative. The demonstrable ways in which Plaintiff was treated differently in her service as Administrative Judge and in her ability to complete her daily work responsibilities are not speculative. The humiliating and unprecedented way in which Defendant Goodman's unfounded and unsupported allegations were mismanaged – from the threat of blackmail directed to Plaintiff, to Hummer and Dean failing to provide instruction, advice, or representation, to Hummer and Dean failing to attend and provide advice during the November 14, 2022 Special Judges' Meeting during which Plaintiff was forced to resign as Administrative Judge, to Hummer and Dean failing to notify Plaintiff about a public record request regarding the bad faith complaint against her, to Hummer and Dean failing to ensure that all responsive public records had been obtained and provided to Plaintiff and the

16

requesting party – is not speculative. The consistent manner in which Hummer and Dean ignored Plaintiff's communications regarding the destruction of public records and alteration of existing records or offered an implausible excuse is not speculative. The bizarre decision from Hummer and Dean, refusing to provide Plaintiff with statutorily mandated representation in actions against Plaintiff in her official capacity is not speculative. The acknowledgement and agreement of Hummer and Dean that Plaintiff was subject to unfair and discriminatory treatment followed by a repeated offer to either launch, encourage, and/or facilitate an investigation of Plaintiff's claims, followed by a complete course reversal are not speculative. And the enduring physical, mental, emotional, and professional consequences that Plaintiff has endured since 2021 are certainly not speculative.

In other words, Plaintiff's Amended Complaint provides Franklin County Defendants with "fair notice of what the (* * *) claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). And, as with every motion to dismiss, Franklin County Defendants bear the burden of showing that Plaintiff has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir, 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).

### 1. The Truth of Plaintiff's Factual Allegations Must Be Presumed When Analyzing a Motion to Dismiss.

The purpose of a motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). That purpose is why a deferential measure of the factual allegations is required. In ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531,

538 (6th Cir. 2012) (quotation omitted). *Accord Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted).

Courts "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'– 'that the pleader is entitled to relief.' " *Id.* at 679 (citation omitted). The depth of detail in Plaintiff's Amended Complaint far exceeds "mere conclusory statements" and reaches beyond plausibility.

> **2. Based on the Presumption of Truth Associated with Plaintiff's Allegations, There Is No Confusion Regarding Franklin County Defendants' Involvement in the Litigation.**

In their motion, Franklin County Defendants wrote, "It is unclear why Judge Cocroft sued Franklin County, Ohio, Jeanine Hummer, and Theresa Dean. Franklin County, Ohio (read: the Franklin County Board of Commissioners) does not oversee or supervise the Franklin County Court of Common Pleas." (Motion to Dismiss, Doc. No. 20, PageID # 1117.) The factual allegations as pled, however, provide an unmistakable level of clarity regarding how and why each was named in this matter. Beyond this, Franklin County pays a portion of Plaintiff's salary, approves and, in some instances, makes adjustments to the annual operating budget for FCCP-Gen and confers with FCCP-Gen Judges and Administrators regarding rules and policies that impact the court's day-to-day operations. For example, in ¶¶ 625-641 of the Amended Complaint, Plaintiff provides context to a conversation between Franklin County, Ohio through its County Administrator and Deputy County Administrator regarding FCCP-Gen's use of video

technology to complete arraignments. (Amended Compl, ¶¶ 625-641, Doc. No. 12, PageID # 791-92.) Franklin County, Ohio was adamant in its position that the Court continue the use of video arraignments based on a financial investment it made to update technology. Conversely, the majority of FCCP-Gen Judges voted to return to in-person arraignments. However, FCCP-Gen eventually agreed to the position of Franklin County to continue video arraignments until a long-term solution could be developed. So, for Franklin County Defendants to now suggest that they are not "sure" why they were sued is an attempt to overlook the longstanding work relationship that is undeniable.

Moreover, as already articulated, Hummer's and Dean's roles in the series of events giving rise to Plaintiff's claims are equally undeniable, so much so that both Hummer and Dean admitted that neither was certain that they could or should play a role in the management of Plaintiff's claims. (Amended Compl., ¶¶ 781, 784, Doc. No. 12, PageID # 814.) Yet, despite this recognition that Plaintiff raised with them on numerous occasions both in meetings and in writings, Hummer and Dean not only remained intimately involved in the management of Plaintiff's claims but gave Plaintiff advice, plans of action, and position statements that were in direction contravention to the advice, plans of action and position statements given to FCCP-Gen judge and administrator Defendants. It is no wonder then that Franklin County Defendants are trying to distance themselves from the chaotic circumstance they encouraged, facilitated, and helped to create.

Further, the nexus between Plaintiff and Franklin County is crystallized through the County's own Resolution Declaring Racism as a Public Health Crisis. (Amended Compl, ¶¶ 841-843, Doc. No. 12, PageID # 822-23.) Therein, the Resolution asserts that "racism is a public health crisis affecting our entire county" and resolves to "support community efforts to amplify

19

issues of racism and engage actively and authentically with communities of color wherever they live" and to "encourage racial equity training among all community partners, grantees, vendors, and contractors." Finally, the Resolution indicates support for "all additional efforts in Franklin Couty (* * *) to address racism (* * *)." Again, Plaintiff believes that these factual allegations provide the requisite level of assuredness to help Franklin County Defendants understand how Plaintiff made the decision to include them in this litigation and the suggestion to the contrary feels like another vapid attempt to minimize both Plaintiff and her legitimate and legally sound claims.

### B. Plaintiff's Allegations Are Permitted Under Title VII.

#### 1. As a FCCP-Gen and Franklin County, Ohio Employee Plaintiff Is Entitled To Title VII Relief for Her Claims of Race and Gender Discrimination, Hostile Work Environment, and Retaliation.

Franklin County Defendants argue that, because Plaintiff is an elected official, she is excluded from the definition of employee under 42 U.S.C. § 2000e(f) and, as such, her Title VII claim must fail as a matter of law.[1] (Motion to Dismiss, Doc. No. 20, PageID # 1118.) The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. *Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir. 1983), citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44-45, 94 S.Ct. 1011, 1017-1018, 39 L.Ed.2d 147 (1974); *Tipler v. E.I. duPont de Nemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971). To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a

---

[1] Franklin County Defendants do not dispute that Plaintiff has pled sufficient facts supporting her Title VII claims, other than to argue that she is not an employee. As such, the remaining Title VII elements are not addressed.

liberal construction. *Armbruster*, *supra*, at 1336, *citing Tipler v. duPont de Nemours and Co.,*443 F.2d at 131. The impact of this construction is the broad interpretation given to the employer and employee provisions. *Id.*, citing *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980); *Baker v. Stuart Broadcasting Co.,*560 F.2d at 391; *see Sibley Memorial Hospital v. Wilson,*488 F.2d 1338, 1340-42 (D.C. Cir. 1973); *see also Zipes v. Trans World Airlines, Inc.,*455 U.S. 385, 102 S. Ct. 1127, 1132-35, 71 L.Ed.2d 234 (1982) (limitations provisions).

While Franklin County Defendants ask this Court to focus solely on the first half of the statutory definition, it is imperative to review it in concert with the second half of the definition, which states, "The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." In that regard, Ohio Revised Code § 124.01 provides, "'Civil Service'" <u>includes all offices and positions of trust</u> or employment in the service of the state and <u>in the service of the counties</u>, cities, city health districts, general health districts, and city school districts of the state. (Emphasis added.) The Code of Judicial Conduct, which governs the conduct of Plaintiff and all FCCP-Gen judge Defendants states in its Preamble:

> An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the rules contained in this code are the precepts that judges, individually and collectively, must respect and honor the judicial office <u>as a public trust</u> and strive to maintain and enhance confidence in the legal system.

For more than fifteen years, Plaintiff has served dutifully as a FCCP-Gen judge, an office that not even Franklin County Defendants should dispute is a position of trust based on the vast expanse of work Plaintiff is constitutionally and statutorily obligated to manage. Further, the

Code of Judicial Conduct, which also governs Plaintiff's service, emphasizes the public trust component of this position. Consequently, Plaintiff qualifies as an employee for purposes of Title VII analysis.

This conclusion is bolstered by *City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024). In that case, the appellant, who served as an elected member for the appellee's city council, filed a counterclaim alleging discrimination based on gender and sexual orientation, hostile work environment, and retaliation pursuant to the Elliot-Larsen Civil Rights Act ("ELCRA"). The appellee filed a motion for summary disposition, arguing that, as an elected official, the appellant was not an employee and, thereby, prohibited from protections contemplated under the ELCRA. The trial court granted the motion, however, on appeal, the court reversed the lower court's decision, writing, "[I]n order to plead a valid workplace discrimination claim under Section 2 of the ELCRA, a complainant must plead that he or she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Id,* citing *Smith v Goodwill Industries of West Mich, Inc.*, 243 Mich 438, 448; 622 NW2d 337 (2000) (citation omitted) The court, relying on *McClements v Ford Motor Co.*, 473 Mich 373, 386-387; 702 NW2d 166 (2005), amended in part 474 Mich 1201 (2005), then reasoned:

> Although the City argued, and the trial court found, that Miller was not an "employee" of the City and that no "employment relationship" existed, the plain language of the statute does not limit employment discrimination claims to employees.  As our Supreme Court observed in McClements, "MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. . . .  Accordingly, to limit the availability of relief under the [EL]CRA to those suits brought by an employee against his or her employer is not consistent with the statute."  *McClements*, 473 Mich at 386. The Court in *McClements* therefore held that "a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment." Id. at 389.

Applying *McClements* to this case, we conclude that irrespective of whether Miller, as an elected official, was an "employee" of the City, he certainly had employment and alleged that the City affected or controlled a condition of his employment. Therefore, we conclude that Miller pleaded a viable claim under section 2 of the ELCRA.

The City points out that the ELCRA is based on Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq., and that our Supreme Court has encouraged using federal precedent interpreting Title VII as guidance in interpreting the ELCRA. *Rouch World*, 510 Mich at 411. Further, the City notes that Title VII explicitly exempts from its definition of "employee" "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 USC § 2000e(f).

The City is correct that the definition of "employee" found in 42 USC § 2000e(f) excludes elected officials and certain other individuals. This exclusion has been held to preclude such persons from bringing certain employment discrimination claims under Title VII. *See, e.g., Crumpacker v Kansas Dep't of Human Resources*, 474 F3d 747 (CA 10, 2007) (noting that "Title VII outlines four classes of persons who are exempt from its protection: (1) elected officials; (2) persons chosen by an elected official to be on such official's personal staff; (3) "appointee[s] on the policy making level"; and (4) persons serving as an immediate adviser to the elected official with respect to the constitutional exercise of the powers of the official's office."). However, we note not only that we are bound by our Supreme Court's holding in *McClements*, but that Title VII, using language similar to the ELCRA, prohibits an employer from taking certain actions against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," see 42 USC § 2000e-2(a)(1), and other actions against "employees" or "applicants" based on those same characteristics, see 42 USC § 2000e-2(a)(2). Therefore, it does not appear that the definition of "employee" found in Title VII would necessarily bar all employment discrimination claims from elected officials. Indeed, the exclusion cited by the City contains its own carve-out for "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Moreover, when analyzing Title VII discrimination claims, certain government employees may be able to pursue such claims under the Government Employee Rights Act, 42 USC 20003-16a et seq., or other similar statutes, notwithstanding their exclusion from the definition of "employee." See 42 USC § 2000e-16c. In short, the definition of "employee" under Title VII is part of a complex network of federal legislation, and should be considered in that context, rather than merely reading the text of 42 USC § 2000e(f) (defining "employee") in isolation. *See Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (stating that "[a] court does not construe the meaning of statutory terms in a vacuum . . . [r]ather, we interpret the words in their context and with a view to their place in the overall statutory scheme") (quotation marks and citations omitted).

*Id.*

23

While the *Miller* decision's focus is an interpretation of the ELCRA, the discussion and analysis of Title VII is both relevant and applicable to Plaintiff's case. Here, the statutory construct in Ohio Revised Code § 124.01 provides a "carve-out" for employees who hold "positions of trust" in the service of counties, which precisely describes Plaintiff. Moreover, it is beyond dispute that, as the entity that pays a portion of Plaintiff's salary, as well as approves annual budget submissions from FCCP-Gen and, in many instances, confers with FCCP-Gen to propose or adjust decisions that impact the daily work of FCCP-Gen, Franklin County controls a term, condition, and privilege of Plaintiff's employment. As such, Franklin County Defendant's argument regarding the inapplicability of Title VII to Plaintiff's claims is without merit.

### 2. Because Plaintiff's Allegations Assert Continuing Violations Under Title VII, Her Claims Are Not Time-Barred.

Franklin County Defendants further assert that, even if Plaintiff's claims are covered by Title VII, which they are, they are time-barred under 42 U.S.C. § 2000e-5(e)(1) since her EEOC Charge was not filed within, at most, "three hundred days after the alleged unlawful employment practice occurred." (Motion to Dismiss, Doc. No. 20, PageID # 1119.)

42 U.S.C. §2000e-5(e)(1) states:

**Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system**

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State

or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Franklin County Defendants' position might be accurate if Plaintiff had asserted that a single, discrete unlawful employment practice had occurred. But that is literally not the case. Rather, the allegations asserted by Plaintiff demonstrate an ongoing pattern of discriminatory, hostile, and retaliatory behavior that, in truth, extends even to the filing of this pleading. Consequently, Plaintiff's claims are not time-barred. Moreover, the Preliminary Statement of Plaintiff's Amended Complaint plainly states, "The allegations and claims involve timely offenses and also continuing violations which serve to toll the applicable statute of limitations (Emphasis added.) (Amended Compl., Doc. No. 12, PageID # 716.)

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the respondent alleged "that he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment." *Id.* at 104. In noting that 42 U.S.C. 2000e-5(e)(1) requires an aggrieved party to file a charge with EEOC within either 180 or 300 days after the alleged unlawful practice occurred, the issue presented to the Supreme Court for its consideration was "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside this statutory time period." *Id*. at 105. The Court's analysis then distinguished Title VII claims related to discrete discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire", which the Court noted are "easy to identify" (*Id*. at 114) as contrasted with continuing violations or a hostile work environment. Specifically, the Court wrote:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or

25

should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. As the Court stated in [*Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21 (1993)], "[t]he phrase 'terms, conditions, or privileges of employment' [of 42 U. S. C. § 2000e-2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." 510 U. S., at 21 (some internal quotation marks omitted) (quoting *Meritor,* 477 U. S., at 64, in turn quoting *Los Angeles Dept. of Water and Power* v. *Manhart,* 435 U. S. 702, 707, n. 13 (1978)).10 "Workplace conduct is not measured in isolation .... " *Clark County School Dist.* v. *Breeden,* 532 U. S. 268, 270 *(2001) (per curiam).* Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris,* 510 U. S., at 21 (citations omitted).

In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.,* at 23. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U. S. C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be

26

timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan* at 115-118. *Accord Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009). *See also Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000) ("Every incident of discrimination before the limitations period need not be of the same type, so long as there is a corresponding type of discrimination within the period.")

Based on this analysis, the *Morgan* Court ultimately concluded, "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. Neither holding, however, precludes a court from applying equitable doctrines that may toll or limit the time period." *Morgan* at 122.

Franklin County Defendants are correct that Plaintiff alleges she filed her EEOC Charge on May 23, 2024. However, for some reason that remains a mystery to Plaintiff, Franklin County Defendants assert that Plaintiff alleges she was discriminated against "while she was the administrative judge." (Motion to Dismiss, Doc. No. 20, PageID # 1119.) Once again, this simply isn't true. Rather, both a careful reading of Plaintiff's EEOC Charge and Amended Complaint reveals Plaintiff alleged that her election as Administrative Judge served as the catalyst for a series of continuing violations that subjected her to a hostile work environment, discriminatory behavior and retaliation similar to what was contemplated by the holding of the *Morgan* decision. In other words, Plaintiff asserted that her work environment was "permeated with discriminatory intimidation, ridicule, and insult" that occurs on a daily basis and is intended both to humiliate and to embarrass Plaintiff. As such, the allegations in Plaintiff's Amended Complaint provide context for her claims of continuing violations, establish both other acts of discrimination against her and her consistent opposition to discrimination and retaliation she reasonably perceived and

experienced, and support the plausibility of her claims.

Even assuming, *arguendo*, the acts articulated by Plaintiff do not constitute a timely charge, which they do, it is well-settled that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977).

But what is most unsettling to Plaintiff is that Hummer, Dean, and the Franklin County Administrator witnessed the ongoing and pervasive discriminatory, retaliatory and hostile behavior, as noted in this pleading, and said and did nothing. (Amended Compl., ¶¶ 859-873, Doc. No. 12, PageID # 825-28.) To now argue that they should be absolved of their respective roles and responsibilities in creating, participating in, and sanctioning this unlawful behavior is not supported by well-settled law.

### C. As a FCCP-Gen Employee, Plaintiff Has The Benefit of a Contractual Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well-Founded.

Regarding Count Two of Plaintiff's Amended Complaint, Franklin County Defendants argue Plaintiff has not alleged that she is party to any contract and the impairment of such contract. As such, they conclude that Plaintiff's claim under 42 U.S.C. §1981 must fail as a matter of law.[2] (Motion to Dismiss, Doc. No. 20, PageID # 1120.) Further, Franklin County Defendants

---

[2] On April 16, 2019, FCCP-Gen approved and adopted amendments to a courtwide policy titled, "Code of Ethics and Conduct. Under § I, the purpose of the policy is to "establish expectations of acceptable workplace behavior and performance for all employees. Under § III(A)(2), the policy states, "Employees must, at all times, abide by Ohio's ethics laws located within the Ohio Revised Code chapters 102 and 2921, as well as the Code of Judicial Conduct." This point will be further addressed in Plaintiff's motion for leave to file second amended complaint, *instanter*.

contend that § 1981 does not permit Plaintiff to pursue money damages against Hummer and Dean in their individual capacities (Motion to Dismiss, Doc. No. 20, PageID # 1120.) This conclusion, however, overlooks the attorney-client relationship that exists between Hummer, Dean, and Plaintiff, as well as the employment relationship that exists between Plaintiff and Franklin County.

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. *Suero v. Motorworld Auto. Grp., Inc.*, CIVIL ACTION NO. 3:16-cv-00686, 11 (M.D. Pa. Jan. 31, 2017), citing *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994). In order to state a claim under § 1981, a plaintiff must plead sufficient facts in support of the following elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *Id.*, citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981, see *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), so long as there is "some affirmative link to causally connect the actor with the discriminatory action." *Jean-Louis v. Am. Airlines*, No. 08-CV-3898, 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010) (citation omitted). However, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Id.*, citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

In the present case, Hummer and Dean are statutorily obligated to be the legal adviser for all county officers, of which Plaintiff is one. Ohio Revised Code § 309.09. However, Hummer and Dean refused to fulfill that statutory obligation when they decided not to provide legal representation to Plaintiff in a mandamus action related to her official duties. (Amended Compl.,

¶¶ 1053-1086, Doc. No. 12, PageID # 850-55.) There is nothing in Ohio Revised Code § 309.09 that allows Hummer and Dean to terminate the attorney-client relationship unilaterally. Even assuming such a decision was permitted, which it is not, Hummer and Dean would have, at the very least, an obligation to proactively notify Plaintiff of the terminated relationship prior to her request for services. But instead, Hummer and Dean once again said nothing until Plaintiff contacted them to receive the representation to which she was legally entitled.

Further, Hummer's and Dean's unilateral decision not to provide representation is not an action to which any White FCCP-Gen judge has been subjected, nor is there any White FCCP-Gen judge who has been advised of the potential that an affidavit of disqualification may be filed to prevent them from fulfilling their responsibilities. Additionally, there is no White FCCP-Gen judge who was not provided with notice of a public record request against them, neither is there any White FCCP-Gen judge who was not provided with legal representation when a complaint was filed against them by another FCCP-Gen employee.

Moreover, case law is clear that both Hummer and Dean can be held individually liable for a violation of § 1981 as contemplated in *Cardenas, supra*. Specifically, Plaintiff satisfies the three elements outlined in *Suero, supra* – as a Black woman, she is a member of a racial minority; Hummer and Dean intended to subject Plaintiff to discriminatory behavior, as there is no evidence of any White FCCP-Gen judge being subjected to the actions that Plaintiff has endured and continues to endure; and, because of Hummer's and Dean's decision to terminate the attorney-client representation without notice to Plaintiff, they modified the terms of that relationship to Plaintiff's detriment.

Further, regarding the engagement of an investigator that Franklin County Defendants attempt to frame as cursory references, both Hummer and Dean offered to engage the services of

30

a person who worked as an investigator for Franklin County. (Amended Compl., ¶¶ 785-787, Doc. No. 12, PageID # 815.) Plaintiff accepted the offer as a means to resolve her legitimate claims. Indeed, Plaintiff, Hummer, and Dean were in agreement regarding what the investigator would review in order to assess and resolve Plaintiff's claims. (Amended Compl, ¶ 800, Doc. No. 12, PageID # 816.)

### D. Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983 Against Franklin County, Hummer, and Dean.

#### 1. None of Plaintiff's Claims are Time-Barred.

Franklin County Defendants also attempt to argue that the statute of limitations has lapsed regarding Plaintiff's § 1983 claims against them, while simultaneously admitting that any claims beginning November 26, 2022 through the filing of this pleading are valid. (Motion to Dismiss, Doc. No. 20, PageID # 1121.) Plaintiff agrees that claims from November 26, 2022 are cognizable and appreciates the acknowledgement and agreement from Franklin County Defendants. Plaintiff further submits, however, that her § 1983 claims prior to November 26, 2022 are also actionable and properly before this Court.

While Franklin County Defendants make a conclusory statement that *Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281 (6th Cir. 2019) establishes a two-year limitations period for personal injury claims, the court wrote:

> This appeal, however, is not about the length of the limitations period, which both parties agree is two years. Rather, it turns on when the limitations period starts to run, and federal law holds the answer to that question. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Under federal law, the statute of limitations period begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (citations omitted). Therein lies the heart of this dispute.

*Id* at 292. Similarly, the heart of this litigation is the time at which Plaintiff knew or had reason to know of the injury. However, in the context of a discriminatory, retaliatory, and hostile

behavior that is ongoing and pervasive, as compared to discrete acts of discrimination, Plaintiff posits that the two year statute of limitations should be extended. Indeed, in *Cornwell v. Robinson*, 23 F.3d 694, 703-4 (2d Cir. 1994), the Court noted, "When a plaintiff experiences a "'continuous practice and policy of discrimination,'" however, "'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. International Telephone Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)); *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir. 1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Thus, Plaintiff contends that every allegation that occurred prior to November 26, 2022 against Franklin County Defendants can be considered by this honorable Court and none of those allegations is barred by the statute of limitations.

## 2. Plaintiff Has Satisfied the *Monell* Factors Regarding Franklin County.

Franklin County Defendants once again concede the accuracy and veracity of Plaintiff's arguments – that is, Franklin County is a "person" subject to suit under § 1983. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). (Motion to Dismiss, Doc. No. 20 ,PageID# 1121.) Further, the *Monell* decision held, "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government, as an entity, is responsible under § 1983." *Id* at 694. *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) further explains this concept by stating, "A plaintiff can make a showing of an illegal policy or custom by demonstrating <u>one</u> of the following: (1) the existence of an illegal official

policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations," *Id*. at 478.

While Franklin County Defendants summarily conclude that Franklin County "does not create policies or procedures for the Franklin County Court of Common Pleas" (Motion to Dismiss, Doc. No. 20, PageID # 1122), that statement is patently untrue. In fact, Franklin County's Resolution Declaring Racism As a Public Health Crisis is applicable to FCCP-Gen, as the Resolution states that "through the leadership of the Board of Commissioners, the Franklin County Criminal Justice Planning Board has committed to the elimination of racial disparities in the criminal justice system, to prioritize racial equity in our decision making processes (* * *). (Amended Compl., ¶¶ 841-842, Doc. No. 12, PageID # 822-23.) On this point, FCCP-Gen is a member of the Franklin County Justice Planning Board and, as such, is subject to this policy position. Moreover, the Resolution asserts that "racism causes persistent discrimination and disparate outcomes in many areas of life including (* * *) criminal justice" and encourages "racial equity training among all community partners (* * *)", of which FCCP-Gen is one such community partner.

Further, Franklin County has demonstrated a custom of acquiescence of federal rights violations in that Plaintiff provided actual notice to Franklin County (as it pays a portion of Plaintiff's salary) through its County Administrator, as well as the President of the Board of Commissioners, regarding the discriminatory, retaliatory, and hostile treatment to which she was and continues to be subjected. (Amended Compl., ¶ 841, Doc. No. 12, PageID # 822.) Yet, Franklin County took no affirmative step to address the federal violations, though it acknowledged, through its County Administrator, that the behavior was pervasive, insulting and

discriminatory.

Franklin County Defendants attempt to distract from this supported conclusion by instead focusing on the Plaintiff's allegations relating to the FCCP-Gen Anti-Harassment Policy and restating continually that none of the policies referenced in her Amended Complaint are Franklin County or Board of Commissioners policies. But this litigation process is one in which Plaintiff is walking while chewing gum – in other words, Plaintiff has asserted claims against FCCP-Gen judge and administrator Defendants regarding its failure to comply with its Anti-Harassment Policy, which is not an issue that can or should be argued by Franklin County Defendants on their behalf, while also asserting that Franklin County Defendants failed to fulfill their own obligations under a Franklin County Resolution enacted regarding the declaration of racism as a public health crisis. Both issues are pled in Plaintiff's Amended Complaint and should be considered as relating to the respective Defendant that Plaintiff identified for each claim.

### 3. Hummer and Dean Are Not Entitled to Qualified Immunity for Plaintiff's § 1983 Claims.

It is unfortunate that Hummer and Dean continue to advance the argument that Plaintiff has engaged in this herculean process because of a basic feeling of disappointment – disappointment that Plaintiff could not get along with "fellow judges" that APA's Hummer and Dean have a statutory duty to advise (Motion to Dismiss, Doc. No. 20, PageID # 1126); disappointment with Hummer and Dean that they did not appoint outside counsel (Motion to Dismiss, Doc. No. 20, PageID # 1126); disappointment with Hummer and Dean that they did not investigate her claims of race and gender discrimination, hostile work environment, and retaliation (Motion to Dismiss, Doc. No. 20, PageID # 1126); and disappointment regarding "disagreements between assistant prosecuting attorneys and a judge over the scope of the prosecuting attorney's legal advisor role" that does not rise to the level of discrimination. The

intentional trivialization of such serious and unprecedented allegations is both confounding and disappointing. To add further legal insult to discriminatory injury, Hummer and Dean also assert that each of them is immune from liability under 42 U.S.C. § 1983 as Plaintiff has failed to allege sufficient facts to state a claim of hostile work environment.  (Motion to Dismiss, Doc. No. 20, PageID # 1125.)

The seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973),the Supreme Court articulated the necessary elements for a prima facie case of employment discrimination. *Id*. The Court reasoned:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (* * *) The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

See also, *Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-256, 101 S. Ct. 1089 (1981); *Dicarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)

Further, *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 114 S. Ct. 367 (1993) established the standard by which a claim of hostile work environment should be determined. Specifically, the Court stated, "[W]e consider the definition of a discriminatorily "abusive work environment" (also known as a "hostile work environment") under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e, *et seq*. (1988 ed., Supp. III).: *Id*. at 19. More meaningfully the Court wrote:

> But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological wellbeing, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from

advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor*, and the reference in that case to environments "`so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,'" *id*., at 66, quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (CA5 1971), *cert. denied*, 406 U.S. 957 (1972), merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

(* * *)

Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological wellbeing, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, *Meritor, supra*, at 67, there is no need for it also to be psychologically injurious.

*Id.* at 22. Then, in framing what courts should consider in reviewing claims of hostile work environment, the Court concluded:

[W]e can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological wellbeing is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But, while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id.* at 23.

In considering these factors, it is evident that Plaintiff meets her burden despite Hummer's and Dean's statements to the contrary or blatant disregard for the factors articulated in their own motion. First, it is without question that Plaintiff is a member of a protected class – she is a Black woman. (Amended Compl., ¶ 17, Doc. No. 12, PageID # 718.) Next, Plaintiff is imminently qualified for her job, having worked as a Law Clerk for an Associate Justice of the Supreme Court of Ohio, an Associate Attorney in private practice representing clients around Ohio and across the United States, and as Deputy Chief Counsel for one of Ohio's Governors,

which required that she not only represent the Governor in state and federal court but also coordinate litigation strategies with the Chief Executive Counsel for all state agencies, all of which was prior to her more than fifteen years of service as an FCCP-Gen Judge. Moreover, it is clear through the allegations in her Amended Complaint that Plaintiff suffered an adverse employment action – from being blackmailed by one of her "fellow judges" to force her to resign as Administrative Judge (Amended Compl., ¶¶ 317-325, Doc. No. 12, PageID # 755); to not being provided representation by Hummer and Dean in reference to the bad faith complaint filed by Defendant Goodman in 2022 (Amended Compl., ¶¶ 369-371 Doc. No. 12, PageID # 760-61); to Hummer and Dean failing to notify Plaintiff of a public record request submitted regarding Defendant Goodman's bad faith complaint (Amended Compl., ¶ 368, Doc. No. 12, PageID # 762); to Hummer admitting that the discriminatory treatment to which Plaintiff had been subjected was "horrific" (Amended Compl., ¶ 873, Doc. No. 12, PageID # 868); to Dean stating that she would advised FCCP-Gen judge and administrator Defendants to proceed with an investigation to avoid the impact of having an EEOC Charge filed against the court (Amended Compl., ¶ 800, Doc. No. 12, PageID # 816); to Plaintiff having criminal continuance entries deleted with no answer regarding who destroyed the documents, (Amended Compl., ¶¶ 1032-38, Doc. No. 12, PageID # 847-48); to advising Hummer and Dean that public records were both destroyed and altered with no responsive plan to address the issues (Amended Compl. ¶¶ 874-881. Doc. No. 12, PageID # 828-29; Amended Compl., ¶¶ 900-905, Doc. No. 12, PageID # 832); to informing Hummer and Dean that FCCP-Gen judge defendants were attempting to modify the court's Anti-Harassment policy after it had received actual notice of Plaintiff's EEOC Charge (Amended Compl., ¶¶ 947-957, Doc. No. 12, PageID #838-39); to not receiving the statutorily contemplated representation that Hummer and Dean were required to provide for

a mandamus action in which Plaintiff was sued (Amended Compl., ¶¶ 1053-1063, Doc. No. 12, PageID # 851-852) – there have been myriad adverse employment decisions that impact Plaintiff's ability to do her work.

Consistent with the factors articulated in *Harris, supra,* Plaintiff has endured the hostile and harassing discriminatory behavior every day since July 2021 and even the prospect of having to go into an environment about which Plaintiff is uncertain regarding what will be said or done to make her professional existence more complicated than it already is, when managing the kind of work she is obligated to manage, has left Plaintiff feeling that she is, in fact, on the verge of a nervous breakdown on occasions too numerous to count. Moreover, contrary to what Hummer and Dean espouse, Plaintiff's claims do not "boil down" to angst related to their representation responsibility for all 17 judges, or the decision not to represent Plaintiff in this action (which is something she neither asked nor expected them to do, and Hummer and Dean can point to no document that supports such an unfounded statement). (Motion to Dismiss, Doc. No. 20, PageID #1126.) Rather, Plaintiff's claims relate to the actual knowledge that Hummer, Dean, and Franklin County possessed regarding the veracity and pervasive nature of Plaintiff's claims, and the intentional decision of each to ignore, facilitate and participate in the same. Additionally, Hummer overstates her effort to "set up mediation" between Plaintiff and the FCCP-Gen judge Defendants. (Motion to Dismiss, Doc. No. 20, PageID #1126.) In fact, when Hummer met with Plaintiff and proposed the idea, she had no specifics in place and failed to respond to Plaintiff's proposed pre-conditions and conditions to facilitate a mediation. (Amended Compl., ¶¶ 1016-1031, Doc. No. 12, PageID #846-47.) Perhaps there is now a layer of regret regarding what Hummer, Dean, and Franklin County should have done before Plaintiff was literally forced to take this most serious step. But that regret does not permit Hummer,

Dean, or Franklin County to rewrite history into a more palatable narrative that allays what should be a trio of guilty consciousness.

Finally, Plaintiff did not allege in her Amended Complaint and is not asking this Court now to determine that Hummer and Dean engaged in discrimination or created a hostile work environment based on their decision to decline representation and it is an affront for either to suggest the same. The "boiled down" truth of the matter is this – Hummer and Dean were aware that Defendant Goodman filed a vindictive and bad faith complaint to cover up and distract from her unwillingness to do the job she was hired to do and to follow the FCCP-Gen Table of Organization. Based on that bad faith complaint, which neither Hummer nor Dean undertook any investigation to substantiate as counsel for FCCP-Gen, they instead provided legal advice to a former presiding judge of the court (Defendant Frye) while simultaneously failing to advise another client (Plaintiff) of her right to be represented by counsel against the bad faith complaint. (Amended Compl., ¶¶ 369-370, Doc. No. 12, PageID # 760-61.) Additionally Hummer's and Dean's mismanagement of a companion public record request related to the bad faith claim in November 2022 resulted in their complete failure to ensure that all responsive public records were submitted in response to the request. (Amended Compl., ¶¶ 392-394, Doc. No. 12, PageID # 763.) Further, consistent with their statutory responsibilities under Ohio Revised Code § 309.09, Hummer and Dean failed to review and approve proposed revisions to the FCCP-Gen Anti-Harassment Policy in July 2024, knowing full-well that Plaintiff had filed an EEOC Charge that was based in part on this policy. (Amended Compl. ¶ 955, Doc. No. 12, PageID # 839.) Finally, Hummer and Dean neglected to consult with either Ethics counsel or the Supreme Court of Ohio to determine whether their continued involvement in the management of Plaintiff's claim was permissible. (Amended Compl, ¶¶ 888-889, Doc. No. 12,

PageID # 830.) Yet, when Plaintiff filed the within litigation, asserting claims of discrimination, due process violations, hostile, work environment, defamation, and retaliation, Hummer and Dean and Franklin County attempted to label those serious claims as "disagreements, not discrimination, and "judges not liking or disagreeing with each other".

In other words, Hummer's and Dean's decision to treat Plaintiff, a Black woman, in a way that it has never treated a White FCCP-Gen Judge, to refuse to provide representation to Plaintiff in a matter related to her official capacity when they have never refused to provide representation to a White FCCP-Gen Judge, and to facilitate and participate in the creation of an ongoing and pervasive work environment that is both insulting and discriminatory is why they have been named Defendants, why they are not immune from liability under § 1983, and why their arguments in favor of dismissal are unfounded.

### E. Plaintiff Has Alleged Facts That Justify Her Assertion of the Racketeering Claim In Count Four of Her Amended Complaint.

#### 1. Plaintiff's Amended Complaint Satisfies the Procedural Framework of *Sedima, S.P.R.L., v. Imrex Co.,* 473 U.S. 479  105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985).

While Plaintiff can appreciate why Franklin County Defendants may be troubled by her allegation pursuant to 18 U.S.C. §§ 1961-1968, that does not mean Plaintiff has failed to establish the factual predicate to support such a claim. Regrettably, the facts outlined in the Amended Complaint lend themselves to the unbelievable and disappointing conclusion that all Defendants conspired in creating a discriminatory, hostile and retaliatory work environment.

18 U.S.C. § 1961 defines "racketeering activity" as (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more

than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), (* * *), section 1029 (relating to fraud and related activity in connection with access devices), (* * *), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (* * *). (Emphasis added.)

Moreover, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Additionally, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c).

In establishing the framework that a plaintiff must establish in order to support a racketeering claim, the *Sedima* Court wrote:

> A violation of § 1962(c), the section on which Sedima relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."*Haroco, Inc.* v. *American National Bank Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd,

41

*post*, p. 606.

> But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima, S.P.R.L.* at 479.

Here, Plaintiff alleged in her Amended Complaint that Hummer and Dean advised Defendant Frye regarding the bad faith complaint filed by Defendant Goodman. (Amended Compl., ¶ 388, Doc. No. 12, PageID # 763; Amended Compl., ¶¶ 779-781, Doc. No. 12, PageID # 814.) Based on the advice provided by Hummer and Dean, Defendant Frye told Plaintiff that, if she resigned as Administrative Judge for 2023 based on the prevarication that she was simply too busy to do the work of Administrative Judge, then Defendant Goodman's bad faith complaint would go away. (Amended Compl., ¶391. Doc. No. 12, PageID # 755.) In other words, Defendant Frye, after receiving advice from Hummer and Dean, proposed an offer of bribery and blackmail that if Plaintiff would resign, then the disparaging and bad faith allegations would go away. If not, then the disparaging allegations would be disseminated. Thereafter, Defendant Frye told counsel that Plaintiff engaged on her own after Hummer and Dean failed to advise her of the right to counsel under the FCCP-Gen liability policy, that if she did not resign then the FCCP-Gen judge Defendants were prepared to vote her out of the Administrative Judge position and would not undertake an investigation. (Amended Compl., ¶ 372, Doc. No. 12, PageID # 761.) At some point after this plan was established, Defendants Goodman, Davis, Bedsole, and Worthington destroyed all internal messages, which were public records, between Plaintiff and them, as well as all internal messages between them and

Plaintiff's Black staff. (Amended Compl., ¶ 398, Doc. No. 12, PageID # 764.) Plaintiff continues to assert that, in addition to the documents that Plaintiff has in her possession, the information contained in those destroyed documents would have supported her position that Defendant Goodman's claims were baseless.

Thereafter, Plaintiff notified Hummer and Dean that Defendant Goodman, or someone on her behalf, was altering information on Plaintiff's work calendar for events that occurred almost ten years ago and in close proximity to events related to a public record request submitted by Plaintiff. (Amended Compl., ¶¶ 876, 877, Doc No. 12, PageID # 829; Amended Compl., ¶¶ 901-905, Doc. No. 12, PageID # 832.) This is in addition to FCCP-Gen judge Defendants failing to transmit documents in their possession that were responsive to the November 2022 public record request regarding Defendant Goodman's bad faith complaint against Plaintiff. Hummer even conceded she was aware that the documents transmitted by FCCP-Gen judge Defendants using the court's email system were not all the documents that should have been submitted. Yet, neither Hummer nor Dean did anything to ensure that they received all responsive documents. All these events demonstrate conduct of an enterprise (FCCP-Gen judge and administrator Defendants, along with Franklin County Defendants) through a pattern (various events over the course of 3 ½ years) of racketeering activity (blackmail and bribery, mail fraud and/or fraud and related activity in connection with access devices, which in this instance are court computers). As such, Plaintiff has pled sufficient facts to support her claim of racketeering as contemplated by *Sedima*, *supra*.

> ### 2. Franklin County Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings.

In their motion, Franklin County Defendants attempt to distract the Court from the Plaintiff's properly asserted racketeering claims under 18 U.S.C. § 1961 by attempting to

distinguish that lawful assertion from potential claims under 18 U.S.C. § 1962(a) and (b). (Motion to Dismiss, Doc. No. 20, PageID # 1129-30. However, it is unnecessary for Plaintiff to prove a violation of every subsection of § 1962 in order for her claims to have merit. In that regard, Plaintiff asserts that Franklin County Defendants have violated 42 U.S.C. §1962(c) which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity (* * * ).

Moreover, in order to prove a violation of that Act, "the plaintiffs must show 1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VandenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). In addition, the Supreme Court reasoned that in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself. *Id., citing Reves v. Ernst Young*, 507 U.S. 170, 183 (1993).

Additionally, the *VandenBroeck* decision states, "The Supreme Court has defined an "enterprise" under the Act as a "group of persons associated together for a common purpose of engaging in a course of conduct." *Id*. at 699, citing *United States v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise can be proven by showing: 1.) that the associated persons formed an ongoing organization, formal or informal; 2.) that they functioned as a continuing unit; and 3.) that the organization was separate from the pattern of racketeering activity in which it engaged. *See Frank v.* D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993) (*Id*.)

and noted, "All that is required is some minimal level of organizational structure between the entities involved." *Id*. at 700.

While Franklin County Defendants assert that Plaintiff "does not come close to alleging sufficient facts against" Franklin County Defendants regarding a violation of § 1962(c), Plaintiff contends that she not only "comes close" but exceeds what she is required to prove. First, it is without question that Franklin County Defendants are a part of the organizational structure of FCCP-Gen – Hummer and Dean serve as counsel for not only the court but every judge, pursuant to Ohio Revised Code § 309.09, and Franklin County approves the FCCP-Gen annual budget and confers with and directs policy decision made by FCCP-Gen. Further, Hummer and Dean: 1.) provided advice and counsel to Defendant Frye regarding his management of Defendant Goodman's bad faith complaint; 2.) oversaw the management of the public record request in November 2022 related to Defendant Goodman's bad faith complaint; 3.) failed to counsel FCCP-Gen regarding the destruction of Plaintiff's internal team messages with FCCP-Gen administrator Defendants and alteration of ten-year-old calendar invitations sent to Plaintiff; 4.) failed to fulfill their statutory obligation to review any proposed modifications to FCCP-Gen policies; 5.) failed to fulfill their commitment in January 2024, and on behalf of Franklin County, to engage a person to investigate Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation; and 6.) failed to provide representation to Plaintiff when she was sued in her official capacity. These factors, and myriad more, clearly indicate that FCCP-Gen and Franklin County Defendants function as a "continuing unit" and have done so for the entire period of time giving rise to Plaintiff's allegations.

Indeed, Plaintiff is surprised that Franklin County Defendants would assert that she has

failed to establish the predicate offenses outlined in her Amended Complaint as the bases for the racketeering claim. (Amended Compl., ¶ 1109, Doc. No. 12, PageID # 859.) More concisely, Plaintiff has established her claim of Falsification under Ohio Revised Code § 2921.12 because she has properly pled that 1.) FCCP-Gen attempted to modify the Anti-Harassment Policy; 2.) Hummer and Dean failed to review the proposed changes before they were submitted for consideration by the court; 3.) Hummer and Dean have a statutory obligation to review proposed FCCP-Gen policies; and 4.) Hummer, Dean and FCCP-Gen had actual knowledge of Plaintiff's EEOC Charge at the time FCCP-Gen attempted to modify the Anti-Harassment Policy. Beyond that, Plaintiff submitted a preservation letter to Hummer and Dean on March 18, 2024 regarding FCCP-Gen records. Yet, the following day, Plaintiff received an altered calendar invitation from the account of Defendant Goodman's former assistant who had not worked at the court for two years prior to the altered invitation being sent.

Similarly, Plaintiff has established a claim of Tampering with Records pursuant to Ohio Revised Code § 2913.42 based on the same allegations associated with her Falsification claim. Likewise, Plaintiff has established a violation of Ohio Revised Code § 149.351 based on the same foundation of facts. Finally, Plaintiff has also established her racketeering claim based on 18 U.S.C. § 1001, 18 U.S.C. § 1018, and 18 U.S.C. § 1030. While Franklin County Defendants assert that §§ 1001 and 1018 do not apply because those provisions only apply to "misrepresentations made in federal, not state, government matters" (Motion to Dismiss, Doc. No. 20, PageID # 1133), that is a misreading of the provisions. More specifically, § 1001 covers matters within the "jurisdiction of the (* * *) judicial branch of the Government (* * *)" and, because Plaintiff received a Notice of Right to Sue Letter to assert her claims of discrimination, retaliation, and hostile work environment in federal court, she has the ability to assert that

Franklin County Defendants, as a part of a continuing unit with FCCP-Gen, falsified, concealed and covered up, through a common scheme, material facts related to Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation. Moreover, under § 1018 both Hummer and Dean, in concert with Defendant Frye, were aware that Defendant Goodman submitted a bad faith complaint which each knew to be false. Despite this knowledge, Hummer and Dean failed to participate in a meeting during which the bad faith complaint was discussed and failed to advise Plaintiff that she was entitled to representation against the baseless allegations. Finally, under § 1030, Plaintiff has unequivocally established that the vast majority of the fraudulent activity and related events have occurred on FCCP-Gen computers, as demonstrated by the mountain of exhibits Plaintiff included with her Amended Complaint. For Franklin County Defendants to suggest that Plaintiff has failed to establish her racketeering claim given these corroborated facts borders on preposterous.

The Amended Complaint clearly alleges that the defendants engaged in a scheme to defraud and mislead Plaintiff by – among other things - using the knowingly false and fraudulent complaint against her by Defendant Goodman to force Plaintiff to give up her position within the court as Administrative Judge.  A scheme to defraud is "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes the designed end." *Kenty v. Bank One, Columbus, N.A*., 92 F.3d 384, 389-90 (6th Cir. 1996). A plaintiff must allege "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension'" upon which he or she relied. *Id*. Plaintiff has done so here with specificity. Further, there is no requirement that a particular defendant have made a misrepresentation, only that the fraud or misrepresentation was "foreseeable" in the context of the scheme. *See In re*

*ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 627 (E.D. Ky. 2011) ("Each defendant is liable whether or not that person personally made any misrepresentations ... plaintiff may establish the existence of a scheme to defraud coupled with foreseeable use of the mail or wires."); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 288 n.25 (3d Cir. 1985) ("We conclude that under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses."); *United States v. Puckett*, 692 F.2d 663, 669 (10th Cir. 1981) ("Nor must the defendant personally have made the offending communications if he participated in devising the scheme to defraud in which the use of interstate wires foreseeably would follow.").

With respect to the requirement that the defendants' conduct have an effect "interstate," clearly FCCP-Gen and Franklin County take actions every day which effect interstate interests. First, it is undisputed that the court adjudicates controversies between Ohio residents and residents of other states. The court enforces state and federal law which has effects on residents and corporations based in states other than Ohio. Here, specifically, it is alleged that Defendants sent electronic communications and had telephone communications which were fraudulent and/or related to allegations of blackmail or extortion. The Amended Complaint provides detailed allegations about who engaged in fraudulent and extortive conduct and when the conduct occurred. The law is clear that the use of telephones, the U.S. Mail and electronic mail, even if the communications do not go out of state, satisfies the "interstate" requirement for a racketeering claim. The interstate nexus for mail fraud can be satisfied by use of the Postal Service. *United States v. Griffith*, 17 F.3d 865, 874 (6th Cir. 1994) (stating "testimony as to a company's routine use of the postal service is sufficient evidence on its own to establish the

mailing requirement"); *see also United States v. Elliott*, 89 F.3d 1360, 1364 (8th Cir. 1996) (finding "the jurisdictional basis of the mail fraud statute is grounded in the Postal Power and therefore necessarily encompasses all items passing through the United States mails, even if their passage is purely intrastate"). As to wire fraud, use of electronic communication, including e-mail, is sufficient. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *see also Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 803 (6th Cir. 2015) (finding "the very act of sending an e-mail creates the interstate commerce nexus necessary for federal jurisdiction. . . .").

### F. Franklin County Defendants Are Not Entitled To Dismissal of Plaintiff's State Law Discrimination and Retaliation Claims.

#### 1. Plaintiff's Notice of Right to Sue Letter from the Equal Employment Opportunity Commission is Sufficient for Asserting State Law Claims.

Franklin County Defendants argue that, because Plaintiff "neither alleged filing any charge with the Ohio Civil Rights Commission ("OCRC") nor receiving a right to sue letter from the Ohio Civil Rights Commission" (Motion to Dismiss, Doc. No. 20, PageID # 1137), she has failed to satisfy the statutory requirements of Ohio Revised Code § 4112.052. They further assert that Plaintiff failed to allege state law discrimination in her Amended Complaint. Consequently, they conclude that Plaintiff's lack of compliance with administrative prerequisites necessitates that her state law claims for discrimination and retaliation must fail as a matter of law and cite *Simrell v. Dave White Chevrolet, LLC,* Case No. 3:23-cv-1382, 2024 U.S. Dist. LEXIS 94824, *6 (N.D. Ohio May 29, 2024) in support of this conclusion. However, Franklin County Defendants completely misstate the conclusion reached by the *Simrell* court.

In *Simrell,* the court discussed that "The EEOC and the OCRC are parties to a worksharing agreement (* * *)." *Simrell* at 5 and, in denying the defendant's motion to dismiss

49

regarding the state law claims of discrimination, the court wrote:

> In the worksharing agreement, the OCRC explicitly designated the EEOC as "its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." (Doc. No. 5-2 at 2). The OCRC and the EEOC reaffirmed their agreement on November 3, 2021, nearly six months after Ohio Revised Code § 4112.052 was amended to require administrative exhaustion of discrimination claims under Ohio law. *See, e.g., Smith v. Lorain Cnty. Veterans Serv. Comm'n*, No. 1:21-CV-01525, 2024 WL 1375946, at *7 (N.D. Ohio Mar. 30, 2024) ("Ohio Revised Code Section 4112.052(B)(1)(a), which became effective in April of 2021, added an exhaustion requirement to Ohio's disability discrimination statute, where there was none previously ...."). The parties extended the worksharing agreement as originally written, concluding there had been "no substantive changes in the . . . statutes . . . that would adversely affect or substantially alter the work sharing arrangement . . . or that would affect the processing of charges filed under the pertinent Federal, state or local statutes ...." (Doc. No. 5-2 at 7).
>
> In other words, the worksharing agreement plainly indicates the parties were aware of the change in Ohio law and concluded that change did not limit the OCRC's ability to designate the EEOC as its agent to accept charges of discrimination under Ohio law. I conclude the EEOC had the authority under the worksharing agreement to accept Simrell's charge of discrimination alleging violations of Ohio law and I further conclude that, as the result of the EEOC's express agency authority, Simrell's EEOC filing satisfies the requirements of § 4112.052(B)(2)(b). Therefore, I deny Defendants' motion to dismiss to the extent Defendants contend Simrell did not exhaust his administrative remedies under Ohio law.

*Simrell* at 5-6.

In the present case, Plaintiff did precisely what is contemplated in the *Simrell* decision – she filed her claim with the EEOC, understanding that OCRC would be notified of the filing and advised of any findings, decisions, or notices issued by EEOC. (Amended Compl., ¶15, Doc. No. 12, PageID # 717.) Put another way, Plaintiff was not then and is not now required to file her discrimination and retaliation claims in every forum where they could potentially be submitted and investigated because these agencies have decided to focus on efficiency rather than filing bureaucracy. As such, Franklin County Defendants' argument regarding Plaintiff's state law claims for discrimination and retaliation is not well-taken.

**2.** **Plaintiff's Arguments Regarding Her Federal Claims of Discrimination and Retaliation Are Also Applicable to Her State Law Claims.**

As previously stated, Franklin County Defendants once again concede the accuracy and veracity of Plaintiff's arguments – that is, Franklin County is a "person" subject to suit under § 1983. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). (Motion to Dismiss, Doc. No. 20, PageID # 1121.) Further, the *Monell* decision held, "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury then the government, as an entity, is responsible under § 1983." *Id* at 694. Despite this unequivocal pronouncement, Franklin County Defendants seem to conflate Franklin County with the Franklin County Board of Commissioners and attempt to argue that the Board of Commissioners is not Plaintiff's employer. Even if Plaintiff understood this confusing argument and assumed it to be true, the position is not one that is shared by the President of the Board who asked Hummer to determine whether there was a duty to investigate when Plaintiff provided notice of her claims of discrimination, retaliation, and hostile work environment to Franklin County. (Amended Compl., ¶ 842, Doc. No. 12, PageID # 823.) In fact, the position asserted at the time was that, since a portion of Plaintiff's salary is paid by Franklin County, there may be a companion responsibility for Franklin County to investigate. Moreover, if Franklin County Defendants advance that the powers of the Board pursuant to statue must be strictly construed (*See Slough v. Telb*, 644 F. Supp. 2d 978, 999 (N.D. Ohio 2009); *Accord Comm'rs v. Andrews*, 18 Ohio St. 49 (1868)), then Franklin County Defendants would have to admit that Ohio Revised Code § 305.12 does not state either tacitly or explicitly that the Board

51

of Commissioners pays a portion of Plaintiff's salary. And yet, it is beyond dispute that Plaintiff's salary is paid in part by Franklin County on behalf or at the direction of the Board of Commissioners. Taken in context with *Monell, supra*, Franklin County Defendants' contention that Plaintiff is not an employee of Franklin County is incongruent with the incontrovertible facts.

### 3. Plaintiff Has Asserted a Plausible Claim of Discrimination Against Hummer and Dean.

Ohio Revised Code §4112.02(J) provides:

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

Once again, Plaintiff is left speechless at Hummer's and Dean's attempt to lead this honorable Court to believe that this provision has not been satisfied. If: 1.) failing to provide instruction and/or representation to Plaintiff, a sitting judge who has not relinquished or forfeited her position, in her defense against a bad faith complaint filed against her by an employee or in her defense against a mandamus action filed by a litigant; 2.) refusing to confirm whether you, as Court counsel, can continue to represent the Court against claims for a matter in which you provided advice that is the subject of the claims; 3.) declining to ensure that all responsive documents for a public record request filed in November 2022 have been gathered and provided to necessary parties; 4.) failing to provide Plaintiff, a statutorily recognized client, with notice a public record request related to the bad faith complaint filed against her; 5.) participating in a meeting where Plaintiff was told she had a snowflake mentality, ridiculed for proposing a policy that required all FCCP-Gen judges to "be nice", laughed at and told to grow up and act like an adult, advised that if her claims of discrimination, retaliation and discrimination were really an

52

issue, then she should call the local newspaper; 6.) overlooking actual notice regarding the destruction or alteration of public records; 7.) failing to advise FCCP-Gen that no policies should be modified during the pendency of an EEOC Charge; and 8.) advising Plaintiff that two FCCP-Gen administrator Defendants would be resigning and/or retiring from the court in an effort to coerce Plaintiff into a resolution of her lawful claims – are not violation of the mandates of Ohio Revised Code § 4112.02(J), then what are they? Franklin County Defendants do not have and have not provided any other plausible, legitimate and nondiscriminatory explanation because none exists.

### G. Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B).

As an initial matter, Franklin County Defendants make an argument that is wholly unrelated to what Plaintiff alleged in Count Seven of her Amended Complaint. (Motion to Dismiss, Doc. No. 20, PageID # 1141.) Therein, Plaintiff asserted that various FCCP-Gen administrator Defendants permanently deleted various internal messages, calendar invitations and other information between Plaintiff and them. (Amended Compl, ¶ 398, Doc. No. 12, PageID # 764.) These records, which detailed Plaintiff's interactions with Defendant Goodman and others, could have and would have refuted the bad faith allegations made by Defendant Goodman against Plaintiff and would have eliminated Defendant Frye's inclination and ultimate decision to blackmail Plaintiff on Defendant Goodman's behalf. Moreover, Plaintiff asserts that, various FCCP-Gen judge Defendants failed to comply with the November 2022 public record request by not providing all responsive documents (as confirmed by Hummer). Finally, Plaintiff contends that Defendants altered calendar invitations for events on Plaintiff's calendar that occurred almost ten years ago, which is around the same time events that were subject of public

record requests submitted by Plaintiff and fulfilled by FCCP-Gen, occurred. (Amended Compl., ¶¶ 901-905, Doc No. 12, PageID # 832.) Those records from ten years ago clearly demonstrate that a White male FCCP-Gen judge Defendant who was accused of four separate incidents of sexual harassment was not subject to any Special Judges' Meeting to discuss a corrective course of action, similar to Plaintiff (Amended Compl., ¶¶ 768-773, Doc. No. 12, PageID # 812-813) and was not subject to any threat of blackmail or other coercive tactic.

As a result of these actions, Plaintiff averred that Defendants violated Ohio Revised Code § 149.351(B) for their intentional and malicious destruction and removal of these records. The allegations that Franklin County Defendants reference regarding Defendant K. Brown's, Hummer's, and Dean's mismanagement of those public record requests, while true, were not documents that were destroyed. Moreover, Plaintiff is an "aggrieved party" because documents that could have exonerated her from baseless claims made by Defendant Goodman and that demonstrated the disparate and discriminatory treatment in which all Defendants engaged was destroyed or altered. In fact, this scheme was facilitated by Hummer and Dean who advised Plaintiff that the documents were destroyed as a part of updates to the FCCP-Gen computer system, though Plaintiff currently has internal messages on her work computer from former employees who have not worked for the court for three years or more.

Moreover, 28 U.S.C. § 1367 states:

a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule

14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, Plaintiff has asserted claims *inter alia* under §§ 1981 and 1983 for which this Court has original jurisdiction. Moreover, Plaintiff's allegations regarding the destruction and alteration of public records by FCCP-Gen judge and administrator Defendants, and the failure of Franklin County Defendants to confer and advise on the legal repercussions of that destruction and alteration (since all Franklin County Defendants had actual notice of the same) in the context of Plaintiff's asserted claims of race and gender discrimination, hostile work environment, and retaliation are a series of events arising out of the same case and controversy. Additionally, Plaintiff's claims relating to the destruction of alteration of public records do not raise novel or complex issues and do not substantially predominate over the claims for which this Court has original jurisdiction.

This was the conclusion reached in *Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020), wherein the Court concluded that it had jurisdiction over the plaintiff's claims pursuant to Ohio Revised Code § 149.351. In denying the defendant's request that the court decline to exercise supplemental jurisdiction, the court noted,

[T]he claim is linked directly to Mr. Glaze's civil rights claims and derives from a common nucleus of operative fact; and, permitting the claim to proceed in this Court serves the interests of judicial economy. The Court finds no basis upon which abstention under *Burford v. Sun Oil Co.*, 319 U.S. 314 (1943), is necessary, given the fact that resolution of Mr. Glaze's claim requires a straightforward analysis of the evidence and

55

application of long-standing State law.

*Glaze* at 10-11. Similarly, Plaintiff in the present case has demonstrated through her Amended Complaint that the allegations related to the destruction of public records derive from a common nucleus of operative facts – Franklin County Defendants, in concert with FCCP-Gen judge and administrator Defendants not only altered and destroyed public records related to all of Plaintiff's claims, but they also collaborated and conspired to conceal the alteration and destruction to facilitate the pervasive and insulting culture of discrimination, hostile work environment and retaliation.

Despite these incontrovertible facts and in their haste to make Plaintiff's allegations appear misdirected, at best, and baseless, at worst yet again, Franklin County Defendants have made an argument regarding a position that Plaintiff did not take.

Moreover, by repeating the refrain of Plaintiff's allegations in the context of being asserted against "fellow judges" (Motion to Dismiss, Doc. No. 20 PageID #1128), Franklin County Defendants seem to suggest that Plaintiff has somehow forgotten or overlooked her collegial obligation, while at the same time ignoring, minimizing, or justifying the discriminatory, insulting, hostile, and retaliatory way in which both "fellow judges" and Franklin County Defendants have treated Plaintiff for almost four years. Perhaps, if Franklin County Defendants and all Defendants had treated Plaintiff like what she is – a duly elected, sitting FCCP-Gen Judge who is worthy of and entitled to dignity, respect, and sincere collegiality in a work environment that is free from discrimination, hostile behavior, and retaliation – then Plaintiff's difficult decision to file litigation would have never been necessary.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court find Franklin County Defendants' motion to dismiss not well-taken and DENY the same in its entirety.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff p*ro se*
345 S. High Street, #4E
Columbus, OH  43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 23rd day of February 2025, I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system that will send notification of such filing to all parties of interest participating in the CM/ECF system.

<u>/s/ Kimberly Cocroft</u>
Kimberly Cocroft
