## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY COCROFT, | : | Case No. 2:24-cv-04208 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | | Magistrate Judge Caroline H. Gentry |
| v. | : | |
| FRANKLIN COUNTY OHIO, *et al.,* | : | |
| Defendants. | : | |

### RESPONSE IN OPPOSITION OF PLAINTIFF *PRO SE* TO MOTION TO DISMISS OF DEFENDANTS RICHARD A. FRYE, COLLEEN, O'DONNELL, KIMBERLY J. BROWN, STEPHEN L. MCINTOSH, MICHAEL J. HOLBROOK, JULIE M. LYNCH, MARK SERROTT, JEFFREY M. BROWN, CHRISTOPHER M. BROWN, DAVID YOUNG, KAREN HELD PHIPPS, DANIEL R. HAWKINS, CARL A. AVENI, SHERYL K. MUNSON, JENNIFER GOODMAN, SUSAN E. BEDSOLE, CAMEO DAVIS, AND STACY WORTHINGTON (DOC. NO. 29)

Now comes Plaintiff, *pro* se, and hereby submits her response in opposition to the motion to dismiss of Defendants Richard A. Frye ("Frye"), Colleen O' Donnell ("O'Donnell"), Kimberly J. Brown ("K. Brown"), Stephen L. McIntosh ("McIntosh"), Michael J. Holbrook ("Holbrook"), Julie M. Lynch ("Lynch"), Mark Serrott ("Serrott"), Jeffrey M. Brown, ("J. Brown"), Christopher M. Brown ("C. Brown"), David Young ("Young"), Karen Held Phipps ("Phipps"), Daniel R. Hawkins ("Hawkins"), Carl A. Aveni ("Aveni"), Sheryl K. Munson ("Munson"), Jennifer Goodman ("Goodman"), Susan E. Bedsole ("Bedsole"), Cameo Davis ("Davis"), and Stacy Worthington ("Worthington") (collectively, "Court Defendants"). A memorandum in support follows.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff p*ro se*
345 S. High Street, #4E
Columbus, OH  43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     STATEMENT OF FACTS....................................................................3

III.    LAW AND ARGUMENT......................................................................10

        A.      To Be Plausible, a Complaint Need Not Allege the Evidentiary
                Framework for Proving Discrimination or Retaliation..................10

        B.      The Truth of Plaintiff's Factual Allegations Must Be Presumed When
                Analyzing a Motion to Dismiss......................................................16

        C.      Court Defendants Are Not Entitled to Eleventh Amendment Protections
                Because Their Actions Violated Plaintiff's Constitutional Rights...........16

        D.      Plaintiff's Allegations Are Permitted Under Title VII........................19

                1.      As a FCCP-Gen Employee, Plaintiff Is Entitled To Title VII Relief
                        for Her Claims of Race and Gender Discrimination, Hostile Work
                        Environment, and Retaliation................................................19

                2.      Because Plaintiff's Allegations Assert Continuing Violations Under
                        Title VII, Her Claims Are Not Time-Barred..........................23

        E.      As a FCCP-Gen Employee, Plaintiff Has The Benefit of a Contractual
                Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well-
                Founded......................................................................................29

        F.      Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983...32

                1.      None of Plaintiff's Claims are Time-Barred..........................32

                2.      Court Defendants Are Not Entitled to Qualified Immunity for
                        Plaintiff's § 1983 Claims...................................................34

        G.      Court Defendants Are Not Entitled To Dismissal of Plaintiff's State Law
                Discrimination and Retaliation Claims Under Ohio Revised Code § 4112
                ....................................................................................................39

                1.      Plaintiff's Notice of Right to Sue Letter from the Equal Employment
                        Opportunity Commission is Sufficient for Asserting State Law
                        Claims......................................................................................39

                2.      Plaintiff's Claims Against Court Defendants Are Permitted Under
                        Ohio Revised Code §§ 4112.02 and 4112.99..........................41

i

**H.**     **Plaintiff Has Alleged Facts That Justify Her Assertion of the Racketeering Claim In Count Four of Her Amended Complaint**…………………………..43

    **1.**   **Plaintiff's Amended Complaint Satisfies the Procedural Framework of** ***Sedima, S.P.R.L., v. Imrex Co.,*** **473 U.S. 479  105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985)**……………………………………………………………………….43

    **2.**   **Court Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings**…………………..47

**I.**     **Plaintiff's Claims Against Court Defendants Goodman and Davis for Defamation Are Not Barred By the Statute of Limitations**………………..53

**J.**     **Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B)**………………………………57

**K.**     **Court Defendant's Reliance on the** ***O'Shea*** **Abstention Doctrine is Misplaced in the Context of Plaintiff's Request for Injunctive Relief**…….62

**L.**     **Court Defendants' Motion to Strike Under Fed. R. Civ. P.8(A)(2) Is Inappropriate**………………………………………………………………...66

**IV.**   **CONCLUSION**……………………………………………………………..70

    **CERTIFICATE OF SERVICE**……………...………………..………………………71

## TABLE OF AUTHORITIES

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013)………11, 12

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)…………………………………………………………………………………..53

*Alexander c. Gardner-Denver Co.*, 415 U.S. 36 (1974)…………………………………………19

*Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983)……………………….….........19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………...11, 12, 16

*Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir. 1981), *cert. denied*……………………………………………………………………34

*Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir. 1977)……………………………..19

*Barrett v. Whirlpool Corp.,* 556 F.3d 502 (6th Cir. 2009)………………………………….26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…...……………………………………..11, 15

*Board of Regents, v. Roth*, 408 U.S. 564 (1972)……………………………………………31

*Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009)………………………………………30

*Brown v. Philip Morris, Inc.*, 250 F.3d 789 (3rd Cir. 2001)…………………………………30

*Cardenas v. Massey*, 269 F.3d 251 (3rd Cir. 2001)..........................................................30

*Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991)……………………………………………15

*Ciganik v. Kaley*, 2004-Ohio-6029 (11th App. District, 2004)……………………………….60

*City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024)………21, 22

*Conley v. Gibson*, 355 U.S. 41 (1957) ……………………………………………………...15

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994)...………………………………………...33

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)..………………………………………16

*Dicarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)……………………………………………....35

iii

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)……………………………………………..15

*Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019)……………………………………....33

*Ex Parte Young*, 209 U.S. 123 (1908)..................................................................17, 18, 64

*Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000)……………………………………………………26

*Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993)..........................................................48

*Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020)………………....59, 60

*Gomes v. Avco Corp.,* 964 F.2d 1330 (2d Cir. 1992).....................................................33

*Grubbs v. Sheakley Grp., Inc.,* 807 F.3d 785 (6th Cir. 2015)..........................................53

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012)………………………………………16

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)………………………………………………..35, 36, 38

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)……………………………………….18

*In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599 (E.D. Ky 2011)……………….....51, 52

*Jean-Louis v. Am. Airlines*, No. 08-CV-3898 (E.D.N.Y. July 30, 2010)…………………………30

*Kensu v. Corizon, Inc.*, 5 F.4th 646 (6th Cir. 2021)……………………………………………….67

*Kenty v. Bank One Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996)………………………………51

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)…………………………………………...…12

*Kienow v. Cincinnati Children's Hos. Med. Ctr.*, 2015-Ohio-4396……………………………54

*Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994)……………………………………………….17

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993)……………………………………………...…16

*McClements v. Ford Motor Co.,* 473 Mich. 373 (Mich. 2005)………………………………....21

*McClements v. Ford Motor Co.,* 474 Mich. 1201 (Mich. 2005)…………………………….......21

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)……………………………….....11, 35

*Miller v. International Telephone Telegraph Corp.*, 755 F.2d 20 (2d Cir. 1985), *cert. denied*..33, 34

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017)…………………………………………………..16

iv

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)……………………………24, 25, 26

*Okpalobi v .Foster*, 244 F.3d 405 (5th Cir. 2001)…………………………………………….18

*O'Shea v. Littleton*, 414 U.S. 488 (1974)…………………………………………....62, 63

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011)………………….14

*Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980)…………………..19

*Reves v. Ernst Young*, 507 U.S. 170, 183 (1993)………………………………………...48

*Rivers v. Roadway Exp., Inc*., 511 U.S. 298 (1994)…………………………………...…29

*Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479 (1985)……..………………………….43, 44, 45, 47

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)…………………………………….12

*Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020)………………...63

*Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir 1973)…...…………………….19

*Simrell v. Dave White Chevrolet, LLC*, Case No. 3:23-cv-1382, (N.D. Ohio May 29, 2024)…...40

*Smith v. Goodwill Industries of West Mich., Inc*., 243 Mich 438 (Mich. Ct. App. 2000)……….21

*Suero v. Motorworld Auto Grp., Inc.,* CIVIL ACTION NO. 3:16-cv-00686 (M.D. Pa. Jan. 31, 2017)……………………………………………………………………………………29, 30

*Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002)………………………………….…11, 12

*Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)…………………………….....35

*Tipler v. duPont de Nemours and Co.*, 443 F.3d 125 (6th Cir. 1971)……………….............19

*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)…………………………………….27

*United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996)………………………………….....53

*United State v. Griffith*, 17 F.3d 865 (6th Cir. 1994)…………………………….....…...52

*United States v, Local 560 of the Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 780 F.2d 267 (3d Cir. 1985)…………………………………………………….52

*United States v. Puckett*, 692 F.2d 663 (10th Cir. 1981)………………………………....52

v

*United States v. Turkette,* 452 U.S. 576 (1981)……………………………………………………48

*VandenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000)……………........48

*Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635 (2002)…………………...18

*Weidman v. Hildebrant*, 2024-Ohio-2931…………………………………………………………54

*Zipes v. Trans World Airlines, Inc.*, 455 U.S.. 385 (1982)…………………………………………...19

## Statutes

18 U.S.C. §1001…………………………………………………………………………………50

18 U.S.C. § 1018…………………………………………………………………………………...50, 51

18 U.S.C. §1030…………………………………………………………………………………...50, 51

18 U.S.C. § 1961………………………………………………………………………………10, 43, 47

18U.S.C. § 1962………………………………………………………………………………10, 43. 47

18 U.S.C. § 1962(a)……………………………………………………………………………...10, 43

18 U.S.C. § 1962(c)……………………………………………………………………………44, 47, 48

18 U.S.C. § 1963………………………………………………………………………………10, 43

18 U.S.C. § 1964……………………………………………………………………………......10, 43

18 U.S.C. § 1964(c)………………………………………………………………………………44

18 U.S.C. § 1965………………………………………………………………………………10, 43

18 U.S.C. § 1966………………………………………………………………………………10, 43

18 U.S.C. § 1967………………………………………………………………………………10, 43

18 U.S.C § 1968………………………………………………………………………………10, 43

28 U.S.C. 1367………...……………………………………………………………...…57, 58, 59

42 U.S.C. § 1981…………………………………………………………10, 29, 30, 31, 59

42 U.S.C. § 1981a…………………………………………………………………………....10

42 U.S.C. § 1983.................................................................................10, 32, 33, 34, 39, 59

42 U.S.C. § 2000(e)...............................................................................................10

42 U.S.C. § 2000e(f)..............................................................................................19

42 U.S.C. § 2000e-5(e)(1).................................................................................23, 24

Ohio Revised Code § 124.01............................................................................20, 22

Ohio Revised Code § 149.351..............................................................10, 50, 59, 60, 61

Ohio Revised Code § 149.351(B)...............................................................…......57, 58

Ohio Revised Code § 149.43.................................................................................61

Ohio Revised Code § 309.09.......................................................…......................49

Ohio Revised Code § 2305.11(A).........................................................................53

Ohio Revised Code § 2913.42.............................................................................50

Ohio Revised Code § 2921.12.............................................................................49

Ohio Revised Code § 4112.....................................................................................39

Ohio Revised Code § 4112.01......................................................................…....10

Ohio Revised Code § 4112.01(A)(9).............................................................…....42

Ohio Revised Code § 4112.02........................................................................…..10, 41, 42

Ohio Revised Code § 4112.02(G)..........................................................…......42, 43

Ohio Revised Code § 4112.052....................................................................…...39

Ohio Revised Code § 4112.99.............................................................10, 41, 42, 43

Title VII, Civil Rights Act of 1964....………………………………10, 19, 20, 22, 23, 30, 32

## Rules

Fed. R. Civ. P. 8(a)(2)...………………………………………………………65, 69

Fed. R. Civ. P. 12(b)(6)…………………………………………………………3

Ohio Code of Judicial Conduct – Preamble…………………………………………………………20

Ohio Code of Judicial Conduct, Rule 1.1………………………………………………………...28

Ohio Code of Judicial Conduct, Rule 2.3(B)………………………………………....28, 41, 64, 65

Rule of Superintendence for the Courts of Ohio 4.01(A)……………………………….……..31

Rule of Superintendence for the Courts of Ohio 26.01……………………………………....61, 62

Rule of Superintendence for the Courts of Ohio 44……...…………………………………..61, 62

Rule of Superintendence for the Courts of Ohio 44(G)(1)…………………………..………..61, 62

Rule of Superintendence for the Courts of Ohio 45…..…………………………………………..61

## MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

In her almost sixteen years of service as a trial court judge in one of the largest and busiest trial courts in Ohio, there is one universal truth that Plaintiff has learned in her management of hundreds of civil cases – there are very few, if any, plaintiffs who possess an inherent desire to engage in the litigation process because it is inarguably an emotionally and mentally draining experience during which their integrity, motives, and veracity are questioned. Yet, plaintiffs participate in the process because they believe they have a legitimate grievance that has been ignored. Plaintiff in the present case is no exception to that universal truth. Indeed, Court Defendants began their memorandum in support by utilizing the words, "minutely", "extreme" and "unwieldy" to describe Plaintiff's recitation of an almost four-year ordeal that no person should have to experience and to explain away behavior that no person should have to endure at the hands of individuals who have taken an oath, both as administrators and judges, to uphold the law and to treat people fairly and impartially, and with dignity and respect. Despite these clear mandates and obligations, Court Defendants have gone to extraordinary lengths, not only to engage in overtly discriminatory acts based on race and gender, to create a hostile work environment, and to retaliate for Plaintiff's reporting of the same, but to then ostracize and isolate Plaintiff internally and to demoralize her publicly. To add further insult to this ongoing injury, Court Defendants categorize Plaintiff's allegations as "various anecdotes". (Motion to Dismiss, Doc. No. 29, PageID # 1650.) Merriam Webster defines anecdote as "a usually short narrative of an interesting, amusing, or biographical incident." Plaintiff can assure both this honorable Court and Court Defendants that there is nothing that has been amusing about any of her allegations and can further state without fear of contradiction that if *any* of the Court Defendants or their counsel had to face what Plaintiff has suffered for the past three years, eight months, three days – which is 44 months, 191.71 weeks or

1

1,342 days – then she doubts that any of them would find the circumstance to be either amusing or acceptable. Yet, instead of demonstrating the smallest level of contemplative consideration, Court Defendants classify the litigation as the manifestation of "poor working relationship with other officials and administrative staff (* * *)." (Motion to Dismiss, Doc. No. 29, PageID# 1650.) The casual and diminishing way in which Court Defendants even approach their responsive pleading is a continuing example of the intentionally tone deaf and hostile way in which they have handled what any insightful person would concede is a cataclysmic and intentional failure to treat individuals with basic decency, at best, and to adhere to the law, at worst.

It is curious to Plaintiff that she entered into an Agreed Stipulation for Extension of Time to File Responsive Pleading with Court Defendants on February 4, 2025. (Doc. No. 22, Page ID # 1146) whereby Court Defendants were required to file a responsive pleading to Plaintiff's Amended Complaint by no later than March 3, 2025. In the interim, Plaintiff was required to file a response in opposition to Franklin County Defendants' motion to dismiss and did so on February 23, 2025. (Response in Opposition, Doc. No. 25.) Perhaps by happenstance, many of the arguments made by Franklin County Defendants and in Plaintiff's response in opposition to the same have been reintroduced in Court Defendants' motion to dismiss. Since Court Defendants have referenced the motion to dismiss of Franklin County Defendants in an effort to bootstrap support for their own motion (Motion to Dismiss, Doc. No. 29, PageID # 1640, 1643, 1646), Plaintiff will reassert the position she took in response to Franklin County Defendants' motion to dismiss – that is, Court Defendants, similar to their litigation counterparts, have attempted to advance arguments for which facts don't matter to reach the flawed legal conclusion that Plaintiff has no case and, as such, her claims against them should be dismissed. But no matter how many times any Defendant restates the refrain, that's still not how this process works. Court Defendants do not have the legal

latitude to summarily categorize claims of race and gender discrimination, retaliation, and hostile work environment, as "poor working relationships". Neither should Court Defendants be granted the liberty to posit that "irrespective of the truth of the facts alleged, the Amended Complaint fails as a matter of law" (Motion to Dismiss, Doc. No. 29, PageID # 1640), when the requirements of Fed. Civ. R. (12)(b)(6) necessitate that facts actually do matter. Here, the facts of this matter clearly delineate how each and every Court Defendant has taken calculated and coordinated roles in either facilitating, ignoring, justifying, actively participating in, agreeing with or remaining silent about the facts giving rise to Plaintiff's claims. Given this context, it is no surprise that Court Defendants would suggest that having to review, consider and be accountable for behavior in which they willingly engaged, to Plaintiff's detriment, is a "task that would be highly burdensome." (Motion to Dismiss, Doc. No. 29, PageID # 1670.) As judges and administrators, however, a portion of Court Defendants' work is holding litigants and/or employees accountable for the decisions they make that violate external laws or internal court policies and procedures. In that regard, this honorable Court should not permit Court Defendants to be the beneficiaries of a "do as I say, not as I do" privilege, especially when it appears that they do not dispute the accuracy and veracity of the facts giving rise to Plaintiff's claims.

## II.    STATEMENT OF FACTS

Like Franklin County Defendants, Court Defendants have failed to fulfill their responsibility of outlining the factual predicate for their motion because they deem it an "unwieldy" task. (Motion to Dismiss, Doc. No. 29, PageID # 1640.) Plaintiff, though, remains undaunted. Because Court Defendants and Franklin County Defendants acted in concert in creating a discriminatory, hostile, and retaliatory work environment, Plaintiff will recite a large portion of the factual predicate and companion arguments articulated in her response in opposition to the

Franklin County Defendants' motion to dismiss.

Plaintiff has served as a FCCP-Gen Judge since April 6, 2009 (Amend Compl., Doc No. 12, ¶ 2, PageID # 716) and, for the first twelve years of her service, enjoyed a relatively respectful and discrimination-free relationship with the judges and administrators employed by the court, though there were anomalous circumstances that Plaintiff hoped were outlier situations. That hope and perception changed, however, in July 2021 when Plaintiff was elected as Administrative Judge and became the first woman and first Black woman to serve in that capacity. (Amended Compl., Doc. No. 12, ¶ 17, Page ID # 718.) Almost immediately, Plaintiff was subjected to disparate treatment by Court Defendants. This treatment included but is not limited to:

- Failing to meet with Plaintiff to discuss her responsibilities as Administrative Judge until just over a month before she began the role (Amended Compl., ¶¶ 23-29, Doc. No. 12, PageID # 718-719);

- Circumventing the FCCP-Gen courtwide initiative implemented by Plaintiff in her service as Adminsirative Judge to translate all criminal forms into Spanish, Nepali and Somali, and requiring a Court employee to translate forms in one courtroom without Plaintiff's knowledge or permission (Amended Compl., ¶¶ 196-208, Doc. No. 12, PageID # 739-740);

- Committing FCCP-Gen to participate in an event without first advising Plaintiff in her service as Administrative Judge, thereby requiring Plaintiff to undertake emergency measures to ensure that FCCP-Gen could participate so that Plaintiff would not be blamed for failing to do what was necessary to ensure participation (Amended Compl., ¶¶ 225-231, Doc. No. 12, PageID #743);

- Having two White male FCCP-Gen judges give her a list of Black women whom she should be more like while questioning a personnel decision that Plaintiff was entitled to make

(Amended Compl., ¶¶ 43-52, Doc. No. 12, PageID # 721-722);

- Being told by a White male FCCP-Gen judge in the presence of Defendant Bedsole that if he ever decided to "fu$%" her over, he would let her know before he did it (Amended Compl., ¶¶ 77-81, Doc. No. 12, PageID # 725-726);

- Questioning and undermining the authority granted to Plaintiff by Sup. R. 4.01 as enacted by the Supreme Court of Ohio (Amended Compl., ¶ 177-195, Doc. No. 12, PageID # 736-738);

- Failing to advise Plaintiff that she was accused of compromising security of FCCP-Gen records during a public meeting (Amended Compl.,¶¶ 84-94, Doc. No. 12, PageID # 726-727);

- Interfering with Plaintiff's ability to complete the duties for which she was elected by withholding staffing resources (Amended Compl., ¶¶ 452-461, Doc. No. 12, PageID # 770-771);

- Questioning the decisions of her personal staff and requiring information that was not required from other Court Defendant judges (Amended Compl., ¶¶ 167-169, Doc. No. 12,, PageID # 735; Amended Compl., ¶¶ 462-474, Doc. No. 12, PageID # 771-773);

- Accessing her computer without her knowledge or permission (Amended Compl., ¶¶ 380-381, Doc. No. 12, PageID # 762);

- Stating in a FCCP-Gen Committee meeting that diversity is not just skin color and that the Court Defendant was "tired of it being about skin color" (Amended Compl., ¶ 500 , Doc. No. 12, PageID # 776);

- Changing the process by which interpreters were requested and assigned without advising Plaintiff of the changes that had been made (Amended Compl., ¶¶ 522-527, Doc. No. 12,

PageID # 779-780);

- Challenging Plaintiff's assignment of prospective jurors in her service as Administrative Judge and conferring with other FCCP-Gen judges and employees regarding whether Plaintiff's decisions were permitted (Amended Compl., ¶¶177-195, Doc. No. 12, PageID #736-738);

- Preparing and filing a bad faith complaint under the FCCP-Gen Anti-Harassment Policy against Plaintiff for the purposes of unjustifiably removing her from the position of Administrative Judge and defaming her professionally and professionally (Amended Compl., ¶¶ 311-322, Doc. No. 12, PageID # 754-755);

- Proposing a blackmail offer to force Plaintiff to resign from the position of Administrative Judge with the threat of either litigation or a sham investigation (Amended Compl., ¶¶ 323-353, Doc. No. 12, PageID # 755-758);

- Advising Plaintiff that Court Defendant judges were prepared to remove her from the position of Administrative Judge if she chose to request an investigation of the bad faith complaint (Amended Compl., ¶¶ 372-373, Doc. No. 12, PageID # 761);

- Stating that it would be important to discuss to what extent FCCP-Gen wanted to investigate a White male Court Defendant judge who was accused of violating the FCCP-Gen Anti-Harassment Policy on four separate occasions but later advising Plaintiff that an investigation would occur if she did not resign as Administrative Judge (Amended Compl., ¶¶ 769-773, Doc. No. 12, PageID # 812-813);

- Instructing a FCCP-Gen employee to access Plaintiff's computer without her knowledge or permission (Amended Compl., ¶¶ 380-381, Doc. No. 12, PageID # 762);

- Failing to advise Plaintiff that she was entitled to legal representation under the FCCP-Gen

liability policy regarding the bad faith complaint (Amended Compl.,¶ 370, Doc. No. 12, PageID # 670);

- Failing to advise Plaintiff that she was the subject of a public record request regarding the bad faith complaint (Amended Compl., ¶¶ 382-387, Doc. No. 12, PageID # 762);

- Failing to search the computer and database records of FCCP-Gen judges to ensure full compliance with the public records request and allowing Court Defendant judges the ability to "self-select" what public records would be submitted (Amended Compl., ¶ 388, Doc. No. 12, PageID # 763);

- Contemplating and coordinating an effort to disallow Plaintiff's participation in FCCP-Gen committee meetings if she was not assigned to a committee, despite a historical practice that allowed any judge to participate in all committee meetings (Amended Compl., ¶¶ 410-420, Doc. No. 12, PageID # 765-767);

- Permanently deleting public records between Plaintiff and various Court Defendants when similar records among and between various Court Defendants still exist (Amended Compl., ¶ 398, Doc. No. 12, PageID # 764);

- Withholding and/or disallowing employee support for Plaintiff in the management of special jury pools for high profile cases (Amended Compl., ¶¶ 425-451, Doc. No. 12, PageID # 767-770);

- Advising Plaintiff that technology upgrades for FCCP-Gen judges would be scheduled based on seniority but scheduling upgrades for a Court Defendant with less seniority before Plaintiff (Amended Compl., ¶¶ 530-540, Doc. No. 12, Page ID # 780-781);

- Directing a FCCP-Gen employee to go into the office of Plaintiff's staff member without notice, knowledge or permission to take a picture of the staff member's printer (Amended

Compl., ¶¶ 572-584, Doc. No. 12, PageID # 785-786);

- Providing Plaintiff's private cell phone number to law enforcement personnel without Plaintiff's knowledge or permission (Amended Compl., ¶¶ 828-840, Doc. No. 12, PageID # 821-822);

- Failing to fulfill Duty Judge responsibilities during Court Defendant judges' assigned weeks and passing off the work to Plaintiff's scheduled duty weeks (Amended Compl., ¶¶ 542-548, Doc. No. 12, PageID # 781-782; Amended Compl., ¶¶ 839-840, Doc. No. 12, PageID # 822);

- Failing to undertake an internal investigation of Plaintiff's claims of race and gender discrimination, hostile work environment, and retaliation; (Amended Compl., ¶¶ 800-811, Doc. No. 12, PageID # 816-817; Amended Compl., ¶¶ 843-850, Doc. No. 12, PageID # 823-824);

- Refusing to meet with Plaintiff regarding her claims because an in-person meeting would not be "beneficial" (Amended Compl., ¶ 856, Doc. No. 12, PageID # 825);

- Refusing to implement a policies and procedures review that could have provided a second pathway for Plaintiff's claims to be investigated and casting various aspersion on Plaintiff's character during a Special Judges' Meeting by stating, *inter alia*, that Plaintiff had a "snowflake mentality" and needed to grow up and act like an adult (Amended Compl., ¶¶ 857-870, Doc. No. 12, PageID # 825-827);

- Requiring Plaintiff to explain her scheduled absences from the office while simultaneously not requiring a similar explanation from Court Defendant judges (Amended Compl., ¶¶ 984-988, Doc. No. 12, PageID # 842-843);

- Proposing modifications to the Anti-Harassment Policy that would have eliminated every

provision upon which Plaintiff's claims were based (Amended Compl., ¶¶ 947-961 , Doc. No. 12, PageID # 838-840);

- Questioning Plaintiff's Black staff about their available leave time while simultaneously approving leave time for White staff of Court Defendant judges who did not have leave time available (Amended Compl., ¶¶ 167-176, Doc. No. 12, PageID # 735-736);

- Admitting that Plaintiff is intentionally excluded from conversations and meetings that discuss FCCP-Gen business, which she is both obligated and permitted to attend (Amended Compl., ¶ 636, Doc. No. 12, PageID # 792);

- Accessing Plaintiff's computer system to facilitate the fulfillment of a public record request involving Plaintiff without advising FCCP-Gen counsel as required by court policy (Amended Compl., ¶¶ 926-928, Doc. No. 12, PageID # 835);

- Proposing that Plaintiff resolve her issues through mediation that FCCP-Gen counsel advised Plaintiff would be too political and not beneficial to a thoughtful resolution of Plaintiff's claims (Amended Compl., ¶¶ 935-941, Doc. No. 12, PageID # 836-837);

- Refusing to fulfill a series of record requests from Plaintiff (Amended Compl., ¶¶ 989, 995-996, Doc. No. 12, PageID # 843-844);

- Refusing to provide a response to Plaintiff's proposal to facilitate mediation, consistent with the suggestion first raised by Defendant Hummer (Amended Compl., ¶¶ 1012-1031, Doc. No. 12, PageID # 845-847);

- Failing to advise Plaintiff that cases had been transferred to her docket (Amended Compl., ¶¶ 967-975, Doc. No. 12, PageID # 841-842);

- Failing to provide Plaintiff's staff with a key to access their office (Amended Compl., ¶¶ 1000-1011, Doc. No. 12, PageID # 844-845);

- Deleting continuance entries for criminal matters on Plaintiff's docket, thereby impacting constitutional rights to speedy trial (Amended Compl., ¶¶ 1032-1039, Doc. No. 12, PageID # 847-848);

Based on this and more, Plaintiff filed her 151-page Amended Complaint asserting counts for: 1.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 2.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 3.) Violation of Civil Rights, 42 U.S.C. § 1983; 4.) Racketeer Influenced and Corrupt Practices Act (RICO), 18 U.S.C. §§ 1961-1968; 5.) Unlawful Discrimination and Retaliation: Ohio Revised Code §§ 4112.02 and 4112.99; 6.) Defamation against Defendant's Jennifer Goodman and Cameo Davis only; and 7.) Destruction of Public Records, O.R.C. § 149.351. Additionally, Plaintiff seeks compensatory and exemplary damages; injunctive and equitable relief; interest; costs; and fees under Title VII, 42 U.S.C. §2000e, the Civil Rights Act of 1991, 42 U.S.C. §1981a, the Ohio Civil Rights act, O.R.C. §4112.01, *et seq.*, 42 U.S.C. §1981, 42 U.S.C. §1983, federal common law and the common law of Ohio. A portion of her core allegations is that all Defendants condoned, ignored, ratified, and/or engaged in discriminatory, retaliatory, and hostile conduct and a pattern of corrupt activity in their capacity as managers of FCCP-Gen protocols, policies, and procedures, including procedures to address bad faith complaints filed by employees, and were engaged in a fraudulent scheme and enterprise designed to violate law and deprive Plaintiff of her legal and constitutional rights.

## III. LAW AND ARGUMENT

### A. To Be Plausible, a Complaint Need not Allege the Evidentiary Framework for Proving Discrimination or Retaliation.

In their motion to dismiss, Court Defendants fail to even articulate the standard by which it must be assessed. In order to survive a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is considered plausible where the facts that are pled allow the Court to infer that the defendant is potentially liable for the misconduct alleged. *Id.* Furthermore, in *Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002), the Court held unanimously that the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not a pleading requirement. As such, a plaintiff need not, therefore, plead facts establishing a *prima facie* case in order to state a claim for relief. *Id.*

Instead, an employment discrimination plaintiff satisfies her pleading burden by drafting " "'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Swierkiewicz* at 508 (citing Fed. Rule Civ. P. 8(a)(2)). The "plausibility" standard from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), must still be satisfied, but the Supreme Court made it clear in *Twombly, supra* at 569-570, in rejecting the argument that its plausibility analysis "runs counter to *Swierkiewicz*."

A major concern in both *Twombly* and *Iqbal* was that "factual content" had to be alleged, rather than mere conclusions stated and legal standards parroted. *Twombly*, 550 U.S. at 570 (plausibility "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). For example, in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013), dismissal of an Equal Credit Opportunity Act discrimination claim was affirmed where the plaintiffs alleged a 'belief' that a bank had refinanced the loans of 'delinquent white borrowers' but offered nothing to identify them.

Rather, a court measures the "factual content" alleged in the Complaint, informed by its

"judicial experience and common sense," to determine whether a factfinder could "draw the reasonable inference" that Defendants discriminated (or retaliated)." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citations omitted). In contrast to *16630 Southfield Ltd. P'ship*, Plaintiff has provided hundreds of pages of exhibits that clearly outline how: 1.) she received minimal training and information regarding her service as Administrative Judge; 2.) she was counseled about being the "wrong" kind of Black woman by two White male judges; 3.) she was constantly questioned and challenged by Court Defendants regarding the decisions she made regarding the management of her work, as well as her personal and assigned staff before, during, and after her service as Administrative Judge; 4.) she was subjected to a different work and investigative standard from her White counterparts; and 5.) she was blackmailed and forced to resign as Administrative Judge as distinguished from other FCCP-Gen Judges who have been accused of violating court policies. To then have Court Defendants suggest that this factual predicate is nothing more than a series of amusing stories ("anecdotes") or minutely detailed events is an intentional and material misrepresentation of the facts.

*Swierkiewicz,* 534 U.S. at 512 further states, "Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).

*Iqbal*, 556 U.S. at 678, explained that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A critical distinction was drawn: "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant acted unlawfully." *Id.*

In assessing the conformance of Plaintiff's Amended Complaint with this standard, it is a requirement that Plaintiff's factual allegations are accepted as true. Those factual allegations show that Plaintiff is a thrice elected judge who is now one of the most senior members of FCCP-Gen and was elected to serve as Administrative Judge in 2021. (Amended Compl., ¶¶ 1-2, Doc. No. 12, PageID # 716; Amended Compl., ¶ 17, Doc. No. 12, PageID # 718.) The factual allegations also demonstrate that, after her election in July 2021, Plaintiff was subjected to overt discrimination based on her race and gender by Court Defendants and was the subject of a coordinated and concerted effort by the same group of Defendants to circumvent her leadership service as Administrative Judge by subjecting Plaintiff and her staff to different requirements and expectations that frustrated the ability for them to perform work responsibilities; questioning Plaintiff's methods for managing her work; withholding personnel support and resources from Plaintiff; removing her from the Administrative Judge position by blackmailing her with the threat of a sham investigation, if an investigation occurred, at all; and continuing to create a hostile work environment after forcing her to resign and then retaliating against her for reporting the same. More concisely, the factual allegations outline that Defendants Frye and O'Donnell developed a plan with Defendant Goodman to blackmail Plaintiff into resigning from the position of Administrative Judge. Then, that the plan was advanced by one "lead" Court Defendant judge and other Court Defendants who advised Plaintiff's counsel at the time that almost every FCCP-Gen judge was prepared to remove Plaintiff from the position of Administrative Judge, without an investigation into the truth of Goodman's bad faith complaint. As a result, Plaintiff was unjustifiably forced to resign from the Administrative Judge position.

Further, Plaintiff's factual allegations confirm that Defendant Goodman and other Court

Defendants had either actual or constructive knowledge of circumstances wherein White FCCP-Gen Judges were accused of violating FCCP-Gen policies. Despite this knowledge, White FCCP-Gen Judges were never subject to Special Judges' Meetings to discuss a corrective course of action in the same manner that Plaintiff was subjected to a humiliating course of action based on advice from the court's counsel. As such, it appears that the allegations of Plaintiff's Amended Complaint are closer to or at probability rather than anecdotal or minutely detailed possibility, as Court Defendants suggest.

As *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555), explained, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Here, the background evidence Plaintiff has alleged is not speculative. The hundreds of pages of exhibits that contain Court Defendants unfiltered words, actions, and knee-jerk and/or ever-evolving positions are not speculative. The demonstrable ways in which Plaintiff was treated differently before, during, and after her service as Administrative Judge are not speculative. The consistent manner in which Court Defendants hindered the ability of Plaintiff and her staff to manage their daily work responsibilities is not speculative. The humiliating and unprecedented ways in which Defendant Goodman's unfounded and unsupported allegations were mismanaged – from the threat of blackmail directed to Plaintiff, to Defendants Frye, O'Donnell and Davis, as Director of Human Resources, failing to provide instruction or information regarding Plaintiff's ability to receive representation under the FCCP-Gen liability policy, to the representation made by a Court Defendant judge that all Court Defendant judges were prepared to remove Plaintiff from the Administrative Judge position without an investigation if she did not resign - are not speculative.

14

The intentional way in which Court Defendant administrators permanently deleted and destroyed public records is not speculative. The unwillingness of Defendant K. Brown, in her service as Administrative Judge, to either meet with or discuss Plaintiff's claims because, from her unsupported perspective, an in-person meeting would not be "beneficial" is not speculative. The diminishing decision to humiliate Plaintiff by engaging in childlike name-calling and questioning her mindset and motives are not speculative. The purposeful choice to exclude Plaintiff from conversations and information related to FCCP-Gen business for which she is responsible and accountable is not speculative. Plaintiff receiving a roll call of Black woman whom she should emulate by two White Court Defendant judges is not speculative. Having a White male Court Defendant judge suggest in the presence of Defendant Bedsole that he could "fu*#" Plaintiff over is not speculative. Having Court Defendant administrators manufacture a narrative in a bad faith complaint to suggest that Plaintiff, herself, had engaged in racist practices because her prior White staff chose to pursue new employment opportunities is not speculative. Requiring Plaintiff to explain her claims of race and gender discrimination, hostile work environment, and retaliation to Court Defendants judges so that they could discuss and decide *if potentially* an investigation would be launched is not speculative. And the enduring physical, mental, emotional, and professional consequences that Plaintiff has endured since 2021 are certainly not speculative.

In other words, Plaintiff's Amended Complaint provides Court Defendants with "fair notice of what the (* * *) claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). And, as with every motion to dismiss, Court Defendants bear the burden of showing that Plaintiff has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir, 2007) (citing *Carver v. Bunch*, 946

F.2d 451, 454-55 (6th Cir. 1991)).

**B. The Truth of Plaintiff's Factual Allegations Must Be Presumed When Analyzing a Motion to Dismiss.**

The purpose of a motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). That purpose is why a deferential measure of the factual allegations is required. In ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quotation omitted). *Accord Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted).

Courts "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'– 'that the pleader is entitled to relief.' " *Id.* at 679 (citation omitted). The depth of detail in Plaintiff's Amended Complaint far exceeds "mere conclusory statements" and reaches beyond plausibility.

**C. Court Defendants Are Not Entitled to Eleventh Amendment Protections Because Their Actions Violated Plaintiff's Constitutional Rights.**

In their motion, Court Defendants assert, "Plaintiff's Amended Complaint is not clear as to the capacity in which she has sued the Court Defendants." (Motion to Dismiss, Doc. No. 29,

16

PageID # 1641.) However, even a cursory reading of the Preliminary Statement in Plaintiff's Amended Complaint would have quickly eliminated any uncertainty. More concisely, the Preliminary Statement explains that the litigation is being brought against Court Defendants, "in their personal capacities for their violations of equal protection, procedural substantive due process guarantees of the Fourteenth Amendment and in their official capacities for prospective injunctive relief." (Amended Compl., Doc. No. 12, PageID # 715.) Despite this short and concise statement that explains the foundation of the litigation, Court Defendants argue that Plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment of the U.S. Constitution, as a suit against them in that capacity "is the equivalent of a claim against the Franklin County Court of Common Pleas itself." (Motion to Dismiss, Doc. No. 29, PageID # 1641.)

While Court Defendants cite *Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994) in support of their argument, both their argument and reliance on the *Matthews* decision are misplaced. As previously stated, Plaintiff differentiated her claims against Court Defendants into two categories – personal capacity for their violations of Plaintiff's constitutional rights and official capacity for prospective injunctive relief. Plaintiff's litigation construct is supported by *Ex Parte Young,* 209 U.S. 123 (1908), in which the Court established an exception to state sovereign immunity under the Eleventh Amendment and permitted suits against state officials in federal court. Specifically, the Court reasoned:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal

17

Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. See *In re Ayers, supra*, page 507. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality with reference, at least, to the Federal Constitution be first raised in a Federal court that court, as we think is shown by the authorities cited hereafter, has the right to decide it to the exclusion of all other courts.

(Emphasis added.) *Id*. at 159-60. *See also Okpalobi v. Foster,* 244 F.3d 405, 414-415 (5th Cir. 2001) ("Thus, *Young* solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while simultaneously emphasizing the requirements that the officers have 'some connection with the enforcement of the act" in question or be "specially charged with the duty to enforce the statute' and be [threatening] to exercise that duty." (Internal citation omitted.)); *Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.', citing *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Here, Plaintiff seeks permanent injunctive relief to enjoin Court Defendants and their officers, agents, employees, and all persons in active participation from engaging in any employment practices that discriminate in any way. (Amended Complaint, Doc. No. 12, PageID # 861-862), which satisfies the straightforward inquiry contemplated in *Young*. Moreover, Plaintiff's allegations against Court Defendants for constitutional violations arise in a personal capacity and, as such, Eleventh Amendment protections are not applicable. Consequently, Court Defendants argument is without merit.

18

**D. Plaintiff's Allegations Are Permitted Under Title VII.**

**1. As a FCCP-Gen Employee, Plaintiff Is Entitled To Title VII Relief for Her Claims of Race and Gender Discrimination, Hostile Work Environment, and Retaliation.**

Court Defendants argue that, because Plaintiff is an elected official, she is excluded from the definition of employee under 42 U.S.C. § 2000e(f) and, as such, her Title VII claim must fail as a matter of law.[1] (Motion to Dismiss, Doc. No. 29, PageID # 1643.) The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. *Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir. 1983), citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44-45, 94 S.Ct. 1011, 1017-1018, 39 L.Ed.2d 147 (1974); *Tipler v. E.I. duPont de Nemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971). To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. *Armbruster*, *supra*, at 1336, *citing Tipler v. duPont de Nemours and Co.,* 443 F.2d at 131. The impact of this construction is the broad interpretation given to the employer and employee provisions. *Id*., citing *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980); *Baker v. Stuart Broadcasting Co.,* 560 F.2d at 391; *see Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1340-42 (D.C. Cir. 1973); *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S. Ct. 1127, 1132-35, 71 L.Ed.2d 234 (1982) (limitations provisions).

Just like Franklin County Defendants, Court Defendants ask this Court to focus solely on the first half of the statutory definition. However, it is important to review the first half of the

---

[1] Similar to Franklin County Defendants, Court Defendants do not dispute that Plaintiff has pled sufficient facts supporting her Title VII claims, other than to argue that she is not an employee. As such, the remaining Title VII elements are not addressed.

19

definition in concert with the second half, which states, "The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision."

While Court Defendants contend, "Plaintiff may mistakenly claim that she does not fall within this exemption based on a strained interpretation of Ohio's definition of 'civil service' under R.C. 124.01" (Motion to Dismiss, Doc. No. 29, PageID# 1643), the plain text of the statute is unmistakable. Ohio Revised Code § 124.01 plainly provides, "'Civil Service'" includes all offices and positions of trust or employment in the service of the state and in the service of the counties, cities, city health districts, general health districts, and city school districts of the state. (Emphasis added.) Moreover, the Ohio Code of Judicial Conduct, which governs the conduct of Plaintiff and Court Defendant judges, states in its Preamble:

> An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the rules contained in this code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

For almost sixteen years, Plaintiff has served dutifully as a FCCP-Gen judge, an office that Court Defendant judges certainly should not dispute is a position of trust since they hold the same position, and that Court Defendant administrators should concede is a public trust based on the vast expanse of work Plaintiff is constitutionally and statutorily obligated to manage. Further, the Code of Judicial Conduct, which also governs Plaintiff's service, emphasizes the public trust component of this position. Consequently, Plaintiff qualifies as an employee for purposes of Title VII analysis. Even though this may be an uncomfortable statutory truth for Court Defendants to accept, the Ohio Legislature did not find it a strain to

20

adopt this language.

This conclusion is bolstered by *City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024). In that case, the appellant, who served as an elected member for the appellee's city council, filed a counterclaim alleging discrimination based on gender and sexual orientation, hostile work environment, and retaliation pursuant to the Elliot-Larsen Civil Rights Act ("ELCRA"). The appellee filed a motion for summary disposition, arguing that, as an elected official, the appellant was not an employee and, thereby, prohibited from protections contemplated under the ELCRA. The trial court granted the motion, however, on appeal, the court reversed the lower court's decision, writing, "[I]n order to plead a valid workplace discrimination claim under Section 2 of the ELCRA, a complainant must plead that he or she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Id,* citing *Smith v Goodwill Industries of West Mich, Inc.*, 243 Mich 438, 448; 622 NW2d 337 (2000) (citation omitted) The court, relying on *McClements v Ford Motor Co.*, 473 Mich 373, 386-387; 702 NW2d 166 (2005), amended in part 474 Mich 1201 (2005), then reasoned:

> Although the City argued, and the trial court found, that Miller was not an "employee" of the City and that no "employment relationship" existed, the plain language of the statute does not limit employment discrimination claims to employees. As our Supreme Court observed in McClements, "MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. . . . Accordingly, to limit the availability of relief under the [EL]CRA to those suits brought by an employee against his or her employer is not consistent with the statute." *McClements*, 473 Mich at 386. The Court in *McClements* therefore held that "a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment." Id. at 389.

> Applying *McClements* to this case, we conclude that irrespective of whether Miller, as an elected official, was an "employee" of the City, he certainly had employment and alleged that the City affected or controlled a condition of his employment. Therefore, we conclude that Miller pleaded a viable claim under section 2 of the ELCRA.

The City points out that the ELCRA is based on Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq., and that our Supreme Court has encouraged using federal precedent interpreting Title VII as guidance in interpreting the ELCRA. *Rouch World*, 510 Mich at 411. Further, the City notes that Title VII explicitly exempts from its definition of "employee" "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 USC § 2000e(f).

The City is correct that the definition of "employee" found in 42 USC § 2000e(f) excludes elected officials and certain other individuals. This exclusion has been held to preclude such persons from bringing certain employment discrimination claims under Title VII. *See, e.g., Crumpacker v Kansas Dep't of Human Resources*, 474 F3d 747 (CA 10, 2007) (noting that "Title VII outlines four classes of persons who are exempt from its protection: (1) elected officials; (2) persons chosen by an elected official to be on such official's personal staff; (3) "appointee[s] on the policy making level"; and (4) persons serving as an immediate adviser to the elected official with respect to the constitutional exercise of the powers of the official's office."). However, we note not only that we are bound by our Supreme Court's holding in *McClements*, but that Title VII, using language similar to the ELCRA, prohibits an employer from taking certain actions against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," see 42 USC § 2000e-2(a)(1), and other actions against "employees" or "applicants" based on those same characteristics, see 42 USC § 2000e-2(a)(2). Therefore, it does not appear that the definition of "employee" found in Title VII would necessarily bar all employment discrimination claims from elected officials. Indeed, the exclusion cited by the City contains its own carve-out for "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Moreover, when analyzing Title VII discrimination claims, certain government employees may be able to pursue such claims under the Government Employee Rights Act, 42 USC 20003-16a et seq., or other similar statutes, notwithstanding their exclusion from the definition of "employee." See 42 USC § 2000e-16c. In short, the definition of "employee" under Title VII is part of a complex network of federal legislation, and should be considered in that context, rather than merely reading the text of 42 USC § 2000e(f) (defining "employee") in isolation. *See Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (stating that "[a] court does not construe the meaning of statutory terms in a vacuum . . . [r]ather, we interpret the words in their context and with a view to their place in the overall statutory scheme") (quotation marks and citations omitted).

*Id*.

While the *Miller* decision's focus is an interpretation of the ELCRA, the discussion and analysis of Title VII is both relevant and applicable to Plaintiff's case. Here, the statutory

22

construct in Ohio Revised Code § 124.01 provides a "carve-out" for employees who hold "positions of trust" in the service of counties, which precisely describes Plaintiff. Moreover, if this honorable Court grants Plaintiff's motion for leave to file second amended complaint *instanter*, to which Court Defendants filed no response in opposition, then it will be beyond dispute that Plaintiff is a FCCP-Gen employee as specifically defined and delineated in the court's Code of Ethics and Conduct. Concisely, FCCP-Gen's own internal policy, reviewed and approved by Defendants Hummer and Dean, define Plaintiff as an employee. Indeed, it would be illogical for FCCP-Gen to say that Plaintiff <u>is</u> an employee for purposes of ethics and conduct (including the disallowance of harassing and bullying behavior), while simultaneously suggesting that Plaintiff <u>is not</u> an employee when she is the subject of the same kind of harassing and bullying behavior. But even without that incontrovertible proof, it is beyond dispute that Court Defendants' argument regarding the inapplicability of Title VII to Plaintiff's claims is not well-taken.

### 2. Because Plaintiff's Allegations Assert Continuing Violations Under Title VII, Her Claims Are Not Time-Barred.

Court Defendants further assert that, even if Plaintiff's claims are covered by Title VII, which they are, they are time-barred under 42 U.S.C. § 2000e-5(e)(1) since her EEOC Charge was not filed within, at most, "three hundred days after the alleged unlawful employment practice occurred." (Motion to Dismiss, Doc. No. 20, PageID # 1119.)

42 U.S.C. §2000e-5(e)(1) states:

**Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system**

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter,

except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Court Defendants' position might be accurate if Plaintiff had asserted that a <u>single,</u> discrete unlawful employment practice had occurred. But that is literally not the case. Rather, the allegations asserted by Plaintiff demonstrate an ongoing pattern of discriminatory, hostile, and retaliatory behavior that, in truth, extends even to the filing of this pleading. Consequently, Plaintiff's claims are not time-barred. Moreover, the Preliminary Statement of Plaintiff's Amended Complaint plainly states, "The allegations and claims involve timely offenses and also <u>continuing violations</u> which serve to toll the applicable statute of limitations (Emphasis added.) (Amended Compl., Doc. No. 12, PageID # 716.)

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the respondent alleged "that he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment." *Id.* at 104. In noting that 42 U.S.C. 2000e-5(e)(1) requires an aggrieved party to file a charge with EEOC within either 180 or 300 days after the alleged unlawful practice occurred, the issue presented to the Supreme Court for its consideration was "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside this statutory time period." *Id.* at 105. The Court's analysis then distinguished Title VII claims related to discrete discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire", which the Court noted are "easy to identify" (*Id.* at 114) as contrasted with continuing violations or a hostile work

environment. Specifically, the Court wrote:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. As the Court stated in [*Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21 (1993)], "[t]he phrase 'terms, conditions, or privileges of employment' [of 42 U. S. C. § 2000e-2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." 510 U. S., at 21 (some internal quotation marks omitted) (quoting *Meritor,* 477 U. S., at 64, in turn quoting *Los Angeles Dept. of Water and Power* v. *Manhart,* 435 U. S. 702, 707, n. 13 (1978)).10 "Workplace conduct is not measured in isolation .... " *Clark County School Dist.* v. *Breeden,* 532 U. S. 268, 270 *(2001) (per curiam).* Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris,* 510 U. S., at 21 (citations omitted).

> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.,* at 23. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U. S. C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

> That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan* at 115-118. *Accord Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009). *See also Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000) ("Every incident of discrimination before the limitations period need not be of the same type, so long as there is a corresponding type of discrimination within the period.")

Based on this analysis, the *Morgan* Court ultimately concluded, "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. Neither holding, however, precludes a court from applying equitable doctrines that may toll or limit the time period." *Morgan* at 122.

Court Defendants are correct that Plaintiff alleges she filed her EEOC Charge on May 23, 2024. (Motion to Dismiss, Doc. No. 29, PageID #1644.) However, for some reason that remains a mystery to Plaintiff, Court Defendants, identical to Franklin County Defendants, assert that Plaintiff alleges she was discriminated against "while she was the administrative judge." (Motion to Dismiss, Doc. No. 29, PageID # 1644.) Once again, this simply isn't true. A careful reading of both Plaintiff's EEOC Charge and Amended Complaint reveal Plaintiff alleged that her election as Administrative Judge served as the catalyst for a series of continuing violations that subjected her to a hostile work environment, discriminatory behavior, and retaliation similar to what was contemplated by the holding of the *Morgan* decision. In other words, Plaintiff asserted that her work environment was "permeated with discriminatory intimidation, ridicule, and insult"

26

that occurs on a daily basis and is intended both to humiliate and to embarrass Plaintiff. As such, the allegations in Plaintiff's Amended Complaint provide context for her claims of continuing violations, establish both other acts of discrimination against her, as well as her consistent opposition to discrimination and retaliation she reasonably perceived and experienced, and support the plausibility of her claims.

Even assuming, *arguendo*, the acts articulated by Plaintiff do not constitute a timely charge, which they do, it is well-settled that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977).

But what is most unsettling to Plaintiff is that Court Defendants harp on the fact that she has filed litigation against "fourteen of her fellow past and present common pleas judges, four court administrators, two assistant county prosecutors, and Franklin County itself" (Motion to Dismiss, Doc. No. 29, PageID# 1640, 1643), yet never acknowledge or consider that these same "fourteen fellow judges and four court administrators" concealed, coordinated, created, encouraged, facilitated, ignored, laughed about and/or participated in the ongoing and pervasive discriminatory, retaliatory and hostile behavior, as noted in this pleading, and said and did nothing to stop this onslaught of horrific hostilities. To now argue that they should be absolved of their respective roles and responsibilities in sanctioning this unlawful behavior is not supported by well-settled law.

In a final attempt to justify this argument, Court Defendants contend that neither Court

Defendant judges nor administrators can be considered as Plaintiff's employer for purposes of Title VII analysis. (Motion to Dismiss, Doc. No. 29, PageID # 1643.) However, as the persons who are responsible for approving, adopting, and implementing FCCP-Gen procedures and policies regarding the process whereby an employee's claims of illegal behavior, like discrimination, hostile work environment, and retaliation are resolved, Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior. This is confirmed in Rule 2.3(B) of the Ohio Code of Judicial Conduct, which states, "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so." *See also* Rule 1.1, Ohio Code of Judicial Conduct ("a judge shall comply with the law".)

Court Defendants concede that Court Defendant administrators work *for* the Court (Motion to Dismiss, Doc. No. 29, PageID # 1643) and, as such, the Code of Judicial Conduct requires Court Defendant judges to prohibit <u>court staff</u> from engaging in discriminatory behavior based on race and gender. Despite this directive, Court Defendant administrators, who are court staff, encouraged, and permitted FCCP-Gen probation department employees (additional court staff they supervise) to both question and challenge Plaintiff about decisions she was both required and permitted by law to make regarding cases assigned to her docket. (Amended Compl., ¶¶ 133-138, Doc. No. 12, PageID # 731-732; Amended Compl., ¶¶ 590-595 Doc. No. 12, PageID # 787; Amended Compl., ¶¶697-703, Doc. No. 12, PageID # 799-800.) Indeed, Plaintiff agrees that no court administrator does now or has ever had a supervisory

position over Plaintiff. Yet Defendant Frye went to extraordinary lengths to suggest to Plaintiff that her service as Administrative Judge had to be handled in the manner that Defendant Goodman preferred. Perhaps, if Frye had honored what Court Defendants now attempt to argue, then a portion of this litigation would have never been necessary.

### E. As a FCCP-Gen Employee, Plaintiff Has The Benefit of a Contractual Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well-Founded.

Regarding Count Two of Plaintiff's Amended Complaint, Court Defendants, while initially arguing that they did not know in what capacity Plaintiff asserted her claims (Motion to Dismiss, Doc. No. 29. PageID # 1641), now argue that Plaintiff has not alleged she is party to any contract and the impairment of such contract. (Motion to Dismiss, Doc. No. 29, PageID # 1645.) Additionally, Court Defendants assert that an elected office does not constitute a property interest giving rise to a "contractual" relationship under § 1981. (Motion to Dismiss, Doc. No. 29, PageID # 1645.) As such, they conclude that Plaintiff's claim under 42 U.S.C. §1981 must fail as a matter of law.[2] (Motion to Dismiss, Doc. No. 29, PageID # 1644.) In further support and consistent with what appears to be their litigation custom, Court Defendants cite arguments made by Franklin County Defendants in support of their position. (Motion to Dismiss, Doc. No. 29, PageID # 1646.)

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. *Suero v. Motorworld Auto. Grp., Inc.*, CIVIL ACTION NO. 3:16-cv-00686, 11 (M.D. Pa. Jan. 31, 2017), citing *Rivers v. Roadway Exp., Inc*., 511 U.S. 298, 302 (1994). In order to state a

---

[2] On April 16, 2019, FCCP-Gen approved and adopted amendments to a courtwide policy titled, "Code of Ethics and Conduct. Under § I, the purpose of the policy is to "establish expectations of acceptable workplace behavior and performance for all employees. Under § III(A)(2), the policy states, "Employees must, at all times, abide by Ohio's ethics laws located within the Ohio Revised Code chapters 102 and 2921, as well as the Code of Judicial Conduct." (Emphasis added.) Thus, Plaintiff is an employee. This point is addressed in Plaintiff's motion for leave to file second amended complaint, *instanter*.

claim under § 1981, a plaintiff must plead sufficient facts in support of the following elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *Id*., citing *Brown v. Philip Morris Inc*., 250 F.3d 789, 797 (3d Cir. 2001). Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981, see *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), so long as there is "some affirmative link to causally connect the actor with the discriminatory action." *Jean-Louis v. Am. Airlines*, No. 08-CV-3898, 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010) (citation omitted). However, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Id*., citing *Brown v. J. Kaz, Inc*., 581 F.3d 175, 181 (3d Cir. 2009).

Case law is clear that Court Defendants can be held individually liable for a violation of § 1981 as contemplated in *Cardenas, supra*. Specifically, Plaintiff satisfies the three elements outlined in *Suero, supra* – as a Black woman, she is a member of a racial minority; Court Defendants intended to subject Plaintiff to discriminatory behavior, as there is no evidence of any White FCCP-Gen judge being subjected to the actions that Plaintiff has endured and continues to endure; and, because of this discriminatory behavior, Court Defendants modified the terms of Plaintiff's employment to her detriment. Moreover, the Code of Ethics and Conduct, which is currently being considered by this honorable Court as a basis for Plaintiff's motion for leave to file second amended complaint *instanter* unequivocally identifies Plaintiff as an employee in her service as a FCCP-Gen judge. It is without question that all court employees are entitled to protections against discriminatory behavior based on the contractual employee relationship. While Plaintiff recognizes that this Court has not ruled on her ability to advance this

argument, it is important to emphasize what Court Defendants already know – a valid, contractual relationship exists on a number of levels.

> Moreover, in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), the Court noted:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In this case, Plaintiff was elected to the position of Administrative Judge in July 2021. Under Rule of Superintendence 4.01(A) for the Courts of Ohio, an administrative judge shall "Be responsible for and exercise control over the administration, docket, and calendar of the court or division." Here there is an independent source from an existing rule that creates a property interest in the position of administrative judge. Despite this, Defendants Frye and O'Donnell interfered with this property interest by concocting a plan of blackmail to force Plaintiff to resign from the position to which she had been elected. (Amended Compl., ¶¶ 311-350, Doc. No. 12, PageID # 754-758.) Thereafter, other Court Defendants advised Plaintiff's then counsel that, if she did not resign the position, then she would be removed without an investigation or opportunity to be heard. (Amended Compl., ¶¶ 372-373, Doc. No. 12, PageID # 761.) These substantive and procedural violations, based on the Rules of Superintendence for the Courts of Ohio, as well as Plaintiff's status as an employee provide the requisite legal foundation for her claims under § 1981.

31

**F. Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983.**

    **1. None of Plaintiff's Claims are Time-Barred.**

Court Defendants also attempt to argue that Plaintiff cannot bring a claim for employment discrimination under 42 U.S.C. § 1983 as a substitute for her Title VII claim (Motion to Dismiss, Doc. No. 29, PageID # 1646) and that, even if it is distinct, which it is, it is barred by the statute of limitations. (Motion to Dismiss, Doc. No. 29, PageID # 1647.) As an initial basis for this position, Court Defendants make the conclusory statement that "Count Three is in essence a Title VII employment discrimination claim" and, therefore, must be dismissed. (Motion to Dismiss, Doc. No. 29, PageID # 1646.) Beyond this bare assertion, Court Defendants provide no other basis. The sad reality of this circumstance, however, is that Plaintiff was subject to discrimination under various federal statutes based on the same insidious and pervasive discriminatory behavior. Indeed, the problem is not what Court Defendants attempt to label as an identical claim. Rather, the real issue is Court Defendants' identical and repeated behavior that violated myriad state and federal statutory provisions. The fact of the matter is that Plaintiff has no obligation to pick and choose the basis for relief that the persons creating the discriminatory, hostile, and retaliatory behavior prefer. In actuality, Plaintiff has the right and latitude to assert as many bases as possible for relief created by this almost four year nightmare.

Court Defendants further argue, just like their Franklin County Defendant counterparts, that "a significant portion of Plaintiff's case is built on the allegation that she was forced to resign her position as Administrative Judge because of racial and gender animus" on November 14, 2022 and, as such, "facts and allegations occurring during her time as Administrative Judge – including the circumstances of her resignation – are outside the statute of limitations and cannot be considered for the purpose of assessing whether the Amended Complaint states a

claim" since Plaintiff did not file her complaint until November 26, 2024, which was more than two years from her forced resignation. (Motion to Dismiss, Doc. No. 29, PageID # 1647.) As an initial matter, Plaintiff will note that, in making this argument, Court Defendants have indirectly acknowledged that any claims beginning November 26, 2022 through the filing of this pleading are valid. Plaintiff agrees that claims from November 26, 2022 are cognizable and appreciates the indirect acknowledgement and agreement from Court Defendants. Plaintiff further submits, however, that her § 1983 claims prior to November 26, 2022 are also actionable and properly before this Court.

While Court Defendants make a conclusory statement that *Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281 (6th Cir. 2019) establishes a two-year limitations period for personal injury claims, that court wrote:

> This appeal, however, is not about the length of the limitations period, which both parties agree is two years. Rather, it turns on when the limitations period starts to run, and federal law holds the answer to that question. *See Wallace v. Kato* , 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Under federal law, the statute of limitations period begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner* , 742 F.2d 262, 273 (6th Cir. 1984) (citations omitted). Therein lies the heart of this dispute.

*Id* at 292. Similarly, the heart of this litigation is the time at which Plaintiff knew or had reason to know of the injury. However, in the context of discriminatory, retaliatory, and hostile behavior that is ongoing and pervasive, as compared to discrete acts of discrimination, Plaintiff posits that the two year statute of limitations should be extended. In *Cornwell v. Robinson*, 23 F.3d 694, 703-4 (2d Cir. 1994), the Court noted, "When a plaintiff experiences a "'continuous practice and policy of discrimination,'" however, "'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Gomes v. Avco Corp.,*964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. International Telephone*

*Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)); *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir. 1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Thus, Plaintiff contends that every allegation that occurred prior to November 26, 2022 against Court Defendants can be considered by this honorable Court and none of those allegations is barred by the statute of limitations.

### 2. Court Defendants Are Not Entitled to Qualified Immunity for Plaintiff's § 1983 Claims.

It is unfortunate that Court Defendants have committed themselves to the erroneous position that Plaintiff's forced resignation from the Administrative Judge position was voluntary and that even presuming the facts are true, which Court Defendants *never* dispute at any point in their Motion, Plaintiff has not established that Court Defendants violated clearly established law. (Motion to Dismiss, Doc. No. 29, PageID # 1649-1650.) To support this position, Court Defendants reduce Plaintiff's allegations to "various anecdotes about her negative interactions and alleged differential treatment" and speculation "that these anecdotes were motivated by her race and gender", thereafter concluding that "there is no single situation, circumstance, anecdote, or event to which Plaintiff can point in which any Court Defendant violated clearly established law." Instead, Court Defendants conclude, "the reality is that Plaintiff's Amended Complaint describes the slow deterioration of the working relationship" between Plaintiff and Court Defendants, which does not constitute a violation of § 1983. (Motion to Dismiss, Doc. No. 29, PageID #1650.) Plaintiff has said it before and she will say it again - the intentional trivialization of such serious and unprecedented allegations is both confounding and disappointing. To add further legal insult to discriminatory injury, Court Defendants also assert that each of them is immune from liability under 42 U.S.C. § 1983 as Plaintiff has failed to

allege sufficient facts to state a claim of hostile work environment. (Motion to Dismiss, Doc. No. 29, PageID # 1647.)

The seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), the Supreme Court articulated the necessary elements for a prima facie case of employment discrimination. *Id*. The Court reasoned:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (* * *) The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

*See also, Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-256, 101 S. Ct. 1089 (1981);

*Dicarlo v. Potter,* 358 F.3d 408 (6th Cir. 2004)

Further, *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 114 S. Ct. 367 (1993) established the standard by which a claim of hostile work environment should be determined. Specifically, the Court stated, "[W]e consider the definition of a discriminatorily "abusive work environment" (also known as a "hostile work environment") under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e, *et seq*. (1988 ed., Supp. III).: *Id*. at 19. More meaningfully the Court wrote:

> But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological wellbeing, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor*, and the reference in that case to environments "`so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,'" *id*., at 66, quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (CA5

35

1971), *cert. denied*,406 U.S. 957 (1972), merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

(* * *)

Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological wellbeing, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, *Meritor, supra*, at 67, there is no need for it also to be psychologically injurious.

*Id.* at 22. Then, in framing what courts should consider in reviewing claims of hostile work environment, the Court concluded:

[W]e can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological wellbeing is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But, while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id*. at 23.

In considering these factors, it is evident that Plaintiff meets her burden despite Court Defendants' statements to the contrary and blatant disregard for the factors articulated in their own motion. First, it is without question that Plaintiff is a member of a protected class – she is a Black woman. (Amended Compl., ¶ 17, Doc. No. 12, PageID # 718.) Next, Plaintiff is imminently qualified for her job, having worked as a Law Clerk for an Associate Justice of the Supreme Court of Ohio, an Associate Attorney in private practice representing clients around Ohio and across the United States, and as Deputy Chief Counsel for one of Ohio's Governors, which required that she not only represent the Governor in state and federal court but also coordinate litigation strategies with the Chief Executive Counsel for all state agencies, all of which was prior to her almost sixteen years of service as a FCCP-Gen Judge. Moreover, it is clear through the allegations in her Amended Complaint that Plaintiff suffered an adverse

employment action – from being blackmailed by one of her "fellow judges" to force her to resign as Administrative Judge (Amended Compl., ¶¶ 317-325, Doc. No. 12, PageID # 755); to not being notified by Defendants Frye, O'Donnell or Davis, at a minimum of her right to legal representation in reference to the bad faith complaint filed by Defendant Goodman in 2022 (Amended Compl., ¶¶ 369-371 Doc. No. 12, PageID # 760-61); to an apparent decision by Court Defendant judges to question whether Plaintiff was permitted to participate in meetings for FCCP-Gen committees to which she was not assigned (Amended Compl., ¶¶ 410-420, Doc. No. 12, PageID # 765-767); to Plaintiff and her staff being questioned by Court Defendant administrators regarding their time out of office (Amended Compl., ¶¶ 462-476, Doc. No. 12, PageID # 771-773); to Court Defendant administrators failing to provide support and resources to Plaintiff unless and until she questioned and challenged the lack of support over an extended period of time; (Amended Compl., ¶¶449-462, Doc. No. 12, PageID # 770-771); to Plaintiff's criminal continuance entries being deleted by or at the direction of Court Defendant administrators (Amended Compl., ¶¶ 1032-38, Doc. No. 12, PageID # 847-48); to Court Defendant judges attempting to modify the FCCP-Gen Anti-Harassment Policy to remove every provision upon which her claims were based and after having received notice of her EEOC claim (Amended Compl., ¶¶ 948-961, Doc. No. 12, PageID # 838-840); to circumventing and/or ignoring the authority and obligations associated with Plaintiff's service as Administrative Judge and either requiring court employees to complete work already in progress for the entire court or by committing the court to public events for which Plaintiff has no knowledge or notice (Amended Compl., ¶¶ 196-206, Doc. No. 12, PageID # 739-740; Amended Compl., ¶¶225-231, Doc. No. 12, PageID # 743); to laughing at and diminishing Plaintiff's character during a Special Judges' Meeting that Franklin County Defendant Hummer called "horrific" (Amended

Compl., ¶ 873, Doc. No. 12, PageID # 868); to K. Brown stating that an in-person meeting with Plaintiff regarding her claims would not be beneficial (Amended Compl. ,¶856, Doc. No. 12, PageID # 825); to Davis attempting to complete public record requests involving Plaintiff without first notifying counsel for the Court (Amended Compl., ¶¶ 926-928, Doc No. 12, PageID # 835); to Court Defendant administrators permanently deleting, destroying and altering public records between them and Plaintiff and them and Plaintiff's staff (Amended Compl., ¶ 398, Doc. No. 12, PageID # 764) – there have been myriad adverse employment decisions that impact Plaintiff's ability to do her work.

Consistent with the factors articulated in *Harris, supra,* Plaintiff has endured the hostile and harassing discriminatory behavior every day since July 2021 and even the prospect of having to go into an environment for which Plaintiff is uncertain about what will be said or done to make her professional existence more complicated than it already is, when managing the kind of work she is obligated to manage, has left Plaintiff feeling that she is, in fact, on the verge of a nervous breakdown on occasions too numerous to count. The constant recognition that Plaintiff is literally holding her breath and having to remind herself to exhale is something no person should have to endure. So, contrary to how Court Defendants would like to describe this life-changing circumstance, this is not just about amusing stories (anecdotes) that chronicle a slowly deteriorating work relationship. Rather, it is the intentional and concerted decision to treat a "fellow judge" and person who is a supposed "supervisor" for Court Defendant administrators in a discriminatory and demeaning way. But instead of asking themselves why this supposed collegial relationship suddenly deteriorated when it had been intact for the first twelve to thirteen years of Plaintiff's service, Court Defendants suggest that Plaintiff has manufactured a fantastic story full of sound and fury but signifying nothing.

Moreover, Plaintiff's allegations are the clearest demonstration that Court Defendants have violated the oath that each took to uphold the Ohio and U.S. Constitutions, all laws associated with their service as judges and administrators, and all internal FCCP-Gen policies and procedures. To assert, then, that Plaintiff's allegations do not establish a violation of clearly established law necessary to overcome qualified immunity is preposterous, at best.

In other words, Court Defendants' decisions to treat Plaintiff, a Black woman, in a way that it has never treated a White FCCP-Gen Judge and to facilitate and participate in the creation of an ongoing and pervasive work environment that is both insulting and discriminatory is why they have been named Defendants, why they are not immune from liability under § 1983, and why their arguments in favor of dismissal are unfounded.

### G. Court Defendants Are Not Entitled To Dismissal of Plaintiff's State Law Discrimination and Retaliation Claims Under Ohio Revised Code § 4112.

#### 1. Plaintiff's Notice of Right to Sue Letter from the Equal Employment Opportunity Commission is Sufficient for Asserting State Law Claims.

Court Defendants contend that, because Plaintiff "neither alleged filing any charge with the Ohio Civil Rights Commission ("OCRC") nor receiving a right to sue letter from the Ohio Civil Rights Commission" (Motion to Dismiss, Doc. No. 29, PageID # 1651), her state law claims should be dismissed. Strangely, Court Defendants employed the exact verbiage used by Franklin County Defendants in making the same argument. (Motion to Dismiss, Doc. No. 20, PageID # 1137.) Court Defendants further assert that Plaintiff has failed to satisfy the statutory requirements of Ohio Revised Code § 4112.052(B)(1)(a)-(b) and that she failed to allege state law discrimination in her Amended Complaint. (Motion to Dismiss, Doc. No. 29, PageID # 1651.) Consequently, they conclude that Plaintiff's lack of compliance with administrative prerequisites necessitates that her state law claims for discrimination and retaliation must fail as

a matter of law and cite *Simrell v. Dave White Chevrolet, LLC,* Case No. 3:23-cv-1382, 2024

U.S. Dist. LEXIS 94824, *6 (N.D. Ohio May 29, 2024) in support of this conclusion. However,

like Franklin County Defendants, Court Defendants completely misstate the conclusion reached

by the *Simrell* court.

In *Simrell,* the court discussed that "The EEOC and the OCRC are parties to a

worksharing agreement (* * *)." *Simrell* at 5. In denying the defendant's motion to dismiss

regarding the state law claims of discrimination, the court wrote:

> In the worksharing agreement, the OCRC explicitly designated the EEOC as "its agent
> for the purpose of receiving and drafting charges, including those that are not
> jurisdictional with the agency that initially receives the charges." (Doc. No. 5-2 at 2). The
> OCRC and the EEOC reaffirmed their agreement on November 3, 2021, nearly six
> months after Ohio Revised Code § 4112.052 was amended to require administrative
> exhaustion of discrimination claims under Ohio law. *See, e.g., Smith v. Lorain Cnty.
> Veterans Serv. Comm'n,* No. 1:21-CV-01525, 2024 WL 1375946, at *7 (N.D. Ohio Mar.
> 30, 2024) ("Ohio Revised Code Section 4112.052(B)(1)(a), which became effective in
> April of 2021, added an exhaustion requirement to Ohio's disability discrimination
> statute, where there was none previously ...."). The parties extended the worksharing
> agreement as originally written, concluding there had been "no substantive changes in the
> . . . statutes . . . that would adversely affect or substantially alter the work sharing
> arrangement . . . or that would affect the processing of charges filed under the pertinent
> Federal, state or local statutes ...." (Doc. No. 5-2 at 7).
>
> In other words, the worksharing agreement plainly indicates the parties were aware of the
> change in Ohio law and concluded that change did not limit the OCRC's ability to
> designate the EEOC as its agent to accept charges of discrimination under Ohio law. I
> conclude the EEOC had the authority under the worksharing agreement to accept
> Simrell's charge of discrimination alleging violations of Ohio law and I further conclude
> that, as the result of the EEOC's express agency authority, Simrell's EEOC filing satisfies
> the requirements of § 4112.052(B)(2)(b). Therefore, I deny Defendants' motion to dismiss
> to the extent Defendants contend Simrell did not exhaust his administrative remedies
> under Ohio law.

*Simrell* at 5-6.

In the present case, Plaintiff did precisely what is contemplated in the *Simrell* decision –

she filed her claim with the EEOC, understanding that the OCRC would be notified of the filing

and advised of any findings, decisions, or notices issued by the EEOC. (Amended Compl., ¶15,

Doc. No. 12, PageID # 717.) Put another way, Plaintiff was not then and is not now required to file her discrimination and retaliation claims in every forum where they could potentially be submitted and investigated because these agencies have decided to focus on efficiency rather than filing bureaucracy. As such, Court Defendants' argument regarding Plaintiff's state law claims for discrimination and retaliation is not well-taken.

### 2. Plaintiff's Claims Against Court Defendants Are Permitted Under Ohio Revised Code §§ 4112.02 and 4112.99.

Court Defendants also allege that Plaintiff's claims against them under Ohio Revised Code 4112.02(a) and 4112.99 are barred because "individual employees are not included within the definition of 'employers' who may be liable under R.C. 4112.02 or R.C. 4112.99." (Motion to Dismiss, Doc. No. 29, PageID # 1652.) As previously stated, however, as the persons who are responsible for approving, adopting, and implementing FCCP-Gen procedures and policies regarding the process whereby an employee's claims of illegal behavior, like discrimination, hostile work environment, and retaliation are resolved, Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior. This is confirmed in Rule 2.3(B) of the Ohio Code of Judicial Conduct, which states, "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so."

Moreover, Court Defendants concede that Court Defendant administrators work *for* the Court (Motion to Dismiss, Doc. No. 29, PageID # 1643) and, as such, the Code of Judicial Conduct requires Court Defendant judges to prohibit <u>court staff</u> from engaging in discriminatory

behavior based on race and gender. *See also* Rule 1.1, Ohio Code of Judicial Conduct ("a judge shall comply with the law".) However, Court Defendant judges failed to fulfill this intractable obligation in that both Court Defendant administrators and other court employees engaged in discriminatory and harassing behavior against Plaintiff. In one instance, court employees admitted that they had never asked a White FCCP-Gen Judge to "provide me and the Department the reason" for a decision Plaintiff made regarding a litigants placement on community control. (Amended Compl., ¶¶ 592, 595, Doc. No. 12, PageID # 787.)

Even assuming *arguendo* that Plaintiff could not bring claims under Ohio Revised Code §§ 4112.02(a) and 4112.99, Court Defendants are subject to liability under Ohio Revised Code § 4112.02(G) which states that is shall be an unlawful discriminatory practice "[f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." Ohio Revised Code §4112.01(A)(9) defines place of public accommodation as "any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place for the sale of merchandise, or <u>any other place of public accommodation</u> or amusement of which the accommodations, advantages, facilities, or privileges are <u>available to the public</u>. (Emphasis added.)

It is without question that a courthouse, like the one in which FCCP-Gen is located, is a public building where matters that impact the public interest are considered and issues associated with public safety are resolved. Indeed, Court Defendants recently voted to adopt two rules, noting that "Constitutional courts were created to serve the (* * *) interests of the public at large"

42

and "to operate the Court in a manner that is lawful, fair, and just for the benefit of the citizens of Franklin County (* * *)." Moreover, courthouses have an obligation to operate and function in a manner that does not create discriminatory practices, policies, or procedures. As such, it should not be a stretch for Court Defendants to recognize that discriminating against Plaintiff based on her race and gender, creating a hostile work environment that makes it difficult, at best, for her to fulfill her work responsibilities, and then retaliating against her for notifying court leadership and counsel of the same is just the kind of unlawful discriminatory practice contemplated by Ohio Revised Code § 4112.02(G). Moreover, Plaintiff has asserted claims of retaliation and hostile work environment under Ohio Revised Code § 4112.99 which claims are permitted under that provision. Finally, because Plaintiff's state law claims also constitute ongoing, pervasive, and insulting behavior that involve both discrete and other acts, her claims are not barred by the statute of limitations. Therefore, Court Defendants' arguments on this issue must fail.

### H. Plaintiff Has Alleged Facts That Justify Her Assertion of the Racketeering Claim In Count Four of Her Amended Complaint.

#### 1. Plaintiff's Amended Complaint Satisfies the Procedural Framework of *Sedima, S.P.R.L., v. Imrex Co.,* 473 U.S. 479 105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985).

While Plaintiff can appreciate why Court Defendants may be troubled by her allegations pursuant to 18 U.S.C. §§ 1961-1968, that does not mean Plaintiff has failed to establish the factual predicate to support such a claim. Regrettably, the facts outlined in the Amended Complaint lend themselves to the unbelievable and disappointing conclusion that all Defendants conspired in creating a discriminatory, hostile and retaliatory work environment.

18 U.S.C. § 1961 defines "racketeering activity" as (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or

dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), (* * *), section 1029 (<u>relating to fraud and related activity in connection with access devices</u>), (* * *), section 1341 (<u>relating to mail fraud</u>), section 1343 (<u>relating to wire fraud</u>), section 1344 (* * *). (Emphasis added.)

Moreover, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Additionally, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c).

In establishing the framework that a plaintiff must prove in order to support a racketeering claim, the *Sedima* Court wrote:

A violation of § 1962(c), the section on which Sedima relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the

44

conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."*Haroco, Inc.* v. *American National Bank Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd, *post*, p. 606.

But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima, S.P.R.L.* at 479.

Here, Plaintiff alleged in her Amended Complaint that Defendants Hummer and Dean advised Defendant Frye regarding the bad faith complaint filed by Defendant Goodman. (Amended Compl., ¶ 388, Doc. No. 12, PageID # 763; Amended Compl., ¶¶ 779-781, Doc. No. 12, PageID # 814.) Based on the advice provided by Hummer and Dean, Frye told Plaintiff that, if she resigned as Administrative Judge for 2023 based on the prevarication that she was simply too busy to do the work of Administrative Judge, then Goodman's bad faith complaint would go away. (Amended Compl., ¶391. Doc. No. 12, PageID # 755.) In other words, Frye, after receiving advice from Hummer and Dean, proposed an offer of bribery and blackmail that if Plaintiff would resign, then the disparaging and bad faith allegations would go away. If not, then the disparaging allegations would be disseminated. Thereafter, Frye told counsel that Plaintiff engaged on her own after Hummer and Dean failed to advise her of the right to counsel under the FCCP-Gen liability policy that, if she did not resign, the Court Defendant judges were prepared to vote her out of the Administrative Judge position and would not undertake an investigation. (Amended Compl., ¶ 372, Doc. No. 12, PageID # 761.) At some point after this plan was established, Defendants Goodman, Davis, Bedsole, and Worthington destroyed all

45

internal messages, which were public records, between Plaintiff and them, as well as all internal messages between them and Plaintiff's Black staff. (Amended Compl., ¶ 398, Doc. No. 12, PageID # 764.) Plaintiff continues to assert that, in addition to the documents that Plaintiff has in her possession, the information contained in those destroyed documents would have supported her position that Goodman's claims were baseless. Yet, neither Defendants Hummer nor Dean did anything to ensure that they received all responsive documents.

Thereafter, Plaintiff notified Hummer and Dean that Goodman, or someone on her behalf, was altering information on Plaintiff's work calendar for events that occurred almost ten years ago and in close proximity to events related to a public record request submitted by Plaintiff. (Amended Compl., ¶¶ 876, 877, Doc No. 12, PageID # 829; Amended Compl., ¶¶ 901-905, Doc. No. 12, PageID # 832.) This is in addition to Court Defendant judges failing to transmit documents in their possession that were responsive to the November 2022 public record request regarding Goodman's bad faith complaint against Plaintiff. Hummer even conceded she was aware that the documents transmitted by Court Defendant judges using the court's email system were not all the documents that should have been submitted.

Moreover, Court Defendants engaged in a series of behaviors that: 1.) questioned whether Plaintiff should be permitted to participate in court committee meetings; 2.) refused to meet with Plaintiff regarding her properly asserted claims of discrimination, retaliation, and hostile work environment; 3.) refused to order an investigation of Plaintiff's claims; 4.) refused to implement a policies and procedures review for consideration of Plaintiff's claims; 5.) failed to provide Plaintiff with resources and support provided to Court Defendants; 6.) deleted criminal continuance entries for Plaintiff's cases; 7.) questioned Plaintiff and her staff regarding their time out of the office; 8.) required Plaintiff to provide information to Court Defendant

46

administrators regarding her docket management practices; 9.) excluded Plaintiff from conversations and meetings related to court business; 10.) failed to train Plaintiff on the role of Administrative Judge; 11.) provided a list of Black women whom Plaintiff should be more like; and 12.) suggested that a Court Defendant could "f%$#!" her over if he decided to do so.

All these events demonstrate conduct of an enterprise (Court Defendants and Franklin County Defendants) through a pattern (various events over the course of 3 ½ years) of racketeering activity (blackmail and bribery, mail fraud and/or fraud and related activity in connection with access devices, which in this instance are court computers). As such, Plaintiff has pled sufficient facts to support her claim of racketeering as contemplated by *Sedima*, *supra*.

## 2. Court Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings.

In their motion, Court Defendants attempt to distract the Court from the Plaintiff's properly asserted racketeering claims under 18 U.S.C. § 1961 by asserting that "the Amended Complaint is unclear as to which 1962 section is claimed to have been violated." (Motion to Dismiss, Doc. No. 29, PageID # 1654.) Moreover, Court Defendants have concluded that Plaintiff "limited" her RICO allegation to an alleged violation of § 1962(c). (Motion to Dismiss, Doc. No. 29, PageID # 1654.) Because Court Defendants have chosen to cobble together pieces and portions of Franklin County's motion to dismiss to create a foundation, though faulty, for their own motion to dismiss, they have misrepresented Plaintiff's position.

What Plaintiff actually said is that it is unnecessary for her to prove a violation of every subsection of § 1962 in order for her claim to have merit. (Response in Opposition, Doc. No. 25, PageID # 1213.) 42 U.S.C. §1962(c) which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a

pattern of racketeering activity (* * *).

Moreover, in order to prove a violation of that Act, "the plaintiffs must show 1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VandenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). In addition, the Supreme Court reasoned that in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself. *Id., citing Reves v. Ernst Young*, 507 U.S. 170, 183 (1993).

Additionally, the *VandenBroeck* decision states, "The Supreme Court has defined an "enterprise" under the Act as a "group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 699, citing *United States v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise can be proven by showing: 1.) that the associated persons formed an ongoing organization, formal or informal; 2.) that they functioned as a continuing unit; and 3.) that the organization was separate from the pattern of racketeering activity in which it engaged. *See Frank v.* D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993) (*Id.*) and noted, "All that is required is some minimal level of organizational structure between the entities involved." *Id.* at 700.

While Court Defendants contend that Plaintiff's Amended Complaint fails to satisfy the mandates of § 1962(c), Plaintiff posits that she has passed and exceeded what she is required to prove. First, it is without question that Court Defendants are a part of the organizational structure of FCCP-Gen – they are judges who adopt and approve policies and procedures, preside over

cases, approve annual budgets, finalize hiring decisions, and fulfill all other statutory and constitutional responsibilities, as well as administrators who supervise employees, complete day-to-day responsibilities, investigate claims, and complete other duties as directed by the judges. Relating to that structure, Defendants Hummer and Dean serve as counsel for not only the court but every judge (and, apparently, court administrators), pursuant to Ohio Revised Code § 309.09, and Defendant Franklin County approves the FCCP-Gen annual budget and confers with and directs policy decision made by FCCP-Gen. Further, Hummer and Dean: 1.) provided advice and counsel to Frye regarding his management of Goodman's bad faith complaint; 2.) oversaw the management of the public record request in November 2022 related to Goodman's bad faith complaint; 3.) failed to counsel FCCP-Gen regarding the destruction of Plaintiff's internal team messages with Court Defendant administrators and alteration of ten-year-old calendar invitations sent to Plaintiff; 4.) failed to fulfill their statutory obligation to review any proposed modifications to FCCP-Gen policies; 5.) failed to fulfill their commitment in January 2024, and on behalf of Franklin County, to engage a person to investigate Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation; and 6.) failed to provide representation to Plaintiff when she was sued in her official capacity. These factors, and myriad more, clearly indicate that Court Defendants and Franklin County Defendants function as a "continuing unit" and have done so for the entire period of time giving rise to Plaintiff's allegations.

Indeed, Plaintiff is surprised that Court Defendants would assert that she failed to establish the predicate offenses outlined in her Amended Complaint as the bases for the racketeering claim. (Amended Compl., ¶ 1109, Doc. No. 12, PageID # 859.) More concisely, Plaintiff has established her claim of Falsification under Ohio Revised Code § 2921.12 because

she has properly pled that 1.) Court Defendants attempted to modify the Anti-Harassment Policy; 2.) Defendants Hummer and Dean failed to review the proposed changes before they were submitted for consideration by the court; 3.) Court Defendants did not inform Defendants Hummer and Dean that they were modifying the policy to facilitate a legal review, nor did Hummer and Dean inquire about a statutory obligation to review proposed FCCP-Gen policies until they were advised of this attempt by Plaintiff; and 4.) Court Defendants had actual knowledge of Plaintiff's EEOC Charge at the time FCCP-Gen attempted to modify the Anti-Harassment Policy. Beyond that, Plaintiff submitted a preservation letter to Court Defendants on March 18, 2024 regarding FCCP-Gen records. Yet, the following day, Plaintiff received an altered calendar invitation from the account of Defendant Goodman's former assistant who had not worked at the court for two years prior to the altered invitation being sent.

Similarly, Plaintiff has established a claim of Tampering with Records pursuant to Ohio Revised Code § 2913.42 based on the same allegations associated with her Falsification claim. Likewise, Plaintiff has established a violation of Ohio Revised Code § 149.351 based on the same foundation of facts. Finally, Plaintiff has also established her racketeering claim based on 18 U.S.C. § 1001, 18 U.S.C. § 1018, and 18 U.S.C. § 1030. While Court Defendants assert that §§ 1001 and 1018 do not apply because those provisions only apply to "misrepresentations made in federal, not state, government matters" (Motion to Dismiss, Doc. No. 29, PageID # 1658), that is a misreading of the provisions. More specifically, § 1001 covers matters within the "jurisdiction of the (* * *) judicial branch of the Government (* * *)" and, because Plaintiff received a Notice of Right to Sue Letter to assert her claims of discrimination, retaliation, and hostile work environment in federal court, she has the ability to assert that Court Defendants, as a part of a continuing unit with FCCP-Gen, falsified, concealed and covered up, through a

50

common scheme, material facts related to Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation. Moreover, under § 1018 Court Defendants were aware that Defendant Goodman submitted a bad faith complaint which Defendants Frye and O'Donnell knew to be false. Despite this knowledge (or perhaps because of this knowledge), Court Defendants failed to advise Plaintiff of her right to legal representation and participated in a meeting during which the bad faith complaint was discussed. Finally, under § 1030, Plaintiff has unequivocally established that the vast majority of the fraudulent activity and related events have occurred on FCCP-Gen computers, as demonstrated by the mountain of exhibits Plaintiff included with her Amended Complaint. For Court Defendants to suggest that Plaintiff has failed to establish her racketeering claim given these corroborated facts borders on outlandish.

The Amended Complaint clearly alleges that Court Defendants engaged in a scheme to defraud and mislead Plaintiff by – among other things - using the knowingly false and fraudulent complaint against her by Defendant Goodman to force Plaintiff to give up her position within the court as Administrative Judge. A scheme to defraud is "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes the designed end." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389-90 (6th Cir. 1996). A plaintiff must allege "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension'" upon which he or she relied. *Id*. Plaintiff has done so here with specificity. Further, there is no requirement that a particular defendant have made a misrepresentation, only that the fraud or misrepresentation was "foreseeable" in the context of the scheme. *See In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 627 (E.D. Ky. 2011) ("Each defendant is

liable whether or not that person personally made any misrepresentations ... plaintiff may establish the existence of a scheme to defraud coupled with foreseeable use of the mail or wires."); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 288 n.25 (3d Cir. 1985) ("We conclude that under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses."); *United States v. Puckett*, 692 F.2d 663, 669 (10th Cir. 1981) ("Nor must the defendant personally have made the offending communications if he participated in devising the scheme to defraud in which the use of interstate wires foreseeably would follow.").

With respect to the requirement that the defendants' conduct have an effect "interstate," clearly Court Defendants and Franklin County Defendants take actions every day which effect interstate interests. First, it is undisputed that the court adjudicates controversies between Ohio residents and residents of other states. The court enforces state and federal law which has effects on residents and corporations based in states other than Ohio. Here, specifically, it is alleged that Court Defendants and Franklin County Defendants sent electronic communications and had telephone communications which were fraudulent and/or related to allegations of blackmail or extortion. The Amended Complaint provides detailed allegations about who engaged in fraudulent and extortive conduct and when the conduct occurred. The law is clear that the use of telephones, the U.S. Mail and electronic mail, even if the communications do not go out of state, satisfies the "interstate" requirement for a racketeering claim. The interstate nexus for mail fraud can be satisfied by use of the Postal Service. *United States v. Griffith*, 17 F.3d 865, 874 (6th Cir. 1994) (stating "testimony as to a company's routine use of the postal service is sufficient evidence on its own to establish the mailing requirement"); *see also United States v.*

*Elliott*, 89 F.3d 1360, 1364 (8th Cir. 1996) (finding "the jurisdictional basis of the mail fraud statute is grounded in the Postal Power and therefore necessarily encompasses all items passing through the United States mails, even if their passage is purely intrastate"). As to wire fraud, use of electronic communication, including e-mail, is sufficient. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *see also Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 803 (6th Cir. 2015) (finding "the very act of sending an e-mail creates the interstate commerce nexus necessary for federal jurisdiction. . . .").

In a final attempt to justify an indefensible position, Court Defendants write, "There are lots of allegation in the Amended Complaint but there is a complete absence of fact in the Amended Complaint connecting any alleged predicate acts to Plaintiff's claimed injuries", and posits that Plaintiff does not even refer to the alleged predicate acts outside of one Paragraph in Count Four." (Motion to Dismiss, Doc. No. 29, PageID # 1660-1661.) Plaintiff, however, is surprised that Court Defendants could reach this conclusion since their counsel seem to suggest that they would "need to go through the Amended Complaint individually with Defendants in order to respond to the truth or falsity of each minute allegation." (Motion to Dismiss, Doc. No. 29, PageID# 1669-1670.) In that regard, if neither Court Defendants nor their counsel had the time or chose to make the time to review the "minute" allegations, then it seems impossible for them to also assert that those same allegations did not support Plaintiff's claims.

## I. Plaintiff's Claims Against Court Defendants Goodman and Davis for Defamation Are Not Barred By the Statute of Limitations.

Court Defendants Goodman and Davis assert that Plaintiff's claim of defamation against them should be dismissed because: 1.) it is barred by the one-year statute of limitations outlined in Ohio Revised Code § 2305.11(A) and; 2.) the statements were made in the context of Goodman's and Davis's assertion of a claim for harassment by Plaintiff and, therefore, are

privileged in the context of a quasi-judicial proceeding. (Motion to Dismiss, Doc. No. 29, PageID # 1661-1662.) Neither of these arguments, however, is meritorious.

To begin, Goodman and Davis erroneously point to the initial publication of the defamatory statements on November 1, 2022[3] to calculate a year from the date by which Plaintiff should have asserted her claim of defamation, consistent with *Weidman v. Hildebrant*, 2024-Ohio-2931, at ¶ 61. (Motion to Dismiss, Doc. No. 29, PageID # 1661.) Goodman and Davis fail to recall, though, that the defamatory statements were also published on or around May 17, 2024 when Davis received a public record request from a reporter with a local newspaper, requesting "a copy of the complaint filed by Goodman against her in November 2022." (Amended Complaint, ¶ 926, Doc. No. 12, PageID # 835.) That complaint, which contained the defamatory statements, was then released to the reporter and referenced in an extensive news story regarding Goodman's complaint. In other words, there was a second, distinct act of publication, which has its own statute of limitations. Even assuming that Goodman's defamatory statements were published on May 31, 2024 (two weeks after the request was received), Plaintiff would still have until May 2025 to assert her claim. Here, Plaintiff filed her claim of defamation against Goodman and Davis on November 26, 2024, which is well before the statute of limitations expired. *See Kienow v Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, ¶ 7 (The Court recognized the distinct nature of claims based on multiple publications and emphasized that the plaintiff failed to assert her claim of defamation within one year of publication made on one of two occasions – April 2010 and January 2012.)

Moreover, Court Defendants' motion to dismiss is the first time Plaintiff has ever received

---

[3] Court Defendants mistakenly reference 2023.

notice that both Goodman <u>and</u> Davis asserted claims of harassment against Plaintiff. More concisely, Plaintiff was not notified by any Court or Franklin County Defendant that Davis was also asserting a claim of harassment. Indeed, Plaintiff has never received a complaint against her on behalf of Davis, Plaintiff was never notified by Frye, O'Donnell, K. Brown, or any other Court or Franklin County Defendant that Davis asserted a claim against Plaintiff, and she is shocked to learn about this purported development in this random way. Plaintiff's shock is particularly profound because, when Plaintiff asked Defendant Davis to describe the FCCP-Gen culture early in Plaintiff's tenure as Administrative Judge and before Plaintiff had any extensive interactions with her, Davis wrote:

> Unsupported allegations are not managed; micromanagement; civility or lack thereof; diversity as a challenge; lack of compliance with policies and timekeeping; fearful culture; not safe to offer ideas and risk failure within leadership circle; <u>political meaning a group of employees can influence the Court</u>; irrational meaning a that policies can be suggested to the court but not adopted to please a group of employees; <u>witnessed others treated in a manner that is not respectful with no intervention</u>; could be targeted depending on the day.

(Emphasis added.) (Amended Compl., ¶ 738, Doc. No. 12, PageID # 807). In fact, Davis represented to Plaintiff that no prior Administrative Judge had asked administrators to share their concerns and that she looked forward to more opportunities to share. However, Davis also told Plaintiff that her loyalty was to Defendant Goodman and not to FCCP-Gen, which may explain how and why Plaintiff is just now being advised that Goodman's bad faith complaint was also on behalf of Davis. Be that as it may, and to that extent that this new and never-before disclosed statement is true, Plaintiff hereby requests that Court Defendants, through counsel, provide her with a copy of Davis's complaint against her immediately.

Even assuming the argument of Goodman and Davis regarding the statute of limitations is true, which it is not, Plaintiff is confounded by their argument that the documents are

privileged based on the "quasi-judicial proceeding". In case Court Defendants forgot, Plaintiff is currently a sitting judge who serves on the court where this purported "quasi-judicial" proceeding occurred. In that capacity, Plaintiff is entitled to receive all documents related to any investigative proceedings that are undertaken by the court, which is consistent with the court's historical practice. Above and beyond that administrative role and responsibility, Plaintiff is the person against whom the allegations and defamatory statements were made and, as such, has an unequivocal right to notice of any statements and/or allegations that form the basis of a complaint made against her, as well as an opportunity to be heard. Were this matter not so serious for Plaintiff, then she would find it laughable that Goodman, Davis, and Court Defendants are now arguing that she is not entitled to know the basis of the allegations against her as the accused and is not entitled to receive and review the documents as a member in good standing of the Court. Court Defendant judges would not endure a criminal proceeding wherein the accused was not provided with all evidence related to their potential prosecution and, yet, none of them seems bothered by the prospect of withholding that same kind of information from a "fellow judge".

Beyond this, Plaintiff is stunned Court Defendants concede in their motion that, under the Anti-Harassment Policy, "the filing of a complaint about workplace conditions is the first step in a formal process <u>for the investigation of workplace conditions</u>. (Emphasis added.) Once the complaint is initiated, <u>an investigation into the allegation is triggered</u>." (Emphasis added.) (Motion to Dismiss, Doc. No. 29, PageID # 1662.) In this case, neither Defendants Frye, O'Donnell, Davis, as Director of Human Resources, or any other Court Defendant ever pulled the investigation "trigger". Instead, what they all chose to do was to have Frye and O'Donnell, in concert with Goodman, formulate an offer of blackmail to present to Plaintiff, with Frye

indicating that it was unnecessary to speak to Plaintiff for purposes of an investigation since she would just deny the allegations.(Amended Compl., ¶¶ 338-339, Doc. No. 12, PageID # 757.) Finally, the defamatory statements were released in public record requests on two separate occasions in 2022 and 2024 and, as such, to the extent that any privilege existed, it was waived by the court and counsel – twice. Therefore, the arguments of Goodman, Davis, and Court Defendants must fail.

### J. Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B).

As an initial matter, Court Defendants contend that Plaintiff has asserted a single allegation related to the destruction of records. (Motion to Dismiss, Doc. No. 29, PageID # 1663.) Simply put, this is just not true. While Plaintiff did assert that Court Defendant administrators permanently deleted various internal messages, she also asserts that calendar invitations and other information between Plaintiff and them was altered or destroyed and that Court Defendants failed to comply with the Plaintiff's preservation letter. (Amended Compl, ¶ 398, Doc. No. 12, PageID # 764; Amended Compl., ¶¶ 876-879, Doc. No. 12, PageID # 829.) These deleted records, which detailed Plaintiff's interactions with Defendant Goodman and others, could have and would have refuted the bad faith allegations made by Goodman against Plaintiff and would have eliminated Frye's inclination and ultimate decision to blackmail Plaintiff on Goodman's behalf.

Beyond those allegations, Plaintiff also asserted that various Court Defendants judges failed to comply with the November 2022 public record request by not providing all responsive documents (as confirmed by Defendant Hummer). As previously stated, Plaintiff further contends that Court Defendant administrators altered calendar invitations for events on

Plaintiff's calendar that occurred almost ten years ago, which is around the same time events that were subject of public record requests submitted by Plaintiff and fulfilled by FCCP-Gen, occurred. (Amended Compl., ¶¶ 901-905, Doc No. 12, PageID # 832.) Those records from ten years ago clearly demonstrate that a White male FCCP-Gen judge Defendant who was accused of four separate incidents of sexual harassment was not subject to any Special Judges' Meeting to discuss a corrective course of action, unlike Plaintiff (Amended Compl., ¶¶ 768-773, Doc. No. 12, PageID # 812-813) and was not subject to any threat of blackmail or other coercive tactic.

As a result of all these actions, Plaintiff averred that Defendants violated Ohio Revised Code § 149.351(B) for their intentional and malicious destruction and removal of these records. Moreover, Plaintiff is an "aggrieved party" because documents that could have exonerated her from baseless claims made by Goodman and that demonstrated the disparate and discriminatory treatment in which all Defendants engaged was destroyed or altered. In fact, this scheme was facilitated by Hummer and Dean who advised Plaintiff that the documents were destroyed as a part of updates to the FCCP-Gen computer system, though Plaintiff currently has internal messages on her work computer from former employees who have not worked for the court for three years or more. In that regard, it seems that those messages from former employees would have also been permanently deleted in any system upgrade.

Moreover, 28 U.S.C. § 1367 states:

a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
(b) In any civil action of which the district courts have original jurisdiction founded solely

on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, Plaintiff has asserted claims *inter alia* under §§ 1981 and 1983 for which this Court has original jurisdiction. Moreover, Plaintiff's allegations regarding the destruction and alteration of public records by Court Defendants and the failure of Franklin County Defendants to confer and advise on the legal repercussions of that destruction and alteration (since all Franklin County Defendants had actual notice of the same), in the context of Plaintiff's asserted claims of race and gender discrimination, hostile work environment and retaliation, are a series of events arising out of the same case and controversy. Additionally, Plaintiff's claims relating to the destruction of alteration of public records do not raise novel or complex issues and do not substantially predominate over the claims for which this Court has original jurisdiction.

This was the conclusion reached in *Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020), wherein the Court concluded that it had jurisdiction over the plaintiff's claims pursuant to Ohio Revised Code § 149.351. In denying the defendant's request that the court decline to exercise supplemental jurisdiction, the court noted,

[T]he claim is linked directly to Mr. Glaze's civil rights claims and derives from a common nucleus of operative fact; and, permitting the claim to proceed in this Court serves the interests of judicial economy. The Court finds no basis upon which abstention under *Burford v. Sun Oil Co*., 319 U.S. 314 (1943), is necessary, given the fact that resolution of Mr. Glaze's claim requires a straightforward analysis of the evidence and

application of long-standing State law.

*Glaze* at 10-11. Similarly, Plaintiff in the present case has demonstrated through her Amended Complaint that the allegations related to the destruction of public records derive from a common nucleus of operative facts – Franklin County Defendants, in concert with Court Defendant judges and administrators not only altered and destroyed public records related to all of Plaintiff's claims, but they also collaborated and conspired to conceal the alteration and destruction to facilitate the pervasive and insulting culture of discrimination, hostile work environment and retaliation.

In order to give credence to their argument, Court Defendants cite *Ciganik v. Kaley*, 2004-Ohio-6029, ¶ 41 (11th District, 2004) for the proposition that an office, not an individual, is the records custodian for purposes of analysis under Ohio § 149.351. However, the paragraph cited by Court Defendants does not stand for that proposition but merely recites the language that reflected the lower court's judgment entry. A more thoughtful reading of the *Ciganik* decision demonstrates the Court found that there was no evidence "connecting appellees to the destruction or interference with any public records or the spoliation of any documents. Appellant offered no credible evidence that Keiper, Smeiles, and Chandler, as well as Kaley, both in his official capacity and individually, willfully destroyed or spoiled any documents. As such, appellees are not subject to suit." *Id*. at ¶ 47. But that conclusion is not the case in the present matter.

Here, Plaintiff's allegations demonstrate that Court Defendant administrators and Plaintiff were the only persons in possession of the documents that were permanently deleted and, thereby, destroyed. Moreover, Plaintiff's allegations demonstrate that Plaintiff did not permanently delete the documents, thereby destroying them. Indeed, Court Defendants are correct that the Rules of Superintendence for the Courts in Ohio help to contour the obligations

of Court Defendants in this regard. Specially, Sup. R. 44 defines "Court record" as "both a case document and an administrative document, regardless of physical form or characteristic, manner of creation, or method of storage." Sup. R. 44(G)(1) defines "Administrative document" as "a document and information in a document created, received, or maintained by a court that serves to record the administrative, fiscal, personnel, or management functions, policies, decisions, procedures, operations, organization, or other activities of the court, subject to the exclusions in division (G)(2) of this rule." Based on the foregoing definition, it appears that every document created by Court Defendants should be construed as an "administrative document" and, thereby, a "court record."

Additionally, Sup. R. 45(A) states, "Court records are presumed open to public access." Also, the Court's own policy regarding public records states, "Basically, anything created, received, stored, or maintained on or in court-owned equipment or supplies may be considered a public record. Records include files, letters, reports, memos, images, videos, and pictures, emails, text messages, phone logs, and phone messages." In that regard, the FCCP-Gen Employee handbook establishes that these document are public records pursuant to Ohio Revised Code § 149.43. Indeed, every public record request that is submitted and fulfilled by Court Defendant administrators is based on the statutory mandates of § 149.43. So for Court Defendants to now contend that this provision is inapplicable, thereby negating Plaintiff's claim pursuant to Ohio Revised Code § 149.351 is bizarre.

Even assuming Ohio Revised Code § 149.351 was inapplicable to Plaintiff's allegations, which it is, Court Defendants have also violated the mandates of Sup. R. 26.0l. That rule, titled "Retention Schedule for the Administrative Records of the Courts", states:

> (F) Correspondence and general office records. Correspondence and general office records, including all sent and received correspondence, in any medium,

61

may be destroyed in the normal course of business as soon as they are considered to be of no value by the person holding the records.

In the present case, there are "multiple" holders of the records; however, only one person in each scenario (each Court Defendant administrator) made a unilateral decision to permanently delete them without regard to the value assigned by the other person (Plaintiff) who also had possession of the records.

Further, Plaintiff's allegations demonstrate that she did not alter calendar invitations that Court Defendant administrators sent to Plaintiff more than ten years ago. Finally, Plaintiff's allegations demonstrate that she did not encourage or force Court Defendant judges to withhold and/or destroy public records related to the public record request associated with Goodman's bad faith complaint and that she requested the records on numerous occasions, in many instances, to no avail.

### K. Court Defendant's Reliance on the *O'Shea* Abstention Doctrine is Misplaced in the Context of Plaintiff's Request for Injunctive Relief.

Despite the fact that Court Defendants began their motion to dismiss by indicating they are unclear on the capacity in which Plaintiff has asserted her claims against them, they seem to have gained an understanding in order to argue that Plaintiff's prayer for injunctive relief should be denied and cite *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669 (1974) for the proposition that injunctive relief would necessitate an ongoing federal court audit. (Motion to Dismiss, Doc. No. 29, PageID # 1664-1665.) As an initial matter, the facts of *O'Shea* are not applicable to this case. Therein, the Court considered a civil rights class action against various court personnel, including a magistrate and judge, "who allegedly engaged under color of state law, in a continuing pattern and practice of conduct consisting of illegal bond-setting, sentencing, and jury-fee practices in criminal cases, which assertedly deprived respondents and members of their class of their rights

under the Constitution and 42 U.S.C. § 1981-1983, 1985. *Id* at 488. In deciding not to grant the injunctive relief sought, the Court focused on "the abrasive and unmanageable intercession which the injunctive relief they seek would represent (* * * )." *Id*. at 504.

In this case, however, there are no judicial proceedings impacted by ensuring that Court Defendants adhere to policies, procedures, and protocols adopted and approved by all FCCP-Gen judges. Indeed, this is not a circumstance wherein judges will be unable to preside over trials, set bonds, schedule hearings or perform any other duties central to their work. By referencing the *O'Shea* decision, Court Defendants almost seem to concede or predict that there are other issues afoot that are not alleged by Plaintiff. Moreover, Court Defendants' reference to a favorable statement in *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981(6th Cir. 2020) is wholly erroneous because it is inconsistent with the sum and substance of Plaintiff's allegations. Court Defendants cite the *Shelby* decision for the proposition that "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct." However, Court Defendants ignore an earlier statement in the same decision where the Court reasoned, "To obtain declaratory or injunctive relief, a claimant must show a present ongoing harm or imminent future harm. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). At the pleading stage, plaintiffs bear the burden of alleging facts establishing each element of standing. *Spokeo*, 136 S. Ct. at 1547." *Id*. at 981.

Though Plaintiff has asserted that there are discriminatory and unlawful practices that date back to July 2021, she has also been consistent in her position and assertion that the discrimination, hostile behavior, and retaliation have continued even through the filing of this pleading. Plaintiff readily acknowledges why Court Defendants would hope this Court believes

that the illegal and unlawful behavior was a past aberration. Regrettably, that hope is literally not the case. Indeed, as recently as two weeks ago, one of the Court Defendants called Plaintiff a "disgruntled colleague" after Plaintiff questioned why she was not made aware of decisions made by Court Defendants before a meeting where these issues were presented and during which it was clear that all Court Defendants were aware of the issues prior to the meeting. Ironically, this is the same Court Defendant who, after witnessing the disparate treatment to which Plaintiff was subjected by two Court Defendant judges, wrote:

> I just wanted to say I appreciated your comments at today's meeting. I know it was difficult for you, because I know the backstory behind your remarks. You walked a tight line between being respectful while being righteously upset at how you were treated by certain members of the ad hoc committee. I thought you did a great job expressing your experience to everyone at the meeting.
>
> You don't need my approval, but I just want you to know that I saw you, I understood the context, and I admire your courage for speaking up about your experience. <u>You shouldn't be put in that position</u>, but I thought you did a great job in handling it and expressing yourself.

(Amended Compl., ¶¶ 643-671, Doc. No. 12, PageID # 794-796.) Yet when Plaintiff expresses that she was not aware of critical developments or invited to participate in meetings or conversations where matters are discussed initially, she is suddenly unhappy for no legitimate reason.

Further, Plaintiff has addressed Court Defendant judges' repeated refrain regarding absolute judicial immunity. To restate the point, *Ex Parte Young, supra,* disallows the assertion of immunity and even Court Defendant judges concede that the claims listed in its motion "do not necessarily trigger judicial immunity." (Motion to Dismiss, Doc. No. 29, PageID # 1666.) With no certainty about the availability of a judicial immunity defense, Plaintiff wonders why Court Defendants would raise the issue in the first place? To cover this failure to review Plaintiff's Amended Complaint for allegations they believe are subject to judicial immunity,

they instead chose to make a blanket statement that "to the extent that Plaintniff has asserted claims which implicate decisions made by the Defendant Judges within the scope of their jurisdiction and in the performance of their judicial functions, they are entitled to absolute judicial immunity from such claims as a matter of law." (Motion to Dismiss, Doc. No. 29, PageID # 1666.) This might be a plausible argument were it not for the fact that Rule 2.3(B) of the Ohio Code of Judicial Conduct says, "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so." It is disorienting for Plaintiff to consider that Court Defendants have suggested they have judicial immunity for violating their constitutional oath to treat people fairly and impartially, to avoid biased or prejudicial conduct, to avoid engaging in harassing behavior and to further disallow the same from court staff.

Finally, Court Defendants are not entitled to immunity for the quasi-judicial proceeding related to the non-investigation of Goodman's bad faith complaint. (Motion to Dismiss, Doc. No. 29, PageID # 1667.) The truth of the matter is that Court Defendants intentionally violated the mandates of the Anti-Harassment Policy by choosing to propose blackmail as a resolution rather than asking Plaintiff about her version of events, let alone undertaking an actual investigation. Indeed, to suggest that a sitting judge cannot participate in what Court Defendants continue to deem a "quasi-judicial" proceeding is one of the most curious arguments Plaintiff has reviewed in the life of this litigation that should not be considered as well-taken.

**L. Court Defendants' Motion to Strike Under Fed. R. Civ. P.8(A)(2) Is Inappropriate.**

Just when Plaintiff thinks she has seen, heard, and experienced everything in the short life of this case, she is confronted with something both unexpected and unwarranted. In this instance, Court Defendants contend that Plaintiff's Amended Complaint should be stricken because "it does not contain a short and plain statement of relief", does not set forth "a short and plain statement of the claim" and does not contain allegations that are "simple, concise, and direct." (Motion to Dismiss, Doc. No. 29, PageID # 1667.) Plaintiff has no clue how or why Court Defendants believe this is an appropriate argument for a number of reasons.

To begin, Plaintiff provided a short and plain statement of relief, as well as a short and plain statement of the claim in her Preliminary Statement. (Amended Compl., Doc. No. 12, PageID # 715.) Therein, Plaintiff wrote a succinct recitation of the parties involved, the capacity in which parties were sued, the claims asserted, and the requests for relief. Plaintiff does not know how much plainer and more concise she could have made the Statement. Moreover, Court Defendants' argument feels disingenuous because it is likely that, if Plaintiff had not provided a level of detail in the allegations of her Amended Complaint, then Court Defendants would have asserted that the complaint was not pled with specificity, thereby creating a veritable Catch-22 where Plaintiff is blamed for providing too much information when providing too little information would have generated the same argument.

Further, the list of cases Court Defendants provide in order to prove a point that does not exist should not be compared to the type of issue with which this honorable Court is currently confronted. Plaintiff has found no other case, and the Court Defendants cannot likely point to any case, wherein a judge was subjected to the kind of pervasive, ongoing, and insulting discriminatory behavior to which Plaintiff has been subjected. It is, in Plaintiff's research and

estimation, the only litigation of its kind. To that end, it is both irrational and unfair to attempt to compare or to find a litigation equal for this circumstance. Moreover, Court Defendants' reliance on *Kensu v. Corizon, Inc.*, 5 F.4th 646 (6th Cir. 2021), is both improper and insulting. First, that case involved a litigant whom the Court described as "a permanent resident of the Michigan Department of Corrections (MDOC), sentenced to life imprisonment for first-degree murder." *Id*. In this case, Plaintiff is a senior member of FCCP-Gen who has served for almost 16 years and is widely respected as a thoughtful and dutiful jurist. Additionally, the Court determined that many of the allegations were repeated from previous litigation, making it difficult to determine what conduct was unnecessary background and what conduct was being alleged. *Id*. at 648. Here, Plaintiff has not filed any previous litigation and has titled sections of the complaint to help the Court and litigants understand her allegations. Next, the Court dismissed the complaint in *Kensu* because it could not determine when much of the alleged misconduct occurred. *Id.* at 648. On the other hand, Plaintiff has provided a timeline beginning in 2021 and ending not even two months ago to explain her allegations.

Finally, the Court reasoned that the allegations in *Kensu* had not been pled with clarity, thereby depriving the defendants of fair notice of his claims and the grounds for the same. *Id*. at 650. For the matter before this Court, Plaintiff has clearly articulated the bases for her claims and the relief sought. Despite this, Court Defendants and counsel contend:

> The mere task the Defendants and counsel of reviewing almost 700 pages or allegations and record would be Herculean. But Rule 11 requires more, and counsel would then need to go through the Amended Complaint individual with the Defendants in order to respond to the truth or falsity of each minute allegation. This task would be highly burdensome.

(Motion to Dismiss, Doc. No. 29, PageID # 1669-1670.) Plaintiff is unclear on how or why she should be responsible for the inability or unwillingness of Court Defendants and their counsel to

review the allegations. Plaintiff certainly did not force counsel for Court Defendants' to accept the engagement to represent them in this matter and, as such, should not be held accountable if the representation is not what they expected. Moreover, since July 2021, Plaintiff has been subject to a consistent barrage of communications and unprecedented expectations based on her election and unfairly abbreviated tenure as Administrative Judge. Even after Plaintiff was forced to resign that position, she continued to be subject to disparate treatment that has continued through the filing of this responsive pleading. Yet, neither Court Defendants nor counsel thought it prudent or collegial to discontinue the discriminatory, hostile, and unlawful conduct to which Plaintiff has been subjected. In fact, Plaintiff attempted to facilitate a tempered resolution to the litigation by sending an email to counsel for all Defendants on February 25, 2025(before Court Defendants' responsive pleading was due), proposing that the parties participate in a guided mediation to resolve Plaintiff's claims and requesting that counsel reply by March 4, 2025. But, instead of Court Defendants responding to Plaintiff directly, they sent a response through counsel for Franklin County Defendants declining to participate in mediation. Now, after declining an opportunity to avoid what Court Defendants and counsel assert is a "burdensome" task by engaging in mediation, they assert that Plaintiff has somehow complicated their existence by providing a detailed recitation of the unlawful behavior to which she has been subjected for almost four years.

Court Defendants then compound that affront by offering an indefensible prevarication. Concisely, Court Defendants assert, "The Amended Complaint references 132 exhibits. However, Plaintiff failed to file nine Exhibits that were referenced in the Amended Complaint and has not provided these Exhibits to Defendants or their counsel, even after several." (Motion to Dismiss, Doc. No. 29, PageID # 1670.) To be clear, the incomplete sentence above is not a

typo or error on Plaintiff's part – it is the exact statement articulated by Court Defendants in their motion. However, neither Court Defendants nor their counsel has ever requested the nine Exhibits referenced in the Amended Complaint as recordings. In truth, when Plaintiff filed this matter initially, she was required to file a paper copy of the pleading because she had not been granted rights to file electronically. This requirement to file a paper copy meant that the recordings could not be filed immediately. Nevertheless, Plaintiff anticipated that, to the extent discovery becomes necessary, the recordings would have to be provided. However, if Court Defendants wish to hear their voices immediately (if they do not recall what they said to Plaintiff and the diminishing, dismissive, and disrespectful way in which they spoke to and about Plaintiff), then she will provide a copy to Court Defendants' counsel once they actually submit a request. Even if Plaintiff never provided the recordings, which she will certainly do at some point, Plaintiff presumes that Court Defendants would be able to advise their lawyers about what they said. But, perhaps, the truth and devaluing nature of what they said is even too overwhelming for them to want to recall.

Irrespective of the novel argument regarding nine exhibits, Court Defendants' argument regarding Plaintiff's failure to comply with the mandates of Fed. R. Civ. P. 8(a)(2) is completely without merit.

There is no one in this litigation who is more disappointed in and exhausted by the necessity of this process than Plaintiff. There is no one in this litigation who has had to endure a level of scrutiny, embarrassment, and humiliation like Plaintiff. There is no one in the litigation who has been isolated and alienated other than Plaintiff. So for Plaintiff to then be subjected to arguments that minimize her experiences to amusing stories that either don't provide enough detail, provide too much detail, and only highlight a deteriorating work relationship that appeared out of thin air is yet another deflating and tiring experience. As Plaintiff stated in her prior

response in opposition, by repeating the refrain of Plaintiff's allegations in the context of being asserted against "fellow judges", Court Defendants seem to suggest that Plaintiff has somehow forgotten or overlooked her collegial obligation, while at the same time ignoring, minimizing, or justifying the discriminatory, insulting, hostile and retaliatory way in which both "fellow judges" and administrators have treated Plaintiff for almost four years. Perhaps, if Court Defendants had treated Plaintiff like what she is – a duly, elected sitting FCCP-Gen Judge who is worthy of and entitled to dignity, respect, and sincere collegiality in a work environment that is free from discrimination, hostile behavior, and retaliation – then Plaintiff's difficult decision to file litigation would have never been necessary.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court find Court Defendants' motion to dismiss not well-taken and DENY the same in its entirety.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff p*ro se*
345 S. High Street, #4E
Columbus, OH  43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

70

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on the 23rd day of March, 2025, I caused the

foregoing paper to be electronically filed with the Clerk of the Court using the ECF system that

will send notification of such filing to all parties of interest participating in the CM/ECF

system.


<u>/s/ Kimberly Cocroft</u>
Kimberly Cocroft