# IN THE UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Kimberly Cocroft, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-cv-4208 |
| | : | |
| vs. | : | Judge Newman |
| | : | |
| Franklin County, Ohio, et. al., | : | Magistrate Judge Gentry |
| | : | |
| Defendants. | : | |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS RICHARD A. FRYE, COLLEEN O'DONNELL, KIMBERLY J. BROWN, STEPHN L. MCINTOSH, MICHAEL J. HOLBROOK, JULIE M. LYNCH, MARK SERROTT, JEFFREY M. BROWN, CHRISTOPHER M. BROWN, DAVID YOUNG, KAREN HELD PHIPPS, DANIEL R. HAWKINS, CARL A. AVENI, SHERYL K. MUNSON, JENNIFER GOODMAN, SUSAN E. BEDSOLE, CAMEO DAVIS AND STACY WORTHINGTON**

**A.    Plaintiff's claims are legally insufficient, irrespective of the truth of the facts set forth in the Amended Complaint.**

Plaintiff repeatedly and correctly notes that the Court Defendants did not address the many pages of factual allegations in the Amended Complaint. Court Defendants did not because the Amended Complaint's factual allegations must be assumed true, per Fed. R. Civ. P. 12(C). Even so, all of Plaintiff's claims are legally insufficient. For instance, the only relevant fact regarding Plaintiff's Title VII claim is that she is an elected public official.  Therefore, as a matter of law, she is statutorily excluded from the scope of Title VII. Likewise, Plaintiff's allegations, even if true, do not support civil RICO claims.  For this Motion, the Court Defendants accepted the truth of the allegations in the Amended Complaint and cited facts as needed and as relevant to the grounds justifying dismissal. The fact that the Court Defendants have not attempted to summarize more than 100 pages of facts from the Amended Complaint does not negate their arguments, nor does it mean that they are conceding that those facts state a claim for relief. More importantly and for the

1

purpose of the present motion, that Plaintiff has plead many facts does not mean that those facts support legally sufficient claims.

**B.      Title VII**

**1.      Plaintiff's Title VII claim fails as a matter of law because she is an elected official.**

Plaintiff does not dispute that she is an elected official. (ECF 12, Amended Complaint, PageID 922, ¶ 2). By its own plain language definitions, Title VII does not apply to elected officials. 42 U.S.C. § 2000e(f).  In the absence of law establishing otherwise, this is where the analysis should end.  There is no law finding that an elected official—more specifically, an elected common pleas judge—falls within the definition of an "employee" under Title VII. As Plaintiff's status as an elected judge unequivocally renders her ineligible to bring a Title VII claim, it is irrelevant whether the facts alleged in the complaint would state a Title VII claim under a different scenario in which Plaintiff *was not* an elected official.

Advocating for an extreme interpretation of both Title VII's language and Ohio law, Plaintiff claims that 42 U.S.C. § 2000e(f)'s exclusion does not apply because she is in the civil service. Plaintiff is wrong, plain and simple, and her arguments do not withstand scrutiny for multiple reasons.

Plaintiff's interpretation of 42 U.S.C. § 2000e(f) is incorrect. The provision excludes elected officers categorically, as well as "any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." This exemption for staff does not apply, however, where "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Plaintiff cites no decision in which a court has found that Title VII applies to an elected officer like herself. In fact, the vast majority of case law

contemplating this exclusion considers whether it applies to an elected official's *personal staff*. This is because there is no question that elected officials themselves are excluded from the scope of Title VII. See *Birch v. Cuyahoga County Probate Court,* 392 F.3d 151, 158 (6th Cir. 2004), It also bears emphasis that courts have consistently held that "Congress intended that these exemptions be narrowly construed." *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564, 569 (E.D. Penn. 2010), citing *Teneyuca v. Bexar Cnty*., 767 F.2d 148, 152 (5th Cir. 1985) and *Owens v. Rush*, 654 F.2d 1370, 1372 (10th Cir. 1981).

Moreover, Ohio law does not provide that elected officials or an elected common pleas judge is in the civil service, just the opposite in fact. *See* R.C. 124.11(A)(1) (excluding all officers elected by popular vote from the classified service and the requirements of Ohio Rev. Code Chapter 124). Again, Plaintiff does not cite any federal case in which an elected official was deemed to be protected by Title VII. On the contrary, district courts from around the nation routinely hold that elected officials are not protected by Title VII. See e.g. *Doward v. City of Kettle River*, Case No. 23-cv-1798, 2024 U.S. Dist. LEXIS 37424, *4 (D. Minn. Jan. 31, 2024) (citing cases); *Gay v. City of Coll. Park Ga.*, Case No. 1:23-cv-1899, 2023 U.S. Dist. LEXIS 197161, *10 (N.D. Ga. Nov. 1, 2023) (dismissing city councilman's Title VII claim); *Nowlin v. Lake City*, No. 4:10-01857, 2012 U.S. Dist. LEXIS 32483, 2012 WL 831492, at *3-4 (D.S.C. Mar. 12, 2012) (municipal court judge exempt from Title VII protection).

As noted by the Franklin County Defendants, Plaintiff's reliance on the decision in *City of Wayne v. Miller*, Case No. 364138, 2024 Mich. App. LEXIS 4382 (Mich. Ct. App. June 6, 2024) is misplaced. *Miller* is a decision from a state court in Michigan that was interpreting a Michigan statute, the Elliott-Larsen Civil Rights Acts ("ELRCRA") and which did not restrict its scope to "employees," as does Title VII. Finally, the Michigan Court equated *being employed* with being

3

an "employee" under the statute, a proposition for which there is no support under federal law interpreting Title VII. As such, *Miller* has no precedential value whatsoever.

Regardless of the truth of the Amended Complaint's allegations, Plaintiff's status as an elected official precludes her from bringing a claim under Title VII as a matter of law.

### 2. Plaintiff's Title VII claim is barred by the statute of limitations.

In her Memorandum, Plaintiff misconstrues the Court Defendants' position regarding the statute of limitations for her Title VII claim. The Defendant's position is this: read liberally, it appears that the Plaintiff's most concrete allegation in the Amended Complaint is that she was "forced" to resign her post as Administrative Judge, and that the underlying reason that she was forced out was that the Court Defendants did not want a black woman to be Administrative Judge. Any claim about the circumstances surrounding her time as Administrative Judge, including the events related to her resignation of the post, are time-barred because Plaintiff did not file her initial complaint until November 26, 2024, more than two years after she resigned the position on November 14, 2022. (ECF 12, Amended Complaint, PageID 761, ¶¶ 374-77).

The remainder of the allegations in the Amended Complaint that occurred within the statute of limitations do not support any of the claims that she has attempted to assert. In other words, when applying the statute of limitations, which removes the events that occurred prior to November 14, 2022 from consideration, the remaining factual allegations in the Amended Complaint are insufficient to state a claim for relief. What remains is a laundry list of complaints that Plaintiff has about the operation of the Court, which she claims were not addressed by the Court Defendants. These allegations do not support her claims for relief. The fact that Plaintiff claims that the conditions in the Court were based on her race or gender is a legal conclusion that is not credited as true under Fed. R. Civ. P. 12(B)(6). *Rondigo, L.L.C. v. Twp. of Richmond*, 641

F.3d 673, 684 (6th Cir. 2011). Rather than ignoring allegations related to occurrences after November 14, 2022, Court Defendants assert that these allegations, even if true, are not sufficient to state a Title VII claim as a matter of law. In short, much of Plaintiff's factual allegations are beyond the statute of limitations, and the rest of the *factual* allegations do not state a claim for relief under Title VII.

### 3. The Court Defendants are not the Plaintiff's employer under Title VII.

In her Memorandum, Plaintiff was clear that she is suing the Court Defendants in their individual/personal capacity. (ECF 33, Memorandum, PageID 1737). This Court, however, has held that a supervisor may be sued under Title VII only in his official capacity, for purposes of imposing respondeat superior liability on the employer, and not in his individual capacity. *Johnson-Scott v. Risch,* S.D. Ohio No. C-3-95-549, 1996 U.S. Dist. LEXIS 20160, at *9. As such, Plaintiff cannot proceed with her individual claims against the Court Defendants based on the premise that they are her "employers" under Title VII.

Plaintiff argues, however, that Title VII applies because "Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior." (ECF 33, Memorandum, PageID 1748). This statement, even if true, does not support that Plaintiff's fellow judges on the Franklin County Common Pleas bench are her "employers" for the purposes of Title VII. Indeed, as an elected official, these fellow judges have no authority to remove Plaintiff from her position on the bench. This is confirmed by Plaintiff's own exhibit which she attached to her original Complaint, which is an organizational chart. (ECF 1-4, Complaint Ex. 2, PageID 147). This chart shows that Plaintiff, as a common pleas judge who is a member of the full court, is on top of the supervisory hierarchy and has no "employer" or

"supervisor" above her. Id. Plaintiff's fellow judges are, in no sense of the word, her employers, and she is not their employee.

Plaintiff's position as to the Court Administrator defendants is even more strained. Plaintiff acknowledges that none of the Court Administrators had supervisory authority over her. This is confirmed by the Organizational Chart as well, which shows Plaintiff as the supervisor of the Court Administrators both as a member of the full court and in her role as Administrative Judge. Id. However, Plaintiff claims that the Court Administrators are her "employer" because one fellow judge suggested to her that she should work with Court Administrator Goodman cooperatively, in a way that Ms. Goodman "preferred." (ECF 33, Memorandum, PageID 1749). This fact, even if true, does not come close to establishing that Court Administrators, who admittedly work *for* the Court, are actually her "employer" for the purposes of imposing individual/personal liability on them under Title VII.

**C.     Plaintiff's claim under 42 U.S.C. 1981 fails as a matter of law.**

**1.     A claim against individuals under § 1981 does not exist.**

As noted previously, 42 U.S.C. § 1981 does not provide a private cause of action for money damages against state actors in their individual capacity. *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012); *Direct Constr. Servs., LLC v. City of Detroit*, 820 Fed. Appx. 417, 4287 (6th Cir. 2020); *Speed Way Transp., LLC v. City of Gahanna*, 6th Cir. No. 21-3657, 2023 U.S. App. LEXIS 5135, at *22. Plaintiff has sued the Court Defendants in their individual capacities under 42 U.S.C. § 1981, a claim that does not exist.

Plaintiff states only that "case law is clear that Court Defendants can be held individually liable for a violation of § 1981," citing *Cardenas v. Massey*, 269 F.3d 251, 268 (3rd Cir. 2001). *Cardenas* is a 24-year-old out-of-circuit case (like the other cases cited by Plaintiff in this section).

It is not controlling. As recently as 2023, the Sixth Circuit has reaffirmed that there is no claim against individuals under § 1981. See *Speed Way Transp., LLC* at 822. This continues to be true in the Sixth Circuit, and as a result, Plaintiff's claim under § 1981 fails as a matter of law.

> **2.** **There is no basis for liability under § 1983 for a violation of § 1981, as Plaintiff has not been deprived on any contractual right or property interest by the Court Defendants.**

§ 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" for suits against state actors in their individual capacities. *McCormick*, 693 F.3d at 660. To establish a violation of § 1981 via § 1983, Plaintiff must identify a contract under which she had rights that were impaired. *Domino's Pizza, Inc. v. John McDonald*, 546 U.S. 470, 475-476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006) ("Any claim brought under § 1981…must initially identify an impaired contractual relationship under which the plaintiff has rights."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989); see also *Brintley v. St. Mary Mercy Hosp.*, 545 F. Appx 484, 488 (6th Cir. 2013) (§ 1981 requires a contractual relationship).

As to this issue, Plaintiff reiterates that she has a contract—presumably with the Court—because she is an "employee" of the Court. She also argues that she has a property interest in her office as a judge. This argument is mistaken. As an elected official, Plaintiff is not an employee of the Court and has no contractual relationship with it. In her Memorandum, Plaintiff does not address the fact that the Supreme Court has long held that elected officials do not have a contractual right or property interest in their offices. *Taylor v. Beckham*, 178 U.S. 548, 20 S. Ct. 890, 44 L. Ed. 1187 (1900); see, also, *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972).

Plaintiff also claims that she had a contractual right to continue in her position as Administrative Judge, a position that she was *elected to* by her fellow judges. However, her role

as an Administrative Judge is incidental to her service in the office of common pleas judge. Because she has no contractual right or property interest in her office, she also has no contractual right or property interest in the position of Administrative Judge to which she was elected. Further, other than merely being elected to serve in that position, Plaintiff cites no contract related to the Administrative Judge position that would support her argument. In fact, the one document that she attaches to the Amended Complaint regarding this issue appears to establish that the Administrative Judge role is a revolving, unpaid administrative post that is shared by all judges in a revolving fashion that actually imposes additional burdens on the person serving in that role. (ECF 1-4, Complaint Ex. 1, PageID 146).

Additionally, Plaintiff alleges only that she was "blackmailed" into resigning the Administrative Judge position by two fellow judges. She alleges nothing about the remaining Court Defendants, nor does she explain how these two other judges had the authority to actually remove her from the Administrative Judge position. This, of course, is all in addition to the fact that any claims related to the circumstances of her time as Administrative Judge are barred by the statute of limitations, as already noted.  (Amended Complaint, Doc. 12, ¶¶ 374-77, PageID # 761).

**D.    42 U.S.C. § 1983**

   **1.    Plaintiff's claim under 42 U.S.C. § 1983 are duplicative of her Title VII claim and fails for the same reasons that her Title VII claim fails.**

Plaintiff does not distinguish between her Title VII claim and her claim under § 1983. Rather, she contends she is permitted to bring the same basic claim under both statutes. This is not true. As stated previously, a plaintiff may not bring a Title VII claim by way of § 1983 and thereby avoid the procedures involved with bringing a Title VII claim. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII"). Count Three of the Amended Complaint,

which is ostensibly a claim under § 1983, alleges the same basic premise as her Title VII claim, which is that she was subject to race and gender discrimination. (ECF 12, Amended Complaint, PageID 585, ¶¶ 1101-1106). The fact that Plaintiff simply recites that she was deprived of property and liberty interests without due process (which is also addressed below) does not change this fact. Because Plaintiff's Title VII and § 1983 claims are in all respects the same, the § 1983 claim fails for the same reason as the Title VII claim.

2.    **Plaintiff has not pled facts sufficient to state a claim for a violation of her constitutional rights, as she does not have a property interest in her office, and she has not alleged any facts showing that her liberty interests were infringed.**

Read liberally, Count Three of the Amended Complaint purportedly alleges a claim for violation of Plaintiff's due process rights. To succeed, Plaintiff would need to show that she was deprived of some property or liberty interest.  Even construing every factual allegation as true, she was not because neither being elected Judge nor being elected to the role of Administrative Judge implicates such interests.

With respect to a property interest, Plaintiff appears to claim that she has a property interest in her position as a common pleas judge, in the position of Administrative Judge, and/or in a particular standard with respect to her day-to-day existence in her interactions with her fellow judges. None of this is true. As noted above, an elected office does not constitute a property interest. *Taylor v. Beckham*, 178 U.S. 548, 20 S. Ct. 890, 44 L. Ed. 1187 (1900); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972). It necessarily follows that an unpaid administrative role like Administrative Judge that is part and parcel to the elected office also is not a property interest. On this issue, Plaintiff cites only Rule of Superintendence 4.01(A), which creates the position of Administrative Judge. This section only creates an administrative role to be filled within the organization of a common pleas court, not a cognizable property interest. See *Whaley v. County of*

9

*Tuscaloosa ex rel. Tuscaloosa County,* 58 F.3d 1111, 1114 (A "property interest" for the purposes of a due process violation under the Fourteenth Amendment is defined as a legitimate claim of entitlement to a benefit."). Plaintiff has not plead facts nor provided any explanation, regarding how the role of Administrative Judge is considered to be a benefit to which she had a legitimate entitlement. The Administrative Judge role imposed administrative burdens on Plaintiff and nothing more. *See* Ohio Sup. R. 4.01 and Franklin County Loc. R. 5.04. It is hard to fathom how having responsibility for the common pleas court docket and calendar and/or being responsible for determining weather closures, could ever create a property interest. The Amended Complaint also alleges no facts (and Plaintiff provides no argument) that would support any claim that any of the Court Defendants deprived Plaintiff of a liberty interest.

      **3.**      **Qualified Immunity.**

Setting aside the issues above, Plaintiff's Amended Complaint also does not allege facts which, even if true, would remove the Court Defendants' entitlement to qualified immunity.

First, Plaintiff appears to be relying exclusively on Title VII (and perhaps § 1981) as the basis for her § 1983 claim. The inapplicability of Title VII and § 1981 has already been addressed above. Suffice it to say that Title VII and § 1981 do not apply here, either as stand-alone claims or as the basis for a § 1983 claim.

Second, aside from bare legal conclusions, Plaintiff has not provided any facts that support that she was subject to discriminatory actions. An allegation of racial or gender discrimination is considered a legal conclusion for the purposes of Rule 12(b)(6) or Rule 12(c) in the Sixth Circuit. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011). In *Rondigo,* the Sixth Circuit explicitly stated that allegations of unlawful discrimination are "little more than legal conclusions couched as factual allegations" and need not be accepted as true under Rule 12(b)(6)

scrutiny. Id. The court emphasized that such allegations must be supported by sufficient factual content to raise the right to relief above the speculative level and to make out a plausible claim for relief. Id., see, also, *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

To be sure, Plaintiff provides many examples of events and circumstances in her workplace to which she objects and which she believes are or were not appropriate or not fair. (ECF 33, Memorandum, PageID 1756-1758). However, what is missing from this list is any facts showing that those events and circumstances were the result of Plaintiff's race or gender. As to this, Plaintiff appears to rely solely on the fact that she is a member of a protected class, concluding from this fact that she was discriminated against. Id. Other than this bare legal conclusion, there is nothing that connects the events and circumstances that Plaintiff complains about with her gender or race. That is, stripping away the legal conclusion of discrimination, there are no actual facts, which, if true, show that the events and circumstances described in the Amended Complaint were the product of race or gender discrimination. Plaintiff herself comes close to conceding as much when she admits that her claims may rest on "a cataclysmic and intentional failure to treat individuals with basic decency," hardly a clearly established constitutional right. (ECF 33, Memorandum, PageID 1722). As such, the Amended Complaint does not state a claim for a violation of a federal constitutional or statutory right actionable under § 1983. As such, Plaintiff cannot satisfy the first prong to overcome qualified immunity, which requires Plaintiff to show that a constitutional violation has occurred. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)

Second, the Court Defendants asserted in their Motion to Dismiss that Plaintiff has not identified how she has suffered any adverse employment action. Plaintiff did not rectify this in her

Memorandum by identifying anywhere in the Amended Complaint where facts alleged show that she suffered an adverse employment action.

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). In addition, it typically "inflicts direct economic harm." Id.

Here, Plaintiff leans on the fact that she was allegedly "blackmailed" to resign from her position as Administrative Judge. Even if this claim were not time-barred, her resignation from that unpaid position—compelled or otherwise--is not an adverse employment action, because it did not involve a change in salary, benefits, title, or work hours, or any direct economic harm inflicted on the Plaintiff. Likewise, the various events and circumstances about which Plaintiff complains also do not constitute an adverse employment action. While perhaps frustrating to Plaintiff, these conditions did not change the benefits of her position nor did they inflict direct economic harm on her; they do not constitute adverse employment actions.

**E.     RICO**

The Franklin County Defendants have thoroughly explained why Plaintiff's civil RICO claims fail as a matter of law. (ECF 30, Reply, PageID 1680-1683). Those arguments apply with equal force to the RICO claims against the Court Defendants. Among the most glaring defects, Plaintiff's allegations do not relate to any predicate crimes (the alleged destruction of internal Teams messages is not a predicate crime), Plaintiff has not alleged a cognizable injury to her business or property, Plaintiff's claims do not relate to conduct that affects interstate commerce, and Plaintiff has not alleged facts showing a causal link between the alleged RICO violations and

damages that she has incurred. Id. As a result, the Court Defendants incorporate and adopt by reference all of the arguments set forth by the Franklin County Defendants' Reply regarding the civil RICO claim herein as if they were reargued here.

**F.    State Law Claims**

    **1.    4112.**

Plaintiff's state law claims under R.C. Chapter 4112 fail for the same reasons that her Title VII claims fail, as discussed above. Specifically, Plaintiff cannot assert individual claims against the Court Defendants under R.C.4112.02 and R.C. 4112.99, as the individual Court Defendants are not Plaintiff's employers. *Winter v. Mike's Trucking, Ltd*., S.D. Ohio No. 2:20-cv-1269, 2021 U.S. Dist. LEXIS 79031, FN 2. Likewise, as an elected official, Plaintiff is not "employee" under R.C. Chapter 4112 as a matter of law. Finally, as set forth several times above, Plaintiff's claims based on factual allegations that occurred before November 22, 2022, are barred by the statute of limitations, and the factual allegations after that date do not state a claim for relief under R.C. Chapter 4112.

    **2.    Defamation**

        **a.    Plaintiff's defamation claim is time-barred.**

Plaintiff's defamation claim against Ms. Goodman and Ms. Davis is based on a complaint that was lodged by Ms. Goodman more than one year prior to the filing of the lawsuit. As a result, this claim is barred by the one year statute of limitations under RC. 2305.11(A).

In response, Plaintiff claims that the complaint was re-published when it was provided to a reporter in response to a public record request on May 17, 2024, which "re-set" the statute of limitations. Plaintiff is relying on a "continuing publication" theory that has been firmly rejected by Ohio courts.

13

Courts have consistently held that Ohio has not adopted a "continuing tort theory" or "continuing publication" rule for defamation cases. *Spitzer v. Knapp*, 2019-Ohio-2701, at ¶ 26 (5th Dist.); *Smith v. Nat'l Western Life*, 2017-Ohio-4184, FN 1(8th Dist.) (stating Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations); *Rosenbaum v. Chronicle Telegram*, 2002-Ohio-7319, ¶¶ 27-29 (9th Dist.) (declining to adopt the continuing tort theory in a defamation case and stating a cause of action for defamation accrues immediately upon the occurrence of the tortious act and is not appropriate for the continuing violation exception); *Fleming v. Ohio Atty. Gen.*, 2002-Ohio- 7352, ¶ 14 (10th Dist.) (stating the court would not embrace the plaintiff's continuing defamation theory); *Krowiak v. BWXT Nuclear Operations Group, Inc.*, N.D. Ohio No. 1:18 CV 629, 2018 U.S. Dist. LEXIS 184027, 2018 WL 5312463 (rejecting the re-publication theory of the plaintiff and finding even if the defendant continued to disseminate these statements to new consumers, this would not re-start the limitations period); *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003) (rejecting plaintiff's theory that the original source of the defamatory statements is liable each time the information is re-published to a new party and stating Ohio case law is solidly against the plaintiff's re-publication argument). "Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003).

The first "publication" of the harassment complaint was on November 1, 2022, meaning that the statute of limitations began to run that day. Plaintiff did not file this action until November 26, 2024, over two years later, and as such, the defamation claim is barred as a matter of law.[1]

> **b.** **Defendants Goodman and Davis are entitled to privilege for any involvement in making a harassment complaint regarding Plaintiff.**

The Court Defendants contend that Ms. Goodman and Ms. Davis are entitled to a privilege for their involvement and/or statements made in a complaint about workplace conditions because the complaint is the first step in a quasi-judicial proceeding.

In her Memorandum, Plaintiff does not appear to dispute that Ms. Goodman made a complaint about the conditions of her workplace based on her interactions with the Plaintiff. Likewise, Plaintiff does not appear to dispute that under the Court's Anti-Harassment Policy, the filing of a complaint about workplace conditions is the first step in a formal process leading to the investigation regarding the complaint, which is a quasi-judicial proceeding. (ECF 1-6, Anti-Harassment Policy, PageID 283-289). Finally, Plaintiff does not dispute the case law holding that statements made in judicial or quasi-judicial proceedings are absolutely privileged as long as they are reasonably related to the proceedings. *Hecht v. Levin*, 66 Ohio St. 3d 458, 460 (1993); *Jackson v. Conroy Rental*, 10th Dist. No. 24AP-190, 2024-Ohio-4467, at ¶ 7.

Instead, in response to the assertion of the privilege, Plaintiff argues that: (1) she was not provided documents related to Ms. Goodman's complaint; (2) the Court Defendants did not investigate her own claims of harassment; and (3) that the Court Defendants "waived" quasi-

---

[1] Plaintiff claims that the Court Defendant revealed for the first time in their Motion to Dismiss that that Ms. Davis asserted a complaint against her. (ECF 33, Memorandum, PageID 1775-1776). This is incorrect. The Court Defendants simply addressed Plaintiff's own allegation in the Amended Complaint that "Davis provided inaccurate information to Goodman for inclusion in her bad-faith complaint regarding the reason that former employees left Judge Cocroft's staff." (ECF 12, Amended Complaint, PageID 860, ¶ 1119). The Court Defendants did not assert that Ms. Davis filed an additional or different complaint against Plaintiff.

judicial privilege by providing documents in response to public record requests. None of these assertions, even if true, affect the application of quasi-judicial privilege for Ms. Goodman and Ms. Davis, and Plaintiff provides no authority to the contrary. The prevailing law is that individuals are immune when providing statements that are reasonably related to a quasi-judicial proceeding. Based on the allegations in the Amended Complaint, it is clear that Ms. Goodman and Ms. Davis are immune from a claim for defamation here.

### 3. Plaintiff's claims under R.C. 149.351(B).

As noted previously, because the federal claims in this case are legally insufficient, this Court should decline to exercise supplemental jurisdiction over Plaintiff's claim for destruction of public records, a purely statutory claim under Ohio law.

Moreover, should this Court decide to review this claim, Plaintiff's claim fails on the pleadings for three reasons.

First, R.C. 149.351(B) *expressly* requires that claims for violation of the statute be brought in the court of common pleas of the county in which the alleged violation occurred. That means that this claim must be brought in Franklin County Common Pleas Court, and cannot be asserted in this case. For this reason, it must be dismissed.

Moreover, there is nothing within R.C. 149.351 that allows for an individual/personal claim against the employees or officials of public offices. This provision imposed the duty to preserve public records on the public office, and the remedies for violations of that duty are against the public office, not individual officials and employees. Plaintiff cites a number of sections that impose duties regarding the retention of public records, but none of those sections impose personal liability on officials or employees for a violation of R.C. 149.351(B). Plaintiff's claim here is against the Court Defendants in their personal or individual capacity.

Finally, Plaintiff's records requests sought Ohio court records. Therefore, R.C. 149.351(B) does not apply. Rather the Ohio Rules of Superintendence are the exclusive mechanism by which court records may be sought and dictate the limited and exclusive remedy for requests for court records. *See,* Ohio Sup. R. 44-47; *State ex rel. Vindicator Printing Co. v. Wolff*, 2012 Ohio 3328, ¶ 23.

Given all of the above, Count Seven must be dismissed.

## G. *O'Shea* advises that this Court should abstain from considering Plaintiff's prayer for injunctive relief, which would require extensive supervision by this Court over the operations of the Franklin County Common Pleas Court if granted.

Plaintiff states that she is seeking "permanent injunctive relief to enjoin Court Defendants and their officers, agents, employees, and all persons in active participation from engaging in any employment practices that discriminate in any way." (ECF 33, Memorandum, PageID 1738). Specifically, in the Amended Complaint, Plaintiff seeks an order for the Court Defendants "to not only institute policies, practices, and programs that provide equal opportunities for all employees and eradicate the effects of past and present unlawful employment practices, but ***to ensure that those policies, practices, and programs [are] carried out and adhered to by Defendants*** by implementing performance evaluations that monitor the efficacy and practical impact of those policies, programs and practices." (ECF 12, Amended Complaint, PageID 862, ¶ 1127.C.) [Emphasis added].

*O'Shea* abstention is appropriate when conduct or policies of state courts "are sought to be enjoined" and "it is obvious that any federal declaration that policies and practices of state judges are unconstitutional would impact…pending state judicial proceedings." *Larson v. Franklin Cty. Court of Common Pleas*, No. 81-3184, 1982 U.S. App. LEXIS 11688, at *6-7. This means that

*O'Shea* abstention is "an almost total bar on 'supervisory injunctive relief' claims against state courts." *Parker v. Turner* 626 F.2d 1, 6-7 (6th Cir. 1980).

Plaintiff claims that the broad injunctive relief she seeks would not impact judicial proceedings. This is incorrect. Among other things, Plaintiff takes issue with how dockets are set and cases are assigned (including TRO cases), how jurors are assigned to court rooms to hear trials, how interpreters and court reporters are assigned to courtrooms for individual cases, and how probation officers and prosecutors are allowed to communicate with her regarding individual cases. (ECF 12, Amended Complaint, Page ID 736-788) All of these actions involves judicial proceedings. In order to carry out the sweeping injunction that Plaintiff seeks, this Court would have to police nearly all aspects of the operation of the Franklin County Common Pleas Court, and likely other offices (like the Franklin County Prosecutor's Office) about which Plaintiff complains. For instance, what if Plaintiff did not receive an interpreter or court reporter quickly enough during a proceeding? Would this Court be called upon to intervene? What if Plaintiff's docket was heavier than other judge's dockets for a period of time, or Plaintiff received more TRO cases? Would this Court be required to step in and address the situation on a case-by-case basis with the Assignment Commissioner? This is the very essence of the type of federal audit, or continuing oversight, that *O'Shea* was intended to prevent. To avoid this result, this Court should abstain from entertaining Plaintiff's claim for injunctive relief that would require this Court to supervise the operation of the Franklin County Common Pleas on an ongoing basis.

## H.    Rule 8(A)(2).

The Court Defendants' position regarding Rule 8(A)(2) is simple. A 151-page Complaint, with more than 750 pages of exhibits, is not a "short and plain statement" of Plaintiff's claim. It is the opposite, in fact. The Court Defendants have supplied this Court with a variety of prior

examples of complaints that are briefer than the Amended Complaint that have been stricken for violating Rule 8(A)(2). With the exception of objecting to the citation of *Kensu v. Corizon, Inc.,* 5 F.4th 646 (6th Cir. 2021) as "insulting" because the plaintiff was a prisoner in that case, Plaintiff does not contest the general proposition that a complaint can violate Rule 8(A)(2) when it is too prolific. The Court Defendants cited *Kensu* simply because the Sixth Circuit has set a precedent for dealing with complaints whose length violates Rule 8(A)(2), and provided a process for how a District Court should proceed in those situations. That process should apply here, as Plaintiff's Complaint does not comport with Rule 8(A)(2).

Plaintiff also takes issue with the fact that the Court Defendants pointed out that she has not filed multiple exhibits referenced in the Amended Complaint, which are nine audio recordings which Plaintiff acknowledges that she has not filed or provided to the Court Defendants. The substance of these recording is referenced throughout the Amended Complaint. (ECF 12, Amended Complaint, PageID 961, 982, 993-994, 1000, 1007, 1020-1021, 1031, at ¶¶ 322, 494, 594, 599, 647, 704, 791, 857). Under Fed. R. Civ. P. 11(b)(4), the Court Defendants (and their counsel) must be able to certify to this Court that in answering the Amended Complaint, they have made a reasonable inquiry into the facts alleged in the Amended Complaint and that any denials of factual contentions are warranted on the evidence or are reasonably based on a belief or a lack of information. If the Plaintiff's Amended Complaint is not complete because there are exhibits that are referenced but not attached, the Court Defendants are not fully in a position to make this certification. At a minimum, the Court Defendants cannot fully investigate the truth or falsity of the Plaintiff's allegations regarding those recordings if they have no access to those recordings.

The reality is that this issue is symptomatic of Plaintiff's entire approach to the pleadings in this case. It is simply beyond unreasonable for the Court Defendants to be placed in a position

where they must respond to approximately 900 pages of allegations and exhibits. This is opposite of the type of pleading envisioned by Fed. R. Civ. P. 8(a)(2).

As stated above, Plaintiff's Amended Complaint is legally insufficient irrespective of the facts alleged. However, in the event that this Court finds that some examination of those facts is necessary in order to determine whether the Amended Complaint states a claim for relief as to one or more claims, the Plaintiff's Complaint should be stricken, and she should be directed to refile a pleading that complies with Fed. R. Civ. P. 8(A)(2).

## CONCLUSION

For the reasons set forth herein and in the Court Defendants' Motion to Dismiss, Defendants Richard A. Frye, Colleen O'Donnell, Kimberly J. Brown, Stephn L. McIntosh, Michael J. Holbrook, Julie M. Lynch, Mark Serrott, Jeffrey M. Brown, Christopher M. Brown, David Young, Karen Held Phipps, Daniel R. Hawkins, Carl A. Aveni, Sheryl K. Munson, Jennifer Goodman, Susan E. Bedsole, Cameo Davis and Stacy Worthington respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Scott O. Sheets (0076837)
Charles Schneider (0005821)
ISAAC WILES & BURKHOLDER, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 221-2121 / F: (614) 365-9516
aglasgow@isaacwiles.com
ssheets@isaacwiles.com
cschneider@isaacwiles.com
*Attorneys for Court Defendants*

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 7, 2025, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
