**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY COCROFT, | : | Case No. 2:24-cv-04208 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | | Magistrate Judge Caroline H. Gentry |
| v. | : | |
| FRANKLIN COUNTY OHIO, *et al.,* | : | |
| Defendants. | : | |

**RESPONSE IN OPPOSITION OF PLAINTIFF *PRO SE*
TO MOTION TO DISMISS OF DEFENDANTS RICHARD A. FRYE, COLLEEN,
O'DONNELL, KIMBERLY J. BROWN, STEPHEN L. MCINTOSH, MICHAEL J.
HOLBROOK, JULIE M. LYNCH, MARK SERROTT, JEFFREY M. BROWN,
CHRISTOPHER M. BROWN, DAVID YOUNG, KAREN HELD PHIPPS, DANIEL R.
HAWKINS, CARL A. AVENI, SHERYL K. MUNSON, JENNIFER GOODMAN, SUSAN
E. BEDSOLE, CAMEO DAVIS, AND STACY WORTHINGTON (ECF NO. 37)**

Now comes Plaintiff, *pro* se, and hereby submits her response in opposition to the motion to dismiss of Defendants Richard A. Frye ("Frye"), Colleen O'Donnell ("O'Donnell"), Kimberly J. Brown ("K. Brown"), Stephen L. McIntosh ("McIntosh"), Michael J. Holbrook ("Holbrook"), Julie M. Lynch ("Lynch"), Mark Serrott ("Serrott"), Jeffrey M. Brown, ("J. Brown"), Christopher M. Brown ("C. Brown"), David Young ("Young"), Karen Held Phipps ("Phipps"), Daniel R. Hawkins ("Hawkins"), Carl A. Aveni ("Aveni"), Sheryl K. Munson ("Munson"), Jennifer Goodman ("Goodman"), Susan E. Bedsole ("Bedsole"), Cameo Davis ("Davis"), and Stacy Worthington ("Worthington") (collectively, "Court Defendants"). A memorandum in support follows.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff *pro se*
345 S. High Street, #4E
Columbus, OH  43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

**TABLE OF CONTENTS**

I.    INTRODUCTION..............................................................................................1

II.   STATEMENT OF FACTS................................................................................4

III.  LAW AND ARGUMENT...............................................................................6

      A.   To Be Plausible, a Complaint Need Not Allege the Evidentiary
           Framework for Proving Discrimination or Retaliation.....................6

      B.   The Truth of Plaintiff's Factual Allegations Must Be Presumed When
           Analyzing a Motion to Dismiss............................................................12

      C.   Plaintiff's Allegations Are Permitted Under Title VII.........................13

           1.   As a FCCP-Gen Employee, Plaintiff Is Entitled To Title VII Relief for
                Her Claims of Race and Gender Discrimination, Hostile Work
                Environment, and Retaliation...........................................13

                a.   The FCCP-Gen Code of Ethics and Conduct Defines Plaintiff As
                     an Employee..........................................................14

                b.   Plaintiff Is Entitled to the Protections Contemplated Under Ohio
                     Revised Code § 124.01..............................................17

           2.   Because Plaintiff's Allegations Assert Continuing Violations Under
                Title VII, Her Claims Are Not Time-Barred..........................24

      D.   As a FCCP-Gen Employee, Plaintiff Has The Benefit of a Contractual
           Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well-
           Founded.................................................................................28

      E.   Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983...31

           1.   None of Plaintiff's Claims are Time-Barred..........................31

           2.   Court Defendants Are Not Entitled to Qualified Immunity for
                Plaintiff's § 1983 Claims...............................................33

      F.   Court Defendants Are Not Entitled To Dismissal of Plaintiff's State Law
           Discrimination and Retaliation Claims Under Ohio Revised Code § 4112
           ............................................................................................40

           1.   Plaintiff's Notice of Right to Sue Letter from the Equal Employment
                Opportunity Commission is Sufficient for Asserting State Law
                Claims.......................................................................40

i

2. **Plaintiff's Claims Against Court Defendants Are Permitted Under Ohio Revised Code §§ 4112.02 and 4112.99**……………………………41

G. **Plaintiff Has Alleged Facts That Justify Her Assertion of the Racketeering Claim In Count Four of Her Amended Complaint**…………………………43

1. **Plaintiff's Amended Complaint Satisfies the Procedural Framework of** *Sedima, S.P.R.L., v. Imrex Co.,* **473 U.S. 479  105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985)**……………………………………………………………...43

2. **Court Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings**……………………48

H. **Plaintiff's Claims Against Court Defendants Goodman and Davis for Defamation Are Not Barred By the Statute of Limitations Nor Subject to Privilege**……………………………………………………...……………...54

I. **Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B)**……………………………59

J. **Court Defendant's Reliance on the** *O'Shea* **Abstention Doctrine is Misplaced in the Context of Plaintiff's Request for Injunctive Relief**…………………64

K. **Plaintiff's Second Amended Complaint Complies With Both the Letter and Spirit of Fed. R. Civ. P . 8 and Fed. R. Civ. P. 12(b)(6)**……………………..68

IV. **CONCLUSION**……………………………………………………71

**CERTIFICATE OF SERVICE**……………...……………………………..72

**APPENDIX OF EXHIBITS**……………………………………………73

ii

# TABLE OF AUTHORITIES

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013)………..…..7

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)……………………………………………………………………………………..54

*Alexander c. Gardner-Denver Co*., 415 U.S. 36 (1974)……………………………………………13

*Anderson v. Creighton*, 483 U.S. 635 (1987)…………….......................................................39

*Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983)………………………….….........13

*Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001)……………………………..……..8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………6, 7, 8, 12, 68

*Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir. 1981), *cert. denied*…………………………………………………………………………33

*Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir. 1977)…………………………..13

*Barrett v. Whirlpool Corp.,* 556 F.3d 502 (6th Cir. 2009)………………………………..26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…...………………………………6, 7, 10, 11, 68

*Board of Regents, v. Roth*, 408 U.S. 564 (1972)………………………………………..30

*Brown v. J. Kaz, Inc*., 581 F.3d 175, 181 (3d Cir. 2009)………………………………………29

*Brown v. Philip Morris, Inc*., 250 F.3d 789 (3rd Cir. 2001)………………………………28

*Cardenas v. Massey*, 269 F.3d 251 (3rd Cir. 2001).................................................................28, 29

*Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991)……………………………………………..12

*Ciganik v. Kaley*, 2004-Ohio-6029 (11th App. District, 2004)………………………………62

*City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024)…..20, 21, 22

*Comstack v. McCrary*, 273 F.3d 693 (6th Cir. 2001)………………………………………...39

*Conley v. Gibson*, 355 U.S. 41 (1957) ………………………………………………...11

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994)…………………………………………………....33

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)….………………………………………….12

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895)………………………………………………..……1

*Dicarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)……………………………………………….....35

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)……………………………………….....12

*Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019)……………………………………32

*Ex Parte Young*, 209 U.S. 123 (1908).................................................................22, 23, 24, 66

*Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000)…………………………………………....26, 27

*Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993)...........................................................49

*Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020)……………….....61, 62

*Gomes v. Avco Corp.,* 964 F.2d 1330 (2d Cir. 1992)........................................................33

*Grubbs v. Sheakley Grp., Inc.,* 807 F.3d 785 (6th Cir. 2015)...........................................54

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012)………………………………….12

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)…………………………………………..35, 36, 37

*Hines v. Humana Ins. Co.*, 689 F.Supp.3d. 516 (S.D. Ohio, Aug. 30, 2023)……………………...29

*Horen v .Cook*, 546 F. App'x 531 (6th Cir. 2013)…………………………………………….....18

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)………………………………….....23

*In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d  599 (E.D. Ky 2011)……………......52, 53

*Jean-Louis v. Am. Airlines*, No. 08-CV-3898 (E.D.N.Y. July 30, 2010)………………………….28

*Kensu v. Corizon, Inc.*, 5 F.4th 646 (6th Cir. 2021)………………………………………… …..67

*Kenty v. Bank One Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996)………………………….........52

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)……………………………………...…..7

*Kienow v. Cincinnati Children's Hos. Med. Ctr.*, 2015-Ohio-4396……………………………….55

*Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994)…………………………………………….....17

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993)……………………………………………...12

*McClements v. Ford Motor Co.,* 473 Mich. 373 (Mich. 2005)………………………………...21

*McClements v. Ford Motor Co.,* 474 Mich. 1201 (Mich. 2005)……………………………......21

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)……………………………..6, 34, 35

*Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, (1985)……………………………………..17

*Miller v. International Telephone Telegraph Corp.*, 755 F.2d 20 (2d Cir. 1985), *cert. denied*……33

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017)……………………………………………..12

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)……………………………25, 26, 27

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011)………………………10

*New Hampshire v. Maine,* 532 U.S. 742 (2001)……………………………………………..1

*Okpalobi v .Foster*, 244 F.3d 405 (5th Cir. 2001)…………………………………………23

*O'Shea v. Littleton*, 414 U.S. 488 (1974)……...…………………………………...64, 65, 66

*Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir. 1980)……………………13

*Reves v. Ernst Young*, 507 U.S. 170, 183 (1993)……………………………………………...49

*Rivers v. Roadway Exp., Inc*., 511 U.S. 298 (1994)………………………………………….. …28

*Schoonover v. Hamilton Cnty.,* S.D. Ohio No. 1:22-cv-767, 2024 U.S. App LEXIS 265586 …………………………………………………………………………………18, 19

*Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479 (1985)……..……………………………..43, 44, 47

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)…………………………………………...8

*Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020)……………….....65

*Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir 1973)…...…………………13

*Simrell v. Dave White Chevrolet, LLC*, Case No. 3:23-cv-1382, (N.D. Ohio May 29, 2024) ………………………………………………………………………..40, 41

*Smith v. Goodwill Industries of West Mich.*, *Inc*., 243 Mich 438 (Mich. Ct. App. 2000)……..…20

*Suero v. Motorworld Auto Grp., Inc.,* CIVIL ACTION NO. 3:16-cv-00686 (M.D. Pa. Jan. 31, 2017)……………………………………………………………………………………28, 29

*Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002)………………………………….…….6, 7, 8

*Terrell v. Uniscribe Prof'l Servs.*, 398 F.Supp. 800 (N.D. Ohio, Nov. 10, 2024)……………..…17

*Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)……………………………....…35

*Thomas v. Noder-Love,* 621 F. App'x 825, 829–30 (6th Cir. 2015)………………………………8

*Tipler v. duPont de Nemours and Co.*, 443 F.3d 125 (6th Cir. 1971)…………………...........13

*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)…………………………………………27

*United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996)………………………………….....53, 54

*United State v. Griffith*, 17 F.3d 865 (6th Cir. 1994)……………………………...….…..53

*United States v, Local 560 of the Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 780 F.2d 267 (3d Cir. 1985)……………………………………………………………53

*United States v. Puckett*, 692 F.2d 663 (10th Cir. 1981)…………………………………...53

*United States v. Turkette,* 452 U.S. 576 (1981)………………………………………………49

*VandenBroeck v. CommonPoint Mortgage Co*., 210 F.3d 696 (6th Cir. 2000)…………........48, 49

*Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635 (2002)…………………..23

*Weidman v. Hildebrant*, 2024-Ohio-2931………………………………………………………55

*Zipes v. Trans World Airlines, Inc*., 455 U.S.. 385 (1982)……………………………………...13

## Statutes

18 U.S.C. §1001………………………………………………………………...……….…51

18 U.S.C. § 1018………………………………………………………………………………51

18 U.S.C. §1030…………………………………………………………………………...51, 52

18 U.S.C. § 1961…………………………………………………………………5, 43, 44, 48

18U.S.C. § 1962………………………………………………………………………5, 43, 48, 49

18 U.S.C. § 1962(a)……………………………………………………….………..43

18 U.S.C. § 1962(c)……………………………………………………..........44, 48, 49

18 U.S.C. § 1963………………………………………………………………..5, 43

18 U.S.C. § 1964………………………………………………………….........5, 43

18 U.S.C. § 1964(c)………………………………………………………….……..44

18 U.S.C. § 1965………………………………………………………………..5, 43

18 U.S.C. § 1966………………………………………………………………..5, 43

18 U.S.C. § 1967………………………………………………………………..5, 43

18 U.S.C § 1968………………………………………………………………..5, 43

28 U.S.C. § 1367………..……………………………………………..………60, 61

42 U.S.C. § 1981………………………………………………………5, 28, 29 31, 61

42 U.S.C. § 1981a……………………………………………………………..5,  10

42 U.S.C. § 1983………………………………………………5, 31, 32, 33, 34, 39, 40, 61

42 U.S.C. § 2000(e)……………………………………………………………..5, 10

42 U.S.C. § 2000e(f)……………………………………………………………….13

42 U.S.C. § 2000e-5(e)(1)……………………………………………………..24, 25

Ohio Revised Code § 124.01………………………………………………...18, 19, 22

Ohio Revised Code § 149.351……………………………………………..5, 51, 61, 62, 63

Ohio Revised Code § 149.351(B)………………………………………….…......59, 60

Ohio Revised Code § 149.43………………………………………………………63

Ohio Revised Code § 309.09………………………………………….........................50

Ohio Revised Code § 2305.11(A)…………………………………………………54

Ohio Revised Code § 2913.42……………………………………………………51

Ohio Revised Code § 2921.12…………………………….…………………………………50

Ohio Revised Code § 4112……………………………….…………………………………40

Ohio Revised Code § 4112.01…………………………….……………………………5, 10

Ohio Revised Code § 4112.01(A)(9)…………………………….……………………...…42

Ohio Revised Code § 4112.02…………………………….……………………………5, 41, 42

Ohio Revised Code § 4112.02(J)…………………………….……………………...............42

Ohio Revised Code § 4112.052…………………………….…………………………...…40

Ohio Revised Code § 4112.99…………………………….……………………………...5, 41, 42

Title VII, Civil Rights Act of 1964……………………..…..5, 13, 14, 16, 17, 18, 20, 22, 24, 25, 28, 29, 31

## Rules

Fed. R. Civ. P. 8…………………………….……………………………………………6, 68

Fed. R. Civ. P. 8(a)(2)…………………………….……………………………………...7, 68

Fed. R. Civ. P. 12(b)(6)…………………………….……………………………………6

Loc. R. 7.2(e)…………………………….……………………………………………8

Ohio Code of Judicial Conduct – Preamble…………………………….…………………14, 19

Ohio Code of Judicial Conduct, Section I(A)……………………………..…………..…….…...14, 15

Ohio Code of Judicial Conduct, Rule 1.1…………………………….…………………………...15

Ohio Code of Judicial Conduct, Introduction to Canon 2…………………………….…...15

Ohio Code of Judicial Conduct, Rule 2.3…………………………….…………………………15, 16

Ohio Code of Judicial Conduct, Rule 2.3(B)…………………………….…..14, 15, 16, 42, 67

Ohio Code of Judicial Conduct, Rule 2.12…………………………….…………………4, 15, 16

Rule of Superintendence for the Courts of Ohio 4.01(A)…………………………….…….30

Rule of Superintendence for the Courts of Ohio 26.01…………………………………….....63, 64

Rule of Superintendence for the Courts of Ohio 44……...………………………………….63

Rule of Superintendence for the Courts of Ohio 44(G)(1)…………………………..………...63

Rule of Superintendence for the Courts of Ohio 45A...………………………………………..63

## Treatise

Federal Practice & Procedure: *Preclusion of Inconsistent Positions – Judicial Estoppel*, § 4477 (Wright and Miller), 3d ed. 2025……………………………………………………………1, 2

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     INTRODUCTION**

There is a saying attributed to Sir Arthur C. Clarke that most accurately describes Court Defendants' current motion to dismiss – You can't have it both ways. Originally, they argued as an initial matter that Plaintiff's Amended Complaint should have been dismissed because it failed to comply with Fed. Civ. R. 8(A) and because the allegations against Court Defendants were buried under an "avalanche of facts". (Motion to Dismiss, ECF No. No. 37 at PageID 1880.) Now that this alleged avalanche has been cleared and Plaintiff has complied with this Court's Order to "substantially edit her proposed second amended complaint to bring it into compliance with Rule 8. . ." and to submit a pleading that contains ". . . a short and plain statement showing she is entitled to relief . . ." (Court Order, ECF No. 35 at PageID 1816), Court Defendants in a stunning reversal have changed their minds and legal strategy to currently contend that "Plaintiff's Second Amended Complaint. . .fails to set forth facts that show Plaintiff has a 'plausible entitlement to relief.'" (Motion to Dismiss, ECF No. 37 at PageID 1880.) Not only is Court Defendants' fluctuating position a disingenuous defense and manufactured mischaracterization, but it is also procedurally improper and legally unsound.

In *New Hampshire v. Maine*, 532 U.S. 742,  121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001), the Court reasoned, "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.*  at 749, citing *Davis v. Wakelee*, 156 U.S. 680, 68, 15 S. Ct. 555, 39 L. Ed. 578 (1895); *see also* 18B Fed. Prac. & Proc. Juris. § 4477 (3d ed.) ("Courts also focus on the sheer effrontery of advocates who, by playing 'fast and loose' with the courts, seem in the pursuit of wanton self-interest to trifle with the dignity of judicial truth-finding efforts. . . .

1

Absent any good explanation, a party should not be allowed to gain an advantage by litigating on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.") Indeed, Court Defendants openly admit, "Irrespective of the alleged facts' length or brevity" there are no set of facts and no framework through which those facts could be pled that would entitle Plaintiff to relief, while simultaneously acknowledging that, for the purpose of its present motion, the facts alleged by Plaintiff are presumed to be truthful. (Motion to Dismiss, ECF No. 37 at PageID 1850.)

In her now more than sixteen years of service as a trial court judge in one of the largest and busiest trial courts in Ohio, there is one universal truth that Plaintiff has learned in her management of hundreds of civil cases – there are very few, if any, plaintiffs who possess an inherent desire to engage in the litigation process because it is inarguably an emotionally and mentally draining experience during which their integrity, motives, and veracity are questioned. Yet, plaintiffs participate in the process because they believe they have a legitimate grievance that has been ignored. Plaintiff in the present case is no exception to that universal truth. While Court Defendants go to great lengths to minimize and deride Plaintiff's allegations by asserting that she has failed to provide "each individual Defendant with. . .information about the basis for Plaintiff's claims against them, other than the fact that they all work with Plaintiff at the Franklin County Court of Common Pleas" (Motion to Dismiss, ECF No. 37 at PageID 1850), this intentionally dismissive and dishonest position is easily disproven, not only by the more than 700 pages of exhibits that Court Defendants should have reviewed in conjunction with Plaintiff's original filing, but also through Plaintiff's current iteration that clearly delineates the four-year ordeal she continues to endure. Plaintiff does not blame Court Defendants for attempting to deflect from the abhorrent behavior in which they have participated willingly by advancing arguments that are, to paraphrase the words of William Shakespeare, full of sound and fury but signifying nothing. Indeed, there is

no legitimate or legal argument that Court Defendants can advance or should attempt to advance to justify conduct at the hands of individuals who have taken an oath, as judges, administrators and directors to uphold the law and to treat people fairly and impartially, and with dignity and respect. Despite these clear mandates and obligations, Court Defendants have gone to extraordinary lengths, not only to engage in overtly discriminatory acts based on race and gender, to create a hostile work environment, and to retaliate for Plaintiff's reporting of the same, but to then cover up this behavior, to ostracize and isolate Plaintiff internally and to demoralize her publicly. To add further insult to this ongoing injury, Court Defendants categorize Plaintiff's allegations as "general factual assertions and bare legal conclusions" (Motion to Dismiss, ECF No. 37 at PageID 1850) as a preemptive end-run around their purposeful perpetration and practices. Plaintiff continues to be both disappointed and stunned by the casual and diminishing way in which Court Defendants even approach their responsive pleading, and views it as a continuing example of the intentionally tone deaf and hostile way in which they have handled what any insightful or thoughtful person would concede is a cataclysmic and intentional failure to treat individuals with basic decency, at best, and to adhere to the law, at worst.

Court Defendants have attempted to advance arguments in their motion for which facts don't matter to reach the flawed legal conclusion that Plaintiff has no case and, as such, her claims against them should be dismissed. But no matter how many times Court Defendants renew or restate the refrain, they still can't have it both ways because that is not how this process works. Court Defendants do not have the legal latitude to summarily conclude that Plaintiff's Second Amended Complaint is both legally and factually insufficient (Motion to Dismiss, ECF No. 37 at PageID 1852) when the facts of this matter clearly delineate how each and every Court Defendant has taken calculated and coordinated roles in either facilitating, ignoring, justifying, actively

participating in, agreeing with or remaining silent about the facts giving rise to Plaintiff's claims. A portion of Court Defendants' work as judges, administrators and directors is to hold litigants and/or employees accountable for the decisions they make that violate external laws or internal court policies and procedures. In that regard, this honorable Court should not permit Court Defendants to be the beneficiaries of a "do as I say, not as I do" privilege, which serves as a deliberate degradation of the justice system and what it is supposed to represent – honesty, integrity, fairness and impartiality.

## II.    STATEMENT OF FACTS

It is inexplicable that Court Defendants argue Plaintiff's Second Amended Complaint is comprised of a list of "complaints" while also contending that the complaint of "complaints" does not specify which Court Defendants are responsible for the treatment, yet then acknowledging and naming several Court Defendants against whom Plaintiff has made allegations. (Motion to Dismiss, ECF No. 37 at PageID 1851.) In light of Court Defendants' acknowledgment that they do, in fact, know against whom claims have been made and the basis for the same, Plaintiff will provide a brief factual foundation of the allegations giving rise to this litigation.

Plaintiff has served as a FCCP-Gen Judge since April 6, 2009 (Second Amend Compl., ECF No. 36, ¶ 2 at PageID 1819) and, for the first twelve years of her service, enjoyed a relatively respectful and discrimination-free relationship with the judges, administrators and directors employed by the court, though there were anomalous circumstances that Plaintiff hoped were outlier situations. That hope and perception changed, however, in July 2021 when Plaintiff was elected as Administrative Judge and became the first woman and first Black woman to serve in that capacity. (Second Amended Compl., ECF No. 36, ¶ 19 at PageID 1821.) Almost immediately, Plaintiff was subjected to disparate treatment by Court Defendants. This treatment included but is

4

not limited to the lack of comprehensive training and guidance regarding administrative responsibilities, being given a list of Black women whom Plaintiff should be more like, being subject to unequal application of leave policies and being subject to a bad-faith complaint filed by Defendant Goodman. While Plaintiff's election as Administrative Judge served as the spark that lit the flame of more than four years of discriminatory, hostile and retaliatory behavior, it is by no means the singular basis for her ongoing claims. In other words, Plaintiff has alleged that each one of these adverse actions was motivated by discriminatory and/or retaliatory animus and that no other White, male, non-complaining employees were subjected to the same adverse treatment.

As such, Plaintiff filed her Second Amended Complaint asserting counts for: 1.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 2.) Discrimination and Retaliation Based on Race and Gender, Title VII of the Civil Rights Act of 1964; 3.) Violation of Civil Rights, 42 U.S.C. § 1983; 4.) Racketeer Influenced and Corrupt Practices Act (RICO), 18 U.S.C. §§ 1961-1968; 5.) Unlawful Discrimination and Retaliation: Ohio Revised Code §§ 4112.02 and 4112.99; 6.) Defamation against Defendant's Jennifer Goodman and Cameo Davis only; and 7.) Destruction of Public Records, O.R.C. § 149.351. Additionally, Plaintiff seeks compensatory and exemplary damages; injunctive and equitable relief; interest; costs; and fees under Title VII, 42 U.S.C. §2000e, the Civil Rights Act of 1991, 42 U.S.C. §1981a, the Ohio Civil Rights act, O.R.C. §4112.01, *et seq.*, 42 U.S.C. §1981, 42 U.S.C. §1983, federal common law and the common law of Ohio. In her Second Amended Complaint, Plaintiff avers that a 2019 FCCP-Gen policy titled, "Code of Ethics and Conduct" delineates that she is a FCCP-Gen employee and, therefore, is entitled to all investigative and other protections afforded to employees. Further, Plaintiff contends that all Defendants condoned, ignored, ratified, and/or engaged in discriminatory, retaliatory, and hostile conduct and a pattern of corrupt activity in their

capacity as managers of FCCP-Gen protocols, policies, and procedures, including procedures to address bad faith complaints filed by employees, and were engaged in a fraudulent scheme and enterprise designed to violate law and deprive Plaintiff of her legal and constitutional rights.

## III.    LAW AND ARGUMENT

### A.  To Be Plausible, a Complaint Need not Allege the Evidentiary Framework for Proving Discrimination or Retaliation.

Despite the fact that Court Defendants are asking this Court to require Plaintiff to present and try her entire case at the initial pleading stage in order to satisfy their ever-evolving standard, this litigation is not a legal rendition or retelling of *Goldilocks and The Three Bears*. First, Court Defendants asserted that Plaintiff's Second Amended Complaint was too burdensome and onerous to review and understand – too hot. Now, after Plaintiff has complied with this Court's directive to tailor her allegations to the mandates of Rule 8, Court Defendants contend that the Second Amended Complaint "suffers from a variety of fatal defects" (Motion to Dismiss, ECF No. 37 at PageID 1852) – too cold. But neither Rule 8 nor Fed. R. Civ. P. 12(b)(6) requires a fairytale presentation to satisfy Court Defendants' preference of "just right".  Rather, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is considered plausible where the facts that are pled allow the Court to infer that the defendant is potentially liable for the misconduct alleged. *Id.* Furthermore, in *Swierkiewicz v. Sorema N.A.* 534 U.S. 506 (2002), the Court held unanimously that the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, *not* a pleading requirement. As such, a plaintiff need not, therefore, plead facts establishing a *prima facie* case in order to state a claim for relief. *Id.*

Instead, an employment discrimination plaintiff satisfies her pleading burden by drafting

6

"'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Swierkiewicz* at 508 (citing Fed. Rule Civ. P. 8(a)(2)). The "plausibility" standard from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), must still be satisfied, but the Supreme Court made it clear in *Twombly, supra* at 569-570, in rejecting the argument that its plausibility analysis "runs counter to *Swierkiewicz*."

A major concern in both *Twombly* and *Iqbal* was that "factual content" had to be alleged, rather than mere conclusions stated and legal standards parroted. *Twombly*, 550 U.S. at 570 (plausibility "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). For example, in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013), dismissal of an Equal Credit Opportunity Act discrimination claim was affirmed where the plaintiffs alleged a 'belief' that a bank had refinanced the loans of 'delinquent white borrowers' but offered nothing to identify them.

Rather, a court measures the "factual content" alleged in the Complaint, informed by its "judicial experience and common sense," to determine whether a factfinder could "draw the reasonable inference" that Defendants discriminated (or retaliated)." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citations omitted). In contrast to *16630 Southfield Ltd. P'ship*, Plaintiff provided hundreds of pages of exhibits to Court Defendants in her first iteration that clearly outlined how: 1.) she received minimal training and information regarding her service as Administrative Judge; 2.) she was counseled about being the "wrong" kind of Black woman by two White, male judges; 3.) she received less favorable treatment than White and/or male Administrative Judges; 4.) she was constantly questioned and challenged by Court Defendants about the decisions she made regarding the management of her work, as well as her personal

and assigned staff before, during, and after her service as Administrative Judge; 5.) she was subjected to different work and investigative standards from her White counterparts; and 6.) she was blackmailed and forced to resign as Administrative Judge as distinguished from other FCCP-Gen Judges who have been accused of violating court policies.[1]

*Swierkiewicz,* 534 U.S. at 512 further states, "Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).

*Iqbal*, 556 U.S. at 678, explained that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A critical distinction was drawn: "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

In assessing the conformance of Plaintiff's Second Amended Complaint with this standard, it is a requirement that Plaintiff's factual allegations are accepted as true. Those factual allegations show that Plaintiff is a thrice elected judge who is now one of the most senior members of FCCP-Gen and was elected to serve as Administrative Judge in 2021. (Second

---

[1] Pursuant to Loc. R. 7.2(e), Plaintiff has included an appendix of documentary and electronic exhibits in support of her response in opposition to Court Defendants' motion to dismiss. The evidence submitted is limited to that necessary for decision and includes only essential portions of exhibits referenced in the response in opposition. In ruling on a motion to dismiss the court may consider the complaint along with documents/materials referenced in the complaint, matters for judicial notice, public records or records of "decisions of a governmental agency." *Thomas v. Noder-Love,* 621 F. App'x 825, 829–30 (6th Cir. 2015); *Armengau v. Cline,* 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings....")

Amended Compl., ¶ 2, ECF No. 36 at PageID 1819; Second Amended Compl., ¶ 19, ECF No. 36 at PageID 1821.) The factual allegations also demonstrate that, after her election in July 2021, Plaintiff was subjected to overt discrimination based on her race and gender by Court Defendants and was the subject of a coordinated and concerted effort by the same group of Defendants to circumvent her leadership service as Administrative Judge by subjecting Plaintiff and her staff to different requirements and expectations that frustrated their ability to perform work responsibilities; questioning Plaintiff's methods for managing her work; withholding personnel support and resources from Plaintiff; removing her from the Administrative Judge position by blackmailing her with the threat of a sham investigation, if an investigation occurred, at all; and continuing to create a hostile work environment after forcing her to resign and then retaliating against her for reporting the same, with the retaliatory behavior continuing through the filing of this response. More concisely, the factual allegations outline that Defendants Frye and O'Donnell developed a plan with Defendant Goodman to blackmail Plaintiff into resigning from the position of Administrative Judge. (Exhibit 1) Then, that the plan was advanced by one "lead" Court Defendant judge and other Court Defendants who advised Plaintiff's counsel at the time that almost every FCCP-Gen judge was prepared to remove Plaintiff from the position of Administrative Judge, without an investigation into the truth of Defendant Goodman's bad faith complaint. [2] As a result, Plaintiff was unjustifiably forced to resign from the Administrative Judge position.

Further, Plaintiff's factual allegations confirm that Defendant Goodman and other Court Defendants had either actual or constructive knowledge of circumstances wherein White FCCP-

---

[2] To the extent that the attorney-client privilege between Plaintiff and Franklin County Defendants Hummer and Dean could be asserted regarding the facts, arguments and analysis contained within Plaintiff's response in opposition and any other part of this litigation, she hereby waives the privilege for purposes of the same.

Gen Judges were accused of violating FCCP-Gen policies. (Exhibit 2) Despite this knowledge, White FCCP-Gen Judges were never subject to any meetings to discuss a corrective course of action in the same manner that Plaintiff was subjected to a humiliating course of action based on advice from the court's counsel, Franklin County Defendants Hummer and Dean. As such, it appears that the allegations of Plaintiff's Second Amended Complaint are closer to or at probability rather than broadly and vaguely drafted possibility, as Court Defendants suggest.

As *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555), explained, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Here, the background evidence Plaintiff has alleged is not speculative. The FCCP-Gen Code of Ethics and Conduct Policy designating Plaintiff as an employee is not speculative. The exhibits appended hereto that contain Court Defendants unfiltered words, actions, and ever-evolving positions are not speculative. The demonstrable ways in which Plaintiff was treated differently before, during, and after her service as Administrative Judge are not speculative. The consistent manner in which Court Defendants hindered the ability of Plaintiff and her staff to manage their daily work responsibilities is not speculative. The humiliating and unprecedented ways in which Defendant Goodman's unfounded and unsupported allegations were mismanaged – from the threat of blackmail directed to Plaintiff, to Defendants Frye, O'Donnell and Davis, as Director of Human Resources, failing to provide instruction or information regarding Plaintiff's ability to receive representation under the FCCP-Gen liability policy, to the representation made by a Court Defendant judge that all Court Defendant judges were prepared to remove Plaintiff from the Administrative Judge position without an investigation if she did not resign - are not speculative.

10

The intentional way in which Court Defendant administrators and directors permanently deleted and destroyed public records is not speculative. The unwillingness of Defendant K. Brown, in her service as Administrative Judge, to either meet with or discuss Plaintiff's claims because, from her unsupported perspective, an in-person meeting would not be "beneficial" (Exhibit 3) is not speculative. The diminishing decision to humiliate Plaintiff by engaging in childlike name-calling and questioning her mindset and motives are not speculative. (Exhibit 4) The purposeful choice to exclude Plaintiff from conversations, information and meetings related to FCCP-Gen business for which she is responsible and accountable is not speculative. (Exhibit 5) Plaintiff receiving a roll call of Black women whom she should emulate by two White, male Court Defendant judges is not speculative. Having a White, male Court Defendant judge suggest in the presence of Defendant Bedsole that he could "fu*#" Plaintiff over is not speculative. Having Court Defendant administrators and directors manufacture a narrative in a bad faith complaint to suggest that Plaintiff, herself, had engaged in racist practices because her prior White staff chose to pursue new employment opportunities is not speculative. Requiring Plaintiff to explain her claims of race and gender discrimination, hostile work environment, and retaliation to Court Defendants judges so that they could discuss and decide *if potentially* an investigation would be launched is not speculative. And the continuing retaliatory behavior, including a proposed plan to having Plaintiff removed from all criminal cases assigned to her docket, along with the enduring physical, mental, emotional, and professional consequences that Plaintiff has endured since 2021 are certainly not speculative.

In other words, Plaintiff's Second Amended Complaint provides Court Defendants with "fair notice of what the. . .claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). And, as with every motion to dismiss,

Court Defendants bear the burden of showing that Plaintiff has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir, 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).

**B. The Truth of Plaintiff's Factual Allegations Must Be Presumed When Analyzing a Motion to Dismiss.**

The purpose of a motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). That purpose is why a deferential measure of the factual allegations is required. In ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quotation omitted). *Accord Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted).

Courts "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'– 'that the pleader is entitled to relief.' " *Id.* at 679 (citation omitted). The recitation of facts in Plaintiff's Second Amended Complaint far exceeds "mere conclusory statements" and reaches beyond plausibility.

**C. Plaintiff's Allegations Are Permitted Under Title VII.**

    **1. As a FCCP-Gen Employee, Plaintiff Is Entitled To Title VII Relief for Her Claims of Race and Gender Discrimination, Hostile Work Environment, and Retaliation.**

Court Defendants argue that, because Plaintiff is an elected official, she is excluded from the definition of employee under 42 U.S.C. § 2000e(f) and, as such, her Title VII claim must fail as a matter of law.[3] (Motion to Dismiss, ECF No. 37 at PageID 1853.)

The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. *Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir. 1983), citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44-45, 94 S.Ct. 1011, 1017-1018, 39 L.Ed.2d 147 (1974); *Tipler v. E.I. duPont de Nemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971). To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. *Armbruster*, *supra*, at 1336, *citing Tipler v. E.I. duPont de Nemours and Co.,* 443 F.2d at 131. The impact of this construction is the broad interpretation given to the employer and employee provisions. *Id*., citing *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980); *Baker v. Stuart Broadcasting Co.,* 560 F.2d at 391; *see Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1340-42 (D.C. Cir. 1973); *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S. Ct. 1127, 1132-35, 71 L.Ed.2d 234 (1982) (limitations provisions).

While Court Defendants attempt to muddy the legal waters by asserting that neither Court

---

[3] Court Defendants do not dispute that Plaintiff has pled sufficient facts supporting her Title VII claims, other than to argue that she is not an employee. As such, the remaining Title VII elements are not addressed.

Defendant judges nor Court Defendant administrators and directors are Plaintiff's employer for purposes of Title VII analysis, these conclusory statements conveniently ignore two intractable and inescapable truths that are both relevant and outcome determinative in deciding this issue.

### a. The FCCP-Gen Code of Ethics and Conduct Defines Plaintiff As An Employee.

In 2019, FCCP-Gen Judges adopted a policy tilted, "Code of Ethics and Conduct", the purpose of which is to "establish expectations of acceptable workplace behavior and performance for all employees." Moreover, Section III(A)(1)-(2) of the Code of Ethics and Conduct explicitly states, "Employees shall perform their duties in an ethical manner. Employees must, at all times, abide by Ohio's ethics laws located within Ohio Revised Code chapters 102 and 2921, as well as the Code of Judicial Conduct." (Emphasis added.) It should go without saying that one group of persons to whom the Ohio Code of Judicial Conduct applies is – judges. To remove any confusion regarding this fact, Paragraph 3 of the Preamble to the Code states, "The Ohio Code of Judicial Conduct establishes standards for the ethical conduct of judges. . . ." (Emphasis added.) Despite this obvious language, Court Defendants strain to fashion an alternative argument by imagining that "the Code of Judicial Conduct applies to more than just judges" and then further suggests, "Under Ohio Jud. Canon R. 2.12, court staff, court officials, and others subject to the judge's direction and control must follow the judicial rules as well as comply with Ohio Jud. Canon R. 2.3."[4] Court Defendants' contention is, at best, an unintentional misunderstanding of the plain language of the Code or, at worst, an intentional misleading of this honorable Court.

Beyond the Preamble, Section I(A) of the Code explains to whom it is applicable and

---

[4] While Court Defendants' creative argument regarding the Ohio Code of Judicial Conduct is first introduced regarding the claims in Count Two of Plaintiff's Second Amended Complaint (Motion to Dismiss, ECF No. 37 at PageID 1857), Plaintiff believes it is necessary to address their erroneous position in the context in which the Code of Ethics and Conduct was adopted – to address the conduct of employees.

says, "This code applies to all fulltime judges." Moreover, the introduction to Canon 2 states, "A judge shall perform the duties of judicial office impartially, competently, and diligently." Nowhere in the introduction to Canon 2, specifically, or in the Code, generally, does it state that it is applicable to "court staff, court officials, and others subject to the judge's direction and control." In fact, what the Code of Judicial Conduct requires in Ohio Jud. Canon R. 2.3 is as follows:

> (A) judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

> (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

Further, Ohio Jud. Canon R. 2.12 states, (A) A judge shall require court staff, court officials, and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under this code." *See also* Ohio Jud. Canon R. 1.1 ("a judge shall comply with the law".)

In other words, the incontrovertible mandates of the Code of Judicial Conduct are directed to judges. Consequently, any suggestion by Court Defendants that the language in the FCCP-Gen Code of Ethics and Conduct does not define Plaintiff as an employee is simply false. To argue that Plaintiff being defined as an employee is inconsistent with the plain language of the policy is to suggest that Court Defendants - a group of individuals with myriad advanced degrees, decades of experience as jurists, lawyers and administrative professionals who draft, read, interpret and apply both policies and law as a daily part of their work - did not, in concert with advice from FCCP-Gen counsel Hummer and Dean, understand what this policy language meant, which is simply preposterous. In truth, what Court Defendants have unwittingly

15

highlighted is that, not only have they failed to comport their behavior with the ethical guidelines contemplated both by the Ohio Code of Judicial Conduct based on their intentional decision to subject Plaintiff to race and gender discrimination (bias), hostile work environment (harassment) and retaliation for reporting the same, but they have also failed to prohibit Court Defendant administrators and directors from engaging in the same pattern of illegal and unethical behavior, which are clear violations of both Ohio Jud. Canon R. 2.3 and Ohio Jud. Canon R. 2.12. Despite this, and in a final attempt to justify the argument, Court Defendants contend that neither Court Defendant judges nor administrators and directors can be considered as Plaintiff's employer for purposes of Title VII analysis. (Motion to Dismiss, ECF No. 37 at PageID 1854.) However, as the persons who are responsible for approving, adopting, and implementing FCCP-Gen procedures and policies regarding the process whereby an employee's claims of illegal behavior, like discrimination, hostile work environment, and retaliation are resolved, Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior (as confirmed in Ohio Jud. Canon R. 2.3 and acknowledged by Court Defendants).

Court Defendants concede that Court Defendant administrators and directors work *for* the Court (Motion to Dismiss, ECF No. 37 at PageID 1854) and, as such, the Code of Judicial Conduct requires Court Defendant <u>judges</u> to prohibit <u>court staff</u> from engaging in discriminatory behavior based on race and gender. Despite this directive, Court Defendant administrators and directors, who have admitted to serving as court staff, encouraged and permitted FCCP-Gen probation department employees (additional court staff they supervise) to question and undermine Plaintiff's decisions regarding the management of cases assigned to her docket. (Exhibit 6; Exhibit 7, Part 1 and Part 2) Plaintiff agrees that no Court Defendant administrator or

director does now or has ever had a supervisory position over Plaintiff. Yet Defendant Frye went to extraordinary lengths to suggest to Plaintiff that her service as Administrative Judge had to be handled in the manner that Defendant Goodman preferred. (Exhibit 1) Perhaps, if Frye had honored what Court Defendants now attempt to argue, then a portion of this litigation would have never been necessary.

Be that as it may, it is axiomatic that an employer has the right and ability to expand protections against illegal conduct such as race and gender discrimination, hostile work environment and retaliation. In that regard, Title VII is not the boundary for protections but is, instead, the baseline below which protections may not fall. If an employer chooses to give more coverage than that which the law demands, then that employer does not have the prerogative or privilege to remove, retract or rescind that coverage to avoid an inconvenient truth created by its own misdeeds. This principle was confirmed in *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d, 100, 104, 483 N.E.2d 150 (1985) where the Court reasoned, "Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract"; *accord Terrell v. Uniscribe Prof'l Servs.* 348 F. Supp. 890, 894-95 (N.D. Ohio Nov. 10, 2024) (in denying the defendant's motion to dismiss, the Court determined that under certain circumstances, an employee handbook or other policy materials may create enforceable contract rights.)

### b. Plaintiff Is Entitled to the Protections Contemplated Under Ohio Revised Code § 124.01.

Even assuming that Plaintiff is not a FCCP-Gen employee as defined by its Code of Ethics and Conduct adopted in 2019, though she is an employee, Plaintiff would still be entitled to protections under Title VII based on the civil service exception included in the statute. A collateral benefit that Court Defendants enjoy from having reviewed a prior iteration of

Plaintiff's response in opposition is the attempt to preemptively argue against what they anticipate Plaintiff will advance as additional grounds for denying their motion. Such is the case with Court Defendants' hollow assertion that the protections provided pursuant to R.C. § 124.01 are not applicable to Plaintiff. (Motion to Dismiss, ECF No. 37 at PageID 1853.) However, no matter how frequently Court Defendants attempt to frame these protections as a "strained interpretation", the law won't allow them to have it both ways and their assertion is without merit.

In arguing that Plaintiff's claims under Title VII must fail as a matter of law, Court Defendants ask this Court to focus solely on the first half of the statutory definition. However, it is important to review the first half of the definition in concert with the second half, which states, "The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." While Court Defendants cite two federal cases for the proposition that the civil service exemption is not applicable to Plaintiff (Motion to Dismiss, ECF No. 37 at PageID 1854), their reliance on both cases is misplaced. First, *Horen v. Cook*, 546 F. App'x 531(6th Cir. 2013) relates to the employment status of a judicial staff attorney in reference to her claim of FMLA retaliation against a judge and whether the staff attorney was the judge's "personal staff" for purposes of Title VII analysis. Yet, the *Horen* decision includes no discussion of R.C. §124.01 in assessing the viability of the Title VII claim. Beyond this glaring inconsistency, the facts of the instant case are easily distinguished from *Horen, supra*. First, in *Horen*, both the job description and handbook define the staff attorney as "personal staff" of a judge. In the present case, however, the FCCP-Gen Code of Ethics and Conduct defines Plaintiff in her capacity as judge as an employee. Similarly, the factual predicate that is the basis of *Schoonover v. Hamilton Cnty.*, S.D. Ohio No. 1:22-cv-767, 2024 U.S. App LEXIS 265586 is inconsistent with the facts

18

of this case, as the focus there was whether a terminated deputy was the personal staff of a county sheriff. In granting the plaintiff's motion to amend complaint and denying the defendant's motion to dismiss as moot, the Court reasoned, "Without the benefit of discovery, the Court does not have the information necessary to adequately assess the factors detailed above to determine whether the personal staff exemption applies. In turn, the Court declines to consider whether Plaintiff is a personal staff member of Defendants until the parties have had an adequate opportunity to develop a factual record." *Id*. at 15. Unlike the present case, however, the *Schoonover* court did not have the benefit of a policy that clearly defined the plaintiff as an employee.

Nonetheless, the plain text of R.C. § 124.01 is unmistakable. It provides, "'Civil Service'" <u>includes all offices and positions of trust</u> or employment in the service of the state and <u>in the service of the counties</u>, cities, city health districts, general health districts, and city school districts of the state. (Emphasis added.) In this regard, the Ohio Code of Judicial Conduct, which Court Defendants cited and referenced (though erroneously) as a trusted source of information regarding how persons are categorized and defined, states in Paragraph 1 of its Preamble:

> An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the rules contained in this code are the precepts that judges, individually and collectively, must respect and honor the judicial office <u>as a public trust</u> and strive to maintain and enhance confidence in the legal system.

For over sixteen years, Plaintiff has served dutifully as a FCCP-Gen judge, a job that Court Defendant judges certainly should not dispute is a position of trust since they hold the same position, and that Court Defendant administrators and directors should concede is a public trust based on the vast expanse of work Plaintiff is constitutionally and statutorily obligated to

manage. Further, the Code of Judicial Conduct, which also governs Plaintiff's service, emphasizes the public trust component of this position. Consequently, Plaintiff qualifies as an employee for purposes of Title VII analysis. Even though this may be an uncomfortable statutory truth for Court Defendants to accept, the Ohio Legislature did not find it a strain to adopt this language.

This conclusion is further bolstered by *City of Wayne v. Miller*, Wayne Circuit Court LC No. 22-001565-CZ (June 26, 2024). In that case, the appellant, who served as an elected member for the appellee's city council, filed a counterclaim alleging discrimination based on gender and sexual orientation, hostile work environment, and retaliation pursuant to the Elliot-Larsen Civil Rights Act ("ELCRA"). The appellee filed a motion for summary disposition, arguing that, as an elected official, the appellant was not an employee and, thereby, prohibited from protections contemplated under the ELCRA. The trial court granted the motion, however, on appeal, the court reversed the lower court's decision, writing, "[I]n order to plead a valid workplace discrimination claim under Section 2 of the ELCRA, a complainant must plead that he or she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Id*, citing *Smith v Goodwill Industries of West Mich, Inc.*, 243 Mich 438, 448; 622 NW2d 337 (2000) (citation omitted) The court, relying on *McClements v Ford Motor Co.*, 473 Mich 373, 386-387; 702 NW2d 166 (2005), amended in part 474 Mich 1201 (2005), then reasoned:

> Although the City argued, and the trial court found, that Miller was not an "employee" of the City and that no "employment relationship" existed, the plain language of the statute does not limit employment discrimination claims to employees. As our Supreme Court observed in McClements, "MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. . . . Accordingly, to limit the availability of relief under the [EL]CRA to those suits brought by an employee against his or her employer is not consistent with the statute." *McClements*, 473 Mich at 386.

The Court in *McClements* therefore held that "a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment." Id. at 389.

Applying *McClements* to this case, we conclude that irrespective of whether Miller, as an elected official, was an "employee" of the City, he certainly had employment and alleged that the City affected or controlled a condition of his employment. Therefore, we conclude that Miller pleaded a viable claim under section 2 of the ELCRA.

The City points out that the ELCRA is based on Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq., and that our Supreme Court has encouraged using federal precedent interpreting Title VII as guidance in interpreting the ELCRA. *Rouch World*, 510 Mich at 411. Further, the City notes that Title VII explicitly exempts from its definition of "employee" "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 USC § 2000e(f).

The City is correct that the definition of "employee" found in 42 USC § 2000e(f) excludes elected officials and certain other individuals. This exclusion has been held to preclude such persons from bringing certain employment discrimination claims under Title VII. *See, e.g., Crumpacker v Kansas Dep't of Human Resources*, 474 F3d 747 (CA 10, 2007) (noting that "Title VII outlines four classes of persons who are exempt from its protection: (1) elected officials; (2) persons chosen by an elected official to be on such official's personal staff; (3) "appointee[s] on the policy making level"; and (4) persons serving as an immediate adviser to the elected official with respect to the constitutional exercise of the powers of the official's office."). However, we note not only that we are bound by our Supreme Court's holding in *McClements*, but that Title VII, using language similar to the ELCRA, prohibits an employer from taking certain actions against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," see 42 USC § 2000e-2(a)(1), and other actions against "employees" or "applicants" based on those same characteristics, see 42 USC § 2000e-2(a)(2). Therefore, it does not appear that the definition of "employee" found in Title VII would necessarily bar all employment discrimination claims from elected officials. Indeed, the exclusion cited by the City contains its own carve-out for "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Moreover, when analyzing Title VII discrimination claims, certain government employees may be able to pursue such claims under the Government Employee Rights Act, 42 USC 20003-16a et seq., or other similar statutes, notwithstanding their exclusion from the definition of "employee." See 42 USC § 2000e-16c. In short, the definition of "employee" under Title VII is part of a complex network of federal legislation, and should be considered in that context, rather than merely reading the text of 42 USC § 2000e(f) (defining "employee") in isolation. *See Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (stating that "[a] court does not construe the meaning of statutory terms in a vacuum . . . [r]ather, we interpret the words in their context and with a view to their place in the overall statutory

scheme") (quotation marks and citations omitted).

*Id.*

While the *Miller* decision's focus is an interpretation of the ELCRA, the discussion and analysis of Title VII is both relevant and applicable to Plaintiff's case. Here, the statutory construct in Ohio Revised Code § 124.01 provides a "carve-out" for employees who hold "positions of trust" in the service of counties, which precisely describes Plaintiff. Moreover, it is beyond dispute that Plaintiff is a FCCP-Gen employee as specifically defined and delineated in the court's Code of Ethics and Conduct that has been in effect since 2019. Indeed, it would be illogical for FCCP-Gen to say that Plaintiff is an employee for purposes of ethics and conduct (including the disallowance of harassing and bullying behavior), while simultaneously suggesting that Plaintiff is not an employee when she is the subject of the same kind of harassing and bullying behavior. But even without that incontrovertible proof, it is beyond dispute that Court Defendants' argument regarding the inapplicability of Title VII to Plaintiff's claims is not well-taken.

Additionally, Court Defendants make a fleeting reference to the inapplicability of Title VII against them in their individual capacities. (Motion to Dismiss, ECF No. 37 at PageID 1855.) Yet, Plaintiff's Preliminary Statement in her Second Amended Complaint states that her claims against Court Defendants are "in their personal capacities for their violations of equal protection, procedural and substantive due process guarantees of the Fourteenth Amendment and in their official capacities for prospective injunctive relief." (Second Amended Compl. ECF No. 36 at PageID 1818-1819.) Plaintiff's litigation construct is supported by *Ex Parte Young,* 209 U.S. 123 (1908), in which the Court established an exception to state sovereign immunity under the Eleventh Amendment and permitted suits against state officials in federal court. Specifically, the Court reasoned:

The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. See *In re Ayers, supra*, page 507. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality with reference, at least, to the Federal Constitution be first raised in a Federal court that court, as we think is shown by the authorities cited hereafter, has the right to decide it to the exclusion of all other courts.

(Emphasis added.) *Id*. at 159-60. *See also Okpalobi v. Foster,* 244 F.3d 405, 414-415 (5th Cir. 2001) ("Thus, *Young* solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while simultaneously emphasizing the requirements that the officers have 'some connection with the enforcement of the act" in question or be "specially charged with the duty to enforce the statute' and be [threatening] to exercise that duty." (Internal citation omitted.)); *Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.', citing *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Here, Plaintiff seeks permanent injunctive relief to enjoin Court Defendants and their officers, agents, employees, and all persons in active participation from engaging in any employment practices that discriminate in any way. (Second Amended Complaint, ECF No. 36

23

at PageID 1831), which satisfies the straightforward inquiry contemplated in *Young*. Moreover, Plaintiff's allegations against Court Defendants for constitutional violations arise in a personal capacity and, as such, Eleventh Amendment protections are not applicable. Consequently, Court Defendants' argument is without merit.

### 2. Because Plaintiff's Allegations Assert Continuing Violations Under Title VII, Her Claims Are Not Time-Barred.

Court Defendants further assert that, even if Plaintiff's claims are covered by Title VII, which they are, they are time-barred under 42 U.S.C. § 2000e-5(e)(1) since her EEOC Charge was not filed within, at most, "three hundred days after the alleged unlawful employment practice occurred." (Motion to Dismiss, ECF No. 37 at PageID 1855.)

42 U.S.C. §2000e-5(e)(1) states:

**Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system**

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Court Defendants' position might be accurate if Plaintiff had asserted that a <u>single,</u> discrete unlawful employment practice had occurred. But that is literally not the case. Rather, the allegations asserted by Plaintiff demonstrate an ongoing pattern of discriminatory, hostile, and retaliatory behavior that, in truth, extends even to the filing of this pleading. Consequently,

Plaintiff's claims are not time-barred. Moreover, the Preliminary Statement of Plaintiff's Second Amended Complaint plainly states, "The allegations and claims involve timely offenses and also continuing violations that began in July 2021 and continue through the filing of this pleading, which serve to toll the applicable statutes of limitations." (Emphasis added.) (Second Amended Compl., ECF No. 36 at PageID 1819.)

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the respondent alleged "that he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment." *Id.* at 104. In noting that 42 U.S.C. 2000e-5(e)(1) requires an aggrieved party to file a charge with EEOC within either 180 or 300 days after the alleged unlawful practice occurred, the issue presented to the Supreme Court for its consideration was "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside this statutory time period." *Id*. at 105. The Court's analysis then distinguished Title VII claims related to discrete discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire", which the Court noted are "easy to identify" (*Id*. at 114) as contrasted with continuing violations or a hostile work environment. Specifically, the Court wrote:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. As the Court stated in [*Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21 (1993)]*,* "[t]he phrase 'terms, conditions, or privileges of employment' [of 42 U. S. C. § 2000e-2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." 510 U. S., at 21 (some internal quotation marks omitted) (quoting *Meritor,* 477 U. S., at 64, in turn quoting *Los Angeles Dept. of Water and Power* v. *Manhart,* 435 U. S. 702, 707, n. 13 (1978)).10

"Workplace conduct is not measured in isolation .... " *Clark County School Dist.* v. *Breeden,* 532 U. S. 268, 270 *(2001) (per curiam).* Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris,* 510 U. S., at 21 (citations omitted).

In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.,* at 23. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U. S. C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan* at 115-118. *Accord Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir.

2009). *See also Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000) ("Every incident of discrimination

before the limitations period need not be of the same type, so long as there is a corresponding type of

discrimination within the period.")

26

Based on this analysis, the *Morgan* Court ultimately concluded, "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. Neither holding, however, precludes a court from applying equitable doctrines that may toll or limit the time period." *Morgan* at 122.

Even assuming, *arguendo*, the acts articulated by Plaintiff do not constitute a timely charge, which they do, it is well-settled that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977).

Court Defendants are correct that Plaintiff alleges she filed her EEOC Charge on May 23, 2024. (Motion to Dismiss, ECF No. 37 at PageID 1855.) For some reason that remains a mystery to Plaintiff, however, Court Defendants assert that Plaintiff alleges she was discriminated against "while she was the AJ." (Motion to Dismiss, ECF No. 37 at PageID 1855.) Once again, this simply isn't true. A careful reading of both Plaintiff's EEOC Charge and Second Amended Complaint reveal Plaintiff alleged that her election as Administrative Judge served as the *catalyst* for a series of continuing violations that subjected her to a hostile work environment, discriminatory behavior, and retaliation similar to what was contemplated by the holding of the *Morgan* decision. In other words, Plaintiff asserted that her work environment was "permeated with discriminatory intimidation, ridicule, and insult" that occurs on a daily basis and is intended both to humiliate and to embarrass Plaintiff. As such, the allegations in Plaintiff's Second

Amended Complaint provide context for her claims of continuing violations, establish both other acts of discrimination against her, as well as her consistent opposition to discrimination and retaliation she reasonably perceived and experienced, and support the plausibility of her claims.

### D. As a FCCP-Gen Employee, Plaintiff Has The Benefit of a Contractual Relationship and, Therefore, Her Claims Under 42 U.S.C. § 1981 Are Well-Founded.

Regarding Count Two of Plaintiff's Second Amended Complaint, Court Defendants, contend that 42 U.S.C. § 1981 "does not provide a private cause of action for money damages against state actors in their individual capacity" and that an elected official does not constitute a property interest giving rise to a "contractual" relationship under § 1981. (Motion to Dismiss, ECF No. 37 at PageID 1857-1858.)

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. *Suero v. Motorworld Auto. Grp., Inc.*, CIVIL ACTION NO. 3:16-cv-00686, 11 (M.D. Pa. Jan. 31, 2017), citing *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994). In order to state a claim under § 1981, a plaintiff must plead sufficient facts in support of the following elements: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *Id.*, citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Unlike claims brought under Title VII, private individuals can be held liable for violating § 1981, see *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), so long as there is "some affirmative link to causally connect the actor with the discriminatory action." *Jean-Louis v. Am. Airlines*, No. 08-CV-3898, 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010) (citation omitted). However, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination

claim under Title VII." *Id.*, citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

Case law is clear that Court Defendants can be held individually liable for a violation of § 1981 as contemplated in *Cardenas, supra*. Specifically, Plaintiff satisfies the three elements outlined in *Suero, supra* – as a Black woman, she is a member of a racial minority; Court Defendants intended to subject Plaintiff to discriminatory behavior, as there is no evidence of any White FCCP-Gen Judge being subjected to the actions that Plaintiff has endured and continues to endure; and, because of this discriminatory behavior, Court Defendants modified the terms of Plaintiff's employment to her detriment. Moreover, the FCCP-Gen Code of Ethics and Conduct adopted in 2019 unequivocally identifies Plaintiff as an employee in her service as a FCCP-Gen Judge. It is without question that all court employees are entitled to protections against discriminatory behavior based on the contractual employee relationship. While Court Defendants attempt to minimize the impact and gravitas of the FCCP-Gen 2019 Code of Ethics and Conduct policy that defines Plaintiff as an employee, prevailing case law demonstrates that employee handbooks and policies can create a contractual employment relationship.

For example, in *Hines v. Humana Ins. Co.*, 689 F.Supp.3d 516 (S.D. Ohio Aug. 30, 2023), the court reasoned, "Employment manuals may constitute binding contracts but 'an employee who asserts the existence of an implied contract must prove the existence of each element necessary for the formation…of a contract, including, offer, acceptance, consideration, and mutual assent." *Id* at 538. (Internal citations omitted.) The *Hines* court further stated, "Several Ohio appellate courts have concluded that employee handbooks can be construed as an offer made by the employer, accepted by an employee by taking the position, and that continued employment pursuant to that handbook is an adequate consideration for an implied contract to form. *Id.*

29

In the instant matter, it must first be noted that FCCP-Gen did not develop and implement an employee handbook until well after Court Defendants, along with Franklin County Defendants Hummer and Dean, received notice of Plaintiff's claims as well as the filing of her EEOC Charge. Consequently FCCP-Gen employees, including Plaintiff, relied upon, adhered to, and were governed by FCCP-Gen policies including but not limited to the Code of Ethics and Conduct and the Anti-Harassment Policy. Plaintiff has adhered to all FCCP-Gen policies adopted by the Court since her employment began in 2009 and her continued employment through the filing of this response constitutes adequate consideration to demonstrate the formation of an implied contract of employment.

Additionally, in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), the Court noted:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In this case, Plaintiff was elected to the position of Administrative Judge in July 2021. Under Rule of Superintendence 4.01(A) for the Courts of Ohio, an administrative judge shall "Be responsible for and exercise control over the administration, docket, and calendar of the court or division." (Exhibit 8) As such, there is an independent source from an existing rule that creates a property interest in the position of administrative judge. Despite this, Defendants Frye, O'Donnell and Goodman interfered with this property interest by concocting a plan of blackmail to force Plaintiff to resign from the position to which she had been elected. (Second Amended

30

Compl., ¶ 21(h), ECF No. 36 at PageID 1822.) Thereafter, other Court Defendants advised Plaintiff's then counsel that, if she did not resign the position, then she would be removed without an investigation or opportunity to be heard. (Second Amended Compl., ¶ 21(h), ECF No. 36 at PageID 1822.) These substantive and procedural violations, based on the Rules of Superintendence for the Courts of Ohio, as well as Plaintiff's status as an employee provide the requisite legal foundation for her claims under § 1981.

**E. Plaintiff Has Properly Pled Cognizable Claims Under 42 U.S.C. § 1983.**

**1. None of Plaintiff's Claims are Time-Barred.**

Court Defendants also attempt to argue that Plaintiff cannot bring a claim for employment discrimination under 42 U.S.C. § 1983 as a substitute for her Title VII claim (Motion to Dismiss, ECF No. 37 at PageID 1858) and that, even if it is distinct, which it is, it is barred by the statute of limitations. (Motion to Dismiss, ECF No. 37 at PageID 1858-1859.) As an initial basis for this position, Court Defendants make the conclusory statement, "Though plead as a claim separate from the Title VII claim, the claim is the same as the Title VII claim in the Second Amended Complaint." (Motion to Dismiss, ECF No. 37 at PageID 1858.) Beyond this bare assertion, Court Defendants provide no other basis. The sad reality of this circumstance, however, is that Plaintiff was subject to discrimination under various federal statutes based on the same insidious and pervasive discriminatory behavior. Indeed, the problem is not what Court Defendants attempt to label as an identical claim. Rather, the real issue is Court Defendants' identical and repeated behavior that violated myriad state and federal statutory provisions. The fact of the matter is that Plaintiff has no obligation to pick and choose the basis for relief that the persons creating the discriminatory, hostile, and retaliatory behavior prefer. In actuality, Plaintiff has the right and latitude to assert as many bases as possible for relief created by this

ongoing four year nightmare.

Court Defendants further argue that "much of Plaintiff's case is built on the allegation that she was forced to resign her position as AJ because of racial and sex animus. She also alleges that while she was AJ, she was treated poorly – and differently – than other prior AJ's because of her sex and race." (Motion to Dismiss, ECF No. 37 at PageID 1859.) Court Defendants continue this argument by asserting that Plaintiff did not file the first iteration of the current litigation until November 26, 2024 and, therefore, any claims that occurred during her service as Administrative Judge, including the circumstances of her resignation, are barred by the statute of limitations. (Motion to Dismiss, ECF No. 37 at PageID 1859.)

Plaintiff will note that, in making this argument, Court Defendants have indirectly acknowledged any claims beginning November 26, 2024 through the filing of this pleading are properly before this Court for consideration. Plaintiff agrees that claims from November 26, 2024 through the filing of this pleading are cognizable and appreciates the acknowledgement and agreement from Court Defendants. Plaintiff further submits, however, that her § 1983 claims prior to November 26, 2024 are also actionable and properly before this Court.

While Court Defendants make a conclusory statement that *Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281 (6th Cir. 2019) establishes a two-year limitations period for personal injury claims, that court wrote:

> This appeal, however, is not about the length of the limitations period, which both parties agree is two years. Rather, it turns on when the limitations period starts to run, and federal law holds the answer to that question. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Under federal law, the statute of limitations period begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (citations omitted). Therein lies the heart of this dispute.

*Id* at 292. Similarly, the heart of this litigation is the time at which Plaintiff knew or had reason

to know of the injury. However, in the context of discriminatory, retaliatory, and hostile behavior that is ongoing and pervasive, as compared to discrete acts of discrimination, Plaintiff contends, in concert with prevailing case law, that the two year statute of limitations should be extended. In *Cornwell v. Robinson*, 23 F.3d 694, 703-4 (2d Cir. 1994), the Court noted, "When a plaintiff experiences a "'continuous practice and policy of discrimination,'" however, "'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Gomes v. Avco Corp.,*964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. International Telephone Telegraph Corp.,*755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)); *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport,*647 F.2d 256, 274 (2d Cir. 1981), *cert. denied,*455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Thus, Plaintiff contends that every allegation that occurred prior to November 26, 2024 against Court Defendants can be considered by this Court and none of those allegations is barred by the statute of limitations.

### 2. Court Defendants Are Not Entitled to Qualified Immunity for Plaintiff's § 1983 Claims.

It is unfortunate that Court Defendants have committed themselves to the position that Plaintiff's forced resignation from the Administrative Judge position was voluntary. A review of Exhibit 1 to Plaintiff's response in opposition will easily demonstrate and quickly establish the flawed nature of that premise. Court Defendants will have the opportunity to hear with their own ears how Defendant Frye conferred with Plaintiff not as the Presiding Judge of FCCP-GEN and a neutral factfinder whose sole focus was to impartially comply with the FCCP-Gen Anti-Harassment Policy. Rather, Frye's statements made it obvious that he served as both advocate and co-counsel for Defendant Goodman in forcing Plaintiff to resign from the position. It is equally unfortunate Court Defendants contend that, even presuming the facts are true (which

Court Defendants *never* dispute at any point in their Motion other than to advance a fabled argument that Plaintiff's pleading isn't "just right"), Plaintiff has not established that Court Defendants violated clearly established law. (Motion to Dismiss, ECF No. 37 at PageID 1862.) To support this position, Court Defendants reduce Plaintiff's allegations to "a laundry list of grievances" (Motion to Dismiss, ECF No. 37 at PageID 1861); "a bullet list of ways that Plaintiff alleges she was mistreated that is "[i]n substitution of the running narrative of the earlier versions of the complaint (Motion to Dismiss, ECF No. 37 at PageID 1862); and situations, circumstances, anecdotes or events that describe "the deterioration of the working relationship between Judge Cocroft and most of the rest of the judges. . ." (Motion to Dismiss, ECF No. 37 at PageID 1862), concluding that "[p]oor working relationships. . .do not establish a constitutional violation under § 1983." (Motion to Dismiss, ECF No. 37 at PageID 1862.)

Plaintiff has said it before and she will say it again  - the intentional trivialization of such serious and unprecedented allegations is both confounding and disappointing. To add further legal insult to discriminatory injury, Court Defendants also assert that each of them is immune from liability under 42 U.S.C. § 1983 as Plaintiff has failed to allege sufficient facts to state a claim of hostile work environment.  (Motion to Dismiss, ECF No. 37 at PageID 1860.)

In the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), the Supreme Court articulated the necessary elements for a prima facie case of employment discrimination. *Id*. The Court reasoned:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (* * *) The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

*See also, Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-256, 101 S. Ct. 1089 (1981);

*Dicarlo v. Potter,* 358 F.3d 408 (6th Cir. 2004)

Further, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S. Ct. 367 (1993) established the

standard by which a claim of hostile work environment should be determined. Specifically, the

Court stated, "[W]e consider the definition of a discriminatorily "abusive work environment"

(also known as a "hostile work environment") under Title VII of the Civil Rights Act of 1964,

78 Stat. 253, as amended, 42 U.S.C. § 2000e, *et seq*. (1988 ed., Supp. III)." *Id*. at 19. More

meaningfully the Court wrote:

> But Title VII comes into play before the harassing conduct leads to a nervous breakdown.
> A discriminatorily abusive work environment, even one that does not seriously affect
> employees' psychological wellbeing, can and often will detract from employees' job
> performance, discourage employees from remaining on the job, or keep them from
> advancing in their careers. Moreover, even without regard to these tangible effects, the
> very fact that the discriminatory conduct was so severe or pervasive that it created a work
> environment abusive to employees because of their race, gender, religion, or national
> origin offends Title VII's broad rule of workplace equality. The appalling conduct alleged
> in *Meritor*, and the reference in that case to environments "`so heavily polluted with
> discrimination as to destroy completely the emotional and psychological stability of
> minority group workers,'" *id*., at 66, quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (CA5
> 1971), *cert. denied*,406 U.S. 957 (1972), merely present some especially egregious
> examples of harassment. They do not mark the boundary of what is actionable.
>
> (* * *)
>
> Certainly Title VII bars conduct that would seriously affect a reasonable person's
> psychological wellbeing, but the statute is not limited to such conduct. So long as the
> environment would reasonably be perceived, and is perceived, as hostile or abusive,
> *Meritor, supra*, at 67, there is no need for it also to be psychologically injurious.

*Id.* at 22. Then, in framing what courts should consider in reviewing claims of hostile work

environment, the Court concluded:

> [W]e can say that whether an environment is "hostile" or "abusive" can be determined
> only by looking at all the circumstances. These may include the frequency of the
> discriminatory conduct; its severity; whether it is physically threatening or humiliating,
> or a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance. The effect on the employee's psychological wellbeing is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But, while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id*. at 23.

In considering these factors, it is evident that Plaintiff meets her burden despite Court Defendants' statements to the contrary and blatant disregard for the factors articulated in their own motion. First, it is without question that Plaintiff is a member of a protected class – she is a Black woman. (Second Amended Compl., ¶ 19, ECF No. 36 at PageID 1821.) Next, Plaintiff is imminently qualified for her job, having worked as a Law Clerk for an Associate Justice of the Supreme Court of Ohio, an Associate Attorney in private practice representing clients around Ohio and across the United States, and as Deputy Chief Counsel for one of Ohio's Governors, which required that she not only represent the Governor in state and federal court but also coordinate litigation strategies with the Chief Executive Counsel for all state agencies, all of which was prior to her sixteen years of service as a FCCP-Gen Judge. Moreover, it is clear through the allegations in her Second Amended Complaint that Plaintiff suffered an adverse employment action – from being blackmailed by Defendant Frye to force her to resign as Administrative Judge (Exhibit 1); to not being notified by Defendants Frye, O'Donnell or Davis, at a minimum of her right to legal representation in reference to the bad faith complaint filed by Defendant Goodman in 2022 (Second Amended Compl., ¶21(i), ECF No. 36 at PageID 1822); to an apparent decision by Court Defendant judges to question whether Plaintiff was permitted to participate in meetings for FCCP-Gen committees to which she was not assigned; to Plaintiff and her staff being questioned by Court Defendant administrators and directors regarding how cases are managed and rescheduled when she is out of the office (Exhibit 9); to Court Defendant administrators failing to provide support and resources to Plaintiff unless and until she

questioned and challenged the lack of support over an extended period of time; (Exhibit 10); to Plaintiff's criminal continuance entries being deleted by or at the direction of Court Defendant administrators and directors (Exhibit 11); to Court Defendants attempting to modify the FCCP-Gen Anti-Harassment Policy to remove every provision upon which her claims were based and after having received notice of her EEOC claim (Second Amended Compl., ¶ 30(i), ECF No. 36 at PageID 1824; Exhibit 12); to circumventing and/or ignoring the authority and obligations associated with Plaintiff's service as Administrative Judge by either requiring court employees to complete work already in progress for the entire court (Exhibit 13) or by committing the court to public events for which Plaintiff has no knowledge or notice (Exhibit 14) (Second Amended Compl., ¶ 21(g), ECF No. 36 at PageID 1822); to laughing at and diminishing Plaintiff's character during a Judges' Meeting that Franklin County Defendant Hummer called horrific (Second Amended Compl., ¶ 30(b), ECF No. 36 at PageID 1824; Exhibit 2); to K. Brown stating that an in-person meeting with Plaintiff regarding her claims would not be beneficial (Exhibit 3); to Davis attempting to complete public record requests involving Plaintiff without first notifying counsel for the Court (Second Amended Compl., ¶ 22(b), ECF No. 37 at PageID 1822); to Court Defendant administrators permanently deleting, destroying and altering public records between them and Plaintiff and them and Plaintiff's staff (Second Amended Compl., ¶ 22(c) ECF No. 36, PageID 1822; Exhibit 15) – there have been myriad adverse employment decisions that impact Plaintiff's ability to do her work.

Consistent with the factors articulated in *Harris, supra,* Plaintiff has endured the hostile and harassing discriminatory behavior every day since July 2021 and even the prospect of having to go into an environment for which Plaintiff is uncertain about what will be said or done to make her professional existence more complicated than it already is, when managing the kind

of work she is obligated to manage, has left Plaintiff feeling so drained and exhausted on many occasions, that she was, in fact, on the verge of breakdown. Regrettably, even this candid admission contemplated by prevailing case law has become fodder for diminishing articles in print media. The constant recognition that Plaintiff is literally holding her breath and having to remind herself to exhale is something no person should have to endure. So, contrary to how Court Defendants would like to describe this life-changing circumstance, this is not just about amusing stories (anecdotes) that chronicle a slowly deteriorating work relationship. Rather, it is the intentional and concerted decision to treat a "fellow judge" and person who is a supposed "supervisor" for Court Defendant administrators and directors in a discriminatory and demeaning way. But instead of asking themselves why this supposed collegial relationship suddenly deteriorated when it had been intact for the first twelve years of Plaintiff's service, Court Defendants suggest that Plaintiff has manufactured a fantastic story as a figment of her overactive imagination. But the entire situation begs the questions – Who would willingly volunteer to endure discriminatory filled days and sleepless nights? Who would intentionally volunteer to be excluded and isolated? Who would raise her hand to have a "fellow judge" turn their back and lean away from her in a meeting as if her very presence is repulsive?

Plaintiff's allegations are the clearest demonstration that Court Defendants have violated the oath that each took to uphold the Ohio and U.S. Constitutions, all laws associated with their service as judges, administrators and directors, and all internal FCCP-Gen policies and procedures. To assert, then, that Plaintiff's allegations do not establish a violation of clearly established law necessary to overcome qualified immunity is completely baseless. Additionally, Court Defendants' suggestion that there has been no violation of clearly established law (Motion to Dismiss, ECF No. 37 at PageID 1861) is nothing more than a willful decision to ignore the

obvious. Plaintiff can think of no circumstance for which any judge who takes seriously their responsibilities under the Ohio Code of Judicial Conduct and case law which they apply to litigants on a daily basis would believe that: 1.) White, male judges giving a Black, female judge a list of Black women whom she should be more like; 2.) having a White, male judge tell a Black, female judge in the presence of an employee that if he ever decided to f%$&! her over, he would let her know before he did it; 3.) having a White, female judge state in a meeting with a Black, female judge that she is so tired of talking about skin color; 4.) having a White, male judge collaborate with a White, female judge and employee to force a Black, female judge to resign from a position; 5.) deleting administrative work product and criminal continuance entries created by a Black, female judge; and 6.) publicly humiliating a Black, female judge to other court employees, as well as other individuals and organizations – "do not violate the contours of the right that are sufficiently clear such that a reasonable official would understand that what he is doing and has done violates that right." *See Comstock v. McCrary* , 273 F.3d 693, 702 (6th Cir. 2001), quoting *Anderson v. Creighton*, 483 U.S. 635 ,640, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987).

In other words, Court Defendants' decisions to treat Plaintiff, a Black woman, in a way that it has never treated a White or male FCCP-Gen Judge and to facilitate and participate in the creation of an ongoing and pervasive work environment that is both insulting and discriminatory is why they have been named Defendants, why they are not immune from liability under § 1983, and why their arguments in favor of dismissal are unfounded.

**F. Court Defendants Are Not Entitled To Dismissal of Plaintiff's State Law Discrimination and Retaliation Claims Under Ohio Revised Code § 4112.**

**1. Plaintiff's Notice of Right to Sue Letter from the Equal Employment Opportunity Commission is Sufficient for Asserting State Law Claims.**

Court Defendants contend that, because Plaintiff "neither alleged filing any charge with the Ohio Civil Rights Commission ("OCRC") nor received a right to sue letter from the Ohio Civil Rights Commission, her state law claims should be dismissed." (Motion to Dismiss, ECF No. 37 at PageID 1862-1863.) Court Defendants further assert that Plaintiff has failed to satisfy the statutory requirements of Ohio Revised Code § 4112.052(B)(1)(a)-(b) and that she failed to allege state law discrimination in her Second Amended Complaint. (Motion to Dismiss, ECF No. 37 at PageID 1862-1863.) Consequently, they conclude that Plaintiff's lack of compliance with administrative prerequisites necessitates that her state law claims for discrimination and retaliation must fail as a matter of law and cite *Simrell v. Dave White Chevrolet, LLC,* Case No. 3:23-cv-1382, 2024 U.S. Dist. LEXIS 94824, *6 (N.D. Ohio May 29, 2024) in support of this conclusion. Court Defendants, however, completely misstate the conclusion reached by the *Simrell* court.

In *Simrell,* the court discussed that "The EEOC and the OCRC are parties to a worksharing agreement (* * *)." *Simrell* at 5. In denying the defendant's motion to dismiss regarding the state law claims of discrimination, the court wrote:

> In the worksharing agreement, the OCRC explicitly designated the EEOC as "its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." (ECF NO. 5-2 at 2). The OCRC and the EEOC reaffirmed their agreement on November 3, 2021, nearly six months after Ohio Revised Code § 4112.052 was amended to require administrative exhaustion of discrimination claims under Ohio law. *See, e.g., Smith v. Lorain Cnty. Veterans Serv. Comm'n,* No. 1:21-CV-01525, 2024 WL 1375946, at *7 (N.D. Ohio Mar. 30, 2024) ("Ohio Revised Code Section 4112.052(B)(1)(a), which became effective in April of 2021, added an exhaustion requirement to Ohio's disability discrimination statute, where there was none previously ...."). The parties extended the worksharing

40

agreement as originally written, concluding there had been "no substantive changes in the . . . statutes . . . that would adversely affect or substantially alter the work sharing arrangement . . . or that would affect the processing of charges filed under the pertinent Federal, state or local statutes ...." (ECF NO. 5-2 at 7).

In other words, the worksharing agreement plainly indicates the parties were aware of the change in Ohio law and concluded that change did not limit the OCRC's ability to designate the EEOC as its agent to accept charges of discrimination under Ohio law. I conclude the EEOC had the authority under the worksharing agreement to accept Simrell's charge of discrimination alleging violations of Ohio law and I further conclude that, as the result of the EEOC's express agency authority, Simrell's EEOC filing satisfies the requirements of § 4112.052(B)(2)(b). Therefore, I deny Defendants' motion to dismiss to the extent Defendants contend Simrell did not exhaust his administrative remedies under Ohio law.

*Simrell* at 5-6.

In the present case, Plaintiff did precisely what is contemplated in the *Simrell* decision – she filed her claim with the EEOC, understanding that the OCRC would be notified of the filing and advised of any findings, decisions, or notices issued by the EEOC. (Second Amended Compl., ¶¶ 14-15, ECF No. 36 at PageID 1820.) Put another way, Plaintiff was not then and is not now required to file her discrimination and retaliation claims in every forum where they could potentially be submitted and investigated because these agencies have decided to focus on efficiency rather than filing bureaucracy. As such, Court Defendants' argument regarding Plaintiff's state law claims for discrimination and retaliation is not well-taken.

## 2. Plaintiff's Claims Against Court Defendants Are Permitted Under Ohio Revised Code §§ 4112.02 and 4112.99.

Court Defendants also allege that Plaintiff's claims against them under Ohio Revised Code §§ 4112.02(a) and 4112.99 are barred because "individual employees are not included within the definition of 'employers' who may be liable under R.C. 4112.02 or R.C. 4112.99." (Motion to Dismiss, ECF No. 37 at PageID 1863.) As previously stated, however, as the persons who are responsible for approving, adopting, and implementing FCCP-Gen procedures and

policies regarding the process whereby an employee's claims of illegal behavior, like discrimination, hostile work environment, and retaliation are resolved, Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior. This is confirmed in Ohio Jud. Canon R. 2.3(B), which states, "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so."

However, Court Defendant judges failed to fulfill this intractable obligation in that both Court Defendant administrators, directors and other court employees engaged in discriminatory and harassing behavior against Plaintiff. (*See* Exhibit 6 and Exhibit 7.)

Even assuming *arguendo* that Plaintiff could not bring claims under Ohio Revised Code §§ 4112.02(a) and 4112.99, Court Defendants are still subject to liability under Ohio Revised Code § 4112.02(J) for any person who aids, abets, incites, compels, or coerces the doing of any act declared to be an unlawful discriminatory practice; obstructs or prevents any person from complying with Chapter 4112 or any order issued under it; or attempts to directly or indirectly commit any act deemed an unlawful discriminatory practice under § 4112.02. The facts of Plaintiff's Second Amended Complaint make plain that each Court Defendant aid and abetted one another in engaging in discriminatory, retaliatory and hostile behavior by not only failing to investigate her claims but by even failing to acknowledge their existence.

Moreover, Plaintiff has asserted claims of retaliation and hostile work environment under Ohio Revised Code § 4112.99 which claims are permitted under that provision. Finally, because

Plaintiff's state law claims also constitute ongoing, pervasive, and insulting behavior that involve both discrete and other acts, her claims are not barred by the statute of limitations. Therefore, Court Defendants' arguments on this issue must fail.

### G. Plaintiff Has Alleged Facts That Justify Her Assertion of the Racketeering Claim In Count Four of Her Amended Complaint.

#### 1. Plaintiff's Amended Complaint Satisfies the Procedural Framework of *Sedima, S.P.R.L., v. Imrex Co.,* 473 U.S. 479 105 S. Ct. 3275, 87 L. Ed, 2d 346 (1985).

While Plaintiff recognizes the seriousness of asserting this claim and acknowledges that Court Defendants are, perhaps, incensed by her allegations pursuant to 18 U.S.C. §§ 1961-1968, that does not mean Plaintiff has failed to establish the factual predicate to support such a claim. Regrettably, the factual allegations outlined in the Second Amended Complaint lend themselves to the unbelievable and disappointing conclusion that all Defendants conspired in creating a discriminatory, hostile and retaliatory work environment.

18 U.S.C. § 1961 defines "racketeering activity" as (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), . . .,section 1029 (relating to fraud and related activity in connection with access devices), . . .,section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 . . . . (Emphasis added.)

Moreover, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Additionally, "Any person injured in his business or property by reason of a violation of section

1962 of this chapter may sue therefor in any appropriate United States district court and shall

recover threefold the damages he sustains and the cost of the suit, including a reasonable

attorney's fee, except that no person may rely upon any conduct that would have been actionable

as fraud in the purchase or sale of securities to establish a violation of section 1962. The

exception contained in the preceding sentence does not apply to an action against any person

that is criminally convicted in connection with the fraud, in which case the statute of limitations

shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c).

In establishing the framework that a plaintiff must prove in order to support a racketeering

claim, the *Sedima* Court wrote:

> A violation of § 1962(c), the section on which Sedima relies, requires (1) conduct (2) of
> an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of
> course, allege each of these elements to state a claim. Conducting an enterprise that affects
> interstate commerce is obviously not in itself a violation of § 1962, nor is mere
> commission of the predicate offenses. In addition, the plaintiff only has standing if, and
> can only recover to the extent that, he has been injured in his business or property by the
> conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who
> violates section 1962 is not liable for treble damages to everyone he might have injured
> by other conduct, nor is the defendant liable to those who have not been injured."*Haroco,*
> *Inc.* v. *American National Bank Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd,
> *post*, p. 606.

> But the statute requires no more than this. Where the plaintiff alleges each element of the
> violation, the compensable injury necessarily is the harm caused by predicate acts
> sufficiently related to constitute a pattern, for the essence of the violation is the
> commission of those acts in connection with the conduct of an enterprise. Those acts are,
> when committed in the circumstances delineated in § 1962(c), "an activity which RICO
> was designed to deter." Any recoverable damages occurring by reason of a violation of §
> 1962(c) will flow from the commission of the predicate acts.

*Sedima, S.P.R.L.* at 479.

Here, Plaintiff alleges in her Second Amended Complaint that Defendants Hummer and

Dean advised Defendant Frye, O'Donnell and other FCCP-Gen Court Defendant judges regarding the bad faith complaint filed by Defendant Goodman. (Second Amended Compl., ¶¶ 21(i), 27, ECF No. 37 at PageID 1822-1823.) Based on the advice provided by Hummer and Dean, Frye told Plaintiff that if she resigned as Administrative Judge for 2023 based on the prevarication that she was simply too busy to do the work of Administrative Judge, then Goodman's bad faith complaint would go away. (Exhibit 1) In other words, Frye, after receiving advice from Hummer and Dean, proposed an offer of bribery and blackmail that if Plaintiff would resign, then the disparaging and bad faith allegations would go away. If not, then the disparaging allegations would be disseminated. Thereafter, Frye told counsel that Plaintiff engaged on her own (after Hummer and Dean failed to advise her of the right to counsel under the FCCP-Gen liability policy), that if she did not resign, then the Court Defendant judges were prepared to vote her out of the Administrative Judge position and would either not undertake an investigation or would undertake an abbreviated and less than impartial investigation. (Second Amended Compl., ¶ 21(h), ECF No. 36 at PageID 1822.) At some point after this plan was established, Defendants Goodman, Davis, Bedsole, and Worthington destroyed all internal messages, which were public records, between Plaintiff and them, as well as all internal messages between them and Plaintiff's Black staff. (Second Amended Compl., ¶ 30(f), ECF No. 36 at PageID 1824.) Plaintiff notified Defendants Hummer and Dean of this destruction yet they took no affirmative step to address the permanent deletion of these documents. Plaintiff continues to assert that, in addition to the documents that Plaintiff has in her possession, the information contained in those destroyed documents would have supported her position that Goodman's claims were baseless. Despite this, neither Defendants Hummer nor Dean did anything to ensure that they received all responsive documents.

45

Thereafter, Plaintiff notified Hummer and Dean that Goodman, or someone on her behalf, was altering information on Plaintiff's work calendar for events that occurred almost ten years ago and in close proximity to events related to a public record request submitted by Plaintiff. (Second Amended Compl., ¶ 30(f), ECF No. 36 at PageID 1824; Exhibit 15) This was in addition to Court Defendant judges failing to transmit documents in their possession that were responsive to the November 2022 public record request regarding Goodman's bad faith complaint against Plaintiff. Hummer even conceded she was aware that the documents transmitted by Court Defendant judges using the court's email system were not all the documents that should have been submitted.

Moreover, Court Defendants engaged in a series of behaviors that: 1.) questioned whether Plaintiff should be permitted to participate in court committee meetings; 2.) refused to meet with Plaintiff regarding her properly asserted claims of discrimination, retaliation, and hostile work environment; 3.) refused to order an investigation of Plaintiff's claims; 4.) refused to implement a policies and procedures review for consideration of Plaintiff's claims; 5.) failed to provide Plaintiff with resources and support provided to Court Defendants; 6.) deleted criminal continuance entries for Plaintiff's cases; 7.) questioned Plaintiff and her staff regarding their time out of the office; 8.) required Plaintiff to provide information to Court Defendant administrators and directors regarding her docket management practices; 9.) excluded Plaintiff from conversations and meetings related to court business; 10.) failed to train Plaintiff on the role of Administrative Judge; 11.) provided a list of Black women whom Plaintiff should be more like; and 12.) suggested that a Court Defendant could "f%$#!" her over if he decided to do so. More recently, Court Defendants voted to institute a policy and procedure review to address just the kind of discriminatory, hostile, retaliatory and bad faith behavior that Plaintiff

has experienced but that they continue to argue never occurred. Yet, Plaintiff was not aware that the engagement was being contemplated or that a vote on the topic took place. Rather, when she attended a FCCP-Gen Judges' meeting, the person engaged to provide the service was explaining the pace at which her work would be completed (Exhibit 5). But, perhaps the greatest demonstration of this conspiracy is a May 2025 event wherein Plaintiff learned from victims of crime that Franklin County Defendants and Court Defendants were researching and developing a plan whereby Plaintiff would be removed from all criminal cases assigned to her docket and those cases would be assigned to all other FCCP-Gen Judges, including those named as Defendants. (Exhibit 16)

Court Defendants attempt to argue that this conduct fails to show that they directly or indirectly participated in the conduct of an alleged enterprise. Instead, they argue that this conduct "exclusively relates to the operation of the Court." (Motion to Dismiss, ECF No. 37 at PageID 1866.) Plaintiff finds it troubling that Court Defendants construe facilitating, participating in, ignoring and justifying discriminatory, hostile and retaliatory behavior as behavior that relates to the operation of the Court. If that characterization is accurate and Court Defendants are rewarded for the same, then the legitimate work and operation of the justice system will be forever tarnished and the majesty and dignity that Court Defendants have stated should be considered and upheld will be diminished.

All these events demonstrate conduct of an enterprise (Court Defendants and Franklin County Defendants) through a pattern (various events over the course of four years) of racketeering activity (blackmail and bribery, mail fraud and/or fraud and related activity in connection with access devices, which in this instance are court computers). As such, Plaintiff has pled sufficient facts to support her claim of racketeering as contemplated by *Sedima*, *supra*.

**2. Court Defendants' Arguments Regarding Racketeering Based on an Interstate Enterprise Are Unnecessary Red Herrings.**

In their motion, Court Defendants attempt to distract the Court from the Plaintiff's properly asserted racketeering claims under 18 U.S.C. § 1961 by asserting that "the Amended Complaint is unclear as to which 1962 section is claimed to have been violated." (Motion to Dismiss, ECF No. 37 at PageID 1865.) Moreover, Court Defendants have concluded that Plaintiff "limited" her RICO allegation to an alleged violation of § 1962(c). (Motion to Dismiss, ECF No. 36 at PageID 1865) based on Plaintiff's Response in Opposition to the Franklin County Defendants' Motion to Dismiss that this Court Denied as Moot. (ECF No. 35.) Consequently, Plaintiff is unclear on the factual predicate for Court Defendants' conclusion since the pleading on which it is based is no longer in consideration for this litigation. Once again, because Court Defendants have chosen to cobble together pieces and portions of Franklin County's denied as moot motion to dismiss to create a foundation, though faulty, for their own motion to dismiss, they have misrepresented Plaintiff's position. Be that as it may, Plaintiff will respond to the best of her ability.

Plaintiff asserts that it is unnecessary for her to prove a violation of every subsection of § 1962 in order for her claim to have merit. 42 U.S.C. §1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

Moreover, in order to prove a violation of that Act, "the plaintiffs must show 1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VandenBroeck v. CommonPoint*

48

*Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). In addition, the Supreme Court reasoned that in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself. *Id., citing Reves v. Ernst Young*, 507 U.S. 170, 183 (1993).

Additionally, the *VandenBroeck* decision states, "The Supreme Court has defined an "enterprise" under the Act as a "group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 699, citing *United States v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise can be proven by showing: 1.) that the associated persons formed an ongoing organization, formal or informal; 2.) that they functioned as a continuing unit; and 3.) that the organization was separate from the pattern of racketeering activity in which it engaged. *See Frank v.* D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993) (*Id.*) and noted, "All that is required is some minimal level of organizational structure between the entities involved." *Id.* at 700.

While Court Defendants contend that Plaintiff's Second Amended Complaint fails to satisfy the mandates of § 1962(c), Plaintiff contends that she has passed and exceeded what she is required to plead. First, it is without question that Court Defendants are a part of the organizational structure of FCCP-Gen – they are judges who adopt and approve policies and procedures, preside over cases, approve annual budgets, finalize hiring decisions, and fulfill all other statutory and constitutional responsibilities, as well as administrators and directors who supervise employees, complete day-to-day responsibilities, investigate claims, and complete other duties as directed by the judges. Relating to that structure, Defendants Hummer and Dean serve as counsel for not only the court but every judge (and, apparently, court administrators

and directors) pursuant to Ohio Revised Code § 309.09, and Defendant Franklin County approves the FCCP-Gen annual budget and confers with and directs policy decision made by FCCP-Gen. Further, Hummer and Dean: 1.) provided advice and counsel to Frye, O'Donnell and other Court Defendant judges regarding the management of Goodman's bad faith complaint; 2.) oversaw the management of the public record request in November 2022 related to Goodman's bad faith complaint; 3.) failed to counsel FCCP-Gen regarding the destruction of Plaintiff's internal team messages with Court Defendant administrators and directors, and alteration of ten-year-old calendar invitations sent to Plaintiff; 4.) failed to fulfill their statutory obligation to review any proposed modifications to FCCP-Gen policies; 5.) failed to fulfill their commitment in January 2024, and on behalf of Franklin County, to engage a person to investigate Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation; 6.) failed to provide representation to Plaintiff when she was sued in her official capacity; and 7.) researched and developed a plan to remove Plaintiff from the management of all criminal cases assigned to her. These factors, and myriad more, clearly indicate that Court Defendants and Franklin County Defendants function as a "continuing unit" and have done so for the entire period of time giving rise to Plaintiff's allegations.

Indeed, Plaintiff is surprised that Court Defendants would assert that she failed to establish the predicate offenses outlined in her Second Amended Complaint as the bases for the racketeering claim. (Second Amended Compl., ¶¶ 57-62, ECF No. 36 at PageID 1828.) More concisely, Plaintiff has established her claim of Falsification under Ohio Revised Code § 2921.12 because she has properly pled that 1.) Court Defendants attempted to modify the Anti-Harassment Policy; 2.) Defendants Hummer and Dean failed to review the proposed changes before they were submitted for consideration by the court; 3.) Court Defendants did not inform

Defendants Hummer and Dean that they were modifying the policy to facilitate a legal review, nor did Hummer and Dean inquire about a statutory obligation to review proposed FCCP-Gen policies until they were advised of this attempt by Plaintiff; and 4.) Court Defendants had actual knowledge of Plaintiff's EEOC Charge at the time FCCP-Gen attempted to modify the Anti-Harassment Policy. Beyond that, Plaintiff submitted a preservation letter to Court Defendants on March 18, 2024 regarding FCCP-Gen records. (Exhibit 15) Yet, the following day, Plaintiff received an altered calendar invitation from the account of Defendant Goodman's former assistant who had not worked at the court for two years prior to the altered invitation being sent. (Exhibit 15)

Similarly, Plaintiff has established a claim of Tampering with Records pursuant to Ohio Revised Code § 2913.42 based on the same allegations associated with her Falsification claim. Likewise, Plaintiff has established a violation of Ohio Revised Code § 149.351 based on the same foundation of facts. Finally, Plaintiff has also established her racketeering claim based on 18 U.S.C. § 1001, 18 U.S.C. § 1018, and 18 U.S.C. § 1030. While Court Defendants assert that §§ 1001 and 1018 do not apply because those provisions only apply to "misrepresentations made in federal, not state, government matters" (Motion to Dismiss, ECF No. 37 at PageID 1870), that is a misreading of the provisions. More specifically, § 1001 covers matters within the "jurisdiction of the. . . judicial branch of the Government. . ." and, because Plaintiff received a Notice of Right to Sue Letter to assert her claims of discrimination, retaliation, and hostile work environment in federal court, she has the ability to assert that Court Defendants, as a part of a continuing unit with FCCP-Gen, falsified, concealed and covered up, through a common scheme, material facts related to Plaintiff's claims of discrimination based on race and gender, hostile work environment, and retaliation. Moreover, under § 1018 Court Defendants were

51

aware that Defendant Goodman submitted a bad faith complaint which Defendants Frye and O'Donnell knew to be false. Despite this knowledge (or perhaps because of this knowledge), Court Defendants failed to advise Plaintiff of her right to legal representation, sent notice of the bad faith complaint to all Court Defendant judges using the FCCP-Gen computer system, and then facilitate and participated in a meeting during which the bad faith complaint was discussed. Finally, under § 1030, Plaintiff has unequivocally established that the vast majority of the fraudulent activity and related events have occurred on FCCP-Gen computers, as demonstrated by the exhibits appended to the current Response in Opposition. For Court Defendants to then suggest that Plaintiff has failed to establish her racketeering claim given these corroborated facts is outlandish.

The Second Amended Complaint clearly alleges that Court Defendants engaged in a scheme to defraud and mislead Plaintiff by – among other things - using the knowingly false and fraudulent complaint against her by Defendant Goodman to force Plaintiff to give up her position within the court as Administrative Judge. A scheme to defraud is "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes the designed end." *Kenty v. Bank One, Columbus, N.A*., 92 F.3d 384, 389-90 (6th Cir. 1996). A plaintiff must allege "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension'" upon which he or she relied. *Id*. Plaintiff has done so here with specificity. Further, there is no requirement that a particular defendant have made a misrepresentation, only that the fraud or misrepresentation was "foreseeable" in the context of the scheme. *See In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 627 (E.D. Ky. 2011) ("Each defendant is liable whether or not that person personally made any misrepresentations

52

... plaintiff may establish the existence of a scheme to defraud coupled with foreseeable use of the mail or wires."); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 288 n.25 (3d Cir. 1985) ("We conclude that under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses."); *United States v. Puckett*, 692 F.2d 663, 669 (10th Cir. 1981) ("Nor must the defendant personally have made the offending communications if he participated in devising the scheme to defraud in which the use of interstate wires foreseeably would follow.").

With respect to the requirement that the defendants' conduct have an effect "interstate," clearly Court Defendants and Franklin County Defendants take actions every day which effect interstate interests. First, it is undisputed that the court adjudicates controversies between Ohio residents and residents of other states. The court enforces state and federal law which has effects on residents and corporations based in states other than Ohio. Here, specifically, it is alleged that Court Defendants and Franklin County Defendants sent electronic communications and had telephone communications which were fraudulent and/or related to allegations of blackmail or extortion. The Second Amended Complaint provides detailed allegations about who engaged in fraudulent and extortive conduct and when the conduct occurred. The law is clear that the use of telephones, the U.S. Mail and electronic mail, even if the communications do not go out of state, satisfies the "interstate" requirement for a racketeering claim. The interstate nexus for mail fraud can be satisfied by use of the Postal Service. *United States v. Griffith*, 17 F.3d 865, 874 (6th Cir. 1994) (stating "testimony as to a company's routine use of the postal service is sufficient evidence on its own to establish the mailing requirement"); *see also United States v. Elliott*, 89 F.3d 1360, 1364 (8th Cir. 1996) (finding "the jurisdictional basis of the mail fraud

53

statute is grounded in the Postal Power and therefore necessarily encompasses all items passing

through the United States mails, even if their passage is purely intrastate"). As to wire fraud,

use of electronic communication, including e-mail, is sufficient. *Advocacy Org. for Patients &*

*Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *see also Grubbs v.*

*Sheakley Grp., Inc.*, 807 F.3d 785, 803 (6th Cir. 2015) (finding "the very act of sending an e-

mail creates the interstate commerce nexus necessary for federal jurisdiction. . . .").

In a final attempt to justify an indefensible position, Court Defendants write, "There is a

complete absence of facts in the Second Amended Complaint connecting any alleged predicate

acts to Plaintiff's claimed injuries." (Motion to Dismiss, ECF No. 37 at PageID 1872.) Plaintiff

is surprised that Court Defendants could reach this conclusion since they previously argued that

they would "need to go through the Amended Complaint individually with Defendants in order

to respond to the truth or falsity of each minute allegation." (Motion to Dismiss, ECF No. 29

at PageID 1669-1670.) Once again, Court Defendants want to have this litigation both ways –

both arguing that there was too much information to discern the RICO claim and now reversing

course that there is a complete absence of facts. Despite their continued demand to have Plaintiff

make it "just right", the truth of the litigation is that Court Defendants will never concede what

is glaringly obvious – Plaintiff has provided legal and factual support for her RICO claim and

Court Defendants' request for dismissal of the same is not well-taken.

### H. Plaintiff's Claims Against Court Defendants Goodman and Davis for Defamation Are Neither Barred By the Statute of Limitations Nor Subject to Privilege.

Court Defendants Goodman and Davis assert that Plaintiff's claim of defamation against

them should be dismissed because: 1.) it is barred by the one-year statute of limitations outlined

in Ohio Revised Code § 2305.11(A) and; 2.) the statements were made in the context of

Goodman's and Davis's assertion of a claim for harassment by Plaintiff and, therefore, are privileged in the context of a quasi-judicial proceeding. (Motion to Dismiss, ECF No. 37 at PageID 1873-1874.) Neither of these arguments, however, is meritorious.

To begin, Goodman and Davis point to the initial publication of the defamatory statements in October 2022 to calculate a year from the date by which Plaintiff should have asserted her claim of defamation, consistent with *Weidman v. Hildebrant*, 2024-Ohio-2931, at ¶ 61. (Motion to Dismiss, ECF No. 37 at PageID 1873.) Goodman and Davis fail to recall, though, that the defamatory statements were also published on or around May 17, 2024 when Davis received a public record request from a reporter with a local newspaper, requesting "a copy of the complaint filed by Goodman against her in November 2022." (Second Amended Complaint, ¶ 30(h), ECF No. 36 at PageID 1824.) That complaint, which contained the defamatory statements, was then released to the reporter and referenced in an extensive news story regarding Goodman's complaint. In other words, there was a second, distinct act of publication, which has its own statute of limitations. Even assuming that Goodman's defamatory statements were published on May 31, 2024 (two weeks after the request was received), Plaintiff would still have until May 2025 to assert her claim. Here, Plaintiff filed her claim of defamation against Goodman and Davis on November 26, 2024, which is well before the statute of limitations expired. *See Kienow v Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, ¶ 7 (The Court recognized the distinct nature of claims based on multiple publications and emphasized that the plaintiff failed to assert her claim of defamation within one year of publication made on one of two occasions – April 2010 and January 2012.)

Moreover, Court Defendants' motion to dismiss is <u>the only time</u> Plaintiff has ever received notice that both Goodman <u>and</u> Davis asserted claims of harassment against Plaintiff.

Concisely, Plaintiff was not notified by any Court or Franklin County Defendant that Davis was also asserting a claim of harassment. Indeed, Plaintiff has never received a complaint against her on behalf of Davis, Plaintiff was never notified by Frye, O'Donnell, K. Brown, or any other Court or Franklin County Defendant that Davis asserted a claim against Plaintiff, and she is shocked to learn about this purported development in such a random, procedurally and substantively deficient way. Plaintiff's shock is particularly profound because, when Plaintiff asked Defendant Davis to describe the FCCP-Gen culture early in Plaintiff's tenure as Administrative Judge and before Plaintiff had any extensive interactions with her, Davis wrote:

> Unsupported allegations are not managed; micromanagement; civility or lack thereof; diversity as a challenge; lack of compliance with policies and timekeeping; fearful culture; not safe to offer ideas and risk failure within leadership circle; political meaning a group of employees can influence the Court; irrational meaning a that policies can be suggested to the court but not adopted to please a group of employees; witnessed others treated in a manner that is not respectful with no intervention; could be targeted depending on the day.

(Emphasis added.) (Exhibit 17) In fact, Davis represented to Plaintiff that no prior Administrative Judge had asked administrators to share their concerns and that she looked forward to more opportunities to share. However, less than a month before Plaintiff learned about Goodman's bad faith complaint, Davis told Plaintiff that her loyalty was to Goodman and not to FCCP-Gen, which may explain how and why Plaintiff is now being advised that Goodman's bad faith complaint was also on behalf of Davis. Be that as it may, and to that extent that this new and never-before disclosed statement is true, Plaintiff hereby requests that Court Defendants, through counsel, provide her with a copy of Davis's complaint against her immediately.

Even assuming that Davis filed a harassment complaint against Plaintiff or joined in the bad faith complaint filed by Goodman, though Plaintiff was not provided notice and opportunity

to be heard in any instance, the allegations are not subject to privilege and assertion of the same by Goodman, Davis, or any other Court Defendant is patently untrue. In support of this tenuous argument, Goodman and Davis advance a confusing explanation regarding the process by which a complaint is filed pursuant to the FCCP-Gen Anti-Harassment Policy and suggest that Plaintiff's defamation allegations "about the complaint lodged by Ms. Goodman and Ms. Davis relate to this administrative process, which is a quasi-judicial proceeding. The statements made by Ms. Goodman and Ms. Davis with respect to the proceeding are privileged. As such, Plaintiff cannot maintain a defamation claim against these Defendants." (Motion to Dismiss, ECF No. 37 at PageID 1874.) As an initial matter, it is important to note that Plaintiff's defamation claim relates to the publication of demonstrably false statements based on both Goodman's and Davis's knowledge that the statements contained in the bad faith complaint were false. But more importantly, the Anti-Harassment Policy upon which Goodman and Davis attempt to rely to make the specious argument that any statements made in a quasi-judicial proceeding are privileged specifically states in Section II(A) that investigations are confidential only "to the extent such confidentiality is possible and allowed by law." Under every law and legal theory in Franklin County, the State of Ohio, and the United States of America, every accused has the absolute right to receive notice of any claims made against them, as well as an opportunity to be heard. Indeed, Section II(E) of the FCCP-Gen Anti-Harassment Policy suggests and supports this right by stating, "A timely resolution of each complaint will be reached and communicated to the employee as well as the alleged wrongdoer."

It is strange that Davis, as Director of Human Resources for a number of years and a member of the Ohio Bar, would not be clear about both her professional and ethical obligations in this regard. Similarly Goodman, whom Defendant Frye characterized as a high level,

longtime employee of the Court, should know and understand the very policies that she has enforced against other FCCP-Gen employees, including Plaintiff.

Moreover, and in case Court Defendants have forgotten, Plaintiff is currently a sitting judge who serves on the court where this purported "quasi-judicial" proceeding occurred. In that capacity, Plaintiff is entitled to receive all documents related to any investigative proceedings that are undertaken by the court, which is consistent with the court's historical practice. Were this matter not so serious for Plaintiff, then she would find it laughable that Goodman, Davis, and Court Defendants are now arguing that she is not entitled to know the basis of the allegations against her as the accused and is not entitled to receive and review the documents as a member in good standing of the Court. Court Defendant judges would not endure a criminal or quasi-judicial proceeding wherein the accused was not provided with all evidence related to their potential prosecution and, yet, none of them seems bothered that Plaintiff has not received the same consideration.

Beyond this, Plaintiff is stunned Court Defendants concede in their motion that, under the Anti-Harassment Policy, "the filing of a complaint about workplace conditions is the first step in a formal process for the investigation of workplace conditions. (Emphasis added.) Once the complaint is initiated, an investigation into the allegation is triggered." (Emphasis added.) (Motion to Dismiss, ECF No. 37 at PageID 1874.) In this case, neither Defendants Frye, O'Donnell, Davis, as Director of Human Resources, or any other Court Defendant ever pulled the investigation "trigger". Instead, what they all chose to do was to have Frye and O'Donnell, in concert with Goodman, formulate an offer of blackmail to present to Plaintiff, with Frye indicating that it was unnecessary to speak to Plaintiff for purposes of an investigation since she would just deny the allegations. (Exhibit 1) In truth, the Anti-Harassment Policy also states,

"The person the harassment is reported to will take the necessary steps to report the information to the Administrative Judge in order to initiate an investigation of the harassment claim." Yet, after Plaintiff notified Defendants Hummer, Dean and K. Brown of her race and gender discrimination hostile work environment and retaliation claims, K. Brown intentionally chose not to initiate an investigation.

Finally, the defamatory statements were released in public record requests on two separate occasions in 2022 and 2024 and, as such, to the extent that any privilege existed, it was waived by the court and counsel – twice. Therefore, the arguments of Goodman, Davis, and Court Defendants must fail.

## I. Pursuant to 28 U.S.C. § 1367, This Court Has Supplemental Jurisdiction to Consider Plaintiff's Claims Regarding the Destruction of Public Records Pursuant to Ohio Revised Code § 149.351(B).

As an initial matter, Court Defendants contend that Plaintiff has asserted a single allegation related to the destruction of records. (Motion to Dismiss, ECF No. 37 at PageID 1874.) Simply put, this is just not true. While Plaintiff did assert that Court Defendant administrators and directors permanently deleted various internal messages, she also asserts that calendar invitations and other information between Plaintiff and them was altered or destroyed and that Court Defendants failed to comply with the Plaintiff's preservation letter. (Second Amended Compl, ¶ 22(c), ECF No. 36 at PageID 1822; Second Amended Compl., ¶ 78, ECF No. 36 at PageID 1831.) These deleted administrative records, which detailed Plaintiff's interactions with Defendant Goodman and others, could have and would have refuted the bad faith allegations made by Goodman against Plaintiff and would have eliminated Frye's and O'Donnell's inclination and ultimate decision to blackmail Plaintiff on Goodman's behalf.

Beyond those allegations, Plaintiff also asserted that various Court Defendants judges

failed to comply with the November 2022 public record request by not providing all responsive documents, as confirmed by Defendant Hummer. As previously stated, Plaintiff further contends that Court Defendant administrators and/or directors altered calendar invitations for events on Plaintiff's calendar that occurred almost ten years ago, which is around the same time events that were subject of public record requests submitted by Plaintiff and partially fulfilled by FCCP-Gen occurred. Those records from ten years ago clearly demonstrate that a White, male FCCP-Gen judge Defendant who was accused of four separate incidents of sexual harassment was not subject to any meeting to discuss a corrective course of action, unlike Plaintiff, and was not subject to any threat of blackmail or other coercive tactic.

As a result of all these actions, Plaintiff averred that Defendants violated Ohio Revised Code § 149.351(B) for their intentional and malicious destruction and removal of these records. Moreover, Plaintiff is an "aggrieved party" because documents that could have exonerated her from baseless claims made by Goodman and that demonstrated the disparate and discriminatory treatment in which all Defendants engaged were destroyed or altered. In fact, this scheme was facilitated by Hummer and Dean who advised Plaintiff that the documents were destroyed as a part of updates to the FCCP-Gen computer system, though Plaintiff currently has internal messages on her work computer from former employees who have not worked for the court for three years or more. In that regard, it seems that those messages from former employees would have also been permanently deleted in any system upgrade, as well.

Moreover, 28 U.S.C. § 1367 states:

a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of

additional parties.
(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiff has asserted claims *inter alia* under §§ 1981 and 1983 for which this Court has original jurisdiction. Plaintiff's allegations regarding the destruction and alteration of public records by Court Defendants and the failure of Franklin County Defendants to confer and advise on the legal repercussions of that destruction and alteration (since all Franklin County Defendants had actual notice of the same), in the context of Plaintiff's asserted claims of race and gender discrimination, hostile work environment and retaliation, are a series of events arising out of the same case and controversy. Additionally, Plaintiff's claims relating to the destruction of alteration of public records do not raise novel or complex issues and do not substantially predominate over the claims for which this Court has original jurisdiction.

This was the conclusion reached in *Glaze v. Cuyahoga Cnty.*, CASE NO. 1:19 CV 2969 (N.D. Ohio Sep. 11, 2020), wherein the Court concluded that it had jurisdiction over the plaintiff's claims pursuant to Ohio Revised Code § 149.351. In denying the defendant's request that the court decline to exercise supplemental jurisdiction, the court noted,

> [T]he claim is linked directly to Mr. Glaze's civil rights claims and derives from a common nucleus of operative fact; and, permitting the claim to proceed in this Court serves the interests of judicial economy. The Court finds no basis upon which abstention

under *Burford v. Sun Oil Co.*, 319 U.S. 314 (1943), is necessary, given the fact that resolution of Mr. Glaze's claim requires a straightforward analysis of the evidence and application of long-standing State law.

*Glaze* at 10-11. Similarly, Plaintiff in the present case has demonstrated through her Second Amended Complaint that the allegations related to the destruction of public records derive from a common nucleus of operative facts – Franklin County Defendants, in concert with Court Defendant judges, administrators and directors not only altered and destroyed public records related to all of Plaintiff's claims, but they also collaborated and conspired to conceal the alteration and destruction to facilitate the pervasive and insulting culture of discrimination, hostile work environment and retaliation.

In order to give credence to their argument, Court Defendants cite *Ciganik v. Kaley*, 2004-Ohio-6029, ¶ 41 (11th District, 2004) for the proposition that an office, not an individual, is the records custodian for purposes of analysis under Ohio § 149.351. However, the paragraph cited by Court Defendants does not stand for that proposition but merely recites the language that reflected the lower court's judgment entry. A more thoughtful reading of the *Ciganik* decision demonstrates the Court found that there was no evidence "connecting appellees to the destruction or interference with any public records or the spoliation of any documents. Appellant offered no credible evidence that Keiper, Smeiles, and Chandler, as well as Kaley, both in his official capacity and individually, willfully destroyed or spoiled any documents. As such, appellees are not subject to suit." *Id.* at ¶ 47. But that conclusion is not the case in the present matter.

Here, Plaintiff's allegations demonstrate that Court Defendant administrators and directors, along with Plaintiff, were the only persons in possession of the documents that were permanently deleted and, thereby, destroyed. Plaintiff's allegations demonstrate that Plaintiff did not permanently delete the documents, thereby destroying them. Indeed, Court Defendants

62

are correct that the Rules of Superintendence for the Courts in Ohio help to contour the obligations of Court Defendants in this regard. Specially, Sup. R. 44 defines "Court record" as "both a case document and an administrative document, regardless of physical form or characteristic, manner of creation, or method of storage." Sup. R. 44(G)(1) defines "Administrative document" as "a document and information in a document created, received, or maintained by a court that serves to record the administrative, fiscal, personnel, or management functions, policies, decisions, procedures, operations, organization, or other activities of the court, subject to the exclusions in division (G)(2) of this rule." Based on the foregoing definition, it appears that every document created by Court Defendants should be construed as an "administrative document" and, thereby, a "court record."

Additionally, Sup. R. 45(A) states, "Court records are presumed open to public access." Also, the Court's own policy regarding public records states, "Basically, anything created, received, stored, or maintained on or in court-owned equipment or supplies may be considered a public record. Records include files, letters, reports, memos, images, videos, and pictures, emails, text messages, phone logs, and phone messages." In that regard, the FCCP-Gen Employee handbook establishes that these document are public records pursuant to Ohio Revised Code § 149.43. Indeed, every public record request that is submitted and fulfilled by Court Defendant administrators is based on the statutory mandates of § 149.43. So for Court Defendants to now contend that this provision is inapplicable, thereby negating Plaintiff's claim pursuant to Ohio Revised Code § 149.351 is bizarre.

Even assuming Ohio Revised Code § 149.351 was inapplicable to Plaintiff's allegations, though it is applicable, Court Defendants have also violated the mandates of Sup. R. 26.0l. That rule, titled "Retention Schedule for the Administrative Records of the Courts", states:

(F) Correspondence and general office records. Correspondence and general office records, including all sent and received correspondence, in any medium, may be destroyed in the normal course of business as soon as they are considered to be of no value by the person holding the records.

In the present case, there are "multiple" holders of the records; however, only one person in each scenario (each Court Defendant administrator and/or director) made a unilateral decision to permanently delete them without regard to the value assigned by the other person (Plaintiff) who also had possession of the records.

Further, Plaintiff's allegations demonstrate that she did not alter calendar invitations that Court Defendant administrators sent to Plaintiff more than ten years ago. Finally, Plaintiff's allegations demonstrate that she did not encourage or force Court Defendant judges to withhold and/or destroy public records related to the public record request associated with Goodman's bad faith complaint and that she requested the records on numerous occasions, in many instances, to no avail.

### J.  Court Defendant's Reliance on the *O'Shea* Abstention Doctrine is Misplaced in the Context of Plaintiff's Request for Injunctive Relief.

Court Defendants cite *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669 (1974) for the proposition that injunctive relief would necessitate an ongoing federal court audit of state court administrative practices. (Motion to Dismiss, ECF No. 37 at PageID 1877.) As an initial matter, the facts of *O'Shea* are not applicable to this case. Therein, the Court considered a civil rights class action against various court personnel, including a magistrate and judge, "who allegedly engaged under color of state law, in a continuing pattern and practice of conduct consisting of illegal bond-setting, sentencing, and jury-fee practices in criminal cases, which assertedly deprived respondents and members of their class of their rights under the Constitution and 42 U.S.C. § 1981-1983, 1985. *Id* at 488. In deciding not to grant the injunctive relief sought, the

Court focused on "the abrasive and unmanageable intercession which the injunctive relief they seek would represent. . . ." *Id*. at 504.

In this case, however, there are no judicial proceedings impacted by ensuring that Court Defendants adhere to policies, procedures, and protocols adopted and approved by all FCCP-Gen Judges. Indeed, this is not a circumstance wherein judges will be unable to preside over trials, set bonds, schedule hearings or perform any other duties central to their work. By referencing the *O'Shea* decision, Court Defendants almost seem to concede or predict that there are other issues afoot that are not alleged by Plaintiff. Moreover, Court Defendants' reference to a favorable statement in *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981(6th Cir. 2020) is wholly erroneous because it is inconsistent with the sum and substance of Plaintiff's allegations. Court Defendants cite the *Shelby* decision for the proposition that "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct." However, Court Defendants ignore an earlier statement in the same decision where the Court reasoned, "To obtain declaratory or injunctive relief, a claimant must show a present ongoing harm or imminent future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). At the pleading stage, plaintiffs bear the burden of alleging facts establishing each element of standing. *Spokeo*, 136 S. Ct. at 1547." *Id*. at 981.

Though Plaintiff has asserted that there are discriminatory and unlawful practices that date back to July 2021, she has also been consistent in her position and assertion that the discrimination, hostile behavior, and retaliation have continued even through the filing of this pleading. Plaintiff readily acknowledges why Court Defendants would hope this Court believes that the illegal and unlawful behavior was a past aberration. Regrettably, that hope is literally

65

not the case. As mentioned earlier, as recently as May 2025, Plaintiff was the subject of a plan to between Court Defendants, Hummer and Dean to remove her from all criminal cases assigned to her.

In an attempt to demonstrate the perceived vast expanse of what Plaintiff's request for injunctive relief would require, Court Defendants created a laundry list of FCCP-Gen operations that this Court would oversee if the request for relief was granted. (Motion to Dismiss, ECF No. 3 at PageID 1877-1878) to support their conclusion that *O'Shea*, *supra,* does not permit the same. Once again, however, the issues for which Plaintiff seeks injunctive relief have no impact on the ability of Court Defendants to manage their assigned dockets consistent with the requirements of the Ohio Code of Judicial Conduct and their oaths of office. Rather, Plaintiff's request is made to ensure that Court Defendant administrators and directors are not making critical decisions without notifying and receiving approval from FCCP-Gen Judges and to confirm that all Court Defendants are not contouring policies, procedures, practices and outcomes to cover up discriminatory, hostile and retaliatory behavior in an effort to suit the exigencies of the moment. In other words, the injunctive relief sought by Plaintiff would ensure that FCCP-Gen is operating in a fair and impartial manner. It is difficult for Plaintiff to imagine that anyone, especially Court Defendants, would have a challenge with that.

Further, Plaintiff has addressed Court Defendant judges' repeated refrain regarding absolute judicial immunity. While Court Defendants reference allegations that were not pled in the Second Amended Complaint, Plaintiff will restate the point that *Ex Parte Young, supra,* disallows the assertion of immunity and even Court Defendant judges concede that the claims listed in its motion "do not necessarily trigger judicial immunity." (Motion to Dismiss, ECF No. 37 at PageID 1879.) With no certainty about the availability of a judicial immunity defense,

Plaintiff wonders why Court Defendants would raise the issue in the first place? To cover this failure to review Plaintiff's Second Amended Complaint for allegations they believe are subject to judicial immunity, they instead chose to make a blanket statement that "to the extent that Plaintiff has asserted claims which implicate decisions made by the Defendant Judges within the scope of their jurisdiction and in the performance of their judicial functions, they are entitled to absolute judicial immunity from such claims as a matter of law." (Motion to Dismiss, ECF No. 37 at PageID 1879.) This might be a plausible argument were it not for the fact that Ohio Jud. Canon R. Rule 2.3(B) says, "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so." It is disorienting for Plaintiff to consider that Court Defendants have suggested they have judicial immunity for violating their constitutional oath to treat people fairly and impartially, to avoid biased or prejudicial conduct, to avoid engaging in harassing behavior and to further disallow the same from court staff.

Finally, Court Defendants are not entitled to immunity for the quasi-judicial proceeding related to the non-investigation of Goodman's bad faith complaint. (Motion to Dismiss, ECF No. 37 at PageID 1880.) The truth of the matter is that Court Defendants intentionally violated the mandates of the Anti-Harassment Policy by choosing to propose blackmail as a resolution rather than asking Plaintiff about her version of events, let alone undertaking an actual investigation. Indeed, to suggest that a sitting judge cannot participate in what Court Defendants continue to deem a "quasi-judicial" proceeding is one of the most curious arguments Plaintiff

has reviewed in the life of this litigation that should not be considered as well-taken.

**K. Plaintiff's Second Amended Complaint Complies With Both the Letter and Spirit of Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6).**

Plaintiff's response in opposition already outlines extensively the bases upon which her Second Amended Complaint complies with *Twombly, supra, and Iqbal, supra* and, as such, she will not try this Court's patience by restating the arguments. Plaintiff believes it is sufficient to state that her factual allegations provide a plausible basis for her claims and far exceed mere possibility of misconduct.

In yet another stunning turn, Court Defendants argue that Plaintiff's Second Amended Complaint assert no specific allegations against Defendants McIntosh, Holbrook, Lynch, Serrott, J. Brown, C. Brown, Young, Phipps Hawkins, Aveni and Munson and that it is insufficient to assert a claim against Defendants Worthington and Bedsole. There have been many moments in the last four years where Plaintiff has felt as if she was in an alternate universe and this legal argument is no exception.

As this honorable Court noted in its July 2, 2025 Order (ECF No. 35), Plaintiff's Amended Complaint contained more than 1,100 paragraphs and 132 exhibits totaling more than 700 pages. Within those paragraphs and pages, Plaintiff identified a factual allegation involving every, single Court Defendant. However, in fulfilling her duty to comply with the Court's Order and the mandates of Rule 8, Plaintiff provided a short, plain statement of her claims and identified that every, single Court Defendant played some role in the allegations outlined in her Second Amended Complaint. But, in the never-ending quest to have it both ways and to find the storybook bowl of porridge that is "just right", Court Defendants now attempt to absolve themselves of wrongdoing by advancing the unfounded argument that there are no specific allegations against them or an insufficient basis to state a claim for relief. While more detailed

specifics of the allegations are a matter that should be managed during the discovery process, Plaintiff is happy to address the Court Defendants' position with a brief recitation regarding which Court Defendant is associated with the allegations in Plaintiff's Second Amended Complaint:

- Lack of comprehensive training and guidance on administrative responsibilities (McIntosh, Goodman and Bedsole who did not meet with Plaintiff until approximately 45 days before her service as Administrative Judge began) (Exhibit 18)

- Failing to notify justice partners of her election and to update internal documents (McIntosh, Goodman, Bedsole and Worthington)

- Being given a list of Black women she was told to "be more like" (J. Brown and Serrott)

- Receiving less favorable treatment than White and/or male Administrative Judges (all Court Defendants)

- Deprivation of resources, training, and administrative support (Goodman, Bedsole, Davis and Worthington) (Exhibit 19)

- Unequal application and audit of leave time use toward her Black personal staff (Davis) (Exhibit 20)

- Undermining of her decisions and initiatives by FCCP-Gen Judge, Administrator and Director Defendants, as well as other FCCP-Gen employees (all Court Defendants) (*e.g.* Exhibit 14 and Exhibit 15)

- Advising Plaintiff's former counsel that all Court Defendant judges were prepared to remove her from service as Administrative Judge based on Defendant Goodman's bad faith complaint (Serrott)

- Telling Plaintiff that if he ever decided to f$%#! her over, he would let her know before

69

he did it (J. Brown in the presence of Bedsole)

- Derogatory statements in her presence (e.g. tired of diversity being about skin color) (Lynch) (Exhibit 21)

- Distribution of Plaintiff's personal phone number without her consent (Exhibit 22)

- Delay in technology upgrades despite her higher seniority (Bedsole) (Exhibit 23)

- Unauthorized management of her docket by other judges (Serrott) (Exhibit 24)

- Destruction or alteration of public records, despite her preservation letter (Goodman, Bedsole, Davis and Worthington, as well as Court Defendant Judges) (Exhibit 15)

- Attempt to gut the Anti-Harassment Policy after receiving notice of her EEOC complaint (Phipps) (Exhibit 12)

- Deletion of criminal continuance entries from her courtroom computer files (Exhibit 11)

- Exclusion from voting meetings regarding FCCP-Gen procedures (all Court Defendants) (Exhibit 5)

- Reassignment of cases, including emergency matters, to her docket without notice (Worthington and Young; Exhibit 25 and Exhibit 26)

- Entry into office of Plaintiff's office suite without her knowledge or permission to take photographs of her staff's office equipment (Exhibit 27)

Plaintiff has an exhibit to support each and every allegation and has appended a small universe of those documents to this response, including exhibits that substantiate the recitation included herein. However, this Court ordered Plaintiff to limit her initial presentation in filing a Second Amended Complaint and Plaintiff did just that. Despite Court Defendants' invitation to manage their veritable Catch-22 for which Plaintiff will never be able to craft a pleading that satisfies their fluctuating standards, Plaintiff will instead remain committed to complying with

this Court's Orders and the well-settled case law associated with her claims.

There is no one in this litigation who is more disappointed in and exhausted by the necessity of this process than Plaintiff. There is no one in this litigation who has had to endure a level of scrutiny, embarrassment, and humiliation like Plaintiff. There is no one in the litigation who has been isolated and alienated other than Plaintiff. So for Plaintiff to then be subjected to arguments that minimize her experiences to amusing stories that either don't provide enough detail, provide too much detail, and only highlight a deteriorating work relationship that appeared out of thin air is yet another deflating and tiring experience. Perhaps, if Court Defendants had treated Plaintiff like what she is – a duly, elected sitting FCCP-Gen Judge who is worthy of and entitled to dignity, respect, and sincere collegiality in a work environment that is free from discrimination, hostile behavior, and retaliation – then Plaintiff's difficult decision to file litigation would have never been necessary.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court find Court Defendants' motion to dismiss not well-taken and DENY the same in its entirety.

Respectfully submitted,

/s/ Kimberly Cocroft
Kimberly Cocroft (0073146)
Plaintiff p*ro se*
345 S. High Street, #4E
Columbus, OH 43215
Email: kimberlycocroft@gmail.com
Telephone: (380) 260-3123

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the 11th day of August, 2025, I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system that will send notification of such filing to all parties of interest participating in the CM/ECF system.

/s/ Kimberly Cocroft
Kimberly Cocroft

## **APPENDIX OF EXHIBITS**

1. Audio of Plaintiff's November 7, 2022 Meeting with Defendant Frye[5]

2. Handwritten Note of Defendant Goodman Regarding Whether a White, Male, FCCP-Gen Judge Should Be Investigated

3. March 13, 2024 Email from Defendant K. Brown Regarding Meeting with Plaintiff Not Being "Beneficial"

4. Audio of March 13, 2024 Meeting with Court Defendant Judges

5. January 29, 2025 Email from Defendant K. Brown Regarding Engagement of Heather (Adams) Williams To Conduct Policies and Procedures Review Without Notice to Plaintiff Before Engagement

6. Email from White, Male Probation Officer Demanding That Plaintiff Provide Explanation On Sentencing Decision

7. Audio of August 28, 2023 Meeting with White, Male Probation Staff Regarding Demand for Explanation on Sentencing Decision

8. Rule of Superintendence 4.01(A)

9. March 29, 2023 Email To Defendant Worthington Regarding Scheduling of Cases If Plaintiff Took Time Out of Office

10. June 15, 2023 Email to Defendant Bedsole Regarding Failure to Respond to Request for Court Reporter Coverage

11. Email Regarding Deletion of Criminal Continuance Entries

12. June 7, 2024 Email to Defendant Held Phipps Regarding Attempt to Gut Anti-Harassment Policy After Receiving Notice of Plaintiff's EEOC Charge

13. August 28, 2022 Email to Defendant Munson Regarding Her Attempt to Circumvent Plaintiff's Effort to Translate All FCCP-Gen Criminal Forms to Spanish, Nepali and Somali

14. September 7, 2022 Email to Defendant Aveni Regarding His Decision to Commit FCCP-

---

[5] Exhibits 1, 4, 7, 16 and 21 are Audio Exhibits that were created contemporaneous to the allegations referenced in Plaintiff's response in opposition. While Plaintiff believes that Loc. R. 7.2 and relevant case law permit her to file these exhibits in support of her response in opposition, Plaintiff filed a motion requesting permission to file audio exhibits as evidence, pursuant to Loc. R.7.2 on August 7, 2025. (ECF No. 39.) Plaintiff respects the authority and expectations of this Court and filed the motion in deference to that authority.

Gen to an Event Without Notice to Plaintiff and Without Proper Procedural Mechanisms in Place

15. March 18, 2024 Email from Plaintiff's To Defendants Hummer and Dean Regarding Preservation Letter; March 19, 2024 Email to Defendants Hummer and Dean Regarding Alteration of Court Documents

16. Audio of December 4, 2024 Conversation Between Employee Supervised by Defendant Hummer and Victims of Crime (Identifying Information Removed) Regarding Research and Plan to Remove Plaintiff from Management of All Criminal Cases Assigned to Her Docket

17. Analysis of FCCP-Gen Strengths, Weaknesses, Opportunities and Threats (SWOT) Prepared by Defendant Davis

18. November 4, 2021 Email from Plaintiff Attempting to Schedule Administrative Judge Training Meeting with Defendants McIntosh, Goodman and Bedsole

19. Email To Defendant McIntosh Regarding Defendant Bedsole's Failure to Provide Administrative Resources

20. July 31, 2025 Email from Plaintiff to Defendant Davis Regarding Audit of Leave Time Used by Plaintiff's Black, female staff

21. Audio of April 20, 2023 Meeting Regarding FCCP-Gen DEI Initiative

22. February 22, 2024 Email to Defendants Worthington, Goodman and K. Brown Regarding Distribution of Plaintiff's Personal Cell Phone Number Without Her Knowledge of Permission

23. June 26, 2023 Email from Defendant Bedsole Regarding Delay in Technology Upgrades Despite Her Higher Seniority

24. February 15, 2024 Email to Defendants Worthington and Serrott Regarding Serrott's Management of a Case on Plaintiff's Criminal Docket Without Her Knowledge or Permissions

25. July 17, 2024 Email to Defendant Worthington Regarding Reassignment of Case Without Her Knowledge

26. June 13, 2023 Email to Defendant McIntosh Regarding Failure of Defendant Young to Manage Emergency Matters

27. July 13, 2023 Regarding Entry Into Plaintiff's Office Suite Without Her Knowledge or Permission to Take Photographs of Her Staff's Office Equipment