IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kimberly Cocroft,                    :
                                     :
            Plaintiff,               :        Case No. 2:24-cv-4208
                                     :
    vs.                              :        Judge Newman
                                     :
Franklin County, Ohio, et. al.,      :        Magistrate Judge Gentry
                                     :
            Defendants.              :

**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT OF DEFENDANTS RICHARD A. FRYE, COLLEEN O'DONNELL, KIMBERLY J. BROWN, STEPHN L. MCINTOSH, MICHAEL J. HOLBROOK, JULIE M. LYNCH, MARK SERROTT, JEFFREY M. BROWN, CHRISTOPHER M. BROWN, DAVID YOUNG, KAREN HELD PHIPPS, DANIEL R. HAWKINS, CARL A. AVENI, SHERYL K. MUNSON, JENNIFER GOODMAN, SUSAN E. BEDSOLE, CAMEO DAVIS AND STACY WORTHINGTON**

The *only* operative complaint in this case is the Second Amended Complaint. It must stand or fall on its own, without reference to any prior pleadings that have been superseded. Despite three attempts, Plaintiff has never filed a complaint that satisfied the basic plausibility requirement for pleadings in federal court, or from which the Court Defendants can actually determine what they individually did for which they are being sued.  More importantly, even if the Second Amended Complaint is factually sufficient under *Iqbal* and *Twombly,* Plaintiff's claims continue to be legally insufficient and do not state any claim for relief for the many reasons set forth in the Court Defendants' Motion to Dismiss.

A.    **Title VII**

    1.    **Plaintiff Title VII claim fails as a matter of law because she is an elected official.**

Plaintiff admits that she is an elected official. (Doc. 36, Second Amended Complaint, PageID 1819, ¶ 2; Doc. 40, Memorandum in Opposition, PageID 1943). Title VII does not apply

1

to elected officials, period. 42 U.S.C. § 2000e(f). Plaintiff has not cited *any* federal law finding that an elected official—more specifically, an elected judge—falls within the definition of an "employee" under Title VII because there is none. The Title VII analysis and Plaintiff's claims should end here.

Plaintiff glosses over the fact that she is an elected official, which legally prohibits her from bringing Title VII claims. Instead, without pointing to any authority that supports her position, Plaintiff asserts 42 U.S.C. § 2000e(f)'s exclusion does not apply because she is in the "civil service." She also asserts that Defendants are estopped from arguing that she is not an employee because of the Franklin County Common Pleas Court Code of Ethics classifies her as an employee. Bluntly, Plaintiff offers an extreme interpretation of both Title VII's language and Ohio law by claiming that 42 U.S.C. § 2000e(f)'s exclusion does not apply to her.

Plaintiff's interpretation of 42 U.S.C. § 2000e(f) is incorrect. The provision excludes those elected to public office, as well as "any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." The exemption for staff does not apply, however, to "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Notably, Plaintiff cites no decision from any court that has found that an elected official can bring Title VII claims because they are in the civil service.

In fact, the majority of cases consider whether an elected official's *personal staff* can bring Title VII claims. This is because there is no question that elected officials themselves are excluded from the scope of Title VII. See *Birch v. Cuyahoga County Probate Court,* 392 F.3d 151, 158 (6th Cir. 2004). It also bears emphasis that courts have consistently held that "Congress intended that these exemptions be narrowly construed." *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564, 569

2

(E.D. Penn. 2010), citing *Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 152 (5th Cir. 1985) and *Owens v. Rush*, 654 F.2d 1370, 1372 (10th Cir. 1981).

Moreover, Ohio law does not provide that elected officials or an elected common pleas judge is in the civil service, just the opposite in fact. *See* R.C. 124.11(A)(1)(9) and OAC § 123:1-5-01(B) (excluding all officers elected by popular vote from the classified service and the requirements of Ohio Rev. Code Chapter 124). Likewise, in *Lohr v. Kiefer-Erb,* Case No. 2:19-cv-3755, 2023 U.S. Dist. LEXIS 100005 (S.D. Ohio June 7, 2023), this Court expressly held that elected officials are in the unclassified service under Ohio law and are not, therefore, in the "civil service." Id. at *16-17. Again, Plaintiff does not cite any federal case in which a court has found that an elected official can pursue Title VII claims. Instead, consistent with statutory language, district courts from around the nation routinely hold that elected officials are not protected by Title VII. See e.g. *Doward v. City of Kettle River*, Case No. 23-cv-1798, 2024 U.S. Dist. LEXIS 37424, *4 (D. Minn. Jan. 31, 2024) (citing cases); *Gay v. City of Coll. Park Ga.*, Case No. 1:23-cv-1899, 2023 U.S. Dist. LEXIS 197161, *10 (N.D. Ga. Nov. 1, 2023) (dismissing city councilman's Title VII claim); *Nowlin v. Lake City*, No. 4:10-01857, 2012 U.S. Dist. LEXIS 32483, 2012 WL 831492, at *3-4 (D.S.C. Mar. 12, 2012) (municipal court judge exempt from Title VII protection).

Plaintiff again relies solely on *City of Wayne v. Miller*, Case No. 364138, 2024 Mich. App. LEXIS 4382 (Mich. Ct. App. June 6, 2024). *Miller* is a Michigan state court decision that interpreted a Michigan statute, the Elliott-Larsen Civil Rights Acts ("ELRCRA"), which did not restrict its scope to "employees" as does Title VII. Moreover, the Michigan Court equated *being employed* with being an "employee" under the statute, a proposition for which there is no support under federal law interpreting Title VII. *Miller* has no precedential value whatsoever here.

3

Plaintiff also asserts that Title VII applies to her because one of the Court's internal policy statements incorporates the Ohio Code of Judicial Conduct.  She argues this is tantamount to an admission that she is a court employee despite being an elected judge. According to Plaintiff, the internal policy applies to all employees, and the Code of Judicial Conduct, which is mentioned in the policy, applies to judges. Therefore, judges are "employees." Plaintiff's argument is nonsensical and contrary to law.

There is no court policy that provides that elected judges of the Franklin County Common Pleas Court are also "employees" of the Court, despite Plaintiff's insistence otherwise. In fact, the policy simply provides that non-judge court personnel, like the judges themselves, are also subject to and governed by the Code of Judicial Conduct.

Moreover, the fact that a policy refers to the Ohio Code of Judicial Ethics and states that it applies to employees of the Court is not tantamount to an admission that elected judges are employees for the purposes of Title VII. Again, Plaintiff provides no case law addressing her novel argument, let alone supporting her position that, though she is undisputedly an elected official, she can nonetheless pursue Title VII claims.  Simply put, that elected judges are precluded from pursuing claims under Title VII is a matter of statute that a court's internal policy statement cannot change.

## 2.    Plaintiff's Title VII claim is also barred by the statute of limitation and/or based on allegations that do not support Title VII claims.

Plaintiff misconstrues the Court Defendants' position regarding the applicability of the statute of limitations to her Title VII claims. Read liberally, Plaintiff's most concrete allegation in the Second Amended Complaint is that she was "forced" to resign her post as Administrative Judge ("AJ"), and that the underlying reason that she was forced out was that the Court Defendants did not want a black woman to be AJ. Any claim about the circumstances surrounding her time as AJ,

4

including the events related to her resignation of the post, are time-barred because Plaintiff did not file her initial complaint until November 26, 2024, more than two years after she resigned the position on November 14, 2022. (Doc. 1, Complaint; ECF # 26, Second Amended Complaint, PAGEID 1822).

The remainder of the allegations in the Second Amended Complaint that Plaintiff alleges occurred within the statute of limitations do not support any of the claims that she has attempted to assert. As in her prior pleadings, what remains of the allegations after Plaintiff resigned the AJ position is Plaintiff's laundry list of complaints about the operation of the Court, which she claims the Court Defendants did not sufficiently address. Putting aside that the Second Amended Complaint fails to identify which of the defendants did the things she complains of, these complaints amount to Plaintiff's disagreement with the way that other judges and administrators run the court and/or complaints that the Court Defendants disrespected her. The fact that Plaintiff claims that the actions listed were motivated by her race or gender is a legal conclusion that cannot be credited as true under Fed. R. Civ. P. 12(B)(6). See *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011). Rather than ignoring allegations related to occurrences after November 14, 2022, Court Defendants assert that these allegations, even if true, are not sufficient to state a Title VII claim as a matter of law.

In short, much of Plaintiff's factual allegations are beyond the statute of limitations, and the rest of the *factual* allegations do not state a claim for relief under Title VII.

### 3. The Court Defendants are not Plaintiff's employer.

Plaintiff has been clear that she is suing the Court Defendants in their individual (or personal) capacity. (Doc. 40, Memorandum in Opposition, PageID 1959). This Court has held that a supervisor may be sued under Title VII *only* in his official capacity, for purposes of imposing

*respondeat superior* liability on the employer, and not in his individual capacity. *Johnson-Scott v. Risch,* Case No. C-3-95-549, 1996 U.S. Dist. LEXIS 20160 (S.D. Ohio Sept. 1, 1996) at *9. As such, Plaintiff cannot proceed with her individual claims against the Court Defendants based on the premise that they are her "employers" under Title VII.

Plaintiff argues, however, that Title VII applies because "Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior." (Doc. 40, Memorandum in Opposition, PageID 1977). Even if true, this aspirational statement does not transform Plaintiff's fellow judges into her "employers" for the purposes of Title VII. Indeed, her fellow judges have no authority to remove Plaintiff from her elected position. Plaintiff's fellow judges are, in no sense of the word, her employers, and she is not their employee.

Plaintiff's position as to the Court Administrator defendants is even more strained. Plaintiff acknowledges that none of the Court Administrators had supervisory authority over her. Simply put, the Court Administrators, who admittedly work *for* the Court, could never be Plaintiff's "employer" for the purposes of imposing individual/personal liability on them under Title VII.

**C.      Plaintiff's claim under 42 U.S.C. 1981 fails as a matter of law.**

**1.      Individual liability under § 1981 is nonexistent.**

42 U.S.C. § 1981 does not provide a private cause of action for money damages against state actors in their individual capacity. *McCormick v. Miami Uni*v., 693 F.3d 654, 661 (6th Cir. 2012); *Boxill* v. O'Grady, 953 F.3d 510, 519 (6th Cir. 2019); *Direct Constr. Servs., LLC v. City of Detroit,* 820 Fed. Appx. 417, 4287 (6th Cir. 2020); *Speed Way Transp., LLC v. City of Gahanna*, 6th Cir. No. 21-3657, 2023 U.S. App. LEXIS 5135, at *22. Plaintiff has sued the Court Defendants in their individual capacities under 42 U.S.C. § 1981 directly, a claim that is nonexistent in the Sixth Circuit. Plaintiff cites *Cardenas v. Massey,* 269 F.3d 251, 268 (3rd Cir. 2001), a 24 year old

6

out-of-circuit case. Yet, as recently as 2023, the Sixth Circuit has reaffirmed that there is no claim against individuals under § 1981. See *Speed Way Transp., LLC* at 822. Consequently, Plaintiff's § 1981 claim fails as a matter of law.

> **2.** **Plaintiff has no contractual interest in her elected position so there is no basis for liability under § 1983 for a violation of § 1981,**

§ 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" for suits against state actors in their individual capacities. *McCormick*, 693 F.3d at 660. Plaintiff must identify a contract under which she had rights that were impaired. *Domino's Pizza, Inc. v. John McDonald*, 546 U.S. 470, 475-476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006) ("Any claim brought under § 1981…must initially identify an impaired contractual relationship under which the plaintiff has rights."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989); see also *Brintley v. St. Mary Mercy Hosp.*, 545 F. Appx 484, 488 (6th Cir. 2013) (§ 1981 requires a contractual relationship).

Plaintiff posits that she has a contractual interest in her elected position because she is an "employee" of the Court, pointing to the Court's Code of Ethics. Plaintiff fails to address the fact that the Supreme Court has long held that elected officials do not have a contractual right or property interest in their offices. *Taylor v. Beckham*, 178 U.S. 548, 20 S. Ct. 890, 44 L. Ed. 1187 (1900); see, also, *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972).

As an elected official, Plaintiff is not an employee of the Court Defendants and has no contractual relationship with them. Voters elected Plaintiff; she was not hired. Thus, neither her fellow judges nor the court administrators made any offer of employment. Plaintiff decided to run for an elected office; she did not accept terms of employment offered by her fellow judges and court administrators. Quite simply, there is no basis upon which the Court could conclude that Plaintiff had a contractual with Defendants and her § 1981 claim fails as a matter of law.

Plaintiff also claims that she had a contractual right to continue in her position as AJ, a position that she was also *elected to,* but by her fellow judges. Her role as an AJ is incidental to her service in the office of common pleas judge and because she has no contractual right or property interest in her office, she also has no contractual right or property interest in the elected AJ position. Plaintiff cites no contract (or elements of a contract) related to the AJ position that would support her argument. In fact, the AJ role is a revolving, unpaid administrative post that rotates among judges. Even if there were some contractual right in the AJ position (there clearly is not), Plaintiff only alleges that she was "blackmailed" into resigning the AJ position by two fellow judges and one administrator. She alleges nothing about the remaining Court Defendants relative to this issue. This, of course, is all in addition to the fact that any claims related to the circumstances of her time as AJ are barred by the statute of limitations, as already noted.

Given the absence of any contract between Plaintiff and Court Defendants, her § 1981 claim fails.

**D.     42 U.S.C. § 1983**

> **1.     Plaintiff's claims under 42 U.S.C. § 1983 are duplicative of her Title VII claims and fail for the same reasons.**

Plaintiff does not distinguish between her Title VII and § 1983 claims. Rather, she contends she is permitted to bring the same basic claim under both statutes. This is not true. As stated previously, a plaintiff may not bring a Title VII claim by way of § 1983 and thereby avoid the procedures involved with bringing a Title VII claim. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII"). Count Three of the Second Amended Complaint, which is ostensibly a claim under § 1983, alleges the same basic premise as her Title VII claim, which is that she was subject to race and gender discrimination. (Doc. 36, Second Amended

Complaint, PageID 1827-1828, ¶¶ 48-56). The fact that Plaintiff generally alleges that she was deprived of property and liberty interests without due process (which is also addressed below) changes nothing. Because Plaintiff's Title VII and § 1983 claims are functionally the same, her § 1983 claims fails for the same reason as her Title VII claims.

   **2.    Plaintiff has not pled facts sufficient to implicate a liberty or property interest and, therefore, the Complaint fails to state a claim for a violation of her constitutional rights.**

Count Three of the Second Amended Complaint vaguely alleges a claim for violation of Plaintiff's due process rights. (Doc. 36, Second Amended Complaint, PageID 1827, ¶¶ 51-52). To succeed, Plaintiff would need to show that she was deprived of some property or liberty interest in which she had a vested right.  She was not so deprived because neither her election as Judge nor her election to the role of AJ implicates such interests.

With respect to a property interest, Plaintiff ostensibly claims that she has a property interest in her position as a common pleas judge, in the position of AJ, and/or in a particular standard with respect to her day-to-day interactions with her fellow judges, none of which are true. As noted above, an elected office does not constitute a property interest. *Taylor v. Beckham*, 178 U.S. 548, 20 S. Ct. 890, 44 L. Ed. 1187 (1900); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972). It necessarily follows that an unpaid administrative role like AJ that is part and parcel to the elected office also is not a property interest. On this issue, Plaintiff cites Rule of Superintendence 4.01(A), which creates the position of AJ. This rule creates an administrative role to be filled within the organization of a common pleas court. not a cognizable property interest in that role. See *Whaley v. County of Tuscaloosa ex rel. Tuscaloosa County*, 58 F.3d 1111, 1114 (A "property interest" for the purposes of a due process violation under the Fourteenth Amendment is defined as a legitimate claim of entitlement to a benefit."). Plaintiff has not pled facts or provided any explanation

regarding how the role of AJ is considered to be a benefit to which she had a legitimate entitlement. The AJ role imposed administrative burdens on Plaintiff and nothing more. *See* Ohio Sup. R. 4.01 and Franklin County Loc. R. 5.04. Bearing responsibility for a common pleas court docket and calendar and/or being responsible for deciding on weather closures does not create a property interest. Likewise, as discussed above, the fact that the Court adopted a policy that states that both judges and court employees are subject to the Ohio Code of Judicial Conduct in no way creates a contract or a property interest for Plaintiff in her position as an elected judge. The Second Amended Complaint also alleges no facts (and Plaintiff provides no argument) that would support any claim that any of the Court Defendants deprived Plaintiff of a liberty interest.

### 3. Qualified Immunity.

Setting aside the issues above, Plaintiff's Second Amended Complaint also does not allege facts which, even if true, would remove the Court Defendants' entitlement to qualified immunity.[1] Aside from bare legal conclusions, Plaintiff has not provided any facts that establish (or support) that she was subject to discriminatory actions. An allegation of racial or gender discrimination is considered a legal conclusion for the purposes of Rule 12(b)(6) or Rule 12(c) in the Sixth Circuit. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011). In *Rondigo,* the Sixth Circuit explicitly stated that allegations of unlawful discrimination are "little more than legal conclusions couched as factual allegations" and need not be accepted as true under Rule 12(b)(6) scrutiny. Id. The court emphasized that such allegations must be supported by sufficient factual content to raise the right to relief above the speculative level and to make out a plausible claim for relief Id., see, also, *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

---

[1] Plaintiff appears to be relying exclusively on Title VII (and perhaps § 1981) as the basis for her § 1983 claim. The inapplicability of Title VII and § 1981 has already been addressed above. Suffice it to say that Title VII and § 1981 do not apply here, either as stand-alone claims or as the basis for a § 1983 claim.

Further, Plaintiff provides many examples of events and circumstances in her workplace to which she objects and which she believes are or were not appropriate or fair. However, what is missing from this list are facts that would support a finding that those events and circumstances were the result of Plaintiff's race or gender (aside from her own bare legal conclusions). As to this, Plaintiff appears to rely solely on the fact that she is a member of a protected class, concluding from this fact that she was discriminated against. Id. There is nothing that connects the events and circumstances that Plaintiff complains about with her gender or race. Stripping away the legal conclusion of discrimination, there are no actual facts, which, if true, show that the events and circumstances described in the Second Amended Complaint were the product of race or gender discrimination. Plaintiff herself comes close to conceding as much when she admits that her claims may rest on "a cataclysmic and intentional failure to treat individuals with basic decency," which is hardly a clearly established constitutional right. (Doc. 40, Memorandum, PageID 1938). As such, the Second Amended Complaint does not state a claim for a violation of a federal constitutional or statutory right actionable under § 1983. As such, Plaintiff cannot satisfy the first prong to overcome qualified immunity, which requires Plaintiff to show that a constitutional violation has occurred. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)

Court Defendants also asserted in their Motion to Dismiss that Plaintiff has not identified how she has suffered an adverse employment action. Plaintiff's Memorandum in Opposition does not identify alleged facts in the Second Amended Complaint that show that she suffered an adverse employment action. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus.,*

11

*Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). In addition, it typically "inflicts direct economic harm." Id.

Here, Plaintiff leans on the fact that she was allegedly "blackmailed" to resign from her position as AJ. Even if this claim were not time-barred, her resignation from that unpaid position—compelled or otherwise--is not an adverse employment action, because it did not involve a change in salary, benefits, title, or work hours, or any direct economic harm inflicted on the Plaintiff. In the same way, the various events and circumstances about which Plaintiff complains, while obviously frustrating to the Plaintiff, also do not constitute adverse employment actions. These conditions did not change the benefits of her position nor did they inflict direct economic harm on her. As such, they do not constitute adverse employment actions.

Because Plaintiff has not shown that the Court Defendants violated her constitutional rights, let alone that they violated her *clearly established* rights, they are entitled to qualified immunity from her claims under § 1983.

**E.    RICO**

The purpose of RICO is to combat organized and/or continuing patterns of criminal activity that affect interstate commerce. Allegations of employment discrimination like those advanced by the Plaintiff in this case simply do not fit within the framework of RICO.  See *McSweeney v. Cohen,* Case No. 24-cv-01503, 2025 U.S. Dist. LEXIS 61625 (S.D.N.Y. March 31, 2025) (holding that allegations of violations of Title VII and ADA do not support a RICO claim).  There are many problems with Plaintiff's invocation of RICO. Among the most glaring defects, Plaintiff's allegations do not relate to any predicate crimes (the alleged destruction of internal Teams messages is not a predicate crime), Plaintiff has not alleged a cognizable injury to her business or property, Plaintiff's claims do not relate to conduct that affects interstate commerce, and Plaintiff

has not alleged facts showing a causal link between the alleged RICO violations and damages that she has incurred. Id. Plaintiff is attempting to fit a square peg into a round hole, a mistake commonly made by those asserting RICO claims. See, for example, *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992) ("While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available***."); *Maryland Staffing Servs. v. Manpower, Inc*., 936 F. Supp. 1494, 1502 (E.D. Wis.1996).

The facts alleged in the Second Amended Complaint, even if true, do not support a RICO claim against the Court Defendants and must be dismissed.

**F.    State Law Claims**

**1.    4112.**

Plaintiff's state law claims under R.C. Chapter 4112 fail for the same reasons that her Title VII claims fail, as discussed above. Specifically, Plaintiff cannot assert individual claims against the Court Defendants under R.C.4112.02 and R.C. 4112.99, as the individual Court Defendants are not Plaintiff's employers. *Winter v. Mike's Trucking, Ltd*., S.D. Ohio No. 2:20-cv-1269, 2021 U.S. Dist. LEXIS 79031, FN 2. Likewise, as an elected official, Plaintiff is not "employee" under R.C. Chapter 4112 as a matter of law.

In addition, as pointed out in the Court Defendant's Motion, R.C. 4112.02 was amended in 2020 to make clear that individuals are not "employers" who may be liable under that section, a proposition that was expressly stated within House Bill 352 ("The General Assembly further declares its intent that individual supervisors, managers, or employees not be held liable under Chapter 4112 of the Revised Code for unlawful discriminatory practices relating to employment…"). Plaintiff did not address this issue in her Memorandum in Opposition.

13

Finally, as set forth repeatedly above, Plaintiff's claims based on factual allegations that occurred before November 22, 2022 are barred by the statute of limitations, and the remaining factual allegations after that date do not state a claim for relief under R.C. Chapter 4112. Plaintiff's response in her Memorandum is to repeat that "Court Defendant judges have an obligation to ensure that the court's work environment is free from harassing and discriminatory behavior." (Doc. 40, Memorandum in Opposition, PageID 1977). This statement does not address the defects in Plaintiff's claims under R.C. Chapter 4112.

  2. **Defamation**

  a. **Plaintiff's defamation claim is time-barred.**

Plaintiff's defamation claim against Ms. Goodman and Ms. Davis is based on a complaint that was lodged by Ms. Goodman more than one year prior to the filing of lawsuit. As a result, this claim is barred by the one-year statute of limitations under RC. 2305.11(A).

Plaintiff relies on a "continuing publication" theory that has been firmly rejected by Ohio courts. Courts have consistently held that Ohio has not adopted a "continuing tort theory" or "continuing publication" rule for defamation cases. *Spitzer v. Knapp*, 2019-Ohio-2701, at ¶ 26 (5th Dist.); *Smith v. Nat'l Western Life*, 2017-Ohio-4184, FN 1(8th Dist.) (stating Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations); *Rosenbaum v. Chronicle Telegram*, 2002-Ohio-7319, ¶¶ 27-29 (9th Dist.) (declining to adopt the continuing tort theory in a defamation case and stating a cause of action for defamation accrues immediately upon the occurrence of the tortious act and is not appropriate for the continuing violation exception); *Fleming v. Ohio Atty. Gen.*, 2002-Ohio- 7352, ¶ 14 (10th Dist.) (stating the court would not embrace the plaintiff's continuing defamation theory); *Krowiak v. BWXT Nuclear Operations Group, Inc.*, N.D. Ohio No. 1:18 CV 629, 2018

14

U.S. Dist. LEXIS 184027, 2018 WL 5312463 (rejecting the re-publication theory of the plaintiff and finding even if the defendant continued to disseminate these statements to new consumers, this would not re-start the limitations period); *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003) (rejecting plaintiff's theory that the original source of the defamatory statements is liable each time the information is re-published to a new party and stating Ohio case law is solidly against the plaintiff's re-publication argument). "Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003).

In her Memorandum, Plaintiff cites *Keinow v. Cincinnati Children's Hops. Med. Ctr,* 2015-Ohio-4396). In that case, an employee filed a defamation against her employer based on a statement included in her personal file and a subsequent oral communication to a prospective employer calling about her employment history. The trial court dismissed the claim because both statement were time-barred. The facts are not comparable to this case, and the court did not discuss the "re-publication" or "continuing publication" theory.

The first "publication" of the harassment complaint was on November 1, 2022, meaning that the statute of limitations began to run that day. Plaintiff did not file this action until November 26, 2024, over two years later, and as such, the defamation claim is barred as a matter of law.

Plaintiff also devotes several pages of her Memorandum to expressing her disbelief that the Court Defendants allegedly withheld the fact that Ms. Davis lodged a separate complaint against her. (Doc. 33, Memorandum, PageID 1775-1776). But the Court Defendants have never made such a claim. In fact, the Court Defendants are simply addressing Plaintiff's own allegation

in the Second Amended Complaint that "Davis provided inaccurate information to Goodman for inclusion in her bad-faith complaint regarding the reason that former employees left Judge Cocroft's staff." (Doc. 36, Second Amended Complaint, PageID 1830, ¶ 72). The Court Defendants have never asserted that Ms. Davis filed a complaint against Plaintiff, as Plaintiff repeatedly states. The Court Defendants are simply doing what is required under Fed. R. Civ. P. 12(B)(6), which is assuming the truth of the factual allegations contained in the Second Amended Complaint.

> **b.** **Defendants Goodman and Davis are entitled to quasi-judicial privilege for any involvement in making a harassment complaint regarding Plaintiff.**

Ms. Goodman and Ms. Davis are entitled to a privilege for their involvement and/or statements made in a complaint about workplace conditions because the complaint is the first step in a quasi-judicial proceeding.

In her Memorandum, Plaintiff does not appear to dispute that Ms. Goodman made a complaint about the conditions of her workplace based on her interactions with the Plaintiff, though she continually refers to it as a "bad faith complaint." Likewise, Plaintiff does not appear to dispute that under the Court's Anti-Harassment Policy, the filing of a complaint about workplace conditions is the first step in a formal process leading to the investigation regarding the complaint, which is a quasi-judicial proceeding. (Doc. 36-2, Anti-Harassment Policy, PageID 1840-1842). Finally, Plaintiff does not dispute the case law holding that statements made in judicial or quasi-judicial proceedings are absolutely privileged as long as they are reasonably related to the proceedings. *Hecht v. Levin*, 66 Ohio St. 3d 458, 460 (1993); *Jackson v. Conroy Rental*, 2024-Ohio-4467, ¶ 7 (10th Dist.).

Instead, in response to the assertion of the privilege, Plaintiff argues that: (1) she was not provided documents related to Ms. Goodman's complaint;(2) the Court Defendants did not investigate her own claims of harassment; and (3) that the Court Defendants "waived" quasi-judicial privilege by providing documents in response to public record requests. None of these assertions, even if true, affect the application of quasi-judicial privilege for Ms. Goodman and Ms. Davis, and Plaintiff provides no authority to the contrary. The prevailing law is that individuals are immune when providing statements that are reasonably related to a quasi-judicial proceeding.[2] Based on the allegations in the Second Amended Complaint, it is clear that Ms. Goodman and Ms. Davis are immune from a claim for defamation here.

### 3. Plaintiff's claims under R.C. 149.351(B).

As noted previously, because the federal claims in this case are legally insufficient, this Court should decline to exercise supplemental jurisdiction over Plaintiff's claim for destruction of public records, a purely statutory claim under Ohio law. Moreover, should this Court decide to review this claim, Plaintiff's claim fails on the pleadings for three reasons.

First, R.C. 149.351(B) *expressly* requires that claims for violation of the statute be brought in the court of common pleas of the county in which the alleged violation occurred. That means that this claim must be brought in Franklin County Common Pleas Court, and cannot be asserted in this case. For this reason, it must be dismissed. Plaintiff does not mention this issue, let alone explain why it does not apply in this case.

---

[2] Plaintiff confuses the concept of a privilege in this context. Plaintiff claims that the Court Defendants "waived" quais-judicial privilege" because they released the complaint in response to a public record request. However, setting aside the fact that they were legally compelled to release the complaint under R.C. 149.43, this concept is not a "privilege" like the attorney-client privilege that can be waived. Instead, the quasi-judicial privilege is an immunity from liability. Plaintiff provides no authority for the proposition that this immunity can be waived.

Moreover, there is nothing within R.C. 149.351 that allows for an individual/personal claim against the employees or officials of public offices. This provision imposed the duty to preserve public records on the public office, and the remedies for violations of that duty are as against the public office, not individual officials and employees. Plaintiff cites a number of sections that impose duties regarding the retention of public records, but none of those section impose personal liability on officials or employees for a violation of R.C. 149.351(B). Plaintiff's claim here is against the Court Defendants in their personal or individual capacity. On this issue, Plaintiff misconstrues the case cited by the Court Defendants, *Ciganik v. Kaley,* 2004-Ohio-6029 (11th Dist.). In *Ciganik,* the Court of Appeals expressly stated that it agreed with the trial court's holding that a public official (a sheriff, in that case) was not individually liable under R.C.149.351. Id. at ¶¶ 45-46.

Finally, Plaintiff's records requests sought Ohio court records. Therefore, R.C. 149.35(B) does not apply. Rather the Ohio Rules of Superintendence are the exclusive mechanism by which court records may be sought and dictate the limited and exclusive remedy for requests for court records. *See,* Ohio Sup. R. 44-47; *State ex rel. Vindicator Printing Co. v. Wolff*, 2012-Ohio-3328, ¶ 23.

Given all of the above, Count Seven must be dismissed.

**G.** ***O'Shea* advises that this Court should abstain from considering Plaintiff's prayer for injunctive relief, which would require extensive supervision by this Court over the operations of the Franklin County Common Pleas Court if granted.**

Plaintiff states that she is seeking "permanent injunctive relief to enjoin Court Defendants and their officers, agents, employees, and all persons in active participation from engaging in *any* employment practices that discriminate *in any way*." (Doc. 40, Memorandum, PageID 1958). Specifically, in the Second Amended Complaint, Plaintiff seeks an order for the Court Defendants

"to not only institute policies, practices, and programs that provide equal opportunities for all employees and eradicate the effects of past and present unlawful employment practices, but **to ensure that those policies, practices, and programs [are] carried out and adhered to by Defendants** by implementing performance evaluations that monitor the efficacy and practical impact of those policies, programs and practices." (Doc. 36, Second Amended Complaint, PageID 1831) [Emphasis added].

*O'Shea* abstention is appropriate when conduct or policies of state courts "are sought to be enjoined" and "it is obvious that any federal declaration that policies and practices of state judges are unconstitutional would impact…pending state judicial proceedings." *Larson v. Franklin Cty. Court of Common Pleas*, No. 81-3184, 1982 U.S. App. LEXIS 11688, at *6-7. This means that *O'Shea* abstention is "an almost total bar on 'supervisory injunctive relief' claims against state courts." *Parker v. Turner* 626 F.2d 1, 6-7 (6th Cir. 1980).

Plaintiff claims that the broad injunctive relief she seeks would "have no impact on the ability of Court Defendants to manage their assigned dockets…" (Doc. 40, Memorandum in Opposition, PageID 2001). This is incorrect. Among other things, Plaintiff takes issue with how dockets are set and cases are assigned (including TRO cases), how jurors are assigned to court rooms to hear trials, how interpreters and court reporters are assigned to courtrooms for individual cases, and how probation officers and prosecutors are allowed to communicate with her regarding individual cases. (Doc. 36, Second Amended Complaint, Page ID 1824, ¶ 30). All of these actions involves judicial proceedings—on how the Court Defendants manage their docket. In order to carry out the sweeping injunction that Plaintiff seeks, this Court would have to police nearly all aspects of the operation of the Franklin County Common Pleas Court, and likely other offices (like the Franklin County Prosecutor's Office) about which Plaintiff complains. For instance, what if

Plaintiff did not receive an interpreter or court reporter quickly enough during a proceeding? Would this Court be called upon to intervene? What if Plaintiff's docket was heavier than other judge's dockets for a period of time, or Plaintiff received more TRO cases? Would this Court be required to step in and address the situation on a case-by-case basis with the Assignment Commissioner? What if Plaintiff perceived that she did not receive technology upgrades quickly enough? The reality is the injunction that Plaintiff seeks would have this Court supervise all aspects of the Fraklin County Common Pleas to address the working relationship between herself and her fellow judges. This is the very essence of the type of federal audit, or continuing oversight, that *O'Shea* was intended to prevent. To avoid this result, this Court should abstain from entertaining Plaintiff's claim for injunctive relief that would require this Court to supervise the operation of the Franklin County Common Pleas on an ongoing basis.

**H.**     **The Exhibits attached to Plaintiff's Memorandum in Opposition are extrinsic evidence and not part of the pleadings. As a result, they cannot be considered by the Court in deciding the Court Defendants' Motion to Dismiss.**

The Second Amended Complaint has two exhibits, which are the Court's Code of Ethics and Conduct and Court's Anti-Harassment Policy (Doc. 36-1, Code, PageID 1834-1839; Doc. 36-2, Anti-Harassment Policy, PageID 1840-1842). However, Plaintiff has also attached 22 additional documents as Exhibits to the Memorandum in Opposition that are not attached to the Second Amended Complaint. Likewise, Plaintiff has asked for permission from this Court to file five audio recordings, also which are not mentioned in the Second Amended Complaint and which are not part of the pleadings. (Doc. 39, Motion, PageID 1922-1924). As noted in the joint brief of the Defendants opposing Plaintiff's attempt to submit the audio recording, Plaintiff cannot use materials that are not part of the pleadings to oppose the Court Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(B)(6).

The Second Amended Complaint is the *only* operative pleading in this case. See *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) ("When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward."). A court evaluating a motion to dismiss "must focus only on the allegations in the pleadings" and "[t]his rule applies just as much when the plaintiff attaches evidence to its opposition [to a motion to dismiss] as when (as is more common) the defendant attaches evidence to its motion." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

By seeking to bolster and add to the facts set forth in her Second Amended Complaint with these exhibits, Plaintiff is really seeking to amend her complaint for a third time. Plaintiff should not be permitted to do so. To properly amend her complaint, Plaintiff must file a Motion for Leave to Amend pursuant to Fed. Civ. R. 15, which includes submitting the proposed amended pleading. She cannot do so through a memorandum in opposition to a motion to dismiss. Id. at 483-484 ("Plaintiffs cannot, by contrast, amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."); *Hill v. Ohio State Univ. T&L*, Case No. 2:12-cv-984, 2013 U.S. Dist. LEXIS 73950 (S.D. Ohio May 24, 2013), at *8, citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

In fact, the fact that Plaintiff has attempted to submit so many documents and other materials that are extrinsic to the Second Amended Complaint is an admission that the Second Amended Complaint is deficient. Fed. R. Civ. P. 12 is not demanding. Plaintiff need only allege sufficient facts about each Defendant which would support a plausible case for liability against each defendant. Plaintiff's Second Amended Complaint does not satisfy this basic standard. It is

clear from the Second Amended Complaint that Plaintiff is deeply dissatisfied with how the Court in which she is a part operates, and that she believes she has been singled out for different treatment. But this alone is not sufficient to state a claim against each Court Defendant. And Plaintiff cannot sustain her burden by simply amalgamating her allegations against all of the Court Defendants, which is what she has done in the Second Amended Complaint.

## CONCLUSION

For the reasons set forth herein and in the Court Defendants' Motion to Dismiss, Defendants Richard A. Frye, Colleen O'Donnell, Kimberly J. Brown, Stephn L. McIntosh, Michael J. Holbrook, Julie M. Lynch, Mark Serrott, Jeffrey M. Brown, Christopher M. Brown, David Young, Karen Held Phipps, Daniel R. Hawkins, Carl A. Aveni, Sheryl K. Munson, Jennifer Goodman, Susan E. Bedsole, Cameo Davis and Stacy Worthington respectfully request that this Court dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Scott O. Sheets (0076837)
Charles Schneider (0005821)
ISAAC WILES & BURKHOLDER, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 221-2121 / F: (614) 365-9516
aglasgow@isaacwiles.com
ssheets@isaacwiles.com
cschneider@isaacwiles.com
*Attorneys for Court Defendants*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on August 18, 2025, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Aaron M. Glasgow* 
Aaron M. Glasgow (0075466)