IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Kimberly Cocroft, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-cv-4208 |
| | : | |
| vs. | : | Judge Newman |
| | : | |
| Franklin County, Ohio, et. al., | : | Magistrate Judge Gentry |
| | : | |
| Defendants. | : | |

**MOTION TO DISMISS OF COURT DEFENDANTS**

Defendants Richard A. Frye, Colleen O'Donnell, Kimberly J. Brown, Stephen L. McIntosh, Michael J. Holbrook, Julie M. Lynch, Mark Serrott, Jeffrey M. Brown, Christopher M. Brown, David Young, Karen Held Phipps, Daniel R. Hawkins, Carl A. Aveni, Sheryl K. Munson, Jennifer Goodman, Susan E. Bedsole, Cameo Davis and Stacy Worthington ("Court Defendants") move this Court to dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(B)(6) for the reasons set forth in the attached Memorandum in Support.

Respectfully submitted,

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Scott O. Sheets (0076837)
Charles Schneider (0005821)
ISAAC WILES BURKHOLDER & MILLER, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 221-2121 / F: (614) 365-9516
aglasgow@isaacwiles.com
ssheets@isaacwiles.com
cschneider@isaacwiles.com
*Attorneys for Court Defendants*

## **MEMORANDUM IN SUPPORT**

**I.    FACTS**

Plaintiff Kimberly Cocroft ("Plaintiff" or "Judge Cocroft") was elected to her position on the Franklin County Common Pleas bench in 2009. (Doc. 51, Third Amended Complaint, PageID 2211, ¶ 1). Plaintiff is an African-American woman. Id.

In July, 2021, Plaintiff's fellow judges elected her to serve as the court's Administrative Judge ("AJ") for the 2022 term. (Doc. 51, Third Amended Complaint, PageID 2211, ¶ 1). Pursuant to Sup. R. 4 and Franklin County Common Pleas Court Local Rule 5 and though the administrative judge's term is one year, the AJ serves at the pleasure of the court's other judges, who may remove the AJ via majority vote. Plaintiff received an orientation session for the AJ position in November, 2021, several months before she was to begin her term. (Doc. 51, Third Amended Complaint, PageID 2216, ¶ 26-27). However, per Plaintiff, her orientation's timing was inconsistent with past practice and her training was delayed. (Doc. 51, Third Amended Complaint, PageID 2216, ¶ 26).

Prior to starting her term, two other judges approached Plaintiff, telling her that others in the court felt that she needed to be more approachable as an AJ. (Doc. 51, Third Amended Complaint, PageID 2216, ¶ 29). During that conversation, one of the judges mentioned several other prominent African-American women in the Columbus area who he said she should emulate in order to be more approachable. (Doc. 51, Third Amended Complaint, PageID 2216, ¶ 29).

Plaintiff began her term as AJ on January 3, 2022. (Doc. 51, Third Amended Complaint, PageID 2217, ¶ 32). After announcing her "vision" for the Court, she began implementing a plan to "reform" it. Plaintiff's reforms included increased personal oversight of the court's administrators and particularly Executive Court Administrator Jennifer Goodman. (Doc. 51, Third Amended Complaint, PageID 2217, ¶ 33-34). Plaintiff focused her supervision on how Ms.

2

Goodman handled staff complaints, preserved public records, and managed court resources. *Id*. at ¶ 34. Plaintiff claims that Ms. Goodman, other administrators, and other judges did not approve to the direction that she was taking the court. (Doc. 51, Third Amended Complaint, PageID 2217, ¶ 35).

In October, 2022, Ms. Goodman filed a complaint against Plaintiff. (Doc. 36, Second Amended Complaint PAGEID 1822; Doc. 51, Third Amended Complaint, page ID 2220, ¶ 48). Ms. Goodman alleged that Plaintiff demeaned, belittled, criticized and harassed her in their workplace interactions. (Doc. 51, Third Amended Complaint, PageID 2221, ¶ 51). Per Plaintiff, Ms. Goodman's complaint resulted from Plaintiff's "good faith evaluations of Goodman's job performance" and "Goodman's insubordination and hostility toward her superior." (Doc. 51, Third Amended Complaint, PageID 2220, ¶ 48-49).

Per Plaintiff, because her fellow judges disagreed with her leadership. Defendant Frye informed Plaintiff that the other judges would vote her out of the AJ position unless she resigned, in which case Ms. Goodman's Complaint would be resolved without further action. (Doc. 51, Third Amended Complaint, PageID 2221, ¶ 53; 58). Plaintiff voluntarily resigned because of this "coordinated pressure." (Doc. 51, Third Amended Complaint, PageID 2223, ¶ 61). Plaintiff resigned on November 14, 2022. (Doc. 12, Amended Complaint, PageID 761, ¶374; 377). Her resignation and the installation of a new AJ was announced to court staff on November 15, 2022. (Doc. 12, Amended Complaint, PageID 761, ¶ 377. Per Plaintiff, Defendants' "opposition to her vision" for the Court was their "true motive" for compelling her resignation. (Doc. 51, Third Amended Complaint, PageID 2223, ¶ 63).

Subsequently, Plaintiff sought to have the Court revisit the matter and asked that it "re-examine Goodman's complaint," which she claims did not occur. Instead, per Plaintiff,

3

unidentified Defendants subjected her to "hostility" and "retaliatory acts." (Doc. 51, Third Amended Complaint, PageID 2224-2225, ¶ 67). Plaintiff alleges that Defendants denied resources and legal representation, excluded her from meetings, destroyed records, made "threats" to reassign her docket, and subjected her to "intrusive" oversight. (Doc. 51, Third Amended Complaint, PageID 2228, ¶ 91). As mentioned and as to many of her allegations, the TAC does not identify which Defendant(s) took the alleged actions following her resignation. For instance, she alleges that all Defendants collectively took the "retaliatory" action described above.

Plaintiff filed her original complaint in this case on November 26, 2024, over two years after her resignation from the AJ position. After multiple amendments, Plaintiff now alleges three constitutional claims, all brought pursuant to 42 U.S.C. § 1983. They are (1) a First Amendment retaliation claim; (2) a claim for a violation of Equal Protection; and (3) a Fourteenth Amendment Due Process claim. As set forth below, even assuming the truth of the TAC's allegations, Plaintiff's claims still fail as a matter of law and must be dismissed.

## II. LAW AND ARGUMENT

### A. Any claims based on Plaintiff's resignation from the Administrative Judge position are time-barred.

The circumstances surrounding Ms. Goodman's complaint and Plaintiff's resignation as administrative judge are the sole basis for her procedural due process claim. (Doc. 51, Third Amended Complaint, PageID 2234, ¶ 127). They also form the core of her other claims. *Id.* at 2231; 2233, ¶ 112-113; 121-122. However, any claims based on Plaintiff's resignation as administrative judge or the circumstances leading up to it must be dismissed because they are barred by the statute of limitations.

As to the statute of limitations for § 1983 claims, courts in the Sixth Circuit "borrow one from the most analogous state cause of action," which in Ohio is the two-year limitations period

4

for personal-injury claims. *Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281, 292 (6th Cir. 2019). Events that occur outside of the two-year window preceding the commencement of a case are not actionable. *Banks v. City of Whitehall*, 344 F.3d 550, 555 (6th Cir. 2003); *Hudnell v. Dayton Mun. Court,* No. 3:22-cv-178, 2023 US Dist. LEXIS 116577 at 5 (S.D. Ohio July 6, 2023).

Here, it is undisputed that Plaintiff resigned the Administrative Judge position on November 14, 2022, and that her resignation was accepted and publicly announced on November 15, 2022.[1] She did not file her original complaint until November 26, 2024, more than two years after her resignation from the AJ position. (Doc 1, Complaint). As a matter of law, any claims based on Plaintiff's tenure as Administrative Judge—including the circumstances surrounding Ms. Goodman's complaint and Defendants' handling of Plaintiff's resignation—are time-barred and cannot serve as the basis for Plaintiff's claims.

**B.  The TAC alleges no operative facts regarding multiple Defendants who must be dismissed from this case.**

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." The Complaint must contain factual content that would allow the Court to draw a reasonable inference that *each* defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 576 (2007)).

A complaint must provide "fair notice" of the basis for *each* defendant's liability, and allegations that group defendants together without specificity are insufficient. *See Griffin v.*

---

[1]   In the pleadings Plaintiff previously filed, she repeatedly referenced the date of her resignation as administrative judge on November 14, 2022 and the filing of Ms. Goodman's harassment complaint in October of 2022.  Rather than acknowledge these undisputed dates (that she has already referenced on the record), Plaintiff has omitted them from the TAC.  Good faith and Civ. R. 11 require that she acknowledge them in response to this motion given her and her counsel's full knowledge regarding the date of her resignation as AJ.

5

*Montgomery*, No.00-3402, 2000 U.S. App. LEXIS 30782, at 7 (6th Cir. 2000) (rejecting allegations that failed to identify each defendant's personal involvement); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (holding that allegations referring to "Defendants" generally did not satisfy *Iqbal* where the complaint failed to allege each defendant's specific conduct).  Courts in this District have dismissed claims for similar reasons. See, e.g., *Simpson v. City of Columbus*, No. 2:24-cv-4307, 2025 U.S. Dist. LEXIS, at 19-20 *(S.D. Ohio April 21, 2025)* ("General allegations against a group of defendants will not suffice."); *Williams v. Taylor*, No. 1:22-cv-769, 2025 U.S. Dist. LEXIS 21926 (S.D. Ohio Feb. 6, 2025) (Court dismissed claims and agreed with Magistrate Judge that '[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal.'").  The complaint must allege specific facts showing what each defendant individually did to give rise to liability; allegations that merely suggest a "sheer possibility" of misconduct, or that rely on collective responsibility, do not suffice. *Iqbal*, 556 U.S. at 678–79.

Here, other than identifying them as Plaintiff's coworkers at p. 3, the TAC makes no specific allegations as to Justice Hawkins, and Judges Holbrook, Lynch, Serrott, Chris Brown, Held-Phipps, Aveni; and Munson. (Doc. 51; Third Amended Complaint).  Specific allegations regarding Defendants Davis and Worthington are similarly absent.

Plaintiff alleges zero facts regarding the specific conduct of these Defendants and generally alleging that "Defendants" engaged in certain conduct cannot substitute for particularized allegations.  *See Bojicic v. Dewine,* No. 24-3537, 2022 US App. LEXIS 23652 (6th Cir. 2022) (Vague, conclusory allegations that "lump the various Defendants together" fall "short of demonstrating that the Plaintiffs' injury is traceable to the Defendants.")  As to these Defendants,

6

the TAC is completely deficient under the *Iqbal/Twombly* standard and Plaintiff's claims against them must be dismissed.

### C. Plaintiff's First Amendment Retaliation claim is barred by the "public speech" doctrine in *Garcetti v. Ceballos.*

Plaintiff's First Amendment § 1983 retaliation claim fails because the alleged "speech" on which her claim is based related to her role as a judicial officer, i.e., it was made pursuant to her official duties. Therefore, it is not protected as a matter of law.

In order to state a claim for retaliation under the First Amendment, the complaint must allege: 1) that the plaintiff was engaged in a constitutionally protected activity; 2) that the defendant's adverse action caused the plaintiff an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir. 1999).

However, the United States Supreme Court in *Garcetti v. Ceballos,* 547 U.S. 410 (2006) held that when a public employee speaks pursuant to her employment responsibilities, she is not acting "as a citizen," and her speech is not entitled to First Amendment protection. The Supreme Court explained that restricting such speech "reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 421–22.

This Court has observed that this same principle applies to elected officials. In *Hartman v. Register,* Case No. 1:06-CV-33, 2007 U.S. Dist. LEXIS 21175 (S.D. Ohio March 26, 2007), an elected township trustee brought a First Amendment retaliation claim, based on complaints about the accuracy of meeting minutes. The Court dismissed the claim on the pleadings, finding that *Garcetti* applied and that speech undertaken as part of the trustee's duties was not protected. *Id*. at * 18-19, citing *Rangra v. Brown*, No. P-05-CV-075, 2006 U.S. Dist. LEXIS 85833, at *5 (W.D.

7

Tex. Nov. 7, 2006) ("For purposes of determining what constitutes protected speech under the First Amendment, there is no meaningful distinction among public employees, appointed public officials, and elected public officials."); *Hogan v. Township of Haddon*, No. 04-2036 (JBS), 2006 U.S. Dist. LEXIS 87200, at ¶ 19-24 (D.N.J. Dec. 1, 2006) (applying *Garcetti* to an elected township commissioner).

Plaintiff is an elected judge and asserts Defendants retaliated against her because "she advocated for and sought to implement reforms to the Franklin County Court of Common Pleas to address issues of equality and diversity" and that she "demanded an investigation of [Defendant] Goodman's bad faith complaint and sought accountability for her improper removal as Administrative Judge." (Doc. 51, Third Amended Complaint, PageID 2231, ¶ 112). She also alleges that Defendants retaliated against her because she "laid a substantive reform agenda aimed at increasing access to the courts, addressing structural injustices, and promoting diversity" in the operation of the court. (Doc. 51, Third Amended Complaint, PageID 2211, ¶ 1). In fact, Plaintiff's retaliation claim is based entirely on statements she made related to her envisioned reforms, an investigation of the Goodman complaint, and/or criticisms of the Court's operations. *Id.* at PageID 2231, ¶ 112-113.

In short, Plaintiff asserts Defendants retaliated against her because they disagreed with her "vision" for the Court's operations. Even if true, Plaintiff's retaliation claim is based on speech made within the scope of her official duties as a Judge of the Franklin County Common Pleas Court. *See, Garcetti,* 547 U.S. at 421 ("When public employees make statements pursuant to their official duties…the Constitution does not insulate their communications from employer discipline.") Accordingly, the Court should dismiss Plaintiff's § 1983 First Amendment retaliation claim.

8

### D. Plaintiff's Equal Protection claim fails because the TAC does not allege that Plaintiff suffered a materially adverse change in the terms and conditions of her "employment."

To state an equal protection claim, a plaintiff must allege that she suffered an adverse employment action, defined as a "materially adverse change in the terms and conditions of [the plaintiff's] work." *Foster v. Michigan*, 573 Fed. Appx 377, 394 (6th Cir. 2014). Examples of materially adverse actions include "firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indicia unique to a particular situation." *Smith v. Gallia Cty. Jail*, No. 2:20-cv-3089, 2021 U.S. Dist. LEXIS 123012, at *11–12 (S.D. Ohio July 1, 2021) (internal cites omitted).

By contrast, the Sixth Circuit has held that "*de minimis* employment actions are not materially adverse and, thus, not actionable." *See, Foster* 573 Fed. Appx at 394; *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). Negative evaluations, exclusion from meetings, or reprimands without tangible consequences are generally *de minimis* and insufficient to constitute an adverse action. *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1022 (M.D. Tenn Dec. 18, 2003); *Mocic v. Sumner Cnty. Emergency Med. Servs.*, 929 F. Supp. 2d 790, 801 (M.D. Tenn. 2013). Likewise, "[r]eassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

In *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir. 1996), the Sixth Circuit held that a reassignment within the employee's job classification, without loss of pay, benefits, rank, or significant responsibilities, did not constitute an adverse employment action. See also *Porter v. Roosa*, 259 F. Supp. 2d 638, 656-657 (S.D. Ohio 2003) (Transfer from one location to

9

another did not constitute adverse employment action nor did allegations that Plaintiff was 'ignored' by her fellow managers and prevented from re-assuming [her] full duties.")

Plaintiff remains an elected common pleas judge. She alleges no change in salary, benefits, tenure, or judicial authority. The only asserted change is her removal from—or resignation of—the Administrative Judge position. But the AJ role is unpaid, temporary, and imposes additional administrative burdens. Further, as already mentioned, the AJ assignment is governed by the Ohio Rules of Superintendence and local rules, which establish no entitlement to continued service as AJ, and instead treat the role as an internal management position rather than a separate office.

Because the loss of an internal administrative title without any change to compensation, rank, tenure, or core judicial duties is not a materially adverse action—its removal cannot support an equal protection claim. Plaintiff suffered no adverse employment action and her equal protection claim should be dismissed.

### E. Plaintiff's due process claim fails because public office is not a protected property interest.

In her third cause of action, Plaintiff alleges that she was unconstitutionally deprived of her Fourteenth Amendment right to due process when she was "coerced" to resign as AJ. (Doc. 51, PageID 128). This claim fails as a matter of law because an elected public official has no constitutionally protected property interest in holding public office. Both the Supreme Court and the Sixth Circuit have long held that public office, whether elected, appointed, or conferred through internal governmental selection procedures, is not "property" within the meaning of the Fourteenth Amendment. *Taylor v. Beckham*, 178 U.S. 548, 577 (1900) ("[P]ublic offices are mere agencies or trusts, and not property as such"); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972).

In *Taylor*, the Supreme Court held unequivocally that an elected public office "is not property within the sense of the Fourteenth Amendment." 178 U.S. at 577. The Sixth Circuit has

10

repeatedly reaffirmed this rule. Most recently, in *Fouts v. Warren City Council*, 97 F.4th 459 (6th Cir. 2024), the court again held that "longstanding federal law confirms that there is no property interest in holding public office," expressly relying on *Taylor*. *Id.* at 464. *See also Burks,* 470 F.2d at 165 ("Public office is not property within the meaning of the Fourteenth Amendment.").

This rule applies with even greater force to the *internal assignment* of roles within a governmental body. A position such as Administrative Judge, which is an internal management role filled by vote of the judges that serves at the pleasure of the Court (per its local rules), does not constitute a property interest when the underlying elected office itself does not. *See also* Ohio Sup. R. 4 (The Administrative Judge is selected by a majority vote of the judges of the division and serves at their discretion.). Neither the Rules of Superintendence nor the Local Rules create any vested right in the AJ position or prescribe any procedure that must be followed for the court to elect a different judge mid-term.

Accordingly, Plaintiff lacked any property interest in either her elected judicial office or the Administrative Judge assignment. Given the lack of a cognizable property interest, Plaintiff's Fourteenth Amendment claim fails on the pleadings, even assuming the truth of its allegations.

F.  **Court Defendants are entitled to immunity from Plaintiff's claims to the extent that they are named in their individual capacity.**

   1.  **Court Defendants Are Entitled to Qualified Immunity for the Claims Against Them in Their Individual Capacities.**

As stated by the United States Supreme Court, "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken

judgments," and protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Under *Pearson*, courts apply a two-pronged inquiry. A plaintiff must plausibly allege facts showing (1) that the defendant violated a constitutional right and (2) that the right was "clearly established" at the time of the conduct. *Pearson* 555 U.S. at 231-232. If a plaintiff fails to satisfy either requirement, qualified immunity applies and the claim must be dismissed. The Sixth Circuit consistently applies the *Pearson* framework at the pleading stage, requiring plaintiffs to allege facts which, if true, would overcome qualified immunity. See, e.g., *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("To survive a motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time.'").

Although judges are entitled to absolute judicial immunity for acts taken in their judicial capacity, they may assert qualified immunity when sued for actions taken outside the judicial role, including administrative, employment, or other nonjudicial conduct. See *Cameron v. Seitz*, 38 F.3d 264, 272–73 (6th Cir. 1994) (judge sued for nonjudicial acts may assert qualified immunity); *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997). Thus, a plaintiff suing a judge in an individual capacity must overcome both judicial immunity (if applicable) and qualified immunity. Where a complaint fails to plausibly allege the violation of a clearly established constitutional right under Pearson, dismissal is required. See *Courtright*, 839 F.3d at 518.

As described above, the TAC does not allege facts that, if true, would establish that the Court Defendants violated Plaintiff's constitutional rights. Plaintiff therefore cannot satisfy the first prong of *Pearson*.

12

Even if she could, the claims would still fail under the second prong. Plaintiff asserts two basic categories of allegations: (1) that she was "coerced" into resigning her Administrative Judge position in retaliation for internal reform efforts; and (2) that, after her resignation, Defendants mistreated her by withholding resources or otherwise making the operation of her chambers more difficult.

No Supreme Court, Sixth Circuit, or Southern District of Ohio authority clearly establishes that a judge's constitutional rights are violated when colleagues suggest resignation from the Administrative Judge role in lieu of a vote to remove her in accordance with state and local rules. Likewise, there is no controlling law holding that a judge's constitutional rights are violated because her chambers did not receive the quantity of resources, training, or technology that she believes other judges enjoyed. Decisions regarding distribution of technology, training, personnel, and docketing are integral to court administration and fall squarely within the court's discretion. Despite extensive research during more than a year of pleading-related motion practice, the undersigned has located no analogous controlling authority that would have put any Defendant on notice that their conduct violated clearly established federal law. There is simply no precedent suggesting that the conduct alleged here implicates a clearly established constitutional right.

Accordingly, Defendants are entitled to qualified immunity because the TAC fails to allege facts sufficient to overcome either prong of the Pearson test.

### 2. Absolute Judicial Immunity.

Under the doctrine of absolute judicial immunity, judges are immune from suit in their individual capacities for money damages arising from judicial acts. *Ward v. City of Norwalk*, 640 F. App'x 462, 466 (6th Cir. 2016); *Mobley v. O'Donnell*, 2020-Ohio-469, ¶ 20 (10th Dist.). Judicial immunity exists because a judge "should be free to act upon his or her convictions" without fear

13

of personal liability. *Figueroa v. Blackburn*, 208 F.3d 435, 441 (3rd Cir. 2000). Immunity is lost only when the judge's acts (1) were nonjudicial in nature, or (2) were taken "in the complete absence of all jurisdiction." *Ward*, 640 F. App'x at 466.

Given the generalized nature of the allegations and the lack of specificity regarding which Defendant Judge allegedly did what, it is difficult to determine at this stage if Plaintiff's claims are based on actions the judges took within their jurisdiction and in the performance of judicial functions, which would entitle them to judicial immunity. To the extent Plaintiff seeks recovery for judicial actions, judicial immunity applies.

### G. Defendant Court Administrators lacked authority to impose any adverse employment action or provide any process regarding Plaintiff's AJ role.

Plaintiff's claims against the Defendant Court Administrators also fail because the TAC does not allege that any administrator had the authority to take the actions that form the basis of Plaintiff's alleged constitutional injury (because they did not). To state a claim under § 1983, a plaintiff must plead that each defendant, *through that defendant's own actions*, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Liability cannot rest on generalized allegations, on an employer's status, or on conduct the defendant had no legal authority to undertake. Id. at 676–77. Because the Court Administrators had neither the authority to impose an adverse employment action on an elected judge nor any power to grant or withhold procedures concerning the selection or removal of Plaintiff as AJ, the TAC fails to state a plausible claim for relief.

As already set forth and pursuant to the Ohio Rules of Superintendence and the Court's local rules, only the judges themselves, not administrative staff, possess authority over judicial assignments, internal court governance, and/or the selection and removal of the AJ. Court administrators are employees of the court and serve in an administrative capacity. They possess

14

no statutory, constitutional, or supervisory authority over elected judges and have no power to impose any adverse employment action. The complaint does not allege otherwise. Nor could it, as the Court Administrators are not judges, cannot vote on judicial assignments, and lack any supervisory authority over judges. As a result, the TAC fails to plausibly allege that any administrator could have taken an "adverse employment action," or that they personally executed any constitutionally relevant deprivation.

Federal courts dismiss § 1983 claims where the defendant lacks the power to undertake the adverse action alleged, because a constitutional violation requires personal involvement and the actual authority to effect the deprivation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A defendant who lacks authority to take the challenged action, or whose job responsibilities do not encompass such power, cannot be liable under § 1983. *See, Shehee*, 199 F.3d at 301 (no liability where defendants lacked power to terminate plaintiff).

Likewise, with respect to Plaintiff's Due Process claim, the Court Administrators had no legal authority to create, modify, or implement procedures for appointing or removing an AJ. Those procedures are dictated exclusively by the Ohio Rules of Superintendence and the internal rules of the court. See Sup.R. 4(A)–(B); Franklin C.P. Loc.R. 5.3. Nothing in these rules vests any procedural authority in administrative staff.

As noted, the Sixth Circuit requires that a § 1983 procedural-due-process claim identify a defendant who is *actually responsible* for denying process. Thus, where the authority to grant or withhold a hearing lies with someone else, allegations against a defendant without such authority do not state a claim. The TAC fails to allege the requisite personal involvement by the administrative defendants. Administrators neither controlled nor influenced the vote of the judges; they cannot be liable for the court's internal governance decisions.

Plaintiff attempts to sidestep the administrators' lack of authority over her by asserting that they participated in "coercing" her resignation from the AJ position with the Defendant Judges. These allegations are precisely the type of conclusory, label-driven assertions that *Iqbal* and *Twombly* require courts to disregard. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Statements, suggestions, or communications by staff do not constitute state action capable of depriving a judge of constitutional rights, because they carry no legal force and impose no legally cognizable consequences. Because administrators could not remove Plaintiff as AJ, could not bind the judges, and could not effectuate any change to her position, no plausible causal connection exists between their conduct and any alleged deprivation.

At the end, the TAC rests on the flawed premise that the Court Administrative Defendants can discipline, demote, or otherwise alter the status of an elected judge to the point of qualifying as a cognizable adverse employment action. They cannot. Without authority to impose an adverse employment action, or to provide or deny process concerning the AJ role, the Court Administrators cannot be liable under § 1983 as a matter of law. The TAC therefore fails to state a claim for relief as to Defendants Goodman, Bedsole, Davis and Worthington, and all claims against them should be dismissed under Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth herein, the Court Defendants respectfully request that this Court dismiss the claims set forth against them with prejudice.

Respectfully submitted,

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Scott O. Sheets (0076837)
Charles Schneider (0005821)
ISAAC WILES BURKHOLDER & MILLER, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 221-2121 / F: (614) 365-9516
aglasgow@isaacwiles.com
ssheets@isaacwiles.com
cschneider@isaacwiles.com
*Attorneys for Court Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 15, 2025, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)