**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| HON. KIMBERLY COCROFT, | Case No. 2:24-cv-04208 |
| Plaintiff, | Judge Michael J. Newman |
| v. | Magistrate Judge Caroline H. Gentry |
| FRANKLIN COUNTY, *et al.* | **Plaintiff's Combined Response to** |
| Defendants. | **Defendants' Motions to Dismiss** |

## I. Introduction

Plaintiff, the Honorable Kimberly Cocroft, has filed a Third Amended Complaint ("TAC"), which describes in detail a pattern of conduct by the Defendants to retaliate against her for her efforts to bring needed and publicly demanded reforms to the Franklin County Court of Common Pleas to address racial disparities adversely impacting the Black community, as well as to clear her name after they wrongfully forced her removal as Administrative Judge. As alleged in the TAC, the Defendant judges, Cocroft's colleagues on the Franklin County Common Pleas bench, orchestrated the filing of a sham complaint against her by Defendant court administrator Jennifer Goodman, then used that complaint as a pretext to force Cocroft's removal as Administrative Judge. Cocroft insisted that her name be cleared in response to Goodman's sham complaint and sought to have her colleagues and Defendant prosecutors examine Goodman's complaint under the Court's established procedures for doing so, and take steps to ensure that similar abuses of the complaint process would not be used against other judges or staff, including pursuant to the Court's own Anti-Harassment policy. However, rather than address these concerns in good faith, Defendants responded with additional hostility and a pattern of retaliatory acts designed to isolate Judge Cocroft and her minority, female staff, diminish her effectiveness as a sitting judge, and punish her for challenging

the wrongful treatment she had received.

The allegations in the Third Amended Complaint, which must be accepted as true with all reasonable inferences construed in Judge Cocroft's favor at this stage of the litigation, describe an extremely concerning pattern of conduct by which Defendants targeted Cocroft precisely because she was a Black woman in a rare position and with a rare inclination to targeting systemic injustice against Black people and other marginalized classes within the Franklin County justice system. Defendants' motions to dismiss are based on arguments that misrepresent Judge Cocroft's allegations and the law applying to them, and which minimize the seriousness of the misconduct alleged. Primarily, Defendants seek to shoehorn the extraordinary set of facts at issue in this case into a traditional employer/employee context, asking this Court to apply precedents and concepts that have never been and cannot reasonably be applied to conduct comparable to that alleged here, and inviting this Court to conclude that Cocroft's allegations reflect nothing more than "the loss of an internal administrative title." These arguments turn Rule 12's standard upside down by requiring this Court to construe the pleadings and *un*reasonable inferences therefrom in *Defendants'* favor.

For the reasons set forth fully herein, the Third Amended Complaint amply supports Judge Cocroft's claims under 42 U.S.C. 1983 alleging violations of her First Amendment, equal protection, and due process rights. Defendants' motions should accordingly be denied and this case should proceed to discovery.

## II. Law & Argument

### A.      Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl.*

2

*Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting Twombly, 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Twombly*).

## B.    Judge Cocroft's claims are not time-barred.

The Court Defendants argue that "any claims based on Plaintiff's resignation as administrative judge or the circumstances leading up to it must be dismissed because they are barred by the statute of limitations." MTD, p. 4. Defendants base this argument on their inapposite contention that "[t]he circumstances surrounding Ms. Goodman's complaint and Plaintiff's resignation as administrative judge are the sole basis for her procedural due process claim" and "form the core of her other claims." *Id.*

While the filing of the sham complaint and Defendants' efforts to force Judge Cocroft's

3

November 12, 2022 resignation based on that complaint are certainly a key part of the factual context for her claims, the alleged violations at issue involve conduct that took place well after her resignation, and well within the two years prior to Cocroft's filing of this lawsuit on November 26, 2024. This includes Defendants' continued refusal to avail Cocroft of well-established procedures by which the merits of and circumstances behind Goodman's wrongful allegations against her should have been scrutinized (TAC ¶¶ 54–67), and the ensuing retaliatory acts allegedly undertaken by Defendants against Cocroft and her staff, including (a) denying them training and other resources customarily provided to judges and their staff members; (b) excluding Cocroft from meetings that she had the right to attend, including committee meetings; (c) modifying the Court's anti-harassment policy after receiving actual notice of Cocroft's claims to remove all provisions upon which her complaint was based; (d) denying Cocroft legal representation in a case where she was sued in her official capacity; (e) destroying internal correspondence between Cocroft, her staff, and court administrators; (f) informing crime victims that the Prosecutor's office was working on a plan to reassign Cocroft's entire criminal docket; and (g) subjecting Cocroft and her staff to an unprecedented degree of administrative scrutiny. TAC ¶¶ 68–94. *See also*

Defendants cannot begin to establish that these alleged acts took place outside of the two-year limitations period for Judge Cocroft's claims, and their assertion to the contrary must be rejected, especially at the pleadings stage of these proceedings. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), citing *Fielder v. UAL*, 218 F.3d 973, 983 (9th Cir, 2000) ("Every incident of discrimination before the limitations period need not be of the same type, so long as there is a corresponding type of discrimination within the period.").

## C.    Judge Cocroft has sufficiently pleaded her claims against all Defendants.

In pleading claims under 42 U.S.C. § 1983, "a plaintiff must show (1) they were deprived of a right secured by the U.S. Constitution and (2) the deprivation was caused by a state actor." *Cochrane*

*v. Whitmer*, E.D.Mich. No. 24-10648, 2025 U.S. Dist. LEXIS 233865, at *5-6 (Dec. 1, 2025) (quoting *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015)). However, in this matter, Judge Cocroft has not merely alleged that an assortment of individuals has separately acted to deprive her of constitutional rights, but that they did so as part of a specific and organized plan requiring all to acquiesce regardless of their respective individual involvement, whether they acted individually or not. To plead a § 1983 conspiracy, a plaintiff must allege that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id.* at *6. The specific facts in such a claim are those "showing a conspiracy to deprive [her] of [her] civil rights with racial or other class-based discriminatory animus." *Id.* (quoting *Stansberry v. Theater*, No. 24-3543, 2024 U.S. App. LEXIS 31357, 2024 WL 5135825, at *2 (6th Cir. Dec. 10, 2024); *See also Cox v. Crowe*, E.D.Ky. No. 09-5-JBC, 2009 U.S. Dist. LEXIS 50922, at *7-8 (June 3, 2009).

While each individual Defendant has taken specific relevant actions that Judge Cocroft cannot know at present, the allegations in the TAC support a conclusion that all of the Defendants, at a minimum, agreed to or acquiesced in the execution of a plan to (1) accept Goodman's sham complaint as a basis for forcing Cocroft's resignation as administrative judge, and then (2) to cover-up the entire episode as if Goodman's complaint never existed, denying Cocroft recourse to established procedures by which the merits of Goodman's complaint should have been adjudicated (even if only through the Court's Anti-Harassment policy pursuant to Cocroft's own complaint about the wrongful nature of Goodman's complaint and Defendants' mishandling of the matter), which would have cleared Cocroft's good name. *See, e.g.*, TAC ¶¶ 54–67. Judge Cocroft has accordingly alleged a set of facts which, if accepted as true and construed in the light most favorable to her, would establish liability as to all Defendants on all claims, as explained more fully below. *Jackson v. Professional Radiology Inc.*, 864 F.3d 463, 467 (6th Cir.2017).

1.   **Judge Cocroft's First Amendment retaliation claim is sufficiently pleaded and is not barred by *Garcetti*, which does not control in this case.**

In arguing for dismissal of Judge Cocroft's First Amendment claim, Defendants rely entirely on *Garcetti v. Ceballos* for the unexamined proposition that it deprives public employees of First Amendment protections if the employee "speaks pursuant to her employment responsibilities." Doc #: 53, PAGEID #: 2286–87, citing *Garcetti v. Ceballos*, 547 U.S. 410, 421-422, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

Here Defendants overlook that "the majority of courts … have found *Garcetti* inapplicable to elected officials," and the Sixth Circuit has never held to the contrary. *Werkheiser v. Pocono Twp.*, 210 F. Supp. 3d 633, 638 (M.D.Pa.2016). As the Fifth Circuit noted in *Rangra v. Brown*, 566 F.3d 515, 526 (5th Cir.2009), in overruling the district court opinion cited by Defendants here (Doc #: 53, PAGEID #: 2286, citing *Rangra v. Brown*, No. P-05-CV-075, 2006 U.S. Dist. LEXIS 85833, at *5 (W.D. Tex., Nov. 7, 2006)), the "categorical divisions of public and private speech" set forth in the "*Pickering – Garcetti*" line of cases for sorting the free speech rights of employees elected to state office" "fail to illuminate the state's interest in constraining speech by an elected public official, political speech at the core of the First Amendment, and its necessity." Thus, because "an elected official's relationship with the state differs from that of an ordinary state employee," and in light of the Supreme Court's affirmation that "[t]he role that elected officials play in our society makes all the more imperative that they be allowed freely to express themselves on matters of current public importance," the Court held that strict scrutiny should be applied to alleged incursions on elected officials' speech. *Id.* at 524–527, quoting, *inter alia*, *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75, 122 S. Ct. 2528, 153 L. Ed. 2d 694 (2002).

The majority of Circuit courts to decide on this issue are in accord (*see Werkheiser v. Pocono Township*, 780 F.3d 172, 180 (3d Cir. 2015); *Jenevein v. Willing*, 493 F.3d 551, 558-561 (5th Cir.2007); *Boquist v. Courtney*, 32 F.4th 764 (9th Cir.2022); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*, 235

F.3d 1243, 1247 (10th Cir. 2000)); as well as courts within this Circuit, including the Eastern District of Michigan, whose salient analysis in *Mays v. City of Flint*, E.D.Mich. No. 23-12705, 2024 U.S. Dist. LEXIS 196451, at *10-13 (Oct. 29, 2024) is on point here. The *Mays* court recognized that "[t]he speech of a legislator does not neatly fit within the *Pickering* dichotomy," because "it is neither the speech of a private citizen nor does it fall within the category of 'government speech,' where public employees speak as agents of public employers, and as such, the employers may discipline the employees for saying something unacceptable." *Id.*, discussing *Pickering v. Bd. of Edn.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Thus, the court held that where an elected official's speech relates to matters of "public policy," it is constitutionally protected pursuant to The Supreme Court's holding in *Bond v. Floyd. Id.* citing *Bond*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966) ("Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.").

Here, both in seeking to implement her reform agenda and in seeking to have Goodman's complaint against her adjudicated, Judge Cocroft was undoubtedly engaged in First Amendment protected speech and conduct pertaining to matters of public concern. Additionally, Cocroft has alleged a causal connection between this conduct and Defendants' pattern of retaliation—including Defendants' continued cover-up of Goodman's complaint and their sustained refusal to properly adjudicate it, or the circumstances behind its filing, pursuant to the court's established procedures— that would undoubtedly chill a person of ordinary firmness from engaging in First-Amendment protected conduct. Thus, she has sufficiently pleaded all of the elements of a First Amendment retaliation claim under the Sixth Circuit's well-established precedents. *See Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir.2022) (plaintiffs asserting 1A retaliation claims "must demonstrate three elements: (1) that he engaged in constitutionally protected speech, (2) that he suffered an adverse action likely

to chill a person of ordinary firmness from continuing to engage in protected speech, and (3) that the protected speech was a substantial or motivating factor in the decision to take the adverse action") (internal quotation marks omitted); *See also Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (noting that question of whether one-day denial of inmate's exercise opportunities was de minimis was "factual in nature")); *Scott v. Flowers*, 910 F.2d 201, 211 (5th Cir.1990) ("In sum, we conclude that in airing his views on the administration of the Fort Bend County justice system, Scott was speaking not as an employee about matters of merely private interest, but rather as an informed citizen regarding a matter of great public concern.").

Finally, it cannot be decided, and certainly not at the pleadings stage of this litigation, that Defendants' allegedly retaliatory conduct was "(1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party v. White*, 536 U.S. 765, 768, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) *See also Jenevein*, 493 F.3d 551, 560 ("To leave judges speechless, throttled for publically addressing abuse of the judicial process by practicing lawyers, ill serves the laudable goal of promoting judicial efficiency and impartiality.").

### 2. Judge Cocroft's has sufficiently pleaded her Equal Protection claim.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Foster v. Michigan*, 573 F.Appx 377, 391 (6th Cir.2014) (quoting *Rondigo, L.L.C. v Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citations omitted)). While traditional concepts pertaining to the relationship between a public employer and employee are largely inapplicable here, the parties seem to be in agreement that Cocroft may establish an equal protection violation if she can show that Defendants took adverse action against her with discriminatory intent and purpose. *See* Doc #: 53, PAGEID #: 2288, citing

*Foster*. More specifically, plaintiff must plead "that the government treated [her] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Nunnally v. Fisk*, W.D.Mich. No. 1:24-cv-224, 2024 U.S. Dist. LEXIS 57049, at *41 (Mar. 29, 2024), citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Nordlinger v. Hahn*, 505 U.S. 1, 10-11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). Additionally, it is indisputable that, "[a]s a black woman, [Plaintiff] is a member of a protected class for both race and gender." *Id.*

Defendants' sole basis for dismissal of Judge Cocroft's Equal Protection claim is their contention that the alleged adverse actions that Defendants took against her are "*de minimis*" in nature and therefore not actionable. Doc #: 53, PAGEID #: 2288. Defendants rely on cases arising from a traditional employer/employee context for the proposition that "[n]egative evaluations, exclusion from meetings, or reprimands without tangible consequences," or "[r]eassignments without changes in salary, benefits, title, or work hours," are "*generally* de minimis" and "*usually* do not constitute adverse employment actions." *Id.*, citing, *inter alia*, *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1022 (M.D. Tenn Dec. 18, 2003) and quoting *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). Based on these authorities, Defendants urge that Cocroft has not pleaded an actionable Equal Protection violation because "she alleges no change in salary, benefits, tenure, or judicial authority," and "[t]he only asserted change is her removal from—or resignation of—the Administrative Judge position," which, according to Defendants, is merely "the loss of an internal administrative title." Doc #: 53, PAGEID #: 2289.

Defendants' argument here misrepresents both the adverse actions alleged, which goes well beyond her mere removal from the Administrative Judge position, as well as the seriousness of these actions taken against an elected Common Pleas judge by her colleagues on the bench and in the

9

County's prosecutor's office. Again, and wholly apart from the orchestration of Goodman's sham complaint that precipitated and served as a public pretext Cocroft's removal from the Administrative Judge position, Cocroft has further alleged that all Defendants have participated in a continued cover-up of Goodman's complaint, and a refusal to afford her recourse to the Court's policies for adjudicating the merits of Goodman's accusations against her, and the circumstances by which those accusations arose, including the Court's Anti-Harassment policy. *See*, TAC ¶¶ 54–67. Cocroft has also alleged that as she persisted in seeking accountability over this gravely serious matter, Defendants subjected her to an escalating pattern of retaliation, including (a) the denial of training and other resources customarily provided to judges and their staff members; (b) excluding Cocroft from meetings that she had the right to attend, including committee meetings; (c) modifying the Court's anti-harassment policy after receiving actual notice of Cocroft's claims to remove all provisions upon which her complaint was based; (d) denying Cocroft legal representation in a case where she was sued in her official capacity; (e) destroying internal correspondence between Cocroft, her staff, and court administrators; (f) informing crime victims that the Prosecutor's office was working on a plan to reassign Cocroft's entire criminal docket; and (g) subjecting Cocroft and her staff to an unprecedented degree of administrative scrutiny. TAC ¶¶ 68–94.

Cocroft has also alleged that these actions all took place after she was admonished by certain of the Defendants that she needed to be "more like" certain Black and female public figures in carrying out her responsibilities as Administrative Judge. TAC ¶¶ 29–31. Additionally, Cocroft has alleged that the reform agenda she sought to implement as Administrative Judge was specifically targeted at addressing disparities in the Franklin County justice system that disproportionately impact the Black community. TAC ¶¶ 16–23.

Even if the traditional employer/employee analysis were applicable here, it strains credulity to characterize the adverse action alleged here—taken by state actors against an elected judge, with

10

intent to diminish the judge's reputation and influence in her position, and in particular to diminish her ability to implement or influence reforms specifically targeted at eliminating racial disparities affecting the Franklin County justice system—as *de minimis*. Judge Cocroft respectfully urges this Court to reject this contention, and respectfully submits that she has sufficiently pleaded the elements of an Equal Protection claim. *See Brazell-Hill v. Parsons*, S.D.Ohio No. 2:17-cv-912, 2020 U.S. Dist. LEXIS 147479, at *28 (Aug. 17, 2020), quoting *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997)) ("Race discrimination is never a trifle.").

### 3.   Judge Cocroft has sufficiently pleaded her Procedural Due Process claims.

Defendants dispute the existence of a property right in a "public office" or elected position, but Judge Cocroft has not asserted that she has a property right in being an elected judge, or in her previously held position as Administrative Judge. Rather, pertinent to this claim, she has alleged that Defendants have deprived her of access to the Court's policies for adjudicating the merits of Goodman's accusations against her, and the circumstances by which those accusations arose, including the Court's Anti-Harassment policy. TAC ¶¶ 54–67.

The Sixth Circuit has explictly held that "an employer's custom and practice can form the basis for a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 467-68 (6th Cir. 2009) (citing *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989)). Such "property interests, of course, are not created by the Constitution," but rather by "existing rules or understandings that stem from an independent source such as state law," which "secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). By definition, Defendants have no discretion to falsify charges against Judge Cocroft, use those false charges to force her resignation, then prevent any further investigation or hearing on

11

these charges, and withholding and allowing for the destruction of putative evidence as to same. Judge Cocroft has pleaded that a process existed to address and remedy such circumstances, which was administered by Davis as Director of HR, in consultation with Defendants Hummer and Dean as counsel for the Court, and overseen by the Defendant Judges.

Whether or not Judge Cocroft had a constitutionally protected property interest by recourse to basic procedures ensuring scrutiny of the serious allegations against her, and the circumstances by which those allegations arose, these allegations certainly implicate her protected liberty interest in her good name and reputation. Under such circumstances, the Sixth Circuit has expressly recognized a constitutionally protected entitlement to a "name-clearing hearing," which "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Gunasekera v. Irwin*, 551 F.3d 461, 469 (6th Cir.2009), citing *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989), *Feterle v. Chowdhury*, 148 F. App'x 524, 531-32 (6th Cir. 2005).

To establish entitlement to a name clearing hearing Plaintiff must prove five elements:

(1) "the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment,"

(2) "a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance,"

(3) "the stigmatizing statements or charges must be made public,"

(4) "the plaintiff must claim that the charges made against him were false," and

(5) "[l]astly, the public dissemination must have been voluntary."

*Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000), citing *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997)).

As to the first element of this test, it suffices for Plaintiff to show that "some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation." *Quinn v. Shirey*, 293 F.3d 315, 319-320 (6th Cir.2002), citing *Paul v. Davis*, 424

12

U.S. 693, 711, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). Cocroft's forced loss of "status" as Administrative Judge" meets this element.

As to the remaining elements of this test, Judge Cocroft must show that she has "been stigmatized by the voluntary, public dissemination of false information" in connection with her loss of status. *Quinn* at 320, citing *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). Here, she has specifically alleged that Defendants' have "disseminat[ed] Goodman's unfounded complaint to the public" (TAC ¶ 91), that this complaint was fabricated as a pretext for her removal as administrative judge, and that the complaint falsely accused her of "harassment" against a subordinate employee, intentionally framing Judge Cocroft for having engaged in "serious misconduct." (TAC ¶¶ 45–47). *See Quinn* at 320 quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972) ("[W]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

Because Judge Cocroft has pleaded all the elements establishing her entitlement to a name-clearing hearing, and because the allegations of the TAC show that she has "sufficiently apprise[d] Defendants of [her] desire for a hearing to clear [her] name," Defendants' request for dismissal of her due process claim must be denied. *Moore v. City of Cleveland,* 812 Fed. Appx. 299, 303. (6th Cir. 2020); TAC ¶¶ 66–67, 94–95.

### 4. The Court Defendants are not entitled to dismissal based on absolute or qualified immunity.

The Court Defendants essentially concede that they cannot make a case for absolute immunity, as Judge Cocroft's claims are decidedly not "based on actions the judges took within their jurisdiction and in the performance of judicial functions." Doc #: 53, PAGEID #: 2293.

These Defendants do, however, assert their entitlement to qualified immunity on all claims alleged against them, arguing that (1) no controlling "authority clearly establishes that a judge's

constitutional rights are violated when colleagues suggest resignation [ ] in lieu of a vote to remove her in accord with state and local rules," and (2) "there is no controlling law holding that a judge's constitutional rights are violated because her chambers did not receive the quantity of resources, training, or technology that she believes other judges enjoyed." Doc #: 53, PAGEID #: 2292.

These contentions not only depend on a resolving disputed allegations in Defendants' favor, they misrepresent and omit the bulk and substance of Cocroft's allegations regarding a deliberate cover-up of Goodman's sham complaint that was calculated precisely to damage Cocroft's influence as a judge, and the ensuing pattern of retaliation that followed. Additionally, they show why the Sixth Circuit has consistently held that the Sixth Circuit has consistently held that qualified immunity is generally better resolved at the summary judgment stage rather than at the pleadings stage under Rule 12. *See e.g. Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir.2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."), citing, *inter alia*, *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery* (emphasis in original)), *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir.2025) ("[E]ven though we retain jurisdiction over this type of appeal, this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief."), quoting *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020).

While courts are "not to define clearly established law at a high level of generality" in assessing qualified immunity" (*Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)), "[t]his is not to say that an official action is protected by qualified immunity unless the

very action in question has previously been held unlawful," but rather, only, "that in light of pre-existing law the unlawfulness must be apparent." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir.2010), quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999), *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). Put another way, "[a] rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *District of Columbia v. Wesby*, 583 U.S. 48, 64, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) (internal quotation marks and citation omitted).

It is a bedrock principle of law in this nation and Circuit that the government may not take adverse action against citizens based on their political activity. *Hieber v. Oakland Cty.*, 136 F.4th 308, 325 (6th Cir.2025). *Sowards v. Loudon Cty.*, 203 F.3d 426, 440 (6th Cir.2000) ("Because the law was so clearly established that he could not reasonably take political considerations into account when terminating [plaintiff], [defendant] is not entitled to qualified immunity in his individual capacity for [plaintiff's] political association claim."). While no further instruction from the courts is necessary to make it apparent that state actors may not take official action to orchestration of a sham complaint, and conceal the truth about that complaint, in order to diminish a citizen's political influence, the Sixth Circuit has in fact specifically held that public officials "are on notice that they specifically cannot make 'allegedly false' accusations … to retaliate against protected speech." *Blackwell v. Chisholm*, 6th Cir. No. 24-1947 / 1951, 2025 U.S. App. LEXIS 29259, at *25-26 (Nov. 5, 2025). *See also Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir.2010) (denying qualified immunity where mayor allegedly delayed permit renewal in retaliation for protected political activity, noting that "retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment"); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir.1997) ("Not only is this right clearly established, but [defendant Judge] Harrington knew or should have known that she may have

been violating [plaintiff's] First Amendment rights when she accused him of stalking to reporters from the Nashville Banner and WKRN Channel 2 News.").

Likewise as to Judge Cocroft's Equal Protection claims, it is clearly established that state officials may not "treat [citizens] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis" as alleged in the TAC. *Nunnally v. Fisk*, W.D.Mich. No. 1:24-cv-224, 2024 U.S. Dist. LEXIS 57049, at *41 (Mar. 29, 2024), citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). And Judge Cocroft's right to a name-clearing hearing is equally clear under the Sixth Circuit's clearly established precedents. *See* Section II.C.3, *supra*, citing, *inter alia*, *Quinn v. Shirey*, 293 F.3d 315, 319-320 (6th Cir.2002).

**5.    Defendants Dean, Hummer, and Franklin County are likewise not entitled to dismissal on immunity grounds.**

While the analyses set forth above apply likewise to the arguments for dismissal presented by Defendants Hummer, Dean, and Franklin County, a few points should be clarified in response to their separately filed motion to dismiss (Doc #: 52).

First, Hummer and Dean wrongly contend that the only allegations in the Third Amended Complaint that pertain to them are ¶¶ 75–76, where, according to these Defendants, "Plaintiff alleges that Hummer and Dean told Plaintiff that the Franklin County Prosecutor's Office would not represent Plaintiff in an unnamed civil suit against Plaintiff in her official capacity." Doc #: 52, PAGEID #: 2239.

To the contrary, Judge Cocroft has alleged that *all* of the individual Defendants, including Hummer and Dean, participated in the alleged cover-up of Goodman's sham complaint, the wrongful and unconstitutional nature of which being as apparent to Dean and Hummer as it was to the Court Defendants. *See, e.g.*, TAC ¶¶ 54–55, 60, 64–67, 109–133.

16

There is no qualified immunity for such actions, as set forth in the preceding section. Nor is there absolute immunity, which only applies to "the initiation and pursuit of a criminal prosecution" (*Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)), or acts undertaken in the prosecutor's "role as an advocate ultimately associated with the judicial phase of the criminal process." *Coxon v. City of Mentor*, N.D. Ohio No. 1:06CV2910, 2008 U.S. Dist. LEXIS 140661, at *6 (Nov. 24, 2008).

Likewise, no prosecutorial discretion applies to the allegations at ¶¶ 75–76 regarding Hummer's and Dean's alleged failure to ensure that Judge Cocroft was represented in a civil suit arising from her judicial duties, regardless of whether these allegations are viewed as independently establishing constitutional liability apart from the broader pattern of retaliation alleged. To the contrary, R.C. 309.09 and R.C. 305.14 mandate that county prosecutor's offices ensure a defense to county judges under such circumstances, and the TAC is reasonably construed as alleging that it was Hummer's and Dean's specific duty within the Franklin County Prosecutor's office to ensure Cocroft's defense in the case at issue. Hummer's and Dean's reference to court documents attached as exhibits to their motion say nothing about the extent to which Judge Cocroft had to go out of her way, contrary to R.C. 309.09 and R.C. 305.14, to ensure the results reflected in these documents.

Finally, in a § 1983 case, a county or other political subdivision may be subject to liability if the harm was caused in the implementation of "official municipal policy." *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) (finding city may be liable based on the acts of its city council members); *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Here, the allegations in the TAC support a finding that the individual Defendants' actions as high-level officers of the Franklin County court system rose to an official policy. Therefore, the County cannot, at this stage of the litigation, be excused from liability on the claims alleged.

17

### III. Conclusion

The Third Amended Complaint describes a pattern of unconstitutional conduct with severe implications on the administration of justice in Franklin County and beyond. These allegations provide ample notice to Defendants as to the basis for Judge Cocroft's claims against them, and if proven, support liability as to all of the claims alleged against all of the Defendants. Whether there is any lawful basis for the events surrounding Defendant Goodman's complaint, its alleged cover-up, the events that followed, or for any individual Defendant's relationship to these events, are not questions that can be resolved on the pleadings. For all of the reasons stated herein, this Court should deny Defendants' motions to dismiss and allow Judge Cocroft to proceed with discovery on the claims set forth in the Third Amended Complaint.

Respectfully submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
     *peter@pattakoslaw.com*
Gregory Gipson (0104229)
     *ggipson@pattakoslaw.com*
Zoran Balac (0104229)
     *zbalac@pattakoslaw.com*

THE PATTAKOS LAW FIRM LLC
101 Ghent Road, Fairlawn, Ohio 44333
P: 330.836.8533 | F: 330.836.8536

*Attorneys for the Honorable Kimberly Cocroft*

### Certificate of Service

I hereby certify that on February 2, 2026, the foregoing document was filed using the Court's electronic-filing system, which will serve the document upon counsel of record for all parties.

*/s/ Peter Pattakos*
*Attorney for the Honorable Kimberly Cocroft*

18