**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Kimberly Cocroft,                                    :
                                                     :
          Plaintiff,                          :          Case No. 2:24-cv-4208
                                                     :
    vs.                                              :          Judge Newman
                                                     :
Franklin County, Ohio, et. al.,                      :          Magistrate Judge Gentry
                                                     :
          Defendants.                         :

**DEFENDANTS RICHARD FRYE, COLLEEN O'DONNELL, KIMBERLY BROWN, STEPHEN MCINTOSH, MICHAEL HOLBROOK, JULIE LYNCH, MARK SERROTT, JEFFREY BROWN, CHRISTOPHER BROWN, DAVID YOUNG, KAREN HELD-PHIPPS, DANIEL HAWKINS, CARL AVENI, SHERYL MUNSON, JENNIFER GOODMAN, SUSAN BEDSOLE, CAMEO DAVIS, AND STACY WORTHINGTON'S REPLY TO RESPONSE TO MOTION TO DISMISS**

Defendants Richard A. Frye, Colleen O'Donnell, Kimberly J. Brown, Stephen L. McIntosh, Michael J. Holbrook, Julie M. Lynch, Mark Serrott, Jeffrey M. Brown, Christopher M. Brown, David Young, Karen Held Phipps, Daniel R. Hawkins, Carl A. Aveni, Sheryl K. Munson, Jennifer Goodman, Susan E. Bedsole, Cameo Davis and Stacy Worthington ("Court Defendants") offer the following Reply to Plaintiff's Response to the Court Defendants' Motion to Dismiss.

I.    **The statute of limitations bars any claims that accrued prior to November 12, 2022, when Plaintiff resigned the AJ position.**

Plaintiff's response sets forth the date of her resignation from the AJ position, November 12, 2022. Further, Plaintiff asserts that the alleged violations of her rights for which she seeks redress in this case "took place well after her resignation, and well within the two years prior to Cocroft's filing of this lawsuit on November 26, 2024." (Doc. 58, PAGEID 2306). Despite this pronouncement and her laundry list of alleged grievances, Plaintiff never specifies when the conduct over which she is suing actually occurred or, as explained more below, which of the

1

Defendants engaged in the alleged conduct. At any rate, as Plaintiff seems to concede, any claims that accrued before November 22, 2022 and/or that are based on conduct that occurred before this date are time-barred.

## II. Plaintiff concedes that she has no factual basis for her claims against the majority of Defendants.

After multiple amendments and despite maintaining claims against Defendants Justice Hawkins, Judges Holbrook, Lynch, Serrott, Chris Brown, Held-Phipps, Aveni, Munson, and Young, and Defendants Davis and Worthington for over a year, it is now clear that Plaintiff's claims against these Defendants lack a well-grounded factual basis and evidentiary support. Instead, Plaintiff ostensibly concedes in her Response that the sole basis for her claims against these Defendants is that they worked at the Common Pleas Court at the time of the events alleged in Plaintiff's Third Amended Complaint ("TAC").[1]

Plaintiff cannot dispute that her Third Amended Complaint makes no specific factual allegations against these 11 defendants. In fact, in her response, Plaintiff admits that she has asserted claims against them "*regardless of their respective individual involvement*, whether they acted individually or not." (Doc. 58; PAGEID 2307) (emphasis added). She further admits that she sued them despite lacking knowledge "at present" that they did anything wrong. *Id.*  Instead, Plaintiff has admittedly sued 11 of her fellow judges and co-workers because her claims "require[ed] all to acquiesce" in the conduct she alleges. *Id.* Thus, Plaintiff concedes she has lumped these Defendants together and failed to allege what each did to violate her constitutional rights.

---

[1]    Counsel inadvertently omitted Judge Young from the list of Defendants on p. 6 of its Motion to Dismiss. (Doc. 53, PAGEID 2285). However, the motion was filed on behalf of all Defendants. Moreover, the Third Amended Complaint contains no specific factual allegations as to Judge Young. Counsel for Defendants also addressed the matter to Plaintiff's counsel via letter before Plaintiff filed her Response. Plaintiff's response does not mention Judge Young.

Plaintiff also omits any real discussion of relevant case law that has rejected arguments and pleadings similar to those Plaintiff presents to this Court, including the United States Supreme Court's decisions in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution") quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 576 (2007); *Bojicic v. DeWine,* No. 24-3537, 2022 U.S. App. LEXIS 23652 (6th Cir. 2022) ("Vague, conclusory allegations that "lump the various Defendants together" fall "short of demonstrating that the Plaintiffs' injury is traceable to the Defendants."); *Simpson v. City of Columbus*, No. 2:24-cv-4307, 2025 U.S. Dist. LEXIS, at 19-20 (S.D. Ohio April 21, 2025*)* ("General allegations against a group of defendants will not suffice."); *Williams v. Taylor*, No. 1:22-cv-769, 2025 U.S. Dist. LEXIS 21926 (S.D. Ohio Feb. 6, 2025) (Court dismissed claims and agreed with Magistrate Judge that '[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal.'").

As Plaintiff herself recognizes, while heightened pleading is not required, she must allege factual content that would allow the court to draw some reasonable inference that these defendants are liable for the misconduct she alleges. When Plaintiff's conclusory and vague allegations regarding all Defendants are disregarded, the only inference the Court can draw as to these Defendants is that they worked with Plaintiff during her time as a Judge with the Common Pleas Court.

Complaints are supposed to provide fair notice to Defendants regarding the conduct over which they are being sued. The inherent difficulty in addressing relevant defenses in the face of Plaintiff's general allegations illustrates the lack of fair notice present here and why Plaintiff's claims against these Defendants should be dismissed. As just one example, it is difficult to

determine when a statute of limitations begins to run if neither the alleged conduct nor when it occurred are specified.

In short, these Defendants do not know what they are being sued for on an individual basis or when it occurred. Apparently, based on her response to the Motion to Dismiss, neither does Plaintiff. Her claims against these 11 defendants should be dismissed because the Third Amended Complaint lacks specific allegations that, even if true, could state any claim against them.

### III. Plaintiff's due process claim fails because she points to no liberty or property interest protected by the Fourteenth Amendment.

The TAC alleges that Plaintiff had "protected liberty and property interests" in the AJ position, of which she was deprived through a forced resignation. (Doc. 51, PAGEID 2234, ¶ 127-128). In her Response to the Motion to Dismiss, Plaintiff now concedes that she does not have a property interest in her elected office or the AJ position. (Doc. 58, PAGEID 2313, ¶ 128-131). Her due process claims end with this concession.

To salvage her claims, Plaintiff asserts that Defendants violated her *liberty* rights by not providing her with the opportunity to dispute the complaint filed by Ms. Goodman and coercing her resignation, (Doc. 51, PAGEID 2234). However, it is irrelevant whether Plaintiff identifies the interest at issue as a property or liberty interest because she does not have a protected interest in her elected office or in the AJ position, regardless of how she tries to characterize that interest. The United States Supreme Court held long ago that "there is no property *or liberty interest* in an elected office." *See Snowden v. Hughes*, 321 U.S. 1, 7, 64 S. Ct. 397, 400, 88 L. Ed. 497 (1944), citing *Taylor v. Beckham*, 178 U.S. 548, 577, 20 S. Ct. 890, 901, 44 L. Ed. 1187 (1900).

Lower courts, including some in the Sixth Circuit, have likewise concluded that a candidate for elected office holds no property or liberty interest in an elected position. *Velez v. Levy*, 401 F.3d 75, 86-87 (2d Cir. 2005) (holding plaintiff did not state procedural due process claim because she

lacked protected interest in her elected office); *Kurita v. State Primary Bd. of the Tennessee Democratic Party*, 2008 U.S. Dist. LEXIS 88071, 2008 WL 4601574 (M.D. Tenn. 2008); *Mingo v. Baxter*, Case No. 11-12341, 2012 U.S. Dist. LEXIS 126802 (E.D. Mich. Sep. 6, 2012), at \*10; *Emrit v. Gardner*, Case No. 17-cv-489-PB, 2018 U.S. Dist. LEXIS 217907 (D.C.N.H. Nov. 27, 2018), at \*7; *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 194 (E.D.N.Y. 2013) ("An individual has no property or liberty interest in an elected office."). Plaintiff continually points to the handling of the Goodman complaint and the resulting alleged coerced resignation from the AJ position as the interest at issue despite that, as a matter of law, she has no protected property interest in her elected office or in the AJ position.

Moreover, Plaintiff's assertion that she did not receive an opportunity to rebut Ms. Goodman's claims, via a "name clearing hearing" or some other mechanism, is also insufficient to support Plaintiff's due process claim. Case law considering "name clearing hearings" involve typical employer-employee relationships. More to the point, Defendants could locate no case law (and Plaintiff points to none) holding that elected officials are entitled to name-clearing hearings. Instead, as Plaintiff's cited case law makes clear, though one's reputation and good name can constitute liberty interests that the due process clause protects, "defamation alone is not enough to invoke due process concerns" and "[s]ome alteration of a right or status 'previously recognized by state law' such as employment, must accompany the damage to reputation." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). Thus, "[a] name clearing hearing is required only if the employer creates a false and defamatory impression about a particular employee in connection with his termination." Here, the only "alteration" of rights or status to which Plaintiff points is the "forced loss of 'status' as Administrative Judge." (Doc. 58, PAGEID 2315).

5

However, as Defendants have repeatedly pointed out, there is no property right in elected office or the AJ position. Instead, the Defendant Judges had the right to remove Plaintiff from the AJ position as they saw fit. The AJ position is an at-will, administrative position that does not give rise to a "right or status" under state law. Plaintiff fails to point out how her resignation from the position constituted a loss of right or status that is tantamount to a loss of employment under state law. Thus, neither Ms. Goodman's complaint nor the Court's handling of the same entitled Plaintiff to a name clearing hearing. *See Quinn,* 293 F.3d at 320 (When an employee has been stigmatized by publicly disseminated false information connected with a termination, that employee is entitled to a name clearing hearing.).

Moreover, even if Plaintiff's removal as AJ implicated a protected liberty interest, the case law Plaintiff herself establishes that "a plaintiff must request and be denied a name-clearing hearing in order to have been deprived of a liberty interest without due process" and the "failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Quinn,,* 293 F.3d at 323-324; s*ee also Kaplan v. Univ. of Louisville*, 10 F.4[th] 569, 584 (6th Cir. 2021) (Affirming dismissal of liberty interest due process claim and reiterating that the failure to request a name-hearing clearing is fatal).

Here, Plaintiff does not allege that she requested and was denied a name clearing hearing. Instead, Plaintiff admits that she resigned the AJ position, which ended any inquiry into Ms. Goodman's complaint. (Doc. 51, PAGEID 13, ¶¶ 61-62). Paragraphs 58 through 62 allege that Plaintiff was given the option of resigning or going through the formal investigation process—and Plaintiff chose resignation as the only "viable path forward," Though Plaintiff claims that she resigned under "duress," a closer look at her assertions reveals that the threatened "duress" was that she would have had to proceed with the very "name-clearing hearing," of which she claims

Defendants deprived her despite the fact that she never requested it. In other words, Plaintiff did not request a hearing; she resigned the AJ position to avoid it.

Even if Plaintiff felt compelled to resign the AJ position because it was her only alternative to *avoid* going through the name-clearing process and even if she resigned under duress, it is immaterial. In fact, the Sixth Circuit made clear in *Quinn* and *Kaplan* that there is no excuse for failing to request a hearing and the failure to do so merits dismissal of a liberty interest due process claim. *See Quinn,* 293 F.3d at 323-324 (Rejecting argument that employer must inform plaintiff of right to hearing and finding that "a plaintiff who fails to allege that he has requested a hearing and was denied the same has no cause of action, whether or not he had been informed of a right to a hearing before filing suit."); *Kaplan*, 10 F.4[th] at 584 ("Kaplan admits that he never requested a name-clearing hearing… Instead, he makes four arguments for why we should excuse this failure. We reject each of them"). Thus, Plaintiff's assertions that she resigned under duress does not excuse her failure to request a hearing.

Finally, the same problem exists here that pervades the entire TAC. Plaintiff claims that *all* of the Defendants deprived her of her due process rights (which is a legal conclusion). But when it comes down to the facts actually pleaded, the TAC alleges only that one fellow judge stated he thought she would be removed based on the Goodman complaint and suggested that Plaintiff resign to avoid the embarrassment of a formal removal. These allegations say nothing of any of the other Defendants besides Judge Frye. As for him, he had no individual authority to remove Plaintiff, so his opinion about her removal could not have deprived Plaintiff of *anything.*

As Plaintiff has done repeatedly, she continues to assert claims based on the assumption that she had a *constitutional* right to the AJ position, a position that gives rise to no recognized

property interest. Moreover, she now asserts that Defendants deprived her of a hearing that she never requested. Plaintiff's Complaint fails to state a due process claim.

**IV. This Court has previously applied *Garcetti* to First Amendment claims asserted by elected officials and case law makes clear that the First Amendment is not violated when elected officials clash.**

Plaintiff ignores the one case from *this* Court that is directly on point, in which the Court expressly found that *Garcetti* applies to elected officials. Other district courts in this circuit agree. Plaintiff instead points to a handful of cases from other districts and outside of the Sixth Circuit, that are not controlling. Even as to these cases, some discuss *Garcetti* in dicta and make no hard pronouncements. *See Mays v. City of Flint*, No. 23-12705, 2024 U.S. Dist. LEXIS 196451, *12 (E.D. Mich Oct. 29, 2024) ("*Pickering/Garcetti* does not appear to apply.") At any rate, nothing alleged in Plaintiff's Third Amended Complaint distinguishes Plaintiff's case from the cases applying *Garcetti* to public officials.

In *Hartman v. Register*, Case No. 1:06-CV-33, 2007 U.S. Dist. LEXIS 21175 (S.D. Ohio Mar. 26, 2007), which is directly on point, this Court considered a First Amendment claim by an elected township trustee who claimed that the defendants subjected him to retaliation because he raised concerns about the accuracy of meeting minutes. The Court dismissed the claim on the pleadings, after finding that *Garcetti* applied, and that the plaintiff's speech was not protected speech because it was undertaken as part of his duties as a trustee. *Id.* at * 18-19. The Court reasoned:

> Although *Garcetti* is different from this case in that there was not an employer-employee relationship between Plaintiff and Defendant Register, *Garcetti* is still applicable because it makes clear that speech made pursuant to an individual's official duties is not protected by the First Amendment. The distinction between the public employee in *Garcetti* and an elected official, in this case Plaintiff, is inconsequential.

*Id.* at *19.

There are no decisions within the Sixth Circuit that have questioned, let alone invalidated, *Hartman*. Other District Courts within the Sixth Circuit have applied *Hartman's* sound reasoning to reach a similar result.

In *Aquilina v. Wrigglesworth,* 298 F. Supp. 3d 1110 (W.D. Mich. 2018)*,* an *elected judge*, sued the local sheriff for First Amendment retaliation after the sheriff initiated a criminal investigation into the Judge and unsuccessfully sought to have a prosecutor file charges. The plaintiff-judge asserted that *Garcetti* did not apply to elected officials.

The Court disagreed, cited *Hartman* approvingly, and reasoned:

> In the Court's view, it is especially important to ensure that the speech of a public official does not become a predicate for a retaliation claim against another public official. Citizens elect public officials to speak on issues of public concern, and both citizens and elected officials know that such speech triggers opposition from other public officials. For elected officials to clash in the course of performing their official duties is a natural part of the public policy process. And clashes between elected officials should normally be resolved by the ballot box, not in a courtroom. That is particularly true when the elected contenders are State or local officials, and the courtroom is federal.

> *Id.* at 1116.

*Aquilina* also cited the Sixth Circuit's decision in *Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994), which rejected an elected official's claim that his fellow elected officials retaliated against him for speech he made during his city council tenure. *See Zilich* at 363 (Finding that a "legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons.").

Similarly, in *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009). the Court dismissed a township trustee's First Amendment retaliation claim against his fellow trustees and the township after his fellow trustees allegedly targeted him because of the substance of his speech. In so doing, the Court reasoned that a plaintiff "cannot use the federal courts to

prevent his political opponents from targeting him because of public statements he made in his capacity as an elected official." *Id*. at 615. In applying *Garcetti*, the Court further reasoned that when speaking on public issues, an elected official's "constitutional rights are more analogous to the employee in *Garcetti* than to a private citizen sitting in the audience." *Id.* at 616. In the end, the Court held that the plaintiff could not pursue a claim against his fellow trustees for "doing precisely what elected board members were supposed to do: namely, argue with each other over policy issues, form majority coalitions, vote on substantive and procedural issues, and be held politically--not judicially--accountable by the voters." *Id.* at 613.

All of the "speech" for which Plaintiff claims she suffered retaliation was related to the operation of the Franklin County Common Pleas Court. That is, Plaintiff claims that she was retaliated against because she attempted to enact a reform agenda as AJ to "address issues of equality and diversity." (Doc. 51, PAGEID 2231, ¶ 112) This speech is necessarily within the scope of her official duties as a judge of the Franklin County Common Pleas Court and its AJ. As a result, this "speech," undertaken as part of her official duties, cannot be the basis for her First Amendment retaliation claims under *Garcetti*.

In addition, the primary case relied upon by Plaintiff in her Memorandum—*Werkheiser v. Pocono Twp.*., 210 F. Supp. 3d 633 (M.D. Pa. 2016)--points out another fundamental problem with her claim. While if found that *Garcetti* did not apply to an elected official, the *Werkheiser* court nevertheless dismissed that elected official's claims after finding that the conduct of the defendants did not amount to *actionable* retaliation. The Court reasoned that the political process inherently involves "retaliation" between elected officials as they seek to advance their own agendas. The court stated:

10

> Experience and political reality counsel that it is not unexpected for political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, i.e., to vote against candidates whose views differ from their own.***Therefore, even if Defendants' actions towards Plaintiff stemmed from his outspokenness and frequent criticisms, their actions would not amount to retaliation in violation of the First Amendment. Although the First Amendment protects Plaintiff's discordant speech as a general matter[,] ... it does not immunize him from the political fallout of what he says. Id. at 542. More fundamentally, the First Amendment is not a shield against the vagaries of the political process, and it is only the political process where Plaintiff should look to for recourse in this action.

*Id.* at 642 (internal citations omitted).

Here, Plaintiff claims that the defendants "with unjustified hostility, engaged in a campaign to undermine [Plaintiff's] position and oust her from office." (Doc. 51, PAGEID 2211, ¶ 2). Even if assumed as true for the purpose of deciding Defendants' Motion to Dismiss, Plaintiff's allegations implicate the exact same "vagaries of the political process" that the *Werkheiser* court found could not constitute actionable retaliation. Per the TAC, Plaintiff's fellow judges did not like the manner in which she was performing the AJ duties, so they took steps to replace her. Per *Werkheiser,* this is not actionable retaliation, even if *Garcetti* does not apply. Stated another way, *Werkheiser* stands for the proposition that elected officials should not be permitted to use federal courts to intervene into internal political disputes under the guise of a First Amendment retaliation claim. Here, as in *Werkheiser*, Plaintiff has not alleged that the actions taken by the defendants constitute actionable retaliation, which is also fatal to her First Amendment claim, even if *Garcetti* did not apply.

Finally, it should be noted that the TAC fails to identify, with any specificity, the protected speech that underlies her claim. Instead, Plaintiff vaguely alleges that she attempted to implement a "substantive reform agenda" which drew the ire of the defendant judges. Absent is any detail regarding what she actually said or did to advance this agenda. The closest the TAC comes to providing specifics is Paragraph 34, which states that her "reform efforts" included insisting that

senior administrators comply with court policies, state law and ethical standards. (Doc. 51, PAGEID 2217, ¶ 34). Again, no other specifics are offered.

The TAC alleges that Plaintiff "insisted" on accountability for court staff but identifies no specific speech associated with her "reform agenda." Importantly, the TAC also fails to allege to whom the speech was directed and/or who was aware of the unspecified speech. A causal connection between protected speech and the conduct of defendants cannot be established absent concrete details regarding the nature of the protected speech. In short, Plaintiff's reliance on generalized allegations about her "reform agenda" fails to state a claim for First Amendment retaliation.

## V. Plaintiff's Equal Protection claim fails due to a lack of any adverse employment action.

Neither Plaintiff's membership in a protected class nor her strength of belief in her reform agenda obviate the requirement that Plaintiff allege a materially adverse employment action for her equal protection claim to survive. Plaintiff points to the alleged failure to follow the Court's anti-harassment policy and a later modification of that policy, the denial of training, exclusion from meetings, the destruction of internal correspondence, communications with victims regarding judicial assignments, and "unprecedented" scrutiny of her and her staff. (Doc. 58, PAGEID 2312). Plaintiff fails to explain how these alleged actions are anything like termination, a loss of pay or a loss of benefits. She points to no significant change in responsibility. The actions to which Plaintiff points instead are the exact sort of actions that Courts have determined are *de minimis* and, therefore, not actionable. Further, as with her other claims, Plaintiff makes general and broad allegations against all Defendants and does not specify when the conduct of which she complains occurred. Plaintiff has failed to state an equal protection claim.

**VI.     The Complaint fails to allege the violation of any clearly established right.**

Putting aside that Plaintiff fails to allege specific conduct as to each defendant, Plaintiff does not have a property interest in her elected office, that claims accruing before November 12, 2022 are barred by the statute of limitations, and that Plaintiff fails to allege protected speech and her retaliation claims are barred by *Garcetti*, Plaintiff also fails to point to any case law that has held that the conduct she alleges, the *de minimis* actions discussed above and the removal of a judge from an internal administrative role, have been held to violate constitutional rights. In fact, the case law, including case law Plaintiff highlights, has found that First Amendment retaliation claims cannot be based on speech incidental to one's public position or that elected officials conduct in response to another elected official's public speech cannot serve as the basis for a retaliation claim. Other case law, including that cited by Plaintiff, has found there is no property interest in an elected position and no right to a hearing that is not requested. Finally, matters of training, document preservation, and exclusions from meetings simply do not implicate constitutional rights. Plaintiff points to alleged adverse actions and/or consequences that are not constitutional violations and not clearly established.

**VII.    Plaintiff does not dispute that the Court Administrators lacked any authority over her.**

As to the administrator Defendants, Goodman, Davis, Bedsole and Worthington, Plaintiff does not address their argument that, lacking any authority over Plaintiff, they could not impose any adverse action or facilitate any hearing or other due process with regard to her resignation from the administrative judge role. Plaintiff herself admits that she had supervisory authority over the administrator defendants. Lacking authority, these defendants could not have been personally involved in any alleged constitutional violation.

## VIII.   Conclusion

For the foregoing reasons as well as those stated in the Court Defendants' Motion to Dismiss, Plaintiff's Third Amended Complaint fails to state a claim and the Court should grant the Court Defendants' Motion to Dismiss and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Scott O. Sheets (0076837)
Charles Schneider (0005821)
ISAAC WILES BURKHOLDER & MILLER, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 221-2121 / F: (614) 365-9516
aglasgow@isaacwiles.com
ssheets@isaacwiles.com
cschneider@isaacwiles.com
*Attorneys for Court Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2026, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Aaron M. Glasgow*
Aaron M. Glasgow (0075466)

14